UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff** | ) | Case No. 1:18-cr-43 |
| | ) | |
| | ) | **Judge Timothy S. Black** |
| vs. | ) | **Magistrate Judge Stephanie K. Bowman** |
| | ) | |
| **YANJUN XU,** | ) | **Amended Memorandum in Opposition** |
| | ) | **to the Government's Motion for Pretrial** |
| **Defendant.** | ) | **Detention** |
| | ) | |
| | ) | |

    We will never know whether Mr. Xu would have voluntarily agreed to come to the United States to stand trial because he was never asked. Rather than seek the voluntary cooperation of Mr. Xu, the government lured him to Belgium where he has spent the past six months detained in a Belgian jail awaiting extradition. During that time, Mr. Xu was unable to visit with his wife and 10-year old son. Upon arrival in the United States, the government has continued to restrict Mr. Xu's external communications and is precluding him from even writing a short note to his wife to let her know that he has arrived in the United States and is well. The government now seeks to further detain Mr. Xu pretrial at a Bureau of Prisons facility over 4 hours away in Milan, Michigan on the grounds that he is a flight risk and a danger to the community. The government seeks detention even though Mr. Xu has no criminal history, has been charged with non-violent, non-drug-related offenses and is not in possession of any confidential trade secret information that could now be disclosed.

    The government has completely failed to put forth evidence sufficient to meet its burden of establishing either that Mr. Xu is a danger to the community or a flight risk. This Court should deny the government's motion, release Mr. Xu pretrial under any and all conditions the

Court deems appropriate and allow him to reunite with his family and more effectively participate in his defense.

**I. Legal standards governing pretrial release.**

Whether Mr. Xu is released or detained is within the sound discretion of the Court. In cases such as this where detention is not mandatory, the law favors pretrial release and provides that pretrial release should be granted in all but the rarest of circumstances. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The government bears the burden of proving those "rare circumstances" and can meet that burden only by (i) proving by a preponderance of the evidence that no set of conditions short of detention will ensure Mr. Xu's appearance at trial, or (ii) proving by *clear and convincing evidence* that, if not detained, Mr. Xu will pose a danger to the community. 18 U.S.C. §3142(b); *United States v. Namer*, 238 F.3d 425 (6th Cir. 2000). The government has not and cannot meet its burden of proving either that Mr. Xu is danger to the community or a flight risk.

The pretrial release statute, 18 U.S.C. § 3142(g), directs the Court to consider the following factors when determining whether any set of conditions will ensure Mr. Xu's appearance:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

When weighing these factors, any "doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405.

Consideration of the factors set forth in 18 U.S.C. § 3142(g) favors the pretrial release of Mr. Xu.

**II. Mr. Xu is not a flight risk.**

**A. Mr. Xu has clearly manifested his intention to remain in Cincinnati through trial.**

Mr. Xu was never given the opportunity to voluntarily consent to this Court's jurisdiction. But from the moment he was lured to Belgium and detained, Mr. Xu's actions have evidenced a clear intent to submit to this Court's jurisdiction and stand trial on the charges set forth in the Indictment.

Mr. Xu retained the undersigned counsel shortly after his detention in Belgium and counsel has been working on Mr. Xu's defense for months. Mr. Xu's family —his wife and ten-year-old son—have applied for and obtained visas and are preparing to relocate to the United States to be with Mr. Xu pretrial. These are simply not the actions of a defendant who intends to flee. Nor would flight out of the country be possible given that Mr. Xu's passport was seized in Belgium and is in the hands of the United States government.

Nor has the government explained why detention to prevent risk of flight is warranted in light of the myriad tools this Court and the government have available to monitor Mr. Xu's movements. To the extent this Court has *any* concern regarding Mr. Xu's lack of ties to the community, it can easily place Mr. Xu under restrictions that will allow the government and the

Court to track his every move, including by subjecting Mr. Xu to electronic and GPS monitoring and ordering house arrest and/or frequent check-ins with law enforcement. Such restrictions are more than sufficient to ensure Mr. Xu's appearance at trial.

