UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

. . . . . . . . . . . . . .
UNITED STATES OF AMERICA,    .  Case No. 1:18-cr-043
                            .
         Plaintiff,          .  *In-Person Status Conference*
                            .
      - v -                  .
                            .  Tuesday, June 18, 2019
YANJUN XU,                   .  1:03 PM
                            .
         Defendant.          .  Cincinnati, Ohio
. . . . . . . . . . . . . .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE

<u>APPEARANCES</u>:

For the Plaintiff:

TIMOTHY S. MANGAN, ESQ.          THEA D.R. KENDLER, ESQ.
EMILY N. GLATFELTER, ESQ.        U.S. Department of Justice
Assistant U.S. Attorneys         Counterintelligence & Export
United States Attorney's Office    Control Section
221 East Fourth Street           950 Pennsylvania Avenue, NW
Suite 400                        Washington, DC  20530
Cincinnati, Ohio  45202


For the Defendant:

JEANNE M. CORS, ESQ.             FLORIAN MIEDEL, ESQ.
COURTNEY LYNCH, ESQ.             Miedel & Mysliwiec LLP
Taft, Stettinius & Hollister     80 Broad Street, Suite 1900
  LLP                            New York, New York  10004
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957


Law Clerk:          Cristina V. Frankian, Esq.

Court Reporter:     Luke T. Lavin, RDR, CRR
                    Potter Stewart U.S. Courthouse
                    100 East Fifth Street, Room 103
                    Cincinnati, Ohio  45202
                    Telephone:  (513) 564-7500

<u>P R O C E E D I N G S</u>

1

2    (In chambers at 1:03 PM.)

3         THE COURT:  We'll go on the record.

4    We're here in chambers on the record on the criminal docket

5    in the matter of *United States versus Xu*.  We're set for a

6    status conference.

7    Who appear as the attorneys for the United States?

8         MR. MANGAN:  Good afternoon, Your Honor.  Tim Mangan

9    on behalf of the United States.

10    I want to introduce Thea Kendler, who is from the

11    Department of Justice, is here.

12         THE COURT:  Good afternoon.

13         MS. KENDLER:  Good afternoon.

14         MR. MANGAN:  And Ms. Glatfelter as well.

15         THE COURT:  Good afternoon.

16    And on behalf of the defendant?

17         MS. CORS:  Good afternoon, Your Honor.  Jeanne Cors

18    and Florian Miedel on behalf of Mr. Xu.  And I'd like to

19    introduce Courtney Lynch, who is an associate at our firm

20    working on this case as well.

21         THE COURT:  Good afternoon.

22         MS. LYNCH:  Good afternoon.

23         THE COURT:  Welcome to the two new faces.

24    And it's, of course, a high honor and great privilege to

25    have you here, sir, all the way from New York.

1              MR. MIEDEL:  I knew that was coming.

2              THE COURT:  We're here for a status report, and that's

3    what I anticipate, relatively informal.  I will note that we

4    e-mailed you back in mid-April and talked about what we were

5    trying to get accomplished regarding computer access, letters,

6    books, in-person meetings, and I'm hoping that progress has

7    been made.  That is my understanding.

8        But I'd like to hear from each side in turn as to where we

9    are, what's been done, what presents, what needs to be done,

10   how can the Court be responsive.

11       The Court typically hears from the United States first.

12             MR. MANGAN:  Well, to kick it off, Your Honor, with

13   respect to discovery, the lion's share of it we had already

14   produced in the last couple of productions, which led to the

15   discussion about the computers.

16       We have not heard anything more in terms of concern,

17   whether it be from BOP or the defense, so hopefully that's what

18   the report will be from the defense.  We have not heard of any

19   other issues.  So it's been fairly quiet since our last status

20   conference.

21       We are continuing to work for whatever else we need to

22   produce.  There are some things where he writes letters, for

23   example, in jail, and we're now getting the translations back

24   that we'll produce back to them.  And we've got some other

25   e-mail accounts that we'll be producing to them.  So we're

1   getting another round of things to produce to them, just to

2   stay up on things, but otherwise it's been fairly quiet.

