## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **:** | Case No. 1:18-cr-00043 |
| | **:** | |
| Plaintiff, | **:** | Judge Timothy S. Black |
| | **:** | |
| vs. | **:** | |
| | **:** | **DEFENDANT'S MOTION TO** |
| YANJUN XU, | **:** | **DISMISS COUNTS I AND II OF** |
| a/k/a Xu Yanjun, | **:** | **THE INDICTMENT** |
| a/k/a Qu Hui, | **:** | |
| a/k/a Zhang Hui, | **:** | **ORAL ARGUMENT REQUESTED** |
| | **:** | |
| Defendant. | **:** | |
| | **:** | |

Pursuant to Fed. R. Crim. P. 12, Defendant Yanjun Xu ("Mr. Xu") moves the Court to dismiss Counts I and II of the Indictment, on the grounds that Counts I and II are (i) unconstitutionally vague, in violation of Mr. Xu's Sixth Amendment right to notice of the changes against him; and (ii) duplicitous in that each count impermissibly alleges multiple conspiracies, rather than a single conspiracy.

A memorandum in support of this motion is attached hereto.

Respectfully submitted,

/s/ *Ralph W. Kohnen*
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Robert K. McBride *(pro hac vice)*
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
kohnen@taftlaw.com
cors@taftlaw.com
rmcbride@taftlaw.com

Florian Miedel *(pro hac vice)*
Miedel & Mysliwiec LLP
80 Broad Street, Suite 1900
New York, NY 10004
Telephone: (212) 616-3042
Fax: (800) 507-8507
fm@fmamlaw.com

COUNSEL FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **:** | Case No. 1:18-cr-00043 |
| | **:** | |
| Plaintiff, | **:** | Judge Timothy S. Black |
| | **:** | |
| v. | **:** | |
| | **:** | **DEFENDANT'S MEMORANDUM IN** |
| YANJUN XU, | **:** | **SUPPORT OF MOTION TO DISMISS** |
| a/k/a Xu Yanjun, | **:** | **COUNTS I AND II OF THE** |
| a/k/a Qu Hui, | **:** | **INDICTMENT** |
| a/k/a Zhang Hui, | **:** | |
| | **:** | **ORAL ARGUMENT REQUESTED** |
| Defendant. | **:** | |

## INTRODUCTION

On April 4, 2018, a grand jury in the Southern District of Ohio issued a four-count indictment against Yanjun Xu ("Mr. Xu") for attempt and conspiracy to violate the Economic Espionage Act ("EEA"), 18 U.S.C. § 1831 *et seq.* (the "Indictment"). The Indictment's core allegations relate to alleged attempts by Mr. Xu to steal unspecified aviation technology from General Electric Aviation ("GE Aviation") between March 2017 and April 2018. Counts III and IV of the Indictment charge Mr. Xu with attempts to steal trade secrets in violation of the EEA. The illegal conduct alleged in Counts III and IV is limited to Mr. Xu's alleged conduct during the March 2017 to April 2018 timeframe relating to GE Aviation.

In stark contrast to Counts III and IV of the Indictment, Counts I and II of the Indictment are intentionally ill-defined. In what appears to be a blatant attempt by the government to circumvent Federal Rule of Evidence 404(b) (and vastly expand the reach of the co-conspirator hearsay exception in Rule 801(d)(2)(E)), the Indictment purports to allege a far-reaching conspiracy involving Mr. Xu and unidentified representatives of the Chinese Ministry of State

Security ("MSS"), Chinese Ministry of Information and Technology, Chinese universities, Chinese associations, and others, dating back to 2013.

By this Indictment, the government appears to be challenging the legality of—and seeking to hold Mr. Xu accountable for—the conduct of an entire Chinese intelligence-gathering apparatus and the legal intelligence-gathering techniques it and countries around the world, including the United States, routinely use to gather information. The Indictment is replete with allegations that unidentified individuals affiliated with the Chinese government and Chinese institutions sought to obtain aviation-related technology through expert exchanges and the use of aliases. Yet these allegations, standing alone, fail to allege conduct that is illegal under U.S. law, much less conduct that violates the EEA.

