```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION

                            - - -

. . . . . . . . . . . . . . . .
UNITED STATES OF AMERICA,      .  Case No. 1:18-cr-043
                               .
          Plaintiff,           .  In-Person Status Conference
                               .
        - v -                  .
                               .  Tuesday, October 22, 2019
YANJUN XU,                     .  11:04 AM
                               .
          Defendant.           .  Cincinnati, Ohio
. . . . . . . . . . . . . . . .
```

                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE

<u>APPEARANCES</u>:

For the Plaintiff:      TIMOTHY S. MANGAN, ESQ.
                        EMILY N. GLATFELTER, ESQ.
                        Assistant U.S. Attorneys
                        United States Attorney's Office
                        221 East Fourth Street, Suite 400
                        Cincinnati, Ohio  45202


For the Defendant:

RALPH W. KOHNEN, ESQ.            ROBERT K. McBRIDE, ESQ.
JEANNE M. CORS, ESQ.            Taft, Stettinius & Hollister
SANNA-RAE TAYLOR, ESQ.           LLP
Taft, Stettinius & Hollister    1717 Dixie Highway
  LLP                           Suite 910
425 Walnut Street, Suite 1800   Covington, Kentucky  41011
Cincinnati, Ohio  45202-3957


Law Clerk:              Cristina V. Frankian, Esq.

Court Reporter:         Luke T. Lavin, RDR, CRR
                        Potter Stewart U.S. Courthouse
                        100 East Fifth Street, Room 103
                        Cincinnati, Ohio  45202
                        Telephone:  (513) 564-7500

*Proceedings recorded by stenotype; transcript*
*prepared by computer-aided transcription.*

```
 1                  P R O C E E D I N G S

 2        (In chambers at 11:04 AM.)

 3            THE COURT:  We'll go on the record.

 4       We are here in chambers on the criminal docket in the

 5   matter of United States of America versus Xu.  We're set for an

 6   in-person status conference, attorneys only.

 7       For purposes of the record, I'd ask counsel to enter their

 8   appearances.  On behalf of the government?

 9            MR. MANGAN:  Tim Mangan, Your Honor.

10            MS. GLATFELTER:  Emily Glatfelter.

11            THE COURT:  Good morning to the both of you.

12            MR. MANGAN:  Good morning.

13            MS. GLATFELTER:  Good morning.

14            THE COURT:  And on behalf of the defendant?

15            MR. KOHNEN:  Good morning, Your Honor.  Ralph Kohnen.

16            MR. McBRIDE:  Good morning, Judge.  Bob McBride.

17            MS. CORS:  Good morning, Your Honor.  Jeanne Cors.

18            MS. TAYLOR:  Good morning.  Sanna-Re Taylor.

19            THE COURT:  Good morning to all of you.

20       Well, we're here for a status conference, and among the

21   things I was hoping to touch base on was anything you want to

22   talk about, but I'd like to review the calendar that we've

23   worked hard on and is comprehensive and I think it's great.

24       I want to confirm where we are on the pending motions,

25   i.e., to confirm when the government will file its memos in
```

1    opp. to motions to dismiss, motion for bill of particulars,

2    motion for disclosure.

3        I want to touch base, third, on translators, and then I

4    want to touch base on the pending CIPA motion, and I want to

5    touch base on whether there's another one coming, which I think

6    there is, and I just want to touch base and see where we are.

7        So in terms of the calendar, if you have it before you, Ms.

8    Frankian worked hard on this with you all.  It's comprehensive.

9    And as I understand it, the Rule 12 and suppression motions

10   filing deadline's coming up, but the stuff that's been filed, I

11   anticipate opposition from the government by December 4 and a

12   reply by December 18, unless I misapprehend.

13       We do have a *Jencks* disclosure date on the calendar which

14   is earlier than the statute requires, and I want to make sure

15   that that's where we are.  The statute is what the statute is,

16   and I'm not looking for extensive briefing on that particular

17   issue.

