**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:18-CR-0043 |
| | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| **YANJUN XU** | : | **UNITED STATES' MEMORANDUM** |
| **(a/k/a Xu Yanjun and Qu Hui)** | : | **IN RESPONSE TO DEFENDANT'S** |
| | : | **MOTION FOR DISCLOSURE OF** |
| | : | ***BRADY*, *GIGLIO* AND JENCKS ACT** |
| | : | **MATERIALS** |

Defendant Yanjun Xu has filed a motion ("the *Brady* Motion") requesting an order requiring the government "to search for, translate, and produce to the defense exculpatory and mitigating materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)." From a practical standpoint, the defense wants all electronic discovery to be translated into English by the government, even though the Chinese-language discovery comes from the Defendant's own electronic accounts, these full accounts have been provided in discovery, and the government has provided translations of the portions it intends to use at trial. Defendant Xu's motion further requests that the Court order the government to produce all Jencks Act Materials no later than 60 days before trial. (R. 54, Motion). The government opposes the defendant's motion for the reasons set forth below.

**I.     SUMMARY OF THE DISCOVERY PROVIDED.**

In order to address the requests, it is first necessary to correctly summarize the discovery provided by the government. Much of the evidence at issue in this case pertains to the Defendant's own email accounts and iCloud accounts. In addition, there were several phones and other devices

recovered from the Defendant and his colleague during their arrest in Belgium. The government provided all of this information in its original format. Specifically, the government provided the defense with forensic images of the iCloud accounts and the devices recovered in Belgium.[1] The defense then asked for the forensic data to be produced a second time in a report format. The government obliged, and provided the forensic data in a format called a UFED report for the iCloud account and the devices seized in Belgium. The UFED format organizes the data into folders, such as messages and photographs, and allows a user to click on a folder to view the content in such folder. Through those forensic images and UFED reports, the defense has the same information as the government with respect to the iCloud accounts and the devices seized in Belgium. The government also produced to the defense the content from the defendant's email accounts.

The electronic evidence is primarily comprised of content in the Chinese language. The government has tried to identify relevant information through various keyword searches and review by analysts. The identified relevant material has been translated. These translations have been produced to the defense team, along with a cross-reference to enable them to find the original relevant communication within the devices or accounts. This collection of translations encompasses more material than what the government will use in its case-in-chief at trial.

The discovery was produced in separate tiers of production as the information became available. The defense received the discovery along with an index for each tier, which included a descriptive label and bates-number for each category. Nearly all of these documents were provided in a "pdf" format. In the end, aside from the original electronic evidence provided in both native

---

[1] It is not correct to say that the forensic images are unsearchable and unmanageable; they simply require the use of software to read or analyze the data. For its own reasons, the defense team did not engage a technical person to exploit the forensic images.

and UFED formats, the translated, numbered, and produced discovery consists of less than 9,000 pages of documents. Printed out, the discovery would fill less than five banker's boxes.

In addition, through the assistance of the Bureau of Prisons, Defendant Xu has had the opportunity to use a computer to review the Chinese-language discovery, including the forensic reports for the iCloud accounts and the devices seized in Belgium. This provides Xu with the access and opportunity to examine his own accounts and devices in his native language and without the need for counsel to be present.

## II. THE LAW PERTAINING TO *BRADY* AND *GIGLIO* MATERIALS.

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the government must provide to the defense any evidence favorable to the accused and material to guilt or punishment. This principle extends to evidence affecting the credibility of government witnesses, including impeachment material. *Banks v. Dretke*, 540 U.S. 668, 700-03 (2004); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 153-55 (1972). The obligation to provide *Brady* information exists, without a specific request, when the evidence is of obvious substantial value to the defense. *See Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011); *United States v. White*, 492 F.3d 380, 410 (6th Cir. 2007).

