**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:18-CR-0043 |
| | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| YANJUN XU | : | **UNITED STATES' MEMORANDUM** |
| (a/k/a Xu Yanjun and Qu Hui) | : | **IN OPPOSITION TO DEFENDANT'S** |
| | : | **MOTION TO DISMISS** |
| | : | **COUNTS 1 AND 2** |

Defendant Yanjun Xu ("Xu") has filed a motion to dismiss Counts 1 and 2 of the Indictment as unconstitutionally vague and duplicitous. For the reasons set forth below, there are no grounds for the dismissal of the Indictment and the motion should be denied in its entirety.

**I.     THE INDICTMENT IS NOT UNCONSTITUTIONALLY VAGUE.**

An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge to be defended; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The indictment only needs to set forth the elements that, if proven, constitute a violation of the statute. *Id.* at 412. Here, all of those elements are satisfied.

**A.     The Indictment Sets Forth The Elements of the Offenses.**

First, the Indictment contains the elements of the offense charged. The essence of a conspiracy is an agreement. *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007). In a conspiracy to violate 18 U.S.C. § 1831(a)(5) (economic espionage), the government must prove the following elements: (1) two or more persons, in some way or manner, agreed to try to

accomplish a common and unlawful plan to commit one of the economic espionage crimes in § 1831(a)(1-3); (2) the defendant knew the unlawful purpose of the plan and willfully joined in it; and (3) one or more of such persons committed an act to effect the object of the conspiracy.

Consistent with those elements, Paragraph 12 of the Indictment alleges:

> From in or about 2013 and continuing to at least April 1, 2018, in the Southern District of Ohio and elsewhere, the defendant,
>
> YANJUN XU,
> a/k/a Xu Yanjun,
> a/k/a Qu Hui,
> a/k/a Zhang Hui,
>
> and co-conspirator CF, with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree, intending and knowing that the offense will benefit a foreign government, foreign instrumentality, or foreign agent, namely XU, other MSS officers, NUAA, and the People's Republic of China, to:
>
> (a) steal, and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain a trade secret, in violation of Title 18, United States Code, Section 1831(a)(1);
>
> (b) without authorization, copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey a trade secret, in violation of Title 18, United States Code, Section 1831(a)(2); and
>
> (c) receive, buy, and possess a trade secret, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, in violation of Title 18, United States Code, Section 1831(a)(3).

These allegations cover the elements of § 1831(a)(5), satisfying *Hamling*.

Similarly, Count 2 alleges a conspiracy to violate 18 U.S.C. § 1832(a)(5), the theft of trade secrets. To establish such a conspiracy, the government must prove the following elements: (1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit one of the theft of trade secret crimes in § 1832(a)(1-3); (2) the defendant

knew the unlawful purpose of the plan and willfully joined in it; and (3) one or more of such persons committed an act to effect the object of the conspiracy.

Consistent with those elements, Paragraph 16 of the Indictment alleges:

From in or about 2013 and continuing to at least April 1, 2018, in the Southern District of Ohio and elsewhere, the defendant,

> YANJUN XU,
> a/k/a Xu Yanjun,
> a/k/a Qu Hui,
> a/k/a Zhang Hui,

and co-conspirator CF, with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree, with intent to convert a trade secret to the economic benefit of anyone other than the owner of the trade secret, and intending and knowing that the offense will injure any owner of that trade secret, to:

>   (a)   steal, and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain such information, that is related to a product and service used in and intended for use in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1832(a)(1);
>
>   (b)   without authorization, copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey such information, that is related to a product and service used in and intended for use in interstate and foreign commerce in violation of Title 18, United States Code, Section 1832(a)(2); and
>
>   (c)   receive, buy, and possess such information, that is related to a product and service used in and intended for use in interstate and foreign commerce, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, in violation of Title 18, United States Code, Section 1832(a)(3).

These allegations cover the elements of § 1832(a)(5), satisfying *Hamling*.

In *Anderson*, the Sixth Circuit noted that the indictment clearly tracked the language of the statute, included the relevant time period, and therefore contained the elements of the offense. Because both of the *Hamling* requirements were satisfied, the Sixth Circuit held that the indictment stated an offense. *Id*. at 412. The same result is required here. Counts 1 and 2 of the Indictment

3

track the language of the statutes, include the relevant time period, and allege the elements of the offenses. Therefore, the *Hamling* requirements are satisfied and the Indictment is not unconstitutionally vague.

### B. The Indictment Provides Fair Notice of the Charge to Be Defended and Allows the Defendant To Plead Double Jeopardy In Future Prosecutions.

Although the Indictment fairly informs the defendant of the charge to be defended and allows the defendant to plead double jeopardy in the future, Defendant Xu argues that the charges contain insufficient detail regarding: (1) the identity of the co-conspirators; (2) the agreement to violate the Economic Espionage Act "EEA"; (3) the targets and "geographic scope" of the conspiracies; and (4) the exact trade secrets that the defendant was seeking to obtain.

***The Identity of the Co-Conspirators.*** Defendant Xu claims that Counts 1 and 2 fail to identify the co-conspirators, rendering the charges unconstitutionally vague. That argument is contrary to Sixth Circuit law. The Sixth Circuit has made clear that an Indictment does not need to identify the names of co-conspirators. *United States v. Rey*, 923 F.2d 1217, 1227 (6th Cir. 1991) (as long as the indictment provides the elements of the offense and notice of the charges, there is no need to notify a defendant of all other co-conspirators). The law only requires that the defendant be apprised of the conspiracy, not of the names of the conspirators. *Rey*, 923 F.2d at 1227. The Sixth Circuit has repeatedly affirmed the principle that the government is not obliged to provide the names of a defendant's alleged co-conspirators. *United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014); *Crayton*, 357 F.3d at 568 (citing *Rey*).

4

In fact, the Indictment does indeed identify as co-conspirators an individual with the initials C.F., and others known and unknown to the grand jury.[1] The Indictment further explains that Xu worked with other Ministry of State Security ("MSS") officers to accomplish the goals of the conspiracies, namely, to obtain trade secrets from aviation companies. The government also intends to prove, as shown in the discovery, that Xu conspired with members of other entities affiliated with the Chinese government, such as Jiangsu Science & Technology Promotion Association ("JAST"), Aviation Industries of China ("AVIC"), and the Nanjing University of Aeronautics and Astronautics ("NUAA"), to achieve the goals of the conspiracies. (Indictment, ¶¶ 3-4, 12, 14(f, k). These non-MSS co-conspirators were made aware of the objectives, the MSS's use of aliases, and fully participated in the MSS's "exchange" recruitment strategies.

Moreover, the discovery provides details regarding the co-conspirators. For example, the discovery identified Xu's MSS colleague that accompanied him to Belgium to meet Employee 1, not to mention other operations that they handled together in furtherance of Counts 1 and 2. The discovery also provided details regarding other individuals at MSS and other entities affiliated with the Chinese government (such as AVIC and NUAA) that regularly communicated with Xu regarding the conspiracies to obtain aviation trade secrets. Given this full disclosure of Xu's communications throughout the time period of the conspiracies, the defense is sufficiently aware of the co-conspirators to prepare a defense to the charges.

***The Conspiratorial Agreement.*** Defendant Xu incorrectly claims that the Indictment is vague as to the conspiratorial agreements. There are two parallel, but distinct, conspiracies alleged in the Indictment. Count 1 alleges that defendant Xu engaged in a conspiracy to commit

---

[1] The defense team is aware of the identity of C.F. through the discovery. Defendant's Motion, page 10. The Indictment also describes the role of C.F. (a deputy director at a Chinese university called NUAA) in the recruitment of Employee 1.

5

economic espionage, in violation of Section 1831. Count 1 alleges that the conspiracy was conducted to benefit foreign agents, namely Xu, other MSS officers, NUAA, and the People's Republic of China. (Indictment, ¶¶ 11-14.) Count 2 alleges that defendant Xu engaged in a similar conspiracy to steal trade secrets, in violation of Section 1832. *Id*. at ¶¶ 15-18. As stated in the Indictment, both conspiracies occurred from 2013 to at least April 1, 2018. *Id*. at ¶¶ 12, 16.

The object of the conspiracies was to obtain technical aviation information, including trade secrets, from non-Chinese companies and countries. This objective is described in detail throughout the Indictment. It is alleged that one of Xu's job duties on behalf of the MSS was to obtain technical information, including trade secrets from aviation and aerospace companies in the United States and Europe. (Indictment, ¶ 3.) To that end, Xu and the co-conspirators worked together to identify aviation technology that was desired by the Chinese government and associated aviation entities and universities. *Id*. at ¶ 13(a). The co-conspirators actively selected and targeted companies that are leaders in the field of aviation technology in the United States, including in the Southern District of Ohio, and elsewhere. *Id*. at ¶ 13(b). Xu and the co-conspirators solicited, recruited, and paid engineering experts to provide technical information regarding aviation technology, including trade secret information. *Id*. at ¶ 13(h). The conspirators then used the stolen trade secret information for the Chinese government, as well as associated academic and commercial aviation entities, to the detriment of the owner of the trade secrets. *Id*. at ¶ 13(k).

Thus, the Indictment sufficiently articulates the conspiratorial agreement to steal aviation trade secrets from foreign aviation companies and countries. This is a common, unifying objective among the co-conspirators to illegally obtain aviation trade secrets from non-Chinese companies and countries. Counts 1 and 2 are therefore not vague as to the conspiratorial agreement to commit an illegal objective.

***The Targets and Geographic Scope of the Conduct.***  Defendant Xu argues that Counts 1 and 2 are unconstitutionally vague as to the targets (i.e., victims) and geographic scope of the conspiracy.  The defense does not offer any legal authority for the proposition that an Indictment must identify all victims or intended victims.   To the contrary, victims of fraud do not have to be identified by name in an indictment.  *United States v. Mizyed,* 927 F.2d 979, 981 (7th Cir. 1991).  Even if the victim is noted in an indictment, the name is usually replaced with a generic term to protect the victim's privacy (such as "Victim A").  There is simply no basis to claim that an indictment is unconstitutionally vague because it did not identify and list every victim.

Likewise, there is no authority requiring that the location or geographic scope of the conspiracy must be defined in the indictment.  As explained by the Sixth Circuit, Rule 7 does not entitle a defendant to learn all overt acts that might be proven.  *Salisbury*, 983 F.2d at 1375; *Rey*, 923 F.2d at 1227.  In addition to the specificity of the Indictment, the government has provided the defense with thousands of pages of discovery, which contain many of the communications between these individuals.  For example, the government has provided to the defendant hundreds of pages of messages/chats/communications the defendant exchanged with co-conspirators about potential co-optees, meetings with potential co-optees, materials from co-optees, and aliases used in interacting with potential co-optees.

In addition, in response to the bill of particulars motion, the government set forth some of the details that were provided in the discovery as to these underlying acts in furtherance of the conspiracies.  This additional information allows the defense to prepare for trial.  But as to the minimal requirements for a charging document, the Indictment in this case is legally sufficient and is not required to identify every overt act in furtherance of the conspiracy.

***The Identification of the Trade Secrets***.  Lastly, Defendant Xu argues that Counts 1 and 2 are vague because they do not identify with particularity the aviation trade secrets that were sought by the conspirators.  This argument conflates an underlying substantive offense with conspiracy or attempt offenses.

Because these are conspiracies, the essence of the crime is the agreement to commit the crime.  A conviction under Count 1 and/or 2 does not require the completion of the substantive offense or actual theft of the trade secret.  There is likewise no requirement in attempt cases to prove the actual trade secrets that were targeted.  *United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (not required to show actual trade secret for attempted violations of 1831 and 1832); *United States v. Hsu*, 155 F.3d 189, 199-202 (7th Cir. 2002); *United States v. Liew*, 2013 WL 2605126 at *5 (N.D. Cal. 2013) (attempted violations of Sections 1831 and 1832 do not require the government to prove an actual trade secret).  As explained in *Liew*, the defendants' intent and actions form the core criminality for attempt and conspiracy charges, rather than the existence of an actual trade secret.  2013 WL 2605126 at *6.

Contrary to that law, Defendant Xu argues that an indictment under the EEA must identify with specificity the trade secrets that the defendant tried to steal.  For support, Defendant Xu relies on *United States v. Case*, No. 3:06-cr-210, 2007 WL 1746399 (S.D. Miss. June 15, 2007).  However, the defendant's reliance on *Case* is misplaced.  In C*ase,* the defendant only challenged a substantive offense for the actual theft of a specific trade secret.  The conspiracy charge in *Case* was not challenged on the same basis.  Thus, *Case* does not support Xu's assertion that a conspiracy count must identify with specificity the trade secrets sought.

8

Therefore, the conspiracies described in Counts 1 and 2 are not vague. In conspiracy and attempt cases, the law does not require the government prove, much less identify, specific trade secrets that were targeted or stolen.

## II.     THE INDICTMENT IS NOT DUPLICITOUS.

The defendant argues that Counts 1 and 2 of the Indictment are duplicitous and that such duplicity requires dismissal of the charges. In short, the defendant argues that Counts 1 and 2 allege multiple conspiracies within each count, specifically "rimless wheel" conspiracies, that are so unfairly prejudicial as to require dismissal.

An indictment is duplicitous if it describes separate and distinct crimes in a single count. *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007). The concern with duplicity is that a jury's general verdict will not render a finding on each offense, making it difficult to determine if the verdict rested on only one of the offenses, or both. *Id*. This may prejudice a defendant as to the right to a unanimous verdict. *Id*. Whether an indictment is duplicitous is a question of law. *Id*.

In *Warner*, the Sixth Circuit generally described the principles governing the resolution of whether single or multiple conspiracies existed as follows:

> In determining whether the evidence showed single or multiple conspiracies, we must bear in mind that the essence of the crime of conspiracy is agreement. In order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal.

*United States v. Warner*, 690 F.2d 545, 548-49 (6th Cir. 1982) (interior quote marks omitted).

The government need not prove an actual or formal agreement among the various conspirators to establish a single conspiracy. Rather, the agreement can be inferred. *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (citing *United States v. Davenport*, 808 F.2d 1212, 1215-16 (6th Cir.1987)); *Warner,* 690 F.2d at 549. Also, the conspirators need not have

9

direct association to establish a single conspiracy. *United States v. Rugerio*, 20 F.3d 1387, 1391 (6th Cir. 1994). It is enough to show that the member knowingly participated in a joint enterprise, even if the identity of the other participants is not known to that member. *Warner*, 690 F.2d at 549. Similarly, it can be a single conspiracy even if each member did not know of or become involved in all of the activities in furtherance of the conspiracy. *Id*.

In other words, to establish a single conspiracy, "it is not necessary for each conspirator to participate in every phase of the criminal venture, provided there is assent to contribute to a common enterprise." *United States v. Ghazaleh*, 58 F.3d 240, 245 (6th Cir. 1995) (quoting *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)). "[A] single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis on its locale of operations." *See Segines*, 17 F.3d at 856; *United States v. Maliszewski*, 161 F.3d 992, 1014-15 (6th Cir. 1998). "In short, case law makes plain that evidence of multiple players and multiple locales does not equate with evidence of multiple conspiracies." *Maliszewski*, 161 F.3d at 1015.

Defendant Xu argues that Counts 1 and 2 describe improper "rimless wheel" conspiracies. *United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008). The defense maintains that the co-conspirators – Xu, the other MSS colleagues, and the individuals at the entities affiliated with the Chinese government (JAST, AVIC and NUAA) – do not know each other and did not agree to the same conspiratorial objective. (Motion for Bill of Particulars, p. 6.) But that is not what the Indictment states; that what Defendant Xu asserts. The Indictment repeatedly refers to the actions taken by Xu *and the other co-conspirators towards* the objective of obtaining aviation trade secrets. The government intends to prove at trial, consistent with the Indictment, that Xu engaged in this conspiracy with other members of the MSS to obtain aviation trade secrets. The

discovery provided to the defense describes many of the communications between these individuals within the MSS. As is shown in the discovery and as will be presented at trial, the conspirators within MSS knew each other, communicated with each other, and worked with each other on a regular basis towards the illegal conspiratorial objective.

In *Swafford*, the defendant was charged a conspiracy to sell iodine to multiple people (with the knowledge that it would be used to manufacture methamphetamine). The Sixth Circuit concluded that the evidence showed multiple conspiracies, as opposed to a single conspiracy. In reaching that conclusion, the Court noted that none of the customers who bought the iodine interacted with one another (with one exception). It is possible for the connections between co-conspirators to be minimal, but the government must show that the alleged members of the conspiracy "agreed to participate in what he believed to be a collective venture toward a common goal." *Id*. at 841-842, quoting *Warner*, 690 F.2d at 549. The Court found that the there was insufficient evidence of a "common goal" between the customers to show a single conspiracy.

The holding of *Swafford* simply reiterates the necessity of a conspiratorial agreement, that is, that the co-conspirators (however defined) must have a common goal or enterprise between the participants. Otherwise, it can become a "rimless wheel" structure, in which a common defendant engages in separate agreements or conspiracies with others. *Id*. at 842 (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). In other words, in a single-wheel conspiracy, the persons on the outside do not need to have a connection or interaction with each other, but they do need to be aware of and participate in an agreement towards a single, illicit enterprise. *Id*.

In this case, the Indictment alleges and explains that the co-conspirators in China – the MSS individuals, along with individuals from other government-affiliated entities – engaged in a single conspiracy to target and attempt to steal aviation trade secrets and technology from non-

11

Chinese companies and countries over a defined period. This states a single conspiracy and is not duplicitous. *See United States v. Galan*, 436 F. App'x 467 (6th Cir. 2011) (affirming conviction; evidence supported a single conspiracy to distribute different drugs that endured for over a decade involving changing co-conspirators at the organizer and "middleman" levels).

The cases cited by Defendant Xu are inapposite. *United States v. Munoz-Franco*, 986 F.Supp. 70, 71-72 (D.P.R. 1997) (finding conspiracy count had two conspiracies because it described two sets of co-conspirators, acts, and loans); *United States v. Reynolds*, 534 F. App'x 347, 359 (6th Cir. 2013) (affirming conviction; finding two different drug conspiracies were present because there were different tactics, types of drugs, participants, time frame, sources, and customers, but variance did not prejudice the defendant). In contrast to *Munoz-Franco* and *Reynolds*, the Indictment in this case describes a single conspiracy with numerous co-conspirators. The co-conspirators knew each other, communicated with each other, and worked towards the common goal of illegally stealing aviation trade secrets.

Finally, even if the Indictment were duplicitous – which it is not – the proper remedy is not dismissal. There are several other potential pre-trial remedies for an allegedly-duplicitous indictment: the Court may require the government to elect or define the charge it will pursue or it may particularize the distinct offenses within a count. *Kakos,* 483 F.3d at 444. Additionally, any potential harm can be mitigated by giving a unanimity instruction to the jury, instructing the jury that, in order to convict the defendant, they must agree that the same violation had been proven. *Id*. at 446; *see also, United States v. Hinton*, 127 F. Supp. 2d 548 (D.N.J. 2000) (government could

12

elect a particular scheme to pursue). As explained above, however, Counts 1 and 2 of the Indictment are not duplicitous and, in any event, dismissal is not the appropriate remedy.[2]

### III. CONCLUSION.

For the reasons set forth above, the government requests that Court dismiss the Defendant's motion in its entirety.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

*s/Timothy S. Mangan*
TIMOTHY S. MANGAN (0069287)
EMILY GLATFELTER
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: timothy.mangan@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system upon defense counsel, this 6th day of December, 2019.

*s/Timothy S. Mangan*
TIMOTHY S. MANGAN (0069287)
Assistant United States Attorney

---

[2] Citing *Kakos*, 483 F.3d at 444, the defendant claims that he is entitled to select the appropriate remedy for a duplicitous indictment. (Def. Br. at 15, n.7). While that assertion is not consistent with the holding of *Kakos*, the Indictment here is not duplicitous. Thus, the accuracy of defendant's argument on this point is irrelevant.