**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:18-cr-00043 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | **DEFENDANT'S REPLY IN SUPPORT** |
| | : | **OF MOTION FOR A** |
| YANJUN XU, | : | **BILL OF PARTICULARS** |
| a/k/a Xu Yanjun, | : | |
| a/k/a Qu Hui, | : | **[REDACTED]** |
| a/k/a Zhang Hui, | : | |
| | : | |
| Defendant. | : | |

Defendant Yanjun Xu ("Defendant or "Mr. Xu"), by and through counsel, submits this Reply in Support of his Motion for Bill of Particulars and seeks to clarify the allegations in the Indictment so that Mr. Xu can understand the charges against him and prepare for trial.

## INTRODUCTION

Although the government prepared an indictment that was enough to obtain initial cooperation from Belgian authorities, the Indictment remains constitutionally deficient and cannot secure a conviction under American law. (*See* Motion to Dismiss Counts I and II, Doc. 55) ("MTD"); (Reply in Support of Motion to Dismiss Counts I and II, Doc. 72) ("MTD Reply.") Accordingly, Mr. Xu sought additional information to clarify the charges against him through a request for a bill of particulars, but the government has refused.

The government's Memorandum in Opposition to Defendant's Motion for Bill of Particulars regarding Counts 1 and 2 ("Response") largely consists of three arguments. First, the government asserts that Mr. Xu does not have a substantive right to a bill of particulars because the Indictment is sufficiently clear. (Response in Opposition to Defendant's Motion for a Bill of Particulars Regarding Counts 1 and 2 (Doc. 69), at 2-3, 4-9) ("Opp'n.") For the reasons outlined

1

in Mr. Xu's Motion for a Bill of Particulars and Motion to Dismiss Counts I and II (and Reply in support thereof), the Indictment itself is too vague for the Court to sustain.[1] But if the Court chooses not to dismiss Counts I and II, then as a matter of basic fairness it should require the government to file a bill of particulars.

Second, the government has taken the remarkable position that Mr. Xu should have asked for clarification earlier, so now it no longer has to help. As explained below, Mr. Xu's motion is timely, as the timing was addressed and agreed to by the Court and the parties several months ago. But the government's argument is also disingenuous. The government argues that there is no need for a bill of particulars because it has provided Mr. Xu with mountains of discovery. Mr. Xu and counsel took the government's argument in good faith and waded through discovery to see if it clarified the charges. It did not. Thus, Mr. Xu now asks the government to provide in the form of a bill of particulars the clarity that it promised (and failed to deliver) in the Indictment and discovery.

Third, the government insists that the Court should not order a bill of particulars because the government can cure any vagueness in the Indictment by dumping its entire discovery file on Mr. Xu and telling him to sort it out. The government reasons that a bill of particulars is meant to prevent a defendant from being surprised at trial, but if the government turns over everything it has, then there can be no surprises. This Reply focuses largely on that argument, which rests on faulty assumptions and a faulty application of the case law upon which the government relies.

---

[1] Pages 4-8 are largely copied from the government's Response in Opposition to the Motion to Dismiss Counts I and II. Mr. Xu has thoroughly addressed those arguments in his Reply in support of that motion, and incorporates that Reply by reference here. This Reply will focus on the unique arguments raised in opposition to the request for a bill of particulars.

2

As explained further below, the government's position is full of holes. It is impractical; the government has delivered a voluminous amount of discovery on Mr. Xu and directed him to ferret out what the government thinks he did wrong, despite alleging the criminal conduct here in the broadest terms imaginable: Mr. Xu allegedly conspired with an entire intelligence agency *and* "others known and unknown to the Grand Jury," targeting trade secrets and "aviation technology" from companies "around the world." (Indictment (Doc. 1), ¶¶ 12, 13(b).) The government can defend that impractical task only by presuming Mr. Xu's guilt; the government believes Mr. Xu can determine what evidence is relevant because he knows what he did wrong. But that view turns criminal law and the presumption of innocence on its head. Finally, the government's Response make it clear that the government is and has been expanding the scope of alleged criminal conduct far beyond anything contemplated when it filed the Indictment and sought Mr. Xu's extradition from Belgium. That creeping expansion is both fundamentally unfair to Mr. Xu, and forbidden by the U.S.-Belgium extradition treaty used to secure his extradition to the United States.

Mr. Xu is not asking for extraordinary measures. He is not asking for more discovery and he is not asking for the government's trial strategies. He is simply requesting some clarity as to the charges against him so that he may adequately prepare for trial. Neither the government nor the Court should require him to prepare as though he is already guilty, nor should they require him to prepare for a trial that the government is changing and expanding in real time. The Court should instead dismiss Counts I and II altogether (*See* MTD; MTD Reply), or at least order the government to clarify and stabilize the charges it intends to take to trial.

**ARGUMENT**

I.  <u>**A Bill of Particulars is necessary in order to remedy the vagueness in the Indictment.**</u>

    A.  **The government's authorities do not establish that discovery can cure a vague Indictment.**

The government begins its Response by accurately reciting that a bill of particulars is meant to minimize the danger of unfair surprise at trial, and should be required where the defendant would suffer "actual surprise and substantial prejudice." (Opp'n at 2.) The accuracy ends there. The government next states that "[a]ny claimed surprise or prejudice is determined by examining the indictment and other facts known to the defendants, from whatever source," and cites *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) and *United States v. Rey*, 923 F.2d 1217 (6th Cir. 1991). (Opp'n at 2.) And from there, the government asserts that because Mr. Xu has all of the government's discovery, he knows all of the relevant facts and may sort through them for himself. But neither *Phibbs* nor *Rey* say anything of the sort.

In *Phibbs*, the court denied a defendant's request for a bill of particulars identifying the individuals he allegedly supervised in a drug distribution ring. A few facts—all omitted from the government's recitation—stand out. The first is that the defendant had already pleaded guilty to previous charges of drug distribution, and believed that the prior plea deal barred any future prosecutions for drug dealing. 999 F.2d at 1080-82. Thus in *Phibbs*, the government *could* say with a straight face that the defendant knew what he had done wrong, and could therefore sort out for himself the basis of the charges. Second, the court explained that the defendant was not surprised by the list of alleged subordinates at trial because: (a) three of the supervisees were co-defendants in the case, (b) two supervisees were known to be government witnesses and the defendant cross-examined them at a pre-trial hearing, (c) a sixth supervisee "was included in the government's supplemental bill of particulars," and (d) the seventh supervisee was the

4

defendant's ex-wife who lived with him during the conspiracy, and she was named by the government during the grand jury hearing—testimony the government produced to the defendant as *Jencks* Act material. *Id.* at 1086. Had the government given Mr. Xu the same kind of information it did the defendant in *Phibbs*, the parties would not be litigating this point. But the government has instead refused to provide a bill of particulars to Mr. Xu (much less a *supplemental* bill), it objects to turning over *Jencks* Act material sufficiently in advance of trial (the subject of another pending motion), and it has not named witnesses and made them available for pre-trial cross-examination. This case is a far cry from *Phibbs*.

The government's representation of *Rey* is similarly abbreviated. *Rey* involved yet another drug distribution charge. *Rey* does not stand for the proposition that the government need not ever file a bill of particulars or identify the defendant's alleged co-conspirators. It opined only that the co-conspirators do not have to be named if the government proves an agreement *and* the defendant cannot articulate any prejudice in preparing his defense. *Rey*, 1222-23. But for the reasons set forth in the motion to dismiss and reply in support, the government has not alleged a criminal "agreement" to steal trade secrets in the Indictment nor provided any discovery suggesting such agreement. (*See* MTD, Doc. 55); (MTD Reply, Doc. 72.)

It bears mentioning at this point that the government relies almost exclusively on drug distribution cases involving small, contained conspiracies. Those cases typically involve a controlled purchase of narcotics or a testifying co-conspirator, and often the execution of a search warrant on the defendant's person, home, or vehicle, which *also* advises the defendant of the details of the alleged crime. And under those circumstances, it might indeed be unlikely that the defendant would be surprised or prejudiced by the government not naming his handful of confederates.

But the government has done something altogether different here. The government has charged Mr. Xu as the representative of China standing as proxy for every nefarious act the government believes might ever have been committed by the Chinese government or by any one of its nearly 1.4 billion citizens anywhere in the world. It has charged a conspiracy involving individuals not only unknown to Mr. Xu, but unknown to the Grand Jury. And the conspiracy is extraordinarily broad, encompassing the entire intelligence apparatus of the most populous nation on earth (and others). It simply cannot be honestly analyzed by reference to small-time, small-town drug conspiracies run out of someone's basement or apartment by a defendant and his ex-wife.

Nothing in *Phibbs*, *Rey*, or any other case cited by the government allows the government to proceed to trial with a constantly shifting and expanding theory of the case without giving the defendant some idea of what it intends to try. If the government believes there was indeed a conspiracy in which Mr. Xu was involved, the government must be required to lock in its theories and clearly announce what those theories are. The government cannot be allowed to misuse its vague Indictment as an ever-widening cache of criminal charges and alleged criminal activity in order to punish an entire nation through the presence of one individual.

**B.**      **Discovery has not cured the vagueness in the Indictment.**

The government repeatedly asserts that there can be no surprise or prejudice in this case because it has provided Mr. Xu with mountains of discovery. The government apparently expects Mr. Xu to divine for himself what the government believes he did wrong, and to sift through discovery without any frame of reference for what the case is really about.

One problem with the government's position is that it is simply impractical. The government has dumped an enormous amount of discovery on Mr. Xu, and continues to drop

26468554.3

additional discovery at sporadic intervals.[2] Mr. Xu is simply trying to understand the scope of the charges against him so that he might make sense of the mountains of discovery which are largely untranslated, and for which the government has refused to identify exculpatory and impeaching evidence as is required under *Brady* and *Giglio*.[3] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

The second problem is that the government assumes that Mr. Xu is guilty, and it insists that the parties conduct themselves as though Mr. Xu is guilty and must prove his innocence at trial. The government has refused to identify the actual conspiratorial agreement, the participants to the conspiracy, the trade secret or proprietary information, the victims of the conspiracy (other than GE Aviation), or the locations where the conspiracy allegedly occurred.[4] The government said that the discovery came from electronic devices, ███████████████████████████ ███████████████████████████, so Mr. Xu is in the best position to know what the discovery contains. That is, the government believes that Mr. Xu can read through the discovery and ferret out the crime the government believes he committed *because* he is guilty and knows what he did wrong. But the presumption of innocence does not allow the government or the Court to proceed that way. The government bears the burden of proving that Mr. Xu is guilty; it therefore cannot assert as a guiding litigation principle that Mr. Xu cannot be surprised at trial *because* he is aware of the proof of his own guilt.

---

[2] The government's last discovery production occurred on December 3, 2019 at the status conference. (Transcript of December 3, 2019 Status Conference, at 21:24-22:3) ("Dec. 3, 2019 Tr."). The discovery contained "some translations and some other matters that came in sort of later, some of it from overseas." (*Id.* at 22:2-3.)

[3] *See* Defendant's Motion for Disclosure of *Brady*, *Giglio*, and Jencks Act Materials (Doc. 54).

[4] *See* MTD (Doc. 55); MTD Reply (Doc. 72).

7

The government's Response here and in response to the motion to dismiss reveal yet a third problem. It is clear that during the fifteen months since Mr. Xu was extradited from Belgium and "temporarily" detained, the government has taken advantage of the Indictment's vague and sweepingly broad allegations as a means to expand the charges beyond what the government originally contemplated (and beyond what it outlined to the Belgian government to secure Mr Xu's extradition). Moreover, the government *continues* to investigate and reshape the conduct it intends to charge at trial. The government cannot meaningfully say that Mr. Xu can prepare a defense when the government itself continues to expand what it believes to be the relevant, triable conduct.

The government's various memoranda have shoehorned into this case additional criminal conduct, participants, and victims neither referenced in the Indictment nor contemplated at the time the Indictment was issued. Where the Indictment alleges Mr. Xu conspired to steal from aviation companies, the government's response to the motion to dismiss accuses him of plotting against "non-Chinese companies *and countries*." (Response in Opposition to the Motion to Dismiss, Doc. 68 at 6, 11-12.) Meanwhile the Response here attempts to ███████ ███████████████████████████████████████████ conduct nowhere reflected in the Indictment *or* the extradition papers. (Opp'n at 9-10.) In other words, the government is continuing to investigate its case more than a year after Mr. Xu was extradited the United States so that it might find Mr. Xu guilty of crimes or conspiracies that fall far outside its Indictment and its cooperation agreement with Belgium.

As the Indictment creeps, so does the government's attempt to now broaden the conspiracy from one to two, to increase the number of victims from just GE Aviation to multiple victims still unknown, from an attempt to steal GE Aviation's trade secrets to multiple attempts

8

to steal trade secrets generally from the aviation industry as a whole, from non-Chinese companies outside of China, then entire countries (other than China)[5], ████████████ ████████████████████████████████████████████████ ████████████ On top of all this, the government is promising to show that the conspirators all "knew each other, communicated with each other, and worked with each other" on two "distinct" conspiracies that are apparently supported by the exact same conduct in the Indictment. (Opp'n at 5, 11; Indictment ¶¶ 13-14, 17-18.) If the government is not required to inform a defendant as to the basic who, what, where, and when, of a charged conspiracy, how then is a defendant supposed to prepare for trial and avoid unfair surprise? And how is a defendant supposed to do so if the who, what, where, and when are constantly changing as the government keeps him solitarily confined in pre-trial detention?

The government's ever-shifting theory of the case creates still a fourth flaw in its argument. Under the Rule of Specialty in the U.S.-Belgium extradition treaty, the government may prosecute Mr. Xu for only "the offense for which the extradition has been granted or a differently denominated offense based on the same facts on which extradition would be granted." U.S.-Belgium Extradition Treaty, Art. 15.[6] Mr. Xu requests a bill of particulars in part to ensure that the government is abiding by its treaty obligations.

---

[5] *See* United States' Memorandum in Opposition to Defendant's Motion to Dismiss Counts 1 and 2 (Doc. 68) at 6, 12.

[6] *Instrument Amending the Treaty of April 27, 1987 Between the UNITED STATES OF AMERICA and BELGIUM*, Treaties and other international Acts Series 10-201.3 (Dec. 16, 2004),https://www.state.gov/wp-content/uploads/2019/02/10-201.3-Belgium-Extradition.pdf.

**C.** **The government cannot proceed to trial without identifying a basic who, what, when, and where of the charges to be tried.**

Mr. Xu has explained elsewhere that the Indictment is too vague to adequately inform him of the charges against him, to allow him to avoid double jeopardy, or to comply with the Rule of Specialty in the U.S.-Belgium Extradition Treaty. (MTD; MTD Reply) He will not rehash those arguments here, but a number of the government's case citations merit close analysis, and ultimately confirm Mr. Xu's position here and in the motion to dismiss.

**1.** **The government should be required to identify co-conspirators.**

The government maintains that it does not have to identify co-conspirators, either in an indictment or a bill of particulars. While these issues are also addressed in the motion to dismiss, the government specifically relies on *United States v. Crayton*, 357 F.3d 560, (6th Cir. 2004); *United States v. Largent*, 545 F.2d 1039 (6th Cir. 1976); and *United States v. Page*, 575 F. App'x 641 (6th Cir. 2014) in its argument here.[7] But none of those cases say quite what the government would like. For the reasons outlined below and in the motion to dismiss, the government must identify Mr. Xu's alleged co-conspirators with some particularity.

Begin with *Crayton*, another drug conspiracy case, which is wholly inapposite here. The defendant, Crayton, and his alleged co-conspirator were tried together; the trial ended with the jury deadlocked on the charges against Crayton. After the first trial, Crayton moved for a bill of particulars to gather more information about the alleged conspiracy, which the court denied. Crayton was convicted at a second trial, which was "virtually identical" to the first, with the exception of a rebuttal witness who named potential co-conspirators. *Crayton*, 357 F.3d at 568. The Sixth Circuit affirmed the conviction and found no prejudice from the denial of the motion

---

[7] The government also cites *Rey*, which is addressed above.

for a bill of particulars because "[t]he Government was not aware of [the rebuttal witness's] testimony until the day before her rebuttal, and it is thus unlikely that a bill of particulars given before trial would have provided Clayton with helpful information." *Id*. at 569. The court explained that the rebuttal testimony *was* a surprise—it simply was not a surprise that a bill of particulars would have avoided. *Id.* Suffice it to say, Mr. Xu has not had the luxury of seeing the government's theory of the case in a trial already, nor is the government in a position to say that a bill of particulars would do Mr. Xu no good because the government *might* come by new evidence later.

*Largent* is likewise inapplicable here. In an brief statement without analysis, the Sixth Circuit declared that a motion for a bill of particulars seeking "the names of all the Government's witnesses" was overbroad. *Largent*, 545 F.2d at 1043-44. Mr. Xu has not asked for the names of all of the government's witnesses; he has simply asked for a clear description of the crime he is accused of committing—one that narrows the universe from an entire intelligence apparatus targeting aviation around the world to whatever it is the government actually intends to pursue at trial.

Finally, *Page* appears to be the only case the government cites that actually addresses the role of discovery in clarifying an indictment. And *Page* recognizes Mr. Xu's objections: the government cannot remedy an erroneous denial of a bill of particulars "by offering up mountains of documents in discovery instead." *Page*, 575 F. App'x at 643 (internal quotations omitted). The difference in *Page* was that the defendant "[did] not claim that his discovery process was in fact unmanageable or that he was unable to prepare a defense." *Id.* But here, Mr. Xu has explained at length why the vague Indictment and "mountains of [untranslated] documents" are in fact unmanageable and prevent him from preparing a defense.

The Response adds a new wrinkle. ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██

### 2.    The government should be required to identify the time and location of the conspiracy.

As written, the Indictment denies Mr. Xu the opportunity to learn when the agreements to steal unidentified trade secrets were allegedly formed or where the alleged acts occurred. (*See* Indictment ¶ 12 ("Southern District of Ohio" and "elsewhere").)  In response to the request for particularity, the government simply concluded "there is no basis for a bill of particulars to identify the 'location and timing' of the conspiracies." (Opp'n at 10.)  In its opposition, the government ignored the authority cited by Mr. Xu and affirmatively missed its own mark arguing "[a]s to the 'location' of the conspiracies, Rule 7 does not entitle a defendant to learn all overt acts that might be proven, or the names of all co-conspirators." (Opp'n at 8.) Indeed, there is ample authority demonstrating the Court may order the government to disclose the specific locations and times when the crimes allegedly occurred in order to enable the defendant to investigate the charges and prepare his defense. (*See* Defendant's Motion for a Bill of

12

Particulars, Doc. 56, at 11-12 (citing numerous examples in support, including: *United States v. Gonzales*, No. 2:07-CR-071-JDH-2, 2007 WL 1245884 (S.D. Ohio Apr. 27, 2007) (known locations outside the Southern District of Ohio); *United States v. Lawrence*, No. C2-05-CR-11, 2005 WL 8159643 (S.D. Ohio Oct. 7, 2005) (granting motion for bill of particulars and ordering the government to include additional information such as the nature of acts or statements defendant allegedly engaged in or uttered during the crime).)



The government also argues that because the discovery allegedly came from ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Xu should be able to pick out some additional conspirators from amongst the broad discovery which came from a wide variety of sources, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Opp'n at 8. The government's position however, wrongly presumes that Mr. Xu is guilty, that Mr. Xu understands and agrees with the government's charges, and that even though the grand jury did not know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mr. Xu should somehow know which individuals ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were engaged in the unknown conspiracy.

The purpose of a bill of particulars is to ensure a defendant is informed of the charges against him to avoid being subjected to unfair surprise. Whether through name identification or reasonable description, Mr. Xu is entitled to know with whom he has allegedly conspired. The government's strategy to hide the ball and argue that it need not disclose to Mr. Xu with whom he is charged with conspiring circumvents the right to a fair trial and effectively ensures Mr. Xu will be unfairly surprised and prejudiced as a result. The government's provision of ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

███████████████████████████████████████

Mr. Xu is entitled to know or have a reasonable way to figure out with whom the government thinks he conspired.

### 3. The government should be required to identify the alleged victims.

The Indictment charges Mr. Xu with allegedly conspiring to steal unidentified trade secrets from only one single company, "Victim Company A" (Indictment ¶8) which was confirmed to be GE Aviation. Indictment ¶2 ("("***THE* VICTIM COMPANY AND THE PROPRIETARY INFORMATION** 6. Victim Company A has offices in the Southern District of Ohio." (emphasis added).). In its Response, the Government seeks to expand the original charges to add multiple new victims including unidentified and unnumbered "non-Chinese companies and countries." (Opp'n at 4.) Mr. Xu's request for clarity through a bill of particulars is not a license for the government to re-charge its case to include responsibility for harm allegedly caused to additional victims. The government must be required to adhere to the allegations contained in the Indictment and clarify that its version of justice is only sought for alleged harm having been caused to one victim.

### 4. The government should be required to identify the conspiracy it intends to charge, rather than to amend the Indictment by stealth.

The government's memoranda also improperly attempt to expand the Indictment by arguing that the recent discovery productions contain new and unrelated conspiracies including, for example, that Mr. Xu and ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

14

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ Similarly, for the first

time in the government's Response, the government also tried to add new conspiracies not

contained in the Indictment including, to: ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

The government also tried to bolster its expansion strategy by arguing Counts 1 and 2

reflect two separate conspiracies. (Opp'n at 4.) However, this attempt to cause the scope of the

Indictment to creep wider is belied by the government's acknowledgment that the charged

conduct for both counts incorporates the "same conspiracy by Xu" ("Count 2 alleges that

defendant Xu engaged in a similar conspiracy [as Count 1] to steal trade secrets"), the same

objective ("[t]he object of the conspiracies was to obtain technical aviation information,

including trade secrets"), and spans the same time frame ("both conspiracies occurred from 2013

to at least April 1, 2018.") (Opp'n at 4, 11.) ██████████████████████████████

███████████████████████████████████████████████████████

26468554.3

██████████████████████████████████████████████. In other words, Mr. Xu is simply asking the Court to require the government to issue a bill of particulars that clarifies the Indictment's *original* charges without adding anything new.

In sum, the government has refused to identify the co-conspirators or the actual conspiratorial agreement, is attempting to expand the number of victims and conspiracies (and give first notice of the same) through opposition memoranda, and now refuses to disclose the timing and location of the alleged conspiracy. Constitutional principles of fairness and justice and even ordinary reasonableness require that a criminal defendant be adequately informed of the charges against him. The government simply cannot withhold relevant information that it has in its possession at the expense of Mr. Xu being able to adequately prepare for trial.

## II.     Mr. Xu's motion is timely.

Defendant's motion is timely. The Court has authority to order the government to provide a bill of particulars to provide clarification necessary to remedy an impossibly vague indictment. Fed. R. Crim. P. 7(f) (a defendant may move for a bill of particulars more than 14 days after arraignment if the court permits.).

In this case, the timing of Defendant's motion was previously addressed and agreed to by the Court and the parties. Specifically, during the April 12, 2019 conference, the Court asked the parties to discuss the status of the case and the anticipated timing for filing their respective motions including CIPA, *Brady*, and others. (*See* April 12, 2019 Status Conference Transcript, Doc. 44, at 41:4-45:25.) On behalf of the government, Mr. Mangan acknowledged "[o]bviously, there's, it sounds like, a series of motions that we will need to address at some point." (*Id*. at 42:15-16.) At the Court's suggestion, the parties agreed to discuss relevant deadlines together. (*Id*. at 43:2-45:4.) The Court recognized that "[i]t may be easier to wait to set a motion deadline or to even discuss a motion deadline until you know how long it will take for your client to get

16

the discovery." (*Id.* at 45:16-25.) The parties both understood that the motion deadline would be set at a later date and the government cannot now shirk its duty to provide adequate notice to the Defendant.

The government is correct that a bill of particulars is designed to address a deficiency in the Indictment, such as that which has occurred here. (Opp'n at 2.) And yet the government contradicts itself by arguing on the one hand that the defense "had many months to review" and "the benefit of thousands of pages of discovery" and shortly thereafter arguing that any lack of certainty should have been "based on the face of the Indictment" so there "was no need for the eleven-month delay in raising this motion." (Opp'n at 2.) In further contradiction, during the December 3, 2019 status conference, the government acknowledged that it had just made its seventh production of discovery at that time and recognized that "it's going to take time for them to go through it." (Dec. 3, 2019 Tr. 22:12-13.) It appears that the government's actual concern is that if more information or clarification is provided, then Mr. Xu will be informed well-enough to defend himself; absent this concern, there could be no harm in clarifying the existing charges. Whatever the government's actual position, the passage of less than a year after arraignment, the mountains of disjointed and selectively translated discovery that has been dumped (and continues to be dumped), and the continuing vagueness of the Indictment only compound the Defendant's need to understand the conduct against which he is required to defend. Mr. Xu is not asking the government to create something new or unique, in fact, the government must be prohibited from doing that; rather, Mr. Xu is simply asking for clarification to an existing document which will not subject the government to prejudice or undue burden. Under circumstances such as these, there can be no dispute that Rule 7 authorizes the Court to order a bill of particulars.

## CONCLUSION

For the foregoing reasons, Mr. Xu requests this Court grant its Motion for Bill of

Particulars as to all counts set forth in the Indictment.

Respectfully submitted,

*/s/ Robert K. McBride*
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Robert K. McBride *(pro hac vice)*
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
kohnen@taftlaw.com
cors@taftlaw.com
rmcbride@taftlaw.com

Florian Miedel *(pro hac vice)*
Miedel & Mysliwiec LLP
80 Broad Street, Suite 1900
New York, NY 10004
Telephone: (212) 616-3042
Fax: (800) 507-8507
fm@fmamlaw.com

COUNSEL FOR DEFENDANT

18

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020 a copy of the foregoing was filed under seal. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.

*/s/ Robert K. McBride*

26468554.3