**B. Mr. Xu's current legal status is also an impediment to him fleeing**

That Mr. Xu entered the United States under "Significant Public Benefit Parole" ("SPBP") confirms that the government knows how to keep track of him without incarcerating him. SPBP comes from an immigration statute, 8 U.S.C. §1182(d)(5)(A), which allows the Attorney General to temporarily parole an individual into the United States for "significant public benefit." The Department of Justice uses this provision when it extradites individuals into the United States.

According to the guidelines in the US Attorney's manual, section 9-15.400, once a foreign country is ready to surrender to the United States a defendant to be extradited, it contacts the Office of International Affairs within the Department of Justice. That office then asks the Department of Homeland Security "to authorize Significant Public Benefit Parole to permit the foreign national to enter the country."

The approval of SPBP petitions within the Department of Homeland Security (DHS) is governed by a Memorandum of Agreement between the various customs and immigrations divisions within the Department. Under section 5 of that Memorandum, the office of Immigration and Customs Enforcement (ICE) is responsible for adjudicating any parole request for an individual who will require monitoring by a DHS component. And for any parolee who will require monitoring by a non-DHS government entity, ICE will set the conditions for monitoring. In short, DHS was responsible for approving Mr. Xu's entry into the United States, and DHS already has protocols and processes in place for monitoring people like Mr. Xu who enter the country under SPBP status. Presumably, DHS can monitor individuals without

4

incarcerating them; SPBP status is used to accommodate a wide variety of visitors to the United States, not just criminal defendants.

It is also worth noting that the United States tracked a Chinese national in China and to Belgium, where they secured an arrest warrant shortly after his arrival. The government clearly has both the resources and inclination to keep tabs on Mr. Xu without having him under lock and key. It is therefore unusual that the government assert that it can no longer keep track of Mr. Xu now that he is in the United States.

**III. Mr. Xu is not a danger to the community.**

    **A. The nature of his alleged offense is not violent in form, substance, or result.**

The pretrial release statute requires the Court to consider the nature of the offense when determining whether to grant pretrial release. 18 U.S.C. §3142(g). This case involves an *attempt* to commit non-violent, non-drug-related offenses by a defendant with no criminal history, no history of violence and no substance abuse or mental health issues. The crimes alleged are classic white collar criminal offenses for which pretrial release is the norm. Nor does it appear that the alleged offenses, if true, caused the primary victim any substantial harm. The alleged target of Mr. Xu's alleged conduct, GE Aircraft, issued a public statement this week describing the overall impact of the alleged conspiracy as "minimal."

There is also no real risk that Mr. Xu could reoffend if placed on pretrial release. Mr. Xu has been charged with a failed attempt to obtain confidential trade secrets and GE Aircraft has admitted that the impact of the disclosure of any information he did receive was "minimal." Mr. Xu has no trade secrets to share. Nor is it reasonable to assume, given the substantial press coverage this case has already received and the restrictions this Court would likely impose on Mr. Xu, that Mr. Xu could gain access to the trade secrets of GE Aircraft or of any other company if released.

5

### B. Nothing in Mr. Xu's history or character suggests he is a danger to anyone.

Section 3142 also directs the court to consider the weight of the evidence of dangerousness against Mr. Xu, as well as his personal characteristics. 18 U.S.C. § 3142(g)(2)-(3). *Stone*, 608 F.3d at 948. Consideration of this factor also weighs in favor of pretrial release.

Mr. Xu is a university-educated engineer with a wife and young child. He remains close to his extended family and has been employed by the same company in China as a Marketing Manager for over a decade. He has no history of violence, no history of drug or alcohol abuse, and no criminal history.

### IV. The government's proposal to detain Mr. Xu in Michigan combined with its desire to limit Mr. Xu's access to the criminal discovery risks impairing defense counsel's ability to prepare an effective defense.

The government proposes sending Mr. Xu to a federal prison in Milan, Michigan, which is 4-5 hour drive from Cincinnati. The government is also seeking to place severe restrictions on Mr. Xu's access to the criminal discovery. Combined, these limitations may very easily cripple defense counsel's ability to effectively prepare and present a defense. That Mr. Xu's native language is not English creates additional obstacles that can best be navigated by allowing Mr. Xu to remain in close proximity to his lawyers where they can meet with him on a frequent basis.

### V. There is relevant legal authority supporting the pretrial release of a defendant with strong overseas ties.

Other courts have had little difficulty coming up with a combination of conditions to ensure a foreign defendant's appearance (and without threatening the defendant's Sixth Amendment right to counsel, which the government's proposals threaten to do here). These cases presented far more risk of flight than do the facts provided by the government in this case. For example, In *United States v. Hanson*, the court granted pretrial release to a female defendant with strong ties to China who was accused of illegally exporting autopilot components for

6

unmanned aerial vehicles to China. 613 F. Supp. 2d 85, 86 (D.D.C. 2009). While she was also a naturalized US citizen, Ms. Hanson had few ties to the United States, and much stronger ties to China. The government argued that the defendant had no job in the United States and was planning to divorce her husband, leaving her with no familial ties to the United States. *Id.* at 88-89. The government asserted further that the defendant had strong familial and commercial ties to China (including a child, siblings, a significant amount of land, and close business relationships), *id.* at 88-89, and that she had a strong incentive to flee in light of the weight of evidence against her and the threat of a lengthy jail sentence. *Id.* The court found no evidence of an intent to flee under these facts and concluded further that there was a set of conditions short of detention that would ensure the defendant's appearance. Specifically, the court ordered the defendant to wear a GPS ankle monitor, remain in her home unless authorized to leave by the court, avoid the vicinity of any airports, surrender her passport, and post collateral for her bond. *Id.* at 91. The court's docket reflects that the defendant did in fact appear for trial (and subsequently pled guilty). *United States v. Hanson*, Case No. 1:09-cr-0071-PLF-1, D.E. 130.

In *United States v. Karni*, the court granted pretrial release to a defendant who was charged with smuggling devices that could trigger nuclear weapons to Pakistan. 298 F. Supp. 2d 129, 130 (D.D.C. 2004). Mr. Karni was an Israeli national living in South Africa who maintained close ties to both countries—but no ties at all to the United States. *Id.* at 132. Mr. Karni also had a long record of service in a foreign army. *Id.* But the court released him on bond, on the conditions that (i) he remain in home detention with an ankle monitor, (ii) he waive any rights not to be extradited to the US that he might have had under South African or Israeli extradition treaties, (iii) a significant bond (but not one impossible to satisfy), and (iv) release to a responsible third-party.

7

A similar combination of conditions would be effective here, not least because Mr. Xu poses far less of a risk of flight than did the defendants in *Hanson* and *Karni*. Unlike those defendants, Mr. Xu will have familial and financial ties here in the district: His family is relocating to Cincinnati to be with him, and they plan to buy or rent a residence here for that purpose (leaving Mr. Xu with little incentive to leave Cincinnati, much less the country, pretrial).

## CONCLUSION

Mr. Xu is neither a danger to the community nor a flight risk.  This Court has myriad tools at its disposal to effectively ensure that Mr. Xu remains in the United States to stand trial if released pretrial.  Not only is pretrial release warranted under the factors set forth in 18 U.S.C. §3142(g), but pretrial release would most effectively protect Mr. Xu's constitutional rights to effective assistance of counsel and would allow for him to be reunited with the family he has not seen for over six months.

Therefore, for the foregoing reasons, the Defendant, Yanjun Xu, must be released on bond with conditions as set by the Court.

Respectfully submitted,

/s/ Jeanne M. Cors
Jeanne M. Cors
Ralph W. Kohnen
Taft Stettinius & Hollister LLP
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
cors@taftlaw.com
kohnen@taftlaw.com

*Attorneys for Defendant Yanjun Xu*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was filed electronically on October 12, 2018, using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

                                        /s/ Jeanne M. Cors