3          THE COURT:  So where are you on completing production

4   of discovery, and what are the next several steps?

5          MR. MANGAN:  I would say, as to the core pieces, you

6   know, that we've locked in on, this next production would be,

7   you know, one of the last big pieces, which is the e-mail

8   accounts related to the defendant.

9      As far as finalizing discovery, we wouldn't be able to say

10  we're totally final until we get through the CIPA portion of

11  it, because obviously however that shakes out and whatever the

12  Court would order from that would impact -- you know, may

13  impact what our final discovery is.  But we certainly -- we're

14  trying to -- I think we're on the tail end of things, without

15  saying that we are at the end.

16         THE COURT:  Fair enough.  I'm just trying to get a

17  sense for where we are and where we're going.  So help me a

18  little bit more on where we're going.

19         MR. MANGAN:  I was going to say, there's an ongoing

20  piece to it from the standpoint of we've turned over the cloud

21  accounts and we've turned over the translations as we get

22  finalized pieces of translations.  As you know, we've said if

23  we're going to use something, we will have it translated and we

24  will produce that.

25     There are still things in process from a translation

1   standpoint, and part of the -- I think that is moving along

2   pretty well, but they need to have those finalized.  There has

3   to be sort of a second set of eyes that signs off on the

4   translations before we get them.  So I know there is a portion

5   of the cloud accounts, for example, that they are still

6   finalizing the translations.  And when we get those, we would

7   add those in to the discovery in addition to what they've

8   already received.

9       It's hard to say, you know, from a time standpoint how far

10  away we are.  Like I said, it does depend in part on the CIPA

11  aspect of it.

12          THE COURT:  Yeah.  I mean, that's my direct question,

13  is, you know, where are we on timing.

14          MR. MANGAN:  I think if we have some -- I think

15  generally the e-mail portion of it that I was talking about,

16  this next production I think we would have out in the next --

17  you know, hopefully by the end of June.  I'm just waiting on

18  some of the translations related to the e-mails.

19      With respect to the additional translations, I'm told

20  they're close.  It's hard to promise when I'm not in control of

21  the translators, but we're still talking within a matter of

22  months that we would get that out and get that, hopefully,

23  finalized.  I just would ask for a little bit of leeway that,

24  you know, if they find something more in the Mandarin

25  translated, there may be things coming out in dribs and drabs

1   at the end, but I feel like the lion's share of it we are

2   getting through and we are close to the end.

3          THE COURT:  Very well.  I'm not trying to trap you on

4   a deadline for production of every piece of paper.

5          MR. MANGAN:  It's a little different when we're

6   dealing with -- you know, there is a known -- there are certain

7   accounts that we have turned over to them, but they're in

8   Mandarin.  And so, you know, as they go through and translate

9   things, there's always the chance that they will find something

10  more.  We think we've uncovered the key pieces that we need to

11  turn over and get translated, but we don't know for sure.

12  Obviously, there's going to be some ongoing work.

13         THE COURT:  I'm considering retiring in 2022.  Do you

14  think this case will be tried before then?

15         MR. MANGAN:  Fortunately or unfortunately, I think it

16  will.

17         THE COURT:  Very well.

18         MR. MANGAN:  I'm not sure if that changes your plans.

19     (Laughter.)

20         THE COURT:  Fair enough.  That was largely a joke.

21         MR. MANGAN:  The other -- if I could just highlight

22  sort of as a sneak preview, the other piece of it is, as you

23  know, looking back at the Indictment, it alleges, you know,

24  course of conduct over a number of years in terms of his

25  activities with respect to not just the aviation company that's

1    here in Ohio but also other activities that he may have engaged

2    in with other aviation companies.  That may tie in to their

3    request for the 404(b) notice, or not.

4              MS. CORS:  I think it would.

5              MR. MANGAN:  And we will respond to that.

6         But part of what we also need to work on and we are working

7    on is determining what other factual scenarios within his

8    writings, within his activity, that we plan to present at trial

9    and making sure we have the discovery that goes with each of

10   those incidents.  So in a way there's almost like cases within

11   cases, and we're trying to make sure we have all of that.  So

12   we are working on that as we track those down, but that's an

13   ongoing process as well.

14             THE COURT:  I've taken a deep breath.  When this goes

15   to trial, I'm not holding you to it, but how long --

16             MR. MANGAN:  How long?

17             THE COURT:  -- do you think it would take for the

18   government to put on its case-in-chief?

19             MR. MANGAN:  I would measure it in weeks.  Less than a

20   month.

21             THE COURT:  Very well.

22             MR. MANGAN:  I should probably turn to my right hand

23   in case --

24        Feel free to throw a stapler at me if I'm wrong, or hit me.

25             THE COURT:  I wasn't trapping you.  I was just trying

1   to get a sense for what's on the plate.

2       I sort of have a sense for the government's status report.

3   Can I pause at this point and ask the defense for their

4   perspective on status, Mr. Mangan?

5           MR. MANGAN:  Yes, Your Honor.

6           MS. CORS:  Your Honor, we're happy to report that on

7   many of these issues we're in full agreement with the

8   government.  Thanks, I think, partly to your reach-out and Ms.

9   Frankian's after the last status conference, we have made a lot

10  of progress on discovery.

11      Mr. Xu now has access to all of the discovery that has been

12  provided.  That access is being provided on a computer that's

13  being wheeled into his cell.  We understand that he has been

14  given significant access to that computer during the day and is

15  well on his way to being able to review all of that.

16      In addition, we have worked closely with Dan Clore and his

17  staff, they've been very helpful, and the government in terms

18  of both the access to the computer materials but also access to

19  our client himself.  We have been able to work cooperatively

20  with Dan Clore to schedule meetings to go through that

21  discovery.

22      So we're in good shape on both those issues.  We don't see

23  any need for the Court to be involved at the moment in either

24  of those.

25          THE COURT:  That's a magnificent report, and that's a

1  credit to everybody around the table, including my career law

2  clerk.

3      Go ahead.

4          MS. CORS:  With respect to letters and books, we are

5  still working through some issues with respect to those, but,

6  again, Dan Clore and his staff have been working with us.

7  Letters were getting to our client routinely up until about

8  three weeks ago, and then there was a three-week delay that we

9  had some concerns about.  But we were informed that that was

10 due to the translator being on vacation, so I believe that

11 issue has been resolved and is not going to be an issue going

12 forward.

13     On books, I think we finally got a breakthrough yesterday.

14 Bob McBride is there with our own translator, and they met with

15 Dan Clore.  Right now he's been provided two books in Mandarin,

16 one which I understand is in a dialect that, unless you're very

17 old, you would not be able to read.  That's not anything on the

18 FCI Milan.  They didn't know.

19     But yesterday there was a meeting.  Mr. Xu has provided a

20 couple names of texts in Mandarin that he would like to read,

21 and our translator went home and, using her own Mandarin

22 keyboard, was able to find links to retail establishments I

23 guess around the country that might sell those books.  Those

24 have been sent to Dan Clore.  So, again, on that issue I think

25 we have made substantial progress, and hopefully over the next

1   couple of weeks he will have more to read.

2          THE COURT:  That's good news as well.  What do you

3   consider really, really old?

4          MS. CORS:  According to our client, this was something

5   that, you know -- a dialect that maybe was a couple hundred

6   years old.

7          THE COURT:  Very well.

8          MS. CORS:  So we're in good shape --

9          THE COURT:  Okay.

10         MS. CORS:  -- with respect to our review of the

11  discovery and, more importantly, our client's ability to review

12  the discovery.

13         THE COURT:  Okay.  So where are we?  What lies ahead?

14         MS. CORS:  We are considering a number of motions.

15  We're evaluating those now.  I think it would be fair to say

16  we're far along in that process.  We would expect, you know,

17  within the next month to two months to have any motions we

18  would intend to file finalized other than maybe some

19  evidentiary motions that, you know, we would need to evaluate

20  closer to trial.

21      But I think we're in good shape.  You know, certainly our

22  client is very interested in setting a trial date.  His

23  interest in that has not changed.  And, you know, certainly

24  from our perspective, by early next year we would expect we

25  could be in a position to be ready to go to trial.

1    We were talking with Mr. Mangan and Ms. Glatfelter about

2    that.  It seems like I think everyone is on board at the moment

3    that early next year could be a possible target date, if that

4    would work with the Court.

5              THE COURT:  Only one other person to get on board with

6    that plan.

7              MS. CORS:  Yes, only one other person, maybe the most

8    important.

9              THE COURT:  Hardly.  But we talked about pretrial

10   motions and a pretrial motion deadline.  And I'm not talking

11   about motions *in limine*.

12             MS. CORS:  Uh-huh.

13             THE COURT:  I'm talking about substantive pretrial

14   motions.  Would you like to set a pretrial motions deadline so

15   that we can all be focused on anticipating the day when they

16   roll in?

17             MR. MIEDEL:  Well, Your Honor, we were thinking if the

18   Court were available and we could try this case in early 2020,

19   say February -- I hear the weather is great at the time -- then

20   maybe we would work backward to set a motions schedule for the

21   non-evidentiary motions, for example, in early October or

22   something along those lines.  But again, obviously, it depends

23   on the Court's schedule.

24             THE COURT:  Well, let's talk around the table about

25   when you really think you're going to be ready to try this and

 1    how long you think it's going to take, and we'll start to

 2    prepare our docket for it.  I mean, we will try this case when

 3    you're ready.  I know one week in February is a challenge for

 4    me.  I thought that I'd heard March.  I've looked at -- well,

 5    February, March, April?  We don't necessarily have to commit

 6    today.

 7         But what's the government's thinking on the month or less

 8    that you think it will take for you to put on your case-in-

 9    chief?  What months or month do you think is realistic?

10              MR. MANGAN:  I think something in 2020 is realistic.

11    I mean in the early part of it.  What they've suggested is not

12    out of line with how we were projecting as well.

13         Obviously, it depends on where we could fit it in with the

14    Court's calendar.

15              THE COURT:  Right.

16              MR. MANGAN:  Working back from that, you know, we

17    would like to have a substantive motion deadline somewhat

18    earlier so that we can, you know, work on that, you know,

19    during 2019 so we can get those resolved and to the extent out

20    of the way without, you know, having that too close to the

21    trial date.  The same thing, I know, with respect to experts.

22    I know they have given us a request for experts.

23         What we would suggest is at some point -- you know, we

24    could talk about what month would be appropriate -- have an

25    expert disclosure deadline and then possibly another one for

1  rebuttal, but have that imposed for both parties so that we

2  can, you know, move towards that at the same time, so that

3  we're working on discovery, we're working on motions, we're

4  working on experts all simultaneously.

5      I think if we can work on those things throughout the rest

6  of this year, we would be ready to proceed with the trial, you

7  know, in whatever we're talking about, February, March of next

8  year.

9          THE COURT:  Ms. Frankian, do you want to weigh in on

10  whether or not we should establish a schedule today, or any

11  reactions to what these aggressive lawyers are proposing?

12          THE LAW CLERK:  We could establish a schedule today.

13  If we're looking at February 2020 for a trial date, I would

14  think maybe the end of August for a motion deadline, just

15  because by the time it's briefed and if we need a hearing,

16  then, you know, we wouldn't want to push it too close to the

17  trial date.

18          THE COURT:  That's a lot of --

19      Do you all want to consider outside the Court's presence

20  coming up with a calendar, recognizing that the Court will make

21  itself available for trial when you're ready?  I know I have

22  five days in February that we might have to recess for.  On the

23  other hand, we could start in late February and go until the

24  end of my career.

25      (Laughter.)

```
 1              THE COURT:  Do you want to do this now seat of the

 2    pants?  Do you want to talk about it?  I think we really ought

 3    to have a discovery deadline, understanding that you have the

 4    right and obligation to supplement.  And then I think we need a

 5    pretrial motion filing deadline that gives you adequate time to

 6    respond to it, because it's going to be substantive, one would

 7    assume, and gives us time to have time to work on it.  I think

 8    we need to have an expert witness disclosure date, and I think

 9    we ought to pick a trial date.

10          Do you want to do that right this minute, or do you want to

11    confer among yourselves and come back with a proposal and we'll

12    sign off on it?

13              MR. MANGAN:  We'd be okay with conferring with them,

14    if that's more convenient for the Court, and try to propose

15    some dates.

16              MS. CORS:  That's fine.

17              MR. MANGAN:  How does that sound?

18              MS. CORS:  That's fine with us.

19              MR. MANGAN:  Obviously, we could do everything except

20    the trial date piece of it.

21              THE COURT:  Well, you can make a suggestion.  And I'm

22    telling you that when you're ready, we're going to make sure

23    that you go to trial.

24              MS. CORS:  Okay.

25              THE COURT:  Did you have more?  What do you think of
```

1   this approach, letting them come up with it?

2   　　　　THE LAW CLERK:  That's fine.  I was going to say, we

3   could step out and just go print out a copy of our calendar and

4   maybe -- I don't know if that's adequate time if you want to

5   discuss it for a few minutes.

6   　　　　THE COURT:  I think I'd like to give you guys time to

7   come up with a realistic calendar rather than for me to guess

8   at it based on your vague statements about when you're going to

9   be ready with what.

10   　So when can you get me a proposed calendar order that lays

11   out those dates, and are there other dates we ought to

12   identify?

13   　　　　MR. MANGAN:  I think you've hit on all the main

14   deadlines that we had in mind.

15   　　　　THE COURT:  Okay.

16   　　　　MR. MANGAN:  Were you thinking a week?

17   　　　　MS. CORS:  I think a week would be fine with us.

18   　　　　THE COURT:  That's great.

19   　　　　MR. MANGAN:  And if it's okay with the Court --

20   　If you've got some time.

21   　-- we could go down to our office on the seventh floor

22   right afterwards and talk a little bit.  So I think a week

23   would be --

24   　　　　THE COURT:  I think that would be a good thing.

25   　　　　MR. MIEDEL:  Judge, the --

```
 1            THE COURT:  Yes?

 2            MR. MIEDEL:  The week that you're unavailable in

 3    February, can you share what week that is so we just have an

 4    idea about -- it probably makes sense to schedule the trial

 5    after that, but --

 6            THE COURT:  Yeah.  It's a Saturday to a Saturday.  I

 7    think it's the 15th to the 22nd.

 8            THE LAW CLERK:  Is it on our calendar?

 9            THE COURT:  Yes.

10            THE LAW CLERK:  Would you like me to go look?

11            THE COURT:  Would you be willing to?

12            THE LAW CLERK:  Sure.

13        (Ms. Frankian departs the conference room.)

14            THE COURT:  That's our best guess.  We're going to go

15    pin that down.  And given all of the pieces, I would hope we

16    can avoid that week.

17        Is there more we ought to discuss today?  This has been a

18    very collegial, pleasant status conference.

19            MR. MANGAN:  If I could just point out just a couple

20    things, one of which is a question.  One would be, whatever we

21    work out in terms of our discovery deadline -- and I appreciate

22    you saying that there will be some leeway there -- it would be

23    helpful -- it's easier for us to hit that deadline if we feel

24    that at least that preliminary CIPA motion will be resolved

25    before then.  So whatever we put in that order, obviously,
```

1  we're guessing at when the Court might issue an order on that,

2  but I just wanted you to have that in mind, that that does

3  interact with how we do the discovery.

4       The second piece of it --

5            THE COURT:  That was really delicately done.

6  Congratulations.

7            MR. MANGAN:  Walking on coals here.

8       (Laughter.)

9            MR. MANGAN:  The second part of it is, I know sometime

10  in the past -- and I think Mr. Kohnen was involved -- there was

11  a trial that you had involving a number of witnesses where you

12  needed translations.

13            THE COURT:  Yes.  I remember it.

14            MR. MANGAN:  I don't recall -- I had a feeling it

15  would come back to you.  The question I had was, you know,

16  we're producing our translations in this case.  We don't know

17  to the extent the defense disagrees with any of those

18  translations, and I don't know, in your prior experience, have

19  you ever had a deadline for counter-- you know, disclosure of

20  counter-translations, if you will?

21            THE COURT:  Yes.

22            MR. MANGAN:  Okay.  That may be something that would

23  be helpful in this case.  And, frankly, you and Mr. Kohnen

24  probably have more experience in it than we do.

25            THE COURT:  That's going to require a bunch of time.

1      (Ms. Frankian returns to the conference room.)

2           MR. MANGAN:  The good thing I would --

3           THE COURT:  What is that?

4           THE LAW CLERK:  This first one --

5           THE COURT:  I know what that one is.

6           THE LAW CLERK:  -- you just have "TSB out" on various

7    days between those dates.

8           THE COURT:  Okay.  It looks like the February week

9    that I'm trying to avoid is February 15 to 21, and we'll deal

10   with everything else.

11      I should never have let you leave.

12           THE LAW CLERK:  What happened?

13      (Laughter.)

14           MR. MANGAN:  Clearly I strayed into the wrong hallway.

15           MS. CORS:  Translations.

16           THE LAW CLERK:  Oh.

17           MR. MANGAN:  Counter-translations.

18           THE COURT:  But before translations, he said that all

19   this calendaring is going to be affected, in part, by when the

20   Court issues an order on the CIPA motion.

21      Right?

22           MR. MANGAN:  Yes, Your Honor.

23           THE COURT:  And you also said, you know, we've got

24   this translation issue, and apparently you all have had

25   experience with this, and that's going to need to be built into

```
 1   the timeline as well.  And my reaction is that takes a lot of
 2   time and there needs to be a lot of deadlines for, you know,
 3   objections to translations.
 4       It suggests to me it's going to require a bunch of time.  I
 5   don't know whether you're going to be ready in February or
 6   March, but I'm going to rely on you.
 7       If we turn ourselves upside down and give you the trial
 8   date over numerous weeks that you've asked for, you need to be
 9   ready to go.  So, I mean, be realistic about this.
10       Any thoughts in any of that regard?  I'm right that's going
11   to -- all those affect the calendar, and they ought to go spend
12   some time today and talk it through and see what they suggest.
13       Why don't you talk through the translation issue.  Do you
14   recall off the top of your head?  I mean, we had dead-- we can
15   find the docket.
16              THE LAW CLERK:  Right.
17              THE COURT:  We had deadlines for this, that and the
18   other thing, and it spreads out over time.
19              THE LAW CLERK:  We did.  There were dates that the
20   parties selected for exchanging their proposed translations and
21   their objections.  We weren't involved in that aspect of it.
22   But when it got down to the end, there were a number of words
23   that they just couldn't reach an agreement on.
24              MR. MANGAN:  Okay.
25              THE COURT:  So I translated them.
```

1      (Laughter.)

2          THE LAW CLERK:  It was very effective.

3      So we worked through those.  We made a list basically,

4   included the Japanese character.  I mean, the other case was

5   Japanese translations.  So we included the Japanese character,

6   the government's proposed translation, the defense proposed

7   translation.  We sent them to our interpreters, and they came

8   back, and either -- if they both agreed on one, we selected

9   that one.  If they were divided, we just set that aside.  And

10  if they couldn't agree -- sometimes they just came up with a

11  completely different one.

12     And basically we worked through.  We whittled it down until

13  there were four words that we couldn't come up with an

14  agreement on, so we made a form and gave it to the jurors and

15  said:  Look, in context, this word when it comes up either

16  means this or that.  You guys need to judge, based on the

17  witness' testimony, which thing you think they meant when they

18  said this.

19         THE COURT:  I'd forgotten that we had -- the Court had

20  interpreters too.

21         MR. MANGAN:  Okay.

22         THE COURT:  So give us --

23         THE LAW CLERK:  Which the parties selected.  Sorry to

24  interrupt.

25         THE COURT:  And presumably paid for.

1              THE LAW CLERK:  Yes.

2              THE COURT:  So factor that into your calendaring.

3              MR. MANGAN:  Okay.  That's definitely something to

4    think about.  Obviously, we know what our translators did and

5    we provided that.  We just don't know the extent of the

6    disagreement, if any, on these.

7         I take it these were various written documents that were

8    being translated?

9              THE COURT:  Correct.

10             THE LAW CLERK:  Right.

11             MR. MANGAN:  E-mails and so forth?

12             THE COURT:  Right.  So you ought to have a meet-and-

13   confer date by which you will have figured out translation

14   issues at the least.

15             MR. MANGAN:  Okay.

16             THE COURT:  And then --

17             MR. MANGAN:  Okay.

18             THE COURT:  It sounds like it's most important for

19   trial exhibits.

20             MR. MANGAN:  Right.

21             THE COURT:  You just don't want to leave it to do it

22   in January.

23             MR. MANGAN:  Right.

24             THE COURT:  Very well.

25             MR. MANGAN:  Okay.

1            THE LAW CLERK:  I can -- I sent the parties an e-mail

2    in the prior case and just laid out how we wanted the binders.

3    Essentially they were color coded so it made it easier for us

4    and for the interpreters to go through and see the original,

5    the defense, the government.

6        So I can go through, find those e-mails, and forward them

7    so you can see the instructions we had given on the prior.

8    That may help just as you're going through.

9            THE COURT:  But perhaps we're not going to have the

10   issues we had with --

11       What was it, Mandarin?

12           THE LAW CLERK:  The Japanese?

13           THE COURT:  Japanese.  -- the Japanese language that

14   you all are going to have here.  I mean, are you anticipating

15   disputes over accuracy of translations?

16           MR. MANGAN:  I just don't know, Your Honor.  Hopefully

17   this isn't an issue, but I wanted to just ask.

18           THE COURT:  No, I'm glad you raised it.

19       But before we show them our color-coded charts, maybe they

20   won't need them.

21           THE LAW CLERK:  I think they will.

22           MS. CORS:  Your Honor, I don't know that we're in a

23   position to answer that right now.  One of the issues I know

24   that Bob McBride has been talking to Mr. Mangan about is

25   obtaining the underlying materials in Mandarin that are the

1    basis of the translations that they have given us.  So I think

2    we've got to work through that issue, and then, you know, we're

3    going to have our own folks look at that.

4            MR. MANGAN:  I think you have that for all of the

5    cloud, because that was produced on the disk.  So the CDs have

6    it in the original Mandarin, and then we've got separate

7    translations of excerpts of it.

8            MS. CORS:  We'll have to talk about it.  I don't know

9    that we can easily tie those two together with what we've got

10   in Mandarin and what --

11           MR. MANGAN:  And then the other part of it was there

12   were disks related to the devices that had been seized, and

13   then those had been analyzed.  Reports had been created.  When

14   you look at those reports, it's primarily in Mandarin, at least

15   in terms of the content that's on the devices.

16           THE COURT:  Well, if there's anything I can do to be

17   helpful, please talk to Cristina.

18           MS. CORS:  We will do so.

19           MR. MANGAN:  I just wanted to bring it up.  One, I

20   wanted to understand how it was handled in the other case,

21   because you've had some experience.  And we'll try to talk

22   about that amongst ourselves.  I think at this point we don't

23   know how big or small that issue is.

24           THE COURT:  It causes me pause on the calendaring

25   issue, but you're going to work on that.

1       Do you have anything else that you want to disclose or dump

2   at this time, Mr. Mangan?

3              MR. MANGAN:  I don't think so.  As just a gentle

4   heads-up --

5              THE COURT:  Uh-huh.

6              MR. MANGAN:  -- there will be at least one

7   supplemental CIPA filing related to one document --

8              THE COURT:  All right.

9              MR. MANGAN:  -- that we hope to have to you shortly.

10  I don't think it substantially changes the overall workload

11  related to the initial filing.  But I just wanted to give you a

12  heads-up that that's coming.  But otherwise --

13      Anything else?

14             MS. GLATFELTER:  No.

15             MR. MANGAN:  -- that's all, Your Honor.

16      (The Court and law clerk confer privately.)

17             THE COURT:  Anything further that we ought to discuss

18  from the defendant's perspective?

19             MS. CORS:  Nothing, Your Honor.  We appreciate your

20  help today.

21             MR. MIEDEL:  Thank you.

22             THE COURT:  Indeed.  Come back often.

23             THE LAW CLERK:  Do we need another status conference

24  date?

25             THE COURT:  Yeah.

1          THE LAW CLERK:  And an ends of justice finding.

2          THE COURT:  Yes.

3      Number one, within a week you're going to e-mail to

4  chambers a proposed calendar.  We should have another status

5  conference in due course.  Do you want to pick that now?

6      Should we not have another status conference in due course?

7          MR. MANGAN:  I think it would be good to have a date

8  on the calendar, Your Honor.  And then we would do the ends of

9  justice.

10         THE COURT:  How long, three months?

11         MR. MIEDEL:  Do you want to check with Bob and Ralph

12  and put that in the proposed letter, perhaps?

13         MS. CORS:  On the proposed dates?

14         THE COURT:  That's probably a good idea.

15         MS. CORS:  Yeah, why don't --

16         THE COURT:  So by the time you get us your proposed

17  calendar within seven days, you'll also suggest a general time

18  frame for another status conference --

19         MR. MIEDEL:  Yeah.

20         THE COURT:  -- after you've weighed in with the

21  lawyers who weren't able to here today?

22         MS. CORS:  That would be fine with us.

23         MR. MIEDEL:  That would be great.

24         THE COURT:  And we'll probably two or three months,

25  something like that, and just get back on the calendar.

1      And the Court is going to continue to find that this is

2   complex litigation and make an ends of justice finding that

3   time -- that failing to grant a continuance to the date we're

4   going to select down the road in two or three months would

5   deprive counsel of adequate time to continue to review

6   discovery, consider preparation of motions, and adequately

7   prepare for trial.  Failure to grant the continuance might well

8   result in a miscarriage of justice.  So we'll docket that as

9   well.

10      Are we done, from the government's perspective?

11           MR. MANGAN:  Yes, Your Honor.  Thank you.

12           THE COURT:  And you're going to chat with them today?

13           MR. MANGAN:  Yes.

14           THE COURT:  And are we done?

15           MR. MIEDEL:  Yeah.

16           MS. CORS:  Yes, Your Honor.

17           THE COURT:  Very well.  Thank you all for appearing.

18           MS. CORS:  Thank you.

19           MR. MIEDEL:  Thank you.

20      (Proceedings concluded at 1:33 PM.)

21                          - - -

22

23

24

25

1          C E R T I F I C A T E

2          I, Luke T. Lavin, RDR, CRR, the undersigned, certify

3  that the foregoing is a correct transcript from the record of

4  proceedings in the above-entitled matter.

5

6                                    s/Luke T. Lavin
                                     _____
                                     Luke T. Lavin
7