The government must include in an indictment particularized allegations about the criminal conduct it seeks to charge and punish—here, alleged conspiracy and attempt to steal trade secrets. But such allegations are notably (and fatally) absent from Counts I and II of the Indictment. Aside from limited allegations relating to GE Aviation from the 2017-2018 timeframe, the Indictment fails to allege with sufficient specificity the nature of the alleged agreement to violate the EEA, the co-conspirators alleged to have participated in the agreement, or the identities and locations of the companies allegedly targeted by Mr. Xu and his alleged co-conspirators. Most importantly, the Indictment does not allege with sufficient specificity the trade secrets that Mr. Xu and his (unknown and unnumbered) co-conspirators allegedly agreed and attempted to steal.

The Sixth Amendment to the United States Constitution guarantees to every defendant the right to be informed of the nature and cause of the accusations against him. And in order to give effect to that right, Rule 7 of the Federal Rules of Criminal Procedure requires that an

indictment state with specificity the essential facts constituting the offenses charged. Counts I and II of the Indictment fail to provide Mr. Xu with even the most basic notice regarding the charged conspiracies, thus violating his Sixth Amendment rights. Counts I and II therefore must be dismissed.

Counts I and II should also be dismissed on the grounds that they are duplicitous. An indictment is duplicitous if it sets forth separate and distinct crimes in one count. The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense. Different jurors may reach their decisions (whether guilt or acquittal) based on different offenses, thereby depriving the defendant of his right to a unanimous jury verdict. A duplicitous indictment also deprives the defendant of adequate notice of the charges against him, invites erroneous evidentiary rulings, prejudices the defendant at sentencing and on appeal, and exposes him to double jeopardy.

Even if the 2013 and 2014 communications alleged in the Indictment—the government's only pre-2017 allegations of a conspiracy—were to reflect an "agreement" or "agreements" to steal identifiable "trade secrets," they are not connected to the alleged conspiracy in 2017 by virtue of a common agreement, common co-conspirators, or a common target (of either information or company). Indeed, the communications are not even connected to each other. The only connection is Mr. Xu himself. At most, Counts I and II impermissibly allege a "rimless wheel" conspiracy, which is not a single conspiracy at all, and cannot be charged as a single conspiracy.

## ARGUMENT

The Sixth Amendment guarantees to all defendants the right to "be informed of the nature and cause" of the accusations against them. And to effect that right, Rule 7 of the Rules of Criminal Procedure requires that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient only if it contains the elements of the charged offense, gives the defendant adequate notice of the charges, and protects the defendant against double jeopardy and against conviction on charges not presented to the grand jury. *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005); *see also United States v. Hui Hsiung*, 778 F.3d 738, 755 (9th Cir. 2015); *United States v. Kay*, 359 F.3d 738, 756 (5th Cir. 2004). The indictment must state facts—not merely legal conclusions—"with reasonable particularity of time, place, and circumstances." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

A number of criminal statutes, including the EEA, define offenses in broad, generic terms, and guilt turns on the existence of a specific fact. *Russell v. United States*, 369 U.S. 749, 765-66 (1962). And in those cases, the indictment must state the criminal conduct with particularity, rather than merely copying and pasting the text of the statute. *Id.* Consistent with that rule, an indictment under the EEA must, at a minimum, identify with specificity the trade secrets that the defendant allegedly set out to steal. *United States v. Case*, No. 3:06-cr-210, 2007 WL 1746399, at *3 (S.D. Miss. June 15, 2007) (dismissing an EEA indictment for lack of specificity); *see also Cruikshank*, 92 U.S. at 558; 142 Cong. Rec. S12201, S12213 (daily ed. Oct. 2, 1996).

I.      **Counts I and II of the Indictment are unconstitutionally vague and fail to provide Mr. Xu with notice of the offenses charged, in violation of his Sixth Amendment rights.**

   a.   **The Indictment fails to identify co-conspirators with the particularity required by the Sixth Amendment.**

While an indictment may refer to unnamed co-conspirators, it must identify the co-conspirators with enough particularity to provide the defendant with notice of the charged offenses and protect the defendant against double jeopardy. *See Valentine* at 631. The essence of the crime of conspiracy is an agreement. *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007). To establish an "agreement," the government will have to prove that Mr. Xu agreed with *someone*. Mr. Xu must have some means of identifying that "someone" with enough particularity to know what charge he must be prepared to meet, and to be able to plead prior conviction or acquittal to future charges. A conspiracy involving unnamed, unnumbered, unidentified "others" falls woefully short of that constitutional standard—especially where the "others" in question could include anyone affiliated with two state agencies, two corporations, a university, and an academic association in the most populous nation on earth.

With the exception of alleged co-conspirator "CF"—whose involvement in the alleged conspiracy is alleged to begin in 2017—the Indictment fails to identify *any* specific individuals with whom the government contends Mr. Xu conspired from 2013 forward.[1] Rather, the Indictment alleges in only the most general of terms a universe of potential co-conspirators that could total in the thousands (if not more) and be located anywhere in the world. This broad and undefined universe of alleged co-conspirators includes, at a minimum, employees and experts at aviation companies around the world and individuals affiliated with MSS, the Chinese Ministry

---

[1] Nothing in the Indictment indicates that "CF" was a co-conspirator prior to May 2017. He therefore cannot be the person Mr. Xu is alleged to have formed an agreement with in 2013 or 2014.

of Industry and Information Technology, Nanjing University of Aeronautics and Astronomics,

Commercial Aircraft Corporation of China, Aviation Industries of China, and the Jiangsu

Science & Technology Promotion Association. (*See, e.g,* Indictment ¶¶ 1-4.) These generalized

allegations identifying a vast pool of potential co-conspirators fail to provide Mr. Xu with the

particularized notice of the individuals with whom he allegedly conspired, as required by the

Sixth Amendment.

> **b. The Indictment does not allege an "agreement" with the particularity required by the Sixth Amendment and Federal Rule of Criminal Procedure 7.**

Counts I and II of the Indictment require the government to prove, *inter alia*, that Mr. Xu

and at least one other person formed an agreement to steal a trade secret. 18 U.S.C. §§1831(a)(5)

and 1832(a)(5). The Indictment fails to allege any agreement to violate the EEA with the

particularity required by the Sixth Amendment and Criminal Rule 7.

The only factual allegations included in the Indictment to support the existence of an

agreement prior to March 2017 are two isolated "communications" from December 2013 and

April 2014 which, on their face, do not describe an agreement at all, much less one to engage in

illegal conduct:

- On or about December 26, 2013, XU discussed an upcoming expert "exchange" with a MSS colleague. Within the messages, XU stated that the "customer doesn't know our identities. I approached him with the identity of Qu Hui, the Deputy Secretary-General of Science and Technology Association." XU's colleague acknowledged, stating, "Got it. I will make sure everybody here knows you are from Nanjing Science and Technology Association." (Indictment ¶ 14(a).)

- On or about April 22, 2014, XU sent a message to an MSS colleague regarding another upcoming "exchange" with an expert. XU reminded the colleague of two things: "1. The expert does not know my true identity, I approached him with the name under Jingsu Science and Technology Association; 2. Do not mention about the materials." (Indictment ¶ 14(b).)

Neither of these communications evidences an agreement to do anything, much less steal trade secrets in violation of the EEA. Nor do the communications appear to relate in any manner to the core allegations of the Indictment regarding an alleged conspiracy involving Mr. Xu during the 2017-2018 timeframe to obtain aviation technology from GE Aviation.

The alleged December 2013 communication merely reveals an "exchange" with a "customer," and that Mr. Xu told a colleague the alias he used to "approach" the customer. (Indictment ¶ 14(a).) Shielding one's identity in speaking to an expert at an official government-sanctioned scientific exchange is not illegal. Nor does the communication reflect an agreement to break the law, let alone a conspiracy to steal a trade secret in violation of the EEA. There is certainly no connection between this communication and the alleged attempt by Mr. Xu and the only alleged co-conspirator identified in the Indictment, "CF," to obtain aviation technology from GE Aviation.

The April 2014 communication is similarly evidence of nothing. The communication reflects that Mr. Xu sent a message regarding a different "exchange." In that message, Mr. Xu told a colleague about the alias he used to approach an expert at a different "exchange," and instructed the colleague to "not mention about the materials." Using an alias, engaging in expert exchanges, and seeking to obtain "materials" is not illegal.[2] Once again nothing in the communication evidences an agreement to break the law, much less an agreement to steal a trade secret in violation of the EEA.

The 2013 and 2014 communications are in no way probative of the conspiracy charged in this case. They are not connected with the post-March 2017 conduct that the government is pursuing. They do not provide the government or the Court any basis for sweeping into the

---

[2] It is not clear from the Indictment that Mr. Xu was *seeking* "the materials" referenced.

alleged conspiracy significant portions of the Chinese government and academia. Instead, the government alleges without basis that the communications are part of a conspiracy in what appears to be a blatant attempt to make an end-run around Evidence Rules 404(b) and 802. If the government is permitted to allege this vague and undefined conspiracy dating back to 2013 (and sweep into it two state agencies, two corporations, a university, and an academic association), then it will open the door to a veritable mountain of "other acts" evidence and alleged co-conspirator statements that are at best tangentially related to the charges against Mr. Xu and would otherwise be barred by the rules of evidence.

### c. The Indictment fails to allege with sufficient particularity the targets and geographic scope of the alleged conspiracy.

The essence of a conspiracy is an agreement, but not just any agreement will do. It must be an agreement to accomplish some definite, illegal *object*. *See United States v. Lopez-Medina*, 461 F.3d 724, 747 (6th Cir. 2006) (holding that to prove the existence of a conspiracy, the prosecution must establish, *inter alia*, that there was "an object to be accomplished.") (quotations omitted); *United States v. Rosenblatt*, 554 F.2d 36, 39 (2d Cir. 1977) ("Thus, it is clear that a general agreement to engage in unspecified criminal conduct is insufficient to identify the essential nature of the conspiratorial plan.")

Counts I and II of the Indictment allege a vast conspiracy by Mr. Xu and others to obtain "technical information regarding aviation technology" from "aviation companies and employees" located in the "Southern District of Ohio, and around the world." (Indictment ¶ 13(h), (g), (b).) Paragraph 3 of the Indictment broadens the universe of potential target companies to include "aerospace" companies "in the United States and throughout Europe." (Indictment ¶ 3.) Yet with the exception of the allegations relating to GE Aviation, the

Indictment fails completely to identify the companies Mr. Xu and his alleged co-conspirators allegedly targeted.

Nor is it clear from the Indictment the geographic scope of the alleged conspiracy Mr. Xu allegedly joined. The Indictment itself is internally inconsistent on this point. Whereas paragraph 13 alleges Mr. Xu and others targeted companies located "around the world," paragraph 3 of the Indictment alleges that it was one of Mr. Xu's jobs to obtain technical information from aviation and aerospace companies only "in the United States and Europe."

>    **d. The Indictment fails to allege with particularity the trade secrets Mr. Xu allegedly sought to obtain in violation of the EEA.**

If guilt depends on a specific identification of fact—the "core of criminality"—then the indictment "must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764. An indictment alleging offense conduct in only the most general of terms, like the one the government filed here, will not suffice where the statute defines the offense in broad, generic terms. Instead, the indictment must state the criminal conduct with particularity. *Id.* at 765-766.

Consistent with that rule, an indictment under the EEA must identify with specificity the trade secrets that the defendant allegedly set out to steal. *United States v. Case*, No. 3:06-cr-210, 2007 WL 1746399*,* at \*3 (S.D. Miss June 15, 2007); *see also Cruikshank*, 92 U.S. at 558 (noting that an indictment for a theft offense must "specify with some degree of certainty the articles stolen."); 142 Cong. Rec. S12201, S12213 (daily ed. Oct. 2, 1996).[3]

---

[3] The EEA is not unique in this regard. "[A]n indictment which alleges that the accused has obtained property under false pretenses must specifically allege the false representations made. Similarly . . . an indictment which charges a violation of the Selective Service Act in the defendant's refusal to obey certain orders, must specify the nature of the orders disobeyed." *United States v. Williams*, 679 F.2d 504, 509, fn. 6 (5th Cir. 1982). Likewise, an indictment charging the unlawful interstate transportation of a firearm (18 U.S.C. § 924(b)), must include "[t]he specification of the dates of the travel, the description of the firearm, and the designation of the state lines crossed." *United States v. Holmes*, 975 F.2d 275, 285 (6th Cir. 1992).

The decision in *Case* is illustrative. The indictment in *Case* included two counts that alleged violations of the EEA. As here, the indictment failed to allege with any specificity the trade secrets to be stolen, describing them only by category and consisting of "technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulic products…." *Case*, 2007 WL 1746399 at *1. Relying on the Supreme Court decision in *Russell*, the Court dismissed the EEA counts, concluding that the generalized description of the trade secrets sought to be obtained was "so broad as to be meaningless and thus, ineffectual." *Id.*

Similar to the constitutionally defective indictment in *Case,* the Indictment here describes the trade secrets to be stolen by general category only, and fails to include any particularized allegations that would allow Mr. Xu to determine the *specific* trade secret information the government alleges he conspired to steal. The prefatory paragraphs in the Indictment describe the general mission of MSS as "obtain[ing] technical information, including trade secrets, from aviation and aerospace companies."[4] (Indictment ¶ 3.) That impossibly vague statement is insufficient to put Mr. Xu on notice of the charges he must be prepared to meet.

The "manner and means" section of the Indictment fares no better, asserting that part of the alleged conspiracy involved "identify[ing] certain aviation technology that was desired by the Chinese government" and targeting companies "around the world." (Indictment ¶ 13(a-b).) "Certain aviation technology" from companies "around the world" is no more specific than

---

[4] In fact, the intelligence agencies of the United States, including the Central Intelligence Agency, the Federal Bureau of Investigation, the National Security Administration and the National Geospatial-Intelligence Agency, have the same function within their missions. The FBI's official website, under a section entitled "Evolution of FBI Intelligence," states, in part, "Throughout the Bureaus' history, its ability to successfully adapt to new threats included the development of increasingly sophisticated methods of gathering, analyzing, and disseminating intelligence." Federal Bureau of Investigation, *Leadership & Structure: Intelligence Branch*, https://www.fbi.gov/about/leadership-and-structure/intelligence-branch (accessed August 23, 2019). Certainly, the activity of the FBI in gathering intelligence is not *per se* criminal.

"technical information, including trade secrets, from aviation and aerospace companies."
(Indictment ¶ 3.)

The post-2017 allegations, all of which are contained in the "overt acts" section of the
Indictment, do not sufficiently identify the trade secrets either. The Indictment refers to "system
specification, design process", "containment analysis", and "a list of technical topics", and
"design related" information. (Indictment ¶ 14(m), (n), (p), (y).) None of those broad, general
categorical descriptions are specific in the manner required by Criminal Rule 7 and the Sixth
Amendment.

The description of trade secrets here mirrors the constitutionally defective description of
trade secrets in *Case*. There, the indictment alleged that co-conspirators stole "technology related
to the design, specifications, manufacture and sale of military and commercial aviation
hydraulics products." *Case*, 2007 WL 1746399, at *4. One would be hard pressed to find that
"system specification, design process"—which the government asserts means "the application of
research data to engine production",—is any more specific than "design, specifications,
manufacture and sale" of hydraulics products.[5] (Indictment ¶ 14(m).)

Here, just as in *Case*, the Indictment's broad description of trade secret is "so broad as to
be meaningless" and is, therefore, unconstitutionally vague, in violation of Mr. Xu's Sixth
Amendment rights. *Case*, 2007 WL 1746399, at *4.[6]

---

[5] The government in *Case* also alleged that the defendants stole "an 'entire universe' of information, some of which
were trade secrets, some of which were 'proprietary' and some of which are proposed to be presented to the jury as
'other materials.'" *Case*, 2007 WL 1746399, at *4. The government has done much the same here, alleging that Mr.
Xu conspired to steal "technical information, including trade secrets." (Indictment ¶ 3.)

[6] A cursory search for information regarding GE Aviation's fan blade and fan containment technology reveal the
following publicly available information discussing research and development of the same:

GE Aviation, *GE's Composite Fan Blade Revolution Turns 20 Years Old: GE90 Fan Blade Sets Commercial
Aviation on New Course* (Feb. 26, 2015), https://www.geaviation.com/press-release/ge90-engine-
family/ge%E2%80%99s-composite-fan-blade-revolution-turns-20-years-old

The government knows how to specify in an indictment the trade secrets that were intended to be stolen in an economic espionage case. For example, the Indictment here stands in sharp contrast to the more complete and specific indictment filed a year earlier in *United States v. Dokuchav*, 3:17-cr-103, Doc. 1 (N.D. Cal. Feb. 28, 2017). As here, the government in *Dokuchaev* alleged both a conspiracy to commit economic espionage and a conspiracy to steal trade secrets (both in violation of the EEA). *Id.* at ¶¶ 51, 55. But in *Dokuchaev*—unlike here— the government identified the targeted trade secrets with particularity: Yahoo's user database (itself alleged to be a trade secret), the account management tool Yahoo used to manage the database, and the source code for Yahoo's account authentication tools. *Id.* at ¶ 52. The *Dukuchaev* indictment also alleged that in furtherance of the conspiracy, the defendants committed unequivocally criminal acts, including stealing portions of the user database and fabricating an account authorization tool to gain access to specific user accounts. *Id.* at ¶ 54.

The government had no shortage of examples of specific trade secret allegations to draw from in other indictments. *See also United States v. Genovese*, 1:05-cr-4, Doc. 9 (S.D.N.Y. Jan. 3, 2005) ("downloaded, copied, sold, and attempted to sell the source code for the computer programs Microsoft Windows NT 4.0 and Windows 2000"); *United States v. Zhang*, 5:05-cr-812, Doc. 1 ¶ 14 (N.D. Cal. Dec. 21, 2005) (describing specific items allegedly downloaded in

---

Thomas Kellner, *The Art of Engineering: The World's Largest Jet Engine Shows Off Composite Curves* (Apr. 28, 2016), https://www.ge.com/reports/the-art-of-engineering-the-worlds-largest-jet-engine-shows-off-composite-curves/

William Kucinski, *GE Aviation and DM3D to ramp up 3D-printed fan blade production for GE9X engine* (Nov. 5, 2018), https://www.sae.org/news/2018/11/ge-aviation-and-dm3d-to-ramp-up-3d-printed-fan-blade-production-for-ge9x-engine

Dr. A.R. Wadia, *Technologies for the Next Engine Generation* (September, 2014), https://www.icas.org/ICAS_ARCHIVE/ICAS2014/data/papers/2014_1024_paper.pdf (powerpoint presentation by Chef Consulting Engineer-Aerodynamics of GE Aviation's with disclaimer that states "GE Proprietary Information Subject to restriction on the cover or first page" on the bottom of each page with context)

connection with each EEA count). But the government inexplicably failed to allege the requisite level of specificity here.

## II. To the extent Counts I and II of the Indictment allege conspiracies to violate the EEA, they are fatally defective and must be dismissed as duplicitous.

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (citation omitted). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both," depriving the defendant of his right to a unanimous jury verdict. *Id.* A duplicitous indictment also deprives the defendant of adequate notice of the charges against him, invites erroneous evidentiary rulings (*i.e.* evidence relevant to only one charge may be admitted as to all charges in the indictment), prejudices the defendant at sentencing and on appeal, and potentially exposes him to double jeopardy.[7] *Id.* at 443-44.

### a. The Indictment improperly charges multiple conspiracies in a single count.

"The principal considerations in determining the number of conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings." *United States v. Hughes*, 505 F.3d 578, 587 (6th Cir. 2007). Applying those factors, it is clear that the Indictment alleges multiple conspiracies.

The Indictment alleges a conspiracy involving all of MSS (and other entities) to target technological information from aviation companies around the world. But the government may not allege a "common goal" that broad. In *United States v. Hinton*, for example, the government

---

[7] The defendant, not the government, is entitled to elect the remedy for a duplicitous indictment if he raises the issue before trial. *Kakos*, 483 F.3d at 444 ("A defendant moving pursuant to Rule 12 can request that a duplicitous indictment be dismissed, he can attempt to force the government to elect the charge within the count upon which it will rely, or he can ask the court to particularize the distinct offenses contained within a count.") (internal citations omitted).

charged a single count of bank fraud that involved "approximately 128 transactions at six banks involving nine different confederates." 127 F. Supp. 2d 548, 550 (D.N.J. 2000). The government argued that the indictment "[was] not duplicitous because it charge[d] only a single scheme to defraud six financial institutions." *Id.* at 552. The Court disagreed, finding that the government could not charge as a single count or scheme a multitude of transactions, victims, and co-conspirators, where "the dates and alleged perpetrator(s) for a particular institution's transactions do not generally overlap, no transaction was directed at more than a single institution, and none of the accounts used exists in more than one bank." *Id.* at 556.

Whatever the prosecutorial economy such an indictment may have for the government, it cannot charge a variety of schemes in a single count, "even if distinct similarities in the means and methods of the schemes directed against each bank exist in the proofs." *Id.* That instruction is telling, because "similarities in the means and methods of the schemes" are all that the government could point to on the face of the Indictment here to indicate that the alleged conspiracy directed at GE Aviation was connected to any of the other alleged conduct in the Indictment. That is not enough. *See United States v. Reynolds*, 534 F. App'x 347, 359 (6th Cir. 2013) (holding that the use of "similar book-keeping and money-laundering methods" could not merge two distinct drug conspiracies into a single scheme).

Even if the "conspiracy" were narrowed to the "overt acts" alleged in paragraph 14 of the Indictment, it would still be duplicitous, much like the duplicitous indictment in *United States v. Munoz-Franco*. 986 F. Supp 70, 71-72 (D.P.R. 1997). There, the government charged as one conspiracy two distinct efforts to commit bank fraud, connected only by two bank officers. *Id.* As the court explained, the "overt acts" of one group of three co-conspirators "never once mention" a separate group of four of their alleged co-conspirators (and vice versa). *Id.* "The only

element of commonality is that the two conspiracies were to defraud one same bank and both include the same bank officers," with no instances of a member of one conspiracy crossing over to the other, outside of the two bank officers at the center of the rimless wheel. *Id.* at 72.

Here, the allegations divide neatly into two (possibly three) sets of co-conspirators over two (possibly three) time periods: Mr. Xu and unnamed colleagues in 2013 and 2014, and Mr. Xu and CF in 2017. As in *Munoz-Franco*, there is no "crossing of lines of a participant from one conspiracy to the other except for Mr. [Xu himself]." 986 F. Supp. at 72. The targets of the alleged conspiracies likewise have nothing to do with each other. Thus, "[a] simple reading of the allegations of the indictment shows that these were two separate conspiracies which did not merge." *Id.*

Even if the 2013 and 2014 communications reflected an "agreement" to steal identifiable "trade secrets" (they do not), they are not connected to the alleged conspiracy in 2017 by virtue of a common agreement, common co-conspirators, or a common target (of either information or company). Indeed, the communications are not even linked to each other. The only connection is Mr. Xu himself.[8]

At most, the Indictment alleges a "rimless wheel" conspiracy, which is not a single conspiracy at all. Rather, "a rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no

---

[8] The government could not paper over this problem by arguing that Mr. Xu's unnamed colleagues in 2013 and 2014 worked for MSS or any of the other entities alleged to employ members of the conspiracy, for "mere association with conspirators is not enough to establish participation in a conspiracy." *Hughes*, 505 F.3d at 587. The government must do more than show that the alleged co-conspirators "knew each other and committed the same or associated crimes." *Id.*

Here, the government has done even *less*; the Indictment does not reflect that Xu's colleagues from the 2013 or 2014 communications knew CF (or each other, for that matter), or even that they committed the same crime as Mr. Xu is alleged to have committed in 2017. *See also United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) (holding that commonality of time is also a relevant factor, and a six-month gap between two sets of allegations indicated that they were separate conspiracies).

connection with one another, other than the common defendant's involvement in each transaction." *United States v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) (citation omitted). A rimless wheel is "a series of multiple conspiracies," and cannot be charged as a single conspiracy. *Id.*; *see also Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 732 (6th Cir. 2019) ("There is no 'rim' conspiracy without alleged *agreement* among the parties at the rim."). The government failed to allege that any of the "spokes"—CF, Xu's colleagues in the 2013 communications, and Xu's colleagues in the 2014 communications—knew each other, much less agreed to the same singular illegal enterprise. As such, there is "no agreement to the overall conspiracy, and . . . the individual spokes constitute[ ] separate conspiracies." *United States v. Chandler,* 388 F.3d 796, 808 (11th Cir. 2004). At most, the government has alleged that "a single key man moved alone from spoke to spoke, agreeing with no one else common to more than one spoke." *Id.* As such, the Indictment charges multiple conspiracies in a single count, and must be dismissed.[9]

### b. The duplicitous Indictment is unfairly prejudicial to Mr. Xu.

The government's decision to charge multiple conspiracies as a single crime is prejudicial to Mr. Xu in exactly the manner the Sixth Circuit warned against in *Kakos*. Neither Mr. Xu nor the government would be able to determine from a general verdict whether the jury was unanimous as to the same conspiracy, and even if so, about *which* conspiracy the jury was

---

[9] The government cannot cure a duplicitous indictment with a bill of particulars. *Russell*, 369 U.S. at 769-70 ("But it is a well-settled rule that a bill of particulars cannot save an invalid indictment. . . . To allow a prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.").

unanimous. Moreover, it appears from the Indictment that most or all of the other purported conspiracies are not connected to this district, so venue would not lie here.[10]

The duplicitous Counts also deprive Mr. Xu of adequate notice of the charges against him. As explained above, the referenced "conspiracy" prior to March 2017 is vague and ambiguous; the government alleges that the entire Chinese intelligence apparatus ("and others," according to the Indictment) is involved in a global conspiracy to acquire aviation technology (only some of which may be trade secrets) from all over the world. (Indictment ¶¶ 1-4; 13(a-c).) This violates both the Notice provision of the Sixth Amendment (how can Mr. Xu know which part of the claimed worldwide conspiracy he is accused of participating in?), and the Double Jeopardy Clause of the Fifth Amendment (how could Mr. Xu plead a conviction or acquittal in response to a conspiracy charge brought at a later time?).

By expanding the alleged conspiracy to four years before the core allegations involving GE, the government will also likely attempt to circumvent the requirements of Evidence Rule 404(b). Rule 404(b)(1) provides that evidence of "a crime, wrong, or other act" is not admissible to prove a person's character, and Rule 404(b)(2) requires the government to give Mr. Xu reasonable notice before trial if it intends to use "other acts" evidence for another purpose.

Rather than follow the requirements of Rule 404(b), it appears that the government has decided to simply sweep all of MSS (and a host of other institutions) and global intelligence-gathering operations into a single conspiracy and take it out of the realm of "other acts." It is almost certain that the government will seek to introduce the disembodied communications from 2013 and 2014 as direct proof against Mr. Xu, despite the fact that there is no connection

---

[10] Moreover, a new indictment on those alleged conspiracies would fall outside the five-year statute of limitations for violations of the EEA. 18 U.S.C. § 3282(a).

between those communications and the core allegations. It is also likely that the government will seek to introduce at trial additional "other acts" evidence involving unknown and unidentified companies, co-conspirators, and trade secrets without providing to Mr. Xu any notice of its intent to do so, leaving Mr. Xu and his counsel with insufficient opportunity to prepare a defense.

The government is also likely to use the Indictment to circumvent Evidence Rule 802. Rule 802 forbids the admission of hearsay, but Rule 801(d)(2)(E) provides that a co-conspirator's statements made in furtherance of the conspiracy are not hearsay. The government here has alleged a conspiracy broad enough to make almost anyone a co-conspirator. If the Court accepts the Indictment as written, the sheer breadth and vagueness of the alleged conspiracy will provide the Court with far too many opportunities to find a conspiracy and rule admissible potentially voluminous hearsay statements that would otherwise be inadmissible.

The potential unfair prejudice to Mr. Xu from allowing these duplicitous counts to stand could not be clearer. If Mr. Xu exercises his constitutional right to trial by jury, he would be required, without notice, to participate in and defend trials within a trial and defend against allegations that he conspired and attempted to steal an unidentified number of trade secrets from an unidentified universe of companies located throughout the world, all under the shadow of probably inadmissible evidence.

## CONCLUSION

For the reasons set forth herein, Counts I and II of the Indictment are duplicitous and fail to provide Mr. Xu notice of the offenses charged, thereby violating his Sixth Amendment rights. As such, the Court should dismiss Counts I and II of the Indictment.

Respectfully submitted,


*/s/ Ralph W. Kohnen*
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Robert K. McBride *(pro hac vice)*
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
kohnen@taftlaw.com
cors@taftlaw.com
rmcbride@taftlaw.com

Florian Miedel *(pro hac vice)*
Miedel & Mysliwiec LLP
80 Broad Street, Suite 1900
New York, NY 10004
Telephone: (212) 616-3042
Fax: (800) 507-8507
fm@fmamlaw.com

COUNSEL FOR DEFENDANT



## CERTIFICATE OF SERVICE


I hereby certify that on September 10, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system. Parties may access this filing through the Court's system.


*/s/ Ralph W. Kohnen*