18       But in general, what do you make of the calendar, and do

19   you have any calendar-specific comments as we begin this

20   conversation today?

21       On behalf of the government?

22           MR. MANGAN:  Your Honor, we think the calendar looks

23   good too.  We did want to clarify, for the motions that are

24   pending, you know, exactly when the response date would be.  I

25   think when we originally talked about a deadline, there was

1   that initial motion deadline that is now called the Rule 12 and

2   suppression motion.

3       What we have pending right now is a motion to dismiss.

4   There's also a motion for a bill of particulars and a motion

5   related to the *Brady*, slash, *Jencks, Giglio* information.  We

6   just wanted to clarify when the Court -- obviously, the motion

7   to dismiss would fall pretty squarely under that.  We just

8   wanted to clarify, it sounded like the Court wants our response

9   for those under that deadline, which would be fine with us.

10  But if the Court wanted it earlier, we just wanted to make sure

11  we understood that.

12              THE COURT:  I'm really interested in what's manageable

13  for you, and I jumped to the conclusion that December 4 was

14  when we'd see memos in opp. to those three pending motions.

15              MR. MANGAN:  It's manageable for us.  That's not a

16  problem, but I just wanted to make sure I was clear in terms of

17  what our obligation was.

18              THE COURT:  Is the defendant comfortable with those

19  motions briefing out on that schedule?

20              MR. KOHNEN:  We are with respect to those particular

21  motions, Judge, but --

22              THE COURT:  Well, that's a good statement until we got

23  to the "but."

24              MR. KOHNEN:  It's going to get worse.  I don't want to

25  interrupt, but --

```
 1              THE COURT:  All right.

 2              MR. KOHNEN:  Let me -- I think, Judge, that probably I

 3   ought to mention this, because our client has sort of changed

 4   course and asked us if we would respectfully ask the Court for

 5   a trial date that occurs after May of 2020.  I drew the short

 6   straw for this.

 7              THE COURT:  I'm sorry?

 8              MR. KOHNEN:  I drew the short straw for this.

 9              THE COURT:  Where's the guy from New York?

10              MR. KOHNEN:  Umm --

11        (Laughter.)

12              THE COURT:  Go ahead.

13              MR. KOHNEN:  Also his family in China, they feel

14   because of the political situation in the U.S. and the sort of

15   anti-China sentiment that is building and probably will reach a

16   crescendo in the spring of 2020, he and his supporters back

17   home feel very strongly that a trial after that date would be

18   more fair.

19              THE COURT:  And what do you mean by "after that date"?

20   After -- you tell me.  I'm not going to say it.

21              MR. KOHNEN:  Well, my understanding is that -- and

22   this hasn't been expressed to me this way, but I'm reading

23   between the lines.  May of 2020 is the next presidential

24   primary election.  You know, we're dealing with people from a

25   different culture, thousands of miles away, and their feeling
```

 1    is that Mr. Xu, Mr. Yanjun, will be more likely to get a fair

 2    trial after that political upheaval has ended.

 3           THE COURT:  Well, that upheaval is scheduled to

 4    continue through November of 2020.  I'm just trying to

 5    understand what you're saying in terms of a date.

 6           MR. KOHNEN:  I can't be any more logical.  I don't

 7    know.  That's the request that has been put to us.

 8           THE COURT:  What's the request, that we not try it in

 9    May?

10           MR. KOHNEN:  No, we try it after May of 2020.

11           THE COURT:  And what does that mean?  June, or does

12    that mean December, or 2021, or --

13           MR. KOHNEN:  I --

14           THE COURT:  It's your request.  You need to be

15    specific with me.

16           MR. KOHNEN:  After May of 2020 is as specific as I can

17    get.  That's what they've asked.

18           THE COURT:  Very well.  I hear the request, and we'll

19    thrash through it at the appropriate time.

20           MR. KOHNEN:  But --

21           THE COURT:  Go ahead.

22           MR. KOHNEN:  I would say, Your Honor, maybe trying to

23    salve the wound a little bit, we're concerned that, working

24    from the existing trial date backward -- and we've all worked

25    in good faith on this, I think your staff will agree -- because

1    of some problems that we've incurred in investigating our case

2    and wrapping our brains and getting ahold of the unexpected

3    sixth tranche of discovery may make what is in this trial

4    calendar, the trial date, untenable regardless.

5         And my colleagues are able to speak on that.  I apologize

6    in advance, Judge, but there are things that have come up that

7    we didn't anticipate that may make this calendar in need of

8    adjustment.

9              THE COURT:  And when did you discover that?

10             MR. KOHNEN:  We're discovering it daily.

11             THE COURT:  Okay.

12             MR. KOHNEN:  But --

13             THE COURT:  Fair enough.  I'm as chilled as I can be,

14   and you drew the short straw and you've made the statement.

15        Does the government wish to respond from the seat of its

16   pants at this time?

17             MR. MANGAN:  Not at this point, Your Honor.

18        (Laughter.)

19             THE COURT:  Well, the Court orders you to respond.

20             MR. MANGAN:  Your Honor, I --

21             THE COURT:  And it's from the seat your pants.

22             MR. MANGAN:  I understand.

23             THE COURT:  I, you know --

24             MR. MANGAN:  You know, my initial thought is do we

25   have any issues from a witness standpoint that it would

1    complicate.

2            THE COURT:  Uh-huh.

3            MR. MANGAN:  If we're just talking about a month or

4    two months, I think we can try to work through something like

5    that.  It's tough to anticipate.  Are we talking much longer,

6    then that may -- you know, that obviously gives us more time to

7    plan for it and prepare.

8        But, you know, I feel like, in terms of our discovery

9    production, that we have gotten out what we need to get out.

10    There are some smaller things that are coming in.  For example,

11    we received some material from France from a treaty request and

12    we produced that to them at the -- you know, by the discovery

13    deadline, along with, sort of, the initial translation.  We

14    have a fuller translation we'll send to them.  But it's smaller

15    pieces that are trickling in at this point.

16        So at least from a discovery standpoint, we feel that we're

17    in a good position as far as having at least turned it over.  I

18    realize that that then puts them in a different timeline for

19    analysis, and I understand that.

20        So I think we have some -- we have some flexibility on our

21    part.  It's hard to respond when we just don't know kind of

22    when it is.  But the way the schedule is now I think builds in

23    a lot of time for us to work on things both in terms of motions

24    and looking at the evidence.  Another month or two I don't

25    think has a huge impact on us.

1    That's from the seat of my pants, Judge.

2         THE COURT:  And I'm not committing you to that

3    position.  I was just curious what your visceral reaction was.

4         MR. MANGAN:  I think generally we've stayed on track

5    in terms of getting things out as we hoped to, so --

6         THE COURT:  Well, I think that's a credit to both

7    sides.  I think you guys have been working really, really hard,

8    and you came up with a calendar and it looked manageable, and

9    now there's a pause.  So, I mean, we'll deal with it in due

10   course.  So be it.

11        MR. McBRIDE:  Judge, perhaps I could add some further

12   information.  Mr. Kohnen was kind enough to break the topic.  I

13   have the most direct contact with Mr. Xu, through an

14   interpreter, since I'm reviewing the discovery with him.

15    I think he and his family's concern is, with regard to the

16   politics surrounding the presidential election that's coming

17   up, is the obvious stance of the leaders in the field for both

18   parties, and they believe that the issue of China and China's

19   theft of intelligence materials, the technology, from the

20   United States is going to be an issue that is raised to the

21   public level perhaps beyond where it would be normally just

22   because of the nature of the candidacies and so on, of the

23   candidates that are here.  And so they're very concerned about

24   the political season influencing a jury pool and the general

25   sentiment in the United States.

1     As Ralph mentioned, Your Honor, they come from Communist

2   China where the government controls almost everything or at

3   least has a great deal of influence.  So their scepticism about

4   our system of government persists.  It has been one of our

5   challenges in dealing with our client.

6     So we bring forward their request because I think it's an

7   important request to the client and something that both the

8   Court and the government need to be cognizant of as we move

9   forward as we deal with our defense.

10     With regard to the discovery issues, Judge, the government

11   has really been great about providing information to us.  We

12   did recently receive a sixth tier of information -- we've been

13   calling them tiers, Your Honor -- which is voluminous, and

14   appreciated from the government because it includes a lot of

15   important information in the preparation of our defense.  But I

16   am only through tier five with Mr. Xu, because, as you know,

17   we've got to go with a translator and do it personally.  We

18   have that obligation.

19     Now, Mr. Xu has the untranslated version of tier six which

20   he is beginning to go through.  But it's a more tedious process

21   than we have anticipated, not because anybody is throwing

22   roadblocks, but because of the natural logistics of dealing

23   with Bureau of Prisons, the limited amount of time that we

24   have.  So that's taking a little more time.

25     With regard to our investigation, we have been trying to

1    access assets in China, if you will, the lawyer that is

2    assisting the family, to identify individuals that perhaps we

3    may want to interview.  We've even gone to the consulate to try

4    and get further access, and we're getting stymied.

5         We believe that trying to get some of this information is

6    very important to Mr. Xu's defense, and it is really out of our

7    control.  Our Chinese -- or the lawyers helping the family in

8    China are trying, but it's also a little bit of our

9    communicating to them the need for evidence and what kind of

10   authentication we might need and so on.

11        So these things are taking some unanticipated turns in

12   terms of the timing.  It's not on the government's hands,

13   they've been great, but with regard to just things that we are

14   facing that are unusual in this case, Your Honor.

15             THE COURT:  I hear that and understand that.

16             MR. KOHNEN:  Thank you.  And, Judge, just sort of in

17   my defense, I mean, these were the unanticipated things that

18   have come up that you asked about that have, again, been beyond

19   everybody's control.  But I do want to stress again, everybody

20   worked cooperatively and in good faith toward this criminal

21   trial calendar, and we really appreciate your staff and the

22   cooperative effort that everybody's been involved in.  We feel

23   badly about asking the Court to unravel this, but we must.

24             MR. MANGAN:  Your Honor, if I could.

25             THE COURT:  Yes.

1              MR. MANGAN:  Just as I'm thinking about it.

2        With respect to the initial concern that was brought up

3    regarding what effect the larger political climate could have

4    on a trial, obviously I think we all know, you know, you can

5    try to adjust for that as best you can in jury selection.  We

6    have had other economic espionage cases even recently out in

7    California.  They've been able to get through them and they've

8    involved China.  I understand this might be at a higher level,

9    I totally understand that, in terms of, you know, notoriety,

10    but I think those things are going to go on regardless.  I

11    don't know that we can predict when the overall larger climate

12    will be at an ebb or, you know, a high point or a low point,

13    because it's been sort of where it is for a while now.

14        So I don't know that a month earlier or a month later would

15    really change that dynamic.  I don't know if, based on their

16    comments about their skepticism towards our system, if a bench

17    trial would be in order, if they're amenable to it.  But

18    generally I just don't know that moving it a month or two will

19    change the overall concern.

20              THE COURT:  While we're going around the table, I

21    mean, I have the same general reaction.  I mean, the world is

22    what the world is.  But I'm not going to make a decision from

23    the seat of my pants.  I'm just going to insist that both sides

24    speak from the seat of their pants, and then I'll try and twist

25    that and come back with a decision that's appropriate.

1    And I was biting my tongue not to snap back at you, "Why

2 doesn't he try it to the bench?"  But then you went on with

3 they don't trust government officials, period.

4        MR. McBRIDE:  Yes, sir.

5        THE COURT:  But why doesn't he just try it to the

6 bench?  You don't have to respond.

7    We're going around the table.  Would you like to be heard,

8 Ms. Frankian?  I'm not requiring you.

9        THE LAW CLERK:  It's not too much trouble to just push

10 it a month or two, if that's going to make your client more

11 comfortable.  I mean, the dates are fairly spread out, so I can

12 just move the last few deadlines out and fill it in until June

13 or August.

14    I think it may actually get worse as it gets closer to

15 November, but, I mean, if he's more comfortable with an extra

16 month, I don't think -- from my perspective, I don't think it

17 would change or it would be too difficult to accommodate.

18        THE COURT:  I think that's accurate, and I appreciate

19 it.

20    But I think you guys should talk outside the Court's

21 presence and really figure out where you are and what you want

22 to propose.  And if you're on the same page, the Court's not

23 going to be difficult.  I'm sure you already thoroughly

24 appreciate my willingness to give up the month of June in Maine

25 and --

1          THE LAW CLERK:  I meant September.

2          THE COURT:  Pushing it to September?

3          THE LAW CLERK:  (Nods head up and down).  That was a

4    joke.

5          THE COURT:  I know.  While we're making jokes, you

6    push it to May of 2022 and we'll have a new district judge.

7          MR. KOHNEN:  We don't want that.

8          THE COURT:  All right.  So we've got a calendar, and

9    we've confirmed when your memos contra are coming in on the

10   three pending pretrial motions.  We have a Rule 12 and

11   suppression motions deadline of November 13.  Does the defense

12   anticipate filing pleadings, those pleadings, by that date

13   or --

14         MS. CORS:  Your Honor, at this point I don't know that

15   we have any other substantive motions that we would intend to

16   file by then.  One issue I would raise is if the government is

17   going to file all of the responses close to the response date,

18   we may be jammed up on replies with only a two-week turnaround.

19   And if the Court's amenable, we can, you know, raise the issue

20   at that time.  But that would be my only concern, if we get

21   three responses and have replies due within two weeks to all of

22   them, that may be an issue.

23         THE COURT:  That's what the rules provide for.

24      The Court's going to be amenable to you professionals

25   preparing and prosecuting and defending this case as you

1  suggest if it's not untoward.  I get it.  I remember the

2  practice.

3           MS. CORS:  Thank you.

4           THE COURT:  Vaguely.

5           MR. MANGAN:  Your Honor, could I suggest we move

6  forward with the calendar and set maybe a status conference

7  somewhere in between to revisit the defense request?

8       The only point, before we kind of got on to this, that I

9  was going to bring in terms of maybe a change was, there's a

10  joint proposal for the parties to present names of two

11  interpreters in case we would need them either for trial or a

12  dispute in translation, but we've got the other deadline

13  regarding when we would actually work on whether or not we have

14  a dispute in the translation, and that's more into 2020.

15       And so I was going to ask if we could perhaps move that

16  deadline back into 2020 where it would fit with -- because we

17  won't even know if we have a dispute until, it looks like, you

18  know, February or March when we would make those cross-

19  disclosures.

20       So that's the only thing, is the deadline for the parties'

21  joint proposal of the Court's interpreters.  I think we're

22  supposed to find and submit a couple names, but it looks like

23  they wouldn't actually be needed for several months, if at all.

24  So that was the one thing I was asking if we could forestall

25  until a later period, because they may not be needed.

```
 1              THE COURT:  I just don't want to get sandbagged on
 2    that and get in a crush, as I have experienced previously.
 3              MR. MANGAN:  I understand.  I was just looking at the
 4    other -- the deadline for us to figure out if there's a dispute
 5    is still a little ways off.
 6              THE COURT:  Right.  And where are we on that?  I have
 7    an e-mail to chambers, copy to everybody, that you say all your
 8    witnesses are going to be English speaking.
 9              MR. MANGAN:  Correct.  There's --
10              THE COURT:  I'm talking about trial translation, and
11    then I'm going to talk about document translation.
12              MR. MANGAN:  Yes.
13              THE COURT:  And on trial translation, I'm hearing from
14    you you don't think we're going have any translation issues as
15    to trial testimony.  The defendant's going to have an
16    interpreter.
17              MR. MANGAN:  For him to hear the testimony, yes.
18              THE COURT:  Right.  What do you think about, do you
19    know yet, are there disputes in translation as to written
20    documents presented?
21              MR. MANGAN:  I think we don't know.  We've produced
22    our translations.  My guess -- they can speak to it -- is
23    they're still vetting it, whether it's through the client or
24    through the interpreter.  And they're still, obviously, working
25    through the discovery, so I don't know yet.
```

1          THE COURT:  So --

2          MR. McBRIDE:  Judge, I think there may be some.  I

3    think our review of the core evidence that was presented, the

4    tier one we didn't see anything that we thought might be

5    controversial.  But as we go through the process, we have found

6    some commentary or interpretations that our interpreter, who

7    has read them, and our client indicate may not be what they are

8    in terms of tone and seriousness.

9       For instance, I would give an example, Your Honor, there

10   are some comments about working for the state that are

11   presented as very straight up in the translation, but my

12   interpreter and my client are telling me, well, these are

13   really in the tone of sarcasm, Your Honor.

14         THE COURT:  That's not a translation issue, is it?

15         MR. McBRIDE:  Only in the fact -- only in such that

16   the characters and the way they're organized relate to tone,

17   Your Honor.

18         THE COURT:  The characters being the characters of the

19   language?

20         MR. McBRIDE:  Yes, Your Honor.

21         THE COURT:  I just don't want to get behind the

22   eightball on translation issues, and so we sent this out to you

23   guys, you guys worked this through, and it's where we are.  I'm

24   going to be reasonable.  I've tried to say that four times.

25   It's on the record.

1      You can star that portion.

2      But you should make an affirmative strong statement on the

3  record, Ms. Frankian.

4              THE LAW CLERK:  Well, the reason I selected that

5  particular date was just because the last time we needed

6  interpreters, I think we -- I can't remember if the parties

7  first proposed two interpreters and then we also went looking

8  to see if there was anyone else or if we did it the other way

9  around.

10      But everyone I called was unavailable, and that was several

11  months before the trial, particularly given the length of

12  trial.  So, for instance, they were available the first two

13  weeks but not after that.  So I just wanted to make sure that

14  we didn't lose a good interpreter because we didn't --

15              MR. MANGAN:  Okay.

16              THE LAW CLERK:  -- get them early enough.

17              THE COURT:  So given that history and where we are on

18  this potentially moving calendar and my request that you guys

19  confer and figure out where we really are, and we have another

20  status conference, that should be in the mix and you'll

21  understand our concern.

22              MR. MANGAN:  Okay.

23              THE COURT:  We've reviewed the calendar.  I got my

24  memos contra clarification.  We've talked about translators.

25      On the government's -- is it CIPA, CIPA (pronouncing)?

1    MR. MANGAN:  We've always called it CIPA, but I don't

2  think it -- it's a matter of interpretation.

3    THE COURT:  Well, I will continue to call it CIPA and

4  try and be --

5    MR. MANGAN:  Okay.

6    THE COURT:  On your first CIPA motion, I know you need

7  the Court to act on it expeditiously, and we will.  I have a

8  sense that --

9    MR. MANGAN:  We did mention a supplemental one.

10    THE COURT:  Right.  But before we even get to that,

11  among the determinations I think I might be required to make

12  are whether the material in dispute is discoverable, whether

13  it's privileged, and then determine if the information is at

14  least helpful to the defense.  I need to hear from them in that

15  regard before I resolve the motion.

16    I've told them I will sit with them today on the record *ex*

17  *parte*, sealed, if they're prepared to make that presentation to

18  me.

19    MR. MANGAN:  Okay.

20    THE COURT:  They've asked to have a chance to do it in

21  writing.  In front of the court reporter would be in writing.

22  But if they need some time to do that, the moment I get that,

23  we will act on your motion.

24    MR. MANGAN:  Okay.

25    THE COURT:  And I understand, as to the next one

1  coming, that, you know, it takes a while and --

2          MR. MANGAN:  We think we'll have it in about two

3  weeks, and it's going to be much smaller, shorter than the one

4  that's pending.

5          THE COURT:  And I hate to say this on the record, but

6  I really think if we hear from the defendant timely, that we're

7  going to resolve your first motion within two weeks.

8          MR. MANGAN:  Okay.

9          THE COURT:  So that just gives you a sense.

10          MR. MANGAN:  I will go back and try to -- we'll try to

11  do it as quickly as we can.

12          THE COURT:  I'm not pushing you.

13          MR. MANGAN:  Okay.

14          THE COURT:  I'm concerned that they're pushing me, and

15  I'm trying to tell you, we've got it, we understand --

16          MR. MANGAN:  Okay.

17          THE COURT:  -- we're on it and, unless you continue

18  this trial for six months, then we'll look at it again in six

19  months.

20          MR. MANGAN:  The one I had a few years ago with Judge

21  Beckwith, it was similar in that we sort of had to wait to the

22  end of discovery, and then the defense submitted an *ex parte*

23  statement --

24          THE COURT:  Right.

25          MR. MANGAN:  -- of potential defenses, and then the

```
 1   judge, you know, did the analysis and ruled on it.  So, no, I
 2   think that we've sort of anticipated that all along.
 3           THE COURT:  Fair enough.  I sensed the last time we
 4   were all in each other's presence that you were trying gently
 5   to suggest that the Court get on with it, and I thought you did
 6   a nice job of that.
 7           MR. MANGAN:  Thank you.
 8           THE COURT:  So --
 9           MR. MANGAN:  Then I won't say anything else.
10      (Laughter.)
11           THE COURT:  So we're going to try and get on with it.
12      That sort of walks through what I had hoped to walk
13   through.  I'm not prepared to release you today.  I mean, at
14   the end of the conversation I'm going to extend the Court's
15   prior ends of justice findings, this is a complex case, there's
16   voluminous discovery, we've worked hard on establishing a trial
17   calendar and agreed upon by all parties, and in order to serve
18   the ends of justice, the Court's going to toll time until
19   trial.  There will be incoming motions which will toll time as
20   well, but I'm dotting my i's and crossing my t's.
21      Are there other issues you all would like to discuss?  And
22   we'll start with the government.
23           MR. MANGAN:  I think the only thing I can think of,
24   Your Honor, would be a date for when you would want us to come
25   back in.
```

1          THE COURT:  I agree.  When would you like me to harass

2    you again?

3          MR. MANGAN:  If they're staying to talk with you

4    afterwards, you know, I know you want us to confer --

5        We'll just do that some other time whenever your group

6    wants to call.

7        -- so we can come back --

8          THE COURT:  In 30 days, 45?

9          MR. MANGAN:  I was going to say 30, yeah, a month.

10          THE COURT:  And when does that put us, in late

11    November, mid-November?

12          MR. KOHNEN:  Uh-huh.

13          THE COURT:  Do you think you'll be ready to chat again

14    with the Court --

15          MR. MANGAN:  I think so, yeah.

16          THE COURT:  -- on where are we really heading on

17    calendar, or is that 30 days unrealistic?

18          MR. KOHNEN:  I think so.

19          THE COURT:  And I hate to interrupt you having that

20    conversation.  If I got out of the room and you would have it

21    now --

22          MR. MANGAN:  We can follow up with a call, Your Honor.

23          MR. KOHNEN:  Yeah.

24          MR. MANGAN:  That's no problem.

25          THE COURT:  All right.  Well, we're looking at the

```
 1   calendar.
 2          THE LAW CLERK:  So we're actually in trial the third
 3   week, the 30 days out, and then the following week is
 4   Thanksgiving.
 5          THE COURT:  Who is the prosecutor?
 6          THE LAW CLERK:  I'm sorry?
 7          THE COURT:  Who is the prosecutor?
 8          THE LAW CLERK:  No, it's a civil trial.
 9          THE COURT:  I was just going to complain to Miss Emily
10   while she was here.
11      It's the first time I've used your first name on the
12   record.  I apologize.
13          MS. GLATFELTER:  That's all right.
14          THE LAW CLERK:  December 3rd at 11:00 AM.
15          THE COURT:  Are you guys able to look at your
16   calendars?
17          MR. MANGAN:  Yes, that's fine for me.
18          THE COURT:  All right.  It works for the government,
19   both?
20          MR. MANGAN:  Yes.
21          MR. KOHNEN:  Good?
22          MS. CORS:  That's fine.
23          MR. McBRIDE:  Yeah.
24          THE COURT:  All right.  And we're going to do it in
25   person; correct?
```

```
 1                MR. MANGAN:  Yeah.

 2                THE COURT:  And is the New York lawyer coming?

 3                MR. KOHNEN:  I'm sure he hopes to, Judge.  Our wires

 4   got a little bit crossed on today's date.

 5                THE COURT:  Oh, I'm teasing.

 6                MR. KOHNEN:  We didn't adequately calendar it, and

 7   so --

 8                THE COURT:  No problem.

 9                MR. KOHNEN:  -- we kind of got in a scramble.

10                THE COURT:  That was a joke.  I enjoy having him here

11   to pick on.  And I know he likes it, so --

12                MR. KOHNEN:  He does, and I like it too.

13                THE COURT:  Give him our regards and a copy of the

14   transcript.

15       So we're coming back on that date and time.  And there was

16   nothing more from the government today?

17                MR. MANGAN:  No, Your Honor.

18                THE COURT:  Did you all have more issues you'd like to

19   float?

20                MR. KOHNEN:  No.  Thanks, Judge.

21                THE COURT:  Okay.  Are you able and willing to stay

22   with me briefly on the record?

23                MR. McBRIDE:  I am, Your Honor.

24                MR. KOHNEN:  Yes.

25                THE COURT:  All right.
```

1        MR. KOHNEN:  And just to complete the record -- sorry

2    to interrupt, Judge -- we, at Ms. Frankian's suggestion

3    yesterday, we thought it was a really good idea to get you

4    informed.  The reason we need or have requested a little time

5    to provide something in writing is we just didn't have enough

6    time to get that together.  So I think it will be pretty

7    redundant.

8        THE COURT:  Fair enough.  I just want to make sure

9    you're comfortable doing it now.  If you aren't, tell me and

10   we'll --

11       MR. KOHNEN:  Yeah.

12       THE COURT:  Okay.  So we are going to conclude this

13   status conference, and I'm going to proceed to*, ex parte* under

14   seal, chat with the defendant as required by law, which is a

15   polite way of saying thank you for stopping by.

16       MR. MANGAN:  We'll excuse ourselves.

17       THE LAW CLERK:  Judge?

18       THE COURT:  One more thing while we're still on the

19   record.

20       THE LAW CLERK:  Would it be helpful if we picked a

21   date sometime in June or July that you can run by your client

22   and you can check with your witnesses so, just in case that

23   works, you have a date that works on our calendar as well, or

24   do you want to confer first and then come back to us?

25       THE COURT:  I'd prefer that they confer first.

1    MR. MANGAN:  We can do it at the next meeting --

2    THE LAW CLERK:  Okay.

3    MR. MANGAN:  -- if that's okay.

4    THE COURT:  Because I want to confer with you about

5 that.

6    MR. MANGAN:  Okay.

7    THE COURT:  Fair enough.  So the invitation stands.

8 We'll adjourn briefly.

9   (Proceedings concluded at 11:36 AM.)

10         - - -

11      C E R T I F I C A T E

12    I, Luke T. Lavin, RDR, CRR, the undersigned, certify

13 that the foregoing is a correct transcript from the record of

14 proceedings in the above-entitled matter.

15

16         s/Luke T. Lavin
          Luke T. Lavin
17         Official Court Reporter

18         - - -

19

20

21

22

23

24

25