*Brady* applies to information that the government possesses and the defendant does not. *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). The government has no obligation to produce information that it does not possess or of which it is unaware. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Bibby*, 752 F.2d 1116, 1125 (6th Cir. 1985) ("*Brady* does not apply to evidence not in the prosecutor's possession.").

3

The disclosure of impeachment information for witnesses was addressed in *Giglio v. United States*, 405 U.S. 150 (1972). In *Giglio*, the principle of *Brady* was extended so that the disclosure obligation includes evidence that could be used to impeach the credibility of a witness. *Schledwitz v. United States,* 169 F.3d 1003, 1011 (6th Cir.1999) (citing *Giglio v. United States,* 405 U.S. 150, 154-55 (1972)). *Brady* did not create a "general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977).

### A. The Government Has No Duty To Identify *Brady* Materials Within The Produced Discovery.

Defendant Xu argues that the government has a duty to affirmatively scour the discovery produced (including Xu's accounts in Chinese) to determine what might qualify as *Brady* or *Giglio* information. Setting aside the translation issue, there is substantial case law holding that the government satisfies its *Brady* obligations by making discovery available to the defense – which the government has done in this case.

The seminal case in the Sixth Circuit is *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010), which Defendant Xu failed to cite in his motion. In *Warshak,* the electronic evidence produced in discovery filled at least "three 'tera-drives' and numbered 17 million pages." *Id.* at 295. Most of that evidence came from the company's computers and servers. *Id.* On appeal, the defendants argued, among other things, that the district court abused its discretion by allowing the government to provide the discovery in a "disorganized and unsearchable format." *Id.* In addition, the defendants claimed that the government "was improperly permitted to 'abdicate' its *Brady* obligations by producing gargantuan 'haystacks' of discovery that swallowed any 'needles' of exculpatory information." *Id.*

The Sixth Circuit rejected both claims. First, the Court noted that the majority of the discovery came from the defendant's own computers, which meant the defendants already had

4

access to that information and presumably knew what was contained therein. The court also noted that the information was largely searchable, and the government had provided the defendants with a guide of sorts, which included a "detailed room-by-room inventory of all items seized from the company," which included a list of the seized computers. *Id*. at 296-97; *see also United States v. Richards*, 659 F.3d 527, 544-45 (6th Cir. 2011). Second, the Court rejected the defendants' claim that the government "was obliged to sift fastidiously through the evidence" in attempt to locate exculpatory evidence. *Id.* at 297. Referencing the Fifth Circuit's rejection of an identical argument in *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), the Court stated the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence. *Id*. (citing *United States v. Skilling,* 554 F.3d 529 (5th Cir.2009)), *vacated in part on other grounds,* 561 U.S. 358 (2010). While the Sixth Circuit did not hold that voluminous discovery could never violate *Brady*, the Court did note that in *Warshak*, there was no evidence that government had (1) padded discovery with irrelevant documents, (2) made access to discovery unduly onerous, or (3) deliberately concealed exculpatory evidence in voluminous discovery. *Id.* at 298. Consequently, there was no abdication of *Brady* obligations by the government.

The Third and Fifth Circuits reached the same conclusion in *United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005) and *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997). In *Pelullo*, the government provided large volumes of material from the search of defendant's own records and warehouses. Although government did not view the 16 boxes and 34 file cabinets in Florida as favorable to the defense, the defense had the knowledge of potential information and had an opportunity to examine the records. As stated by the Third Circuit, "*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and

5

impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." *Id*. at 212.

In *Mmahat*, the *Brady* material was disclosed within 500,000 pages of discovery, and the Court held that the government had no obligation to point out specific documents to the defense. *Id.; see also United States v. Causey*, 356 F. Supp. 2d 681, 694-95 (S.D. Texas 2005) (government made available millions of pages of documents, and selected 300,000 pages of "hot documents" for discovery, but was not required to certify that every item of exculpatory information was in the hot documents).

In an attempt to avoid *Warshak*, the defense relies almost entirely on district court cases from outside the Sixth Circuit to argue that the government has a duty to identify exculpatory items within produced discovery. *United States v. Blankenship*, No. 14-cr-00244, 2015 WL 3687864, at *7 (S.D. W. Va. June 12, 2015) (government had provided 4 million pages of discovery); *United States v. Saylor*, No. S-10-0061, 2010 WL 3036444, *3 (E.D. Cal. Aug. 2. 2010) (discovery of millions of pages, with hard copies filling two "pods" storage containers); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) (discovery of 600,000 documents).[2]

In *Hsai*, the district court concluded that the "open-file discovery" process for the 600,000 documents was not sufficient to satisfy *Brady* obligations. 24 F. Supp. 2d at 29-30. The court held that, "[t]o the extent the government knows of any documents or statements that constitute *Brady* material, it must identify that material." *Id*. at 30. Notably, the *Hsai* holding was specifically rejected by another district court in *United States v. Maxwell,* No. 05-20571-CR, 2006 WL

---

[2] The defense also cites *United States v. Graham*, 2008 WL 2098044 (S.D. Ohio 2008), but that case involved a dismissal on Speedy Trial Act grounds. The opinion did not mention or discuss *Brady* obligations at all. To the extent discovery issues were addressed, the Court noted that the case involved 1.5 million documents, 300 videotapes, 500 recorded conversations, 90 computer hard drives, and 3,000 diskettes.

8439796, at *6 (S.D. Fla. July 14, 2006). In *Maxwell*, the government had 30 hard drives in its possession from a state search. The government provided the hard drives to the defense without examining them. The district court held that the government can acquit itself of its *Brady* obligations by making discovery available. *Id*. (citing *Pelullo*, 399 F.3d at 212 (3d Cir. 2005)).

With regard to the *Saylor* decision, the Ninth Circuit subsequently held that the government typically has no obligation to identify particular pieces of exculpatory evidence. *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011). This holding is consistent with *Warshak*.

In sharp contrast to this case, all three of these cases (*Blankenship*, *Saylor*, and *Hsai*) involved discovery that numbered in the hundreds of thousands or evens millions of pages. Although *Warshak* held that voluminous discovery by itself does not run afoul of *Brady,* it bears noting that discovery produced in this case is significantly smaller than the volume of data discussed in the cases cited by the defense. Here, the translated, produced documents consist of less than 9,000 pages that have been cross-referenced to the forensic images, which also have been produced. There is additional electronic data beyond the 9,000 translated discovery, but that consists primarily of Defendant's own iCloud account, which backed up his phones. The defense cites the size of the account as being problematic, but much of the additional volume of data consists of extremely large numbers of irrelevant photos, videos, recordings, and personal text messages. As explained above, these are the Defendant's own accounts and they have full access to the data. The amount of relevant information in those accounts and discovery in this case is relatively small in comparison to the cases cited by the defense.

More importantly, the cases relied on by the defense were not in the Sixth Circuit and run counter to *Warshak*. As explained above, the law of the Sixth Circuit is that the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed

evidence. *Id*. (citing *United States v. Skilling,* 554 F.3d 529 (5th Cir.2009)), *vacated in part on other grounds,* 561 U.S. 358 (2010). And, here, where the discovery is not voluminous like it was in *Warshak*, where the government has not padded discovery with irrelevant documents or concealed exculpatory evidence, and has provided the defense with multiple formats to make the native formats of electronic evidence more accessible, there can be no *Brady* violation. Accordingly, the Court should deny the defendant's motion.

### B. The Government Has No Duty To Translate All Discovery.

The defense further complains about the parts of the electronic evidence (e.g., the iCloud accounts and phone devices) that are in the Chinese language but were not translated and produced by the government within the 9,000 pages of discovery. Nonetheless, the defense argues that the government must sort through the defendant's Chinese writings, identify potential *Brady* material, and then translate it. In the alternative, the defense requests that every piece of the electronic evidence be translated. In reality, these two proposals are the same.

Before turning to the case law, there are three factual principles to bear in mind. First, this electronic evidence has been provided to the defense both through forensic images and through readable reports. The defense has equal access to the same information.

Second, as the defense knows, much of the information in Chinese in the iCloud accounts appears to include highly-irrelevant information such as family pictures or inconsequential communications. And third, the evidence at issue consists primarily of Defendant's Xu's own materials and accounts that Xu is able to review and read on a prison computer. Xu is therefore in the best position to identify materials that may be potentially exculpatory.

The defense claims that the Court should require the government to provide English translations of criminal discovery. A similar request was rejected in *United States v. Gonzalez,*

8

2014 WL 2574765 (E.D. Tenn. 2014). In *Gonzalez*, the government provided recordings of 9,000 conversations in Spanish, with approximately 6,000 calls identified as pertinent. The government provided English summaries of all pertinent calls and verbatim transcriptions of particularly relevant conversations. The defense asked for English translations of all Spanish conversations and text messages. The district court denied the request for the government to translate all of the recorded conversations, noting that the government provided the full recordings and translations of the items for its case-in-chief. *Id*. at *4-9. The court agreed with the government that neither Rule 16 nor Due Process required the translation of every item of discovery. *Id*. at *5. In doing so, the district court cited with approval *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996) and *United States v. Zavala*, 839 F.2d 523, 527-528 (9th Cir. 1988). *Id*. at *6.

In *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996), the government produced 65 hours of recorded conversations, some of which were difficult to hear or were not relevant. Additionally, the government provided transcripts for the select portions (approximately four hours) that it deemed relevant and understandable. However, the district court ordered that the government transcribe the entire 65 hours of recording for the defense, including the portions that it did not intend to use at trial, and suppressed all 65 hours of recordings until the government supplied the defendants with transcripts of those recordings. The government appealed the district court's order. On appeal, the Seventh Circuit noted that the defendants possess the same evidence in the same format that the government has. *Id.* at 1305. The Court reversed the transcription order, holding that defense has "more than meaningful access" to the information. *Id.* (citing *United States v. Zavala*, 839 F.2d 523, 527-528 (9th Cir. 1988) and *United States v. Gee*, 695 F.2d 1165, 1166-69 (9th Cir. 1983)). The Seventh Circuit expressly rejected the defendant's *Brady* claim, explaining, that "[t]he district court erred in its belief that *Brady* requires the Government

9

to carry the burden of transcribing the full sixty-five hours." *Id.* at 1306. Notably, the Seventh Circuit found the government was not suppressing evidence; rather, it had made the recordings available to the defense. *Id.* Moreover, the defendants were given the same opportunity as the defense to discover the information. *Id.* at 1307-1308. In reversing the district court, the Seventh Circuit explained, there is "no logical or practical reason to hold the Government's evidence hostage until the Government performs an act not required by law, nor is there any reason to require the Government to conduct defendants' investigation for them." *Id.* at 1308.

In the *Zavala* decision from the Ninth Circuit, there were 11,000 intercepted conversations from a wiretap, mostly in Spanish. The government identified 1,800 of the calls as relevant, and provided translated transcripts for those calls. On appeal, the defendant argued that the government should have provided transcriptions for all of the tapes. The Ninth Circuit rejected the argument as "frivolous." 839 F.2d at 528.

Other district courts have taken the same approach as the Seventh Circuit, Ninth Circuit, and the district court in *Gonzalez*. In *Dominguez v. Rock*, 2016 WL 542120, (E.D.N.Y., Feb. 9, 2016), the defendant claimed that his *Brady* rights were violated by not having an English-translated statement from a particular witness. The court noted that, because the prosecution provided the actual statement, "*Brady* does not require the prosecution to provide a defendant with a translated version of any statements in their possession." *Id.* at *12. Similarly, in *Pickford v. Janda*, 2014 WL 3704874 (N.D. Cal. 2014), the government provided a recording and a transcript that found most of the conversation as unintelligible. The defendant claimed that the recording could be enhanced with the use of technology and that his *Brady* rights were violated by the lack of a full transcript. The court rejected the *Brady* claim because the defendant was aware of the

10

essential facts enabling him to take advantage of the evidence, and the means of enhancing the recording were readily available. *Id*. at *7-8.

In arguing for a full translation of all discovery, Defendant Xu relies on two cases: *United States v. Santiago*, No. 12-cr-00566, 2013 WL 1688865 (E.D.Pa. April 18, 2013) and *United States v. Sherifi*, No. 7:12-cr-20-BR, 2012 WL 2237074, *3 (E.D.N.C., June 15, 2012). Notably, these are the same two cases cited by the defense in *Gonzalez*, which the district court in *Gonzalez* specifically rejected, and instead relied on the decision of the Seventh Circuit in *Parks* and the Ninth Circuit in *Zavala*. *Gonzalez*, 2014 WL 2574765 at *6-7. As noted in *Gonzalez*, the *Santiago* and *Sherifi* cases involved large, multiple-defendant conspiracies, so the courts found some cost savings and time efficiency was gained by having a single translation of wiretap calls/recordings created for all parties.

Moreover, another factual distinction between cases involving wiretap/consensual recordings and the instant case is worth noting. The present case does not relate to a cache of intercepted communications or recorded calls which are intercepted or recorded precisely because they are relevant. Rather, the discovery here consists of email accounts as well as all items saved and stored on an iCloud account. The files in those accounts include irrelevant personal texts and emails, spam emails, photographs, and downloads from various websites. Thus, as opposed to wiretap cases like those cited above, there is even less rationale to believe that all of this information is relevant to the case. Considering these facts and the case law above, the Court should reject the defendant's claim that the government has a duty to translate all of the electronic discovery provided in this case.

11

### C. The Defendant Has Knowledge of the Operative Facts in the Discovery Items.

The bulk of the discovery comes from the Defendant's own devices, email accounts, and iCloud accounts. The written evidence in Chinese and audio evidence in Mandarin or other Chinese dialects is almost entirely comprised of the Defendant's personal accounts and devices. The Defendant reads and speaks this language, and the government (including the BOP) has gone to great lengths to assure that the Defendant can personally review the original communications, as well as the English translations. The defense team also has retained an interpreter to assist with discovery review of the original Chinese materials. Because the evidence consists of the Defendant's own files, the files are searchable, and the Defendant understands the dialect used in the files, the Defendant and his team are in a superior position (relative to the government) to identify material that may be relevant and material to the defense.

The Sixth Circuit has held that there can be no *Brady* violation where the defendant or defense counsel already knew or should have known the operative facts of the purported exculpatory information. *Stojetz v. Ishee*, 892 F.3d 175 (6th Cir. 2018). In *Stojetz*, the defense complained that the government failed to produce medical records of the defendant. The Sixth Circuit rejected the argument because the defendant knew the operative facts and the information was available to him. *See also Howard v. Burt*, 2017 WL 3425900 (6th Cir. 2017) (rejecting certificate of appealability for *Brady* claim because the defendant was aware of the underlying factual predicate for the claims); *United States v. Williamson*, 483 F. App'x 139 (6th Cir. 2012) (the defendant's own statement was not *Brady* material because the defendant knew about the statement); *United States v. Anderson*, 488 F. App'x 72 (6th Cir. 2012) (destruction of materials from defendant's trash was not *Brady* violation, because defendant is aware of what he discarded).

Likewise, in *Abdur'Rahman v. Colson*, 649 F.3d 469 (6th Cir. 2011), the Sixth Circuit rejected a *Brady* claim because the defendant knew at the time of the trial about the purported exculpatory information and had sufficient information to impeach the credibility of a co-defendant's testimony based on the information.

This same rationale has been applied by other circuits. *United States v. Shelley*, 2019 WL 123583 (11th Cir. 2019) (no *Brady* violation for failure to produce text message when defendant was a participant and was aware of the message); *United States v. Wenxia Man*, 891 F.3d 1253 (11th Cir. 2018) (no violation regarding disclosure of email because defendant knew about the email before trial); *United States v. McDuff*, 639 F. App'x 978 (5th Cir. 2016) (no *Brady* violation related to SEC proceedings because the information was made available but the defendant declined to review them before trial); *United States v. Catone*, 769 F.3d 866 (4th Cir. 2014) (material must be known to the government but not to the defendant, so defendant's own application form cannot be *Brady* material); *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014) (no *Brady* violation because defendant was aware of witness's drug use); *United States v. Brown*, 520 F. App'x 230 (4th Cir. 2013) (no *Brady* violation because the defendant was aware of the information at issue); *Rhoades v. Henry*, 638 F.3d 1027 (9th Cir. 2011) (rejecting *Brady* claim because defendant was aware of his own statements); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (evidence is not "suppressed" under the *Brady* doctrine if the defendant or defense counsel "either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence").

Here, Defendant Xu has knowledge of the relevant facts and evidence within his own accounts and devices -- and he has been provided those facts and evidence again in discovery. Under these circumstances, *Brady* imposes no additional obligation on the government to further identify particular material.

13

### D. **The Timing of *Brady* and *Giglio* Disclosures**.

The defense also raises a complaint as to the timing of any *Brady* or *Giglio* disclosures. The law sets forth no timeline for *Brady* or *Giglio* disclosures, as long as the defendant is not prejudiced. *See United States v. Johnson*, 581 F.3d 320 (6th Cir. 2009) (withholding impeachment evidence of a defense witness until after direct testimony is not *Brady* violation); *Norris v. Schotten*, 146 F.3d 314 (6th Cir. 1998) (mid-trial disclosure of *Brady* material was not a violation absent prejudice); *United States v. Word*, 806 F.2d 658 (6th Cir. 1986) (no *Brady* violation where evidence disclosed during trial absent prejudice by delay).

The Sixth Circuit has vacated a district court order that required the disclosure of all impeachment material before trial and "forthwith." *United States v. Presser*, 844 F.2d 1275, 1283-1285 (6th Cir. 1988). The Sixth Circuit held that the defense does not have a general right to pre-trial discovery of evidence impeaching witnesses, if the prosecution denies that such material is exculpatory and material under *Brady*. *Id*. at 1283. The express provisions of the Jencks Act control discovery of such evidence, so the government cannot be compelled to disclose Jencks Act material before trial. *Id.* at 1283. According to *Presser,* "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id.*; *United States v. Brazil*, 395 F. App'x 205 (6th Cir. 2010) ("Put another way: the Jenks Act trumps *Brady* where impeachment evidence is Jencks Act material. The [statement of a witness disclosed on the third day of trial immediately before the witness testified] clearly fell within the ambit of the Jencks Act, and so was not subject to compelled disclosure--even if it was Brady material--prior to Jackson's testimony. Accordingly, we find that the prosecution in producing the Jackson statement did nothing to violate Brazil's due process rights and that the district court therefore committed no error.").

14

Moreover, the obligation to disclose impeachment material depends initially on whether the individual actually becomes a witness at trial. *United States v. Seymour*, 739 F.3d 923 (6th Cir. 2014) (no entitlement to impeachment material for a witness not called to testify); *United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994) (no requirement to disclose immunity agreement with person that is not called as witness). That fact, in turn, impacts the timing of such disclosures. There is no set rule for the timing of such disclosures, as long as the defendant is not prejudiced. *See United States v. Johnson*, 581 F.3d 320 (6th Cir. 2009) (withholding impeachment evidence of a defense witness until after direct testimony is not *Brady* violation); *Norris v. Schotten*, 146 F.3d 314 (6th Cir. 1998) (mid-trial disclosure of *Brady* material was not a violation absent prejudice); *United States v. Word*, 806 F.2d 658 (6th Cir. 1986) (no *Brady* violation where evidence disclosed during trial absent prejudice by delay).

As stated in *Presser*, neither *Brady*, *Giglio*, nor Rule 16 gives a defendant the right to broad pre-trial discovery of impeachment evidence that is controlled by the Jencks Act, 18 U.S.C. § 3500. *See* 844 F.2d 1275, 1282–85 (6th Cir.1988); *United States v. Davis*, 306 F.3d 398, 421 (6th Cir.2002) ("When *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure."). According to *Presser,* "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id.* at 1283.

### III. JENCKS ACT MATERIALS.

The defense has requested that Jencks Act materials be produced in advance of trial. The government has agreed to the early disclosure of Jencks Act materials approximately 1 month before trial, as suggested in the Court's draft scheduling order.

15

The government has an obligation to provide certain prior statements of trial witnesses to defense counsel in accordance with Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500 (the Jencks Act). Federal Rule of Criminal Procedure 26.2 states that the United States must produce to defense counsel any statement of a witness who testified at trial (other than the defendant) after the witness has testified on direct examination. Fed. R. Crim. Pro. 26.2.

While earlier production may be made voluntarily, 18 U.S.C. § 3500(a) states that no statement or report given by a prospective government witness shall be subject to discovery or inspection until after the witness has actually testified on direct examination. Moreover, defense requests for additional preparation time are not sufficient to abrogate the timing requirements under the Jencks Act. *See*, *e.g.*, *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994) (rejecting claim that trial preparation was hindered by timely midtrial production under Jencks Act).

Similarly, the requirements of *Brady* do not override the time parameters of the Jencks Act. *United States v. Mullins*, 22 F.3d 1365, 1372-73 (6th Cir. 1994); *United States v. Presser,* 844 F.2d 1275, 1283-84 (6th Cir. 1988). To the extent that there is overlap between *Brady* material and Jencks material, the time limitations for the Jencks Act material still apply. *Mullins*, 22 F.3d at 1372-73; *Presser,* 844 F.2d at 1283-84; *Bencs,* 28 F.3d at 561. Evidence properly disclosed at trial pursuant to the Jencks Act cannot be subject to earlier disclosure on the basis of *Brady*. *Presser,* 844 F.3d at 1283-84. To this extent, the Jencks Act overrides *Brady* and is the sole requirement for the disclosure of such evidence. Neither *Brady*, *Giglio*, nor Rule 16 gives a defendant the right to broad pre-trial discovery of impeachment evidence, which is controlled by the Jencks Act, 18 U.S.C. § 3500. *See Presser,* 844 F.2d 1275, 1282–85 (6th Cir.1988).

Moreover, the government's obligations under *Jencks* and Federal Rule of Criminal Procedure 26.2 only applies to actual witnesses at trial. The United States is not required to provide

16

such impeachment material nor prior statements for individuals that are not used as witnesses at trial. *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (government was not required under *Brady* to disclose a grant of immunity during an interview to a potential witness who never testified at trial). Until a person is identified as a witness at trial, the rules and requirements for prior statements and other impeachment material do not apply.

At this juncture, it is unknown exactly who will be called as witnesses on behalf of the government at trial. However, the government has agreed to and will provide early disclosure of Jencks Act material before trial, as stated in the draft scheduling order.

        Respectfully submitted,

        DAVID M. DEVILLERS
        United States Attorney

        *s/Timothy S. Mangan*
        TIMOTHY S. MANGAN (0069287)
        EMILY GLATFELTER
        Assistant United States Attorney
        221 East Fourth Street, Suite 400
        Cincinnati, Ohio 45202
        Office: (513) 684-3711
        Fax: (513) 684-6385
        E-mail: timothy.mangan@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system upon defense counsel, this 6th day of December, 2019.

        *s/Timothy S. Mangan*
        TIMOTHY S. MANGAN (0069287)
        Assistant United States Attorney