**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:18-cr-00043 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | **DEFENDANT'S REPLY IN SUPPORT** |
| YANJUN XU, | : | **OF MOTION TO DISMISS COUNTS I** |
| a/k/a Xu Yanjun, | : | **AND II OF THE INDICTMENT** |
| a/k/a Qu Hui, | : | |
| a/k/a Zhang Hui, | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Defendant. | : | **[REDACTED]** |

## INTRODUCTION

An indictment must describe the alleged offense "with reasonable particularity of time, place, and circumstances." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875). Criminal Rule 7 provides that the indictment must include, *inter alia*, a "definite written statement of the essential facts constituting the offense." Each count must allege only one criminal offense. Fed.R.Crim.P. 12(b)(3)(B)(i). These formal requirements are meant to ensure that an indictment serves its constitutional functions: to "fairly inform[ ] a defendant of the charge against which he must defend," to "enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense," and to protect the defendant's right to a unanimous jury verdict. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (notice and double jeopardy); *Russell v. United States*, 369 U.S. 749, 764 (1962) (same); *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (unanimity).

The government asserts in its Memorandum in Opposition to Defendant's Motion to Dismiss Counts 1 and 2 ("Response") that an indictment satisfies both the formal and functional requirements as long as one may "infer" a singular agreement (and *only* a singular agreement)

among unnamed, unknown co-conspirators to steal unidentified secrets from unidentified victims "around the world" over a five-year timeframe. To the extent that the Indictment is vague, the government says, it may cure that vagueness through discovery and trial evidence. The government's position is untenable on its face, but the Response and the circumstances of this case make it all too clear that the Indictment here is inadequate.

The government asserts that the Indictment can give adequate notice and double jeopardy protection without having to allege or prove much of anything. The government first declares that under *Hamling v. U.S.* 418 U.S. 87, 117 (1974) and *U.S. v. Anderson*, 605 F.3d 404, 412 (6th Cir. 2010), an indictment is sufficient as long as it recites the statutory language. (Opp'n at 1-4.) But neither case stands for that proposition. The government then asserts that because the "essence of the crime is the agreement to commit the crime," it does not have to identify with any particularity the co-conspirators (i.e. those with whom the agreement was formed), the thing to be stolen (i.e. the crime to be committed), or the victim of the conspiracy (i.e. against whom the crime is to be committed). (Opp'n at 4-9.)

But when the government moves to its argument on duplicity in the Indictment, the government *then* asserts that it does not have to prove an agreement at all—the agreement may be "inferred." (Opp'n at 9.) But inferred from what? Remarkably little, says the government. The conspirators do not have to be directly associated, do not have to know each other, do not have to be members of the conspiracy at the same time or in the same place, and do not have to target the same objects or victims. (Opp'n at 9-12.) It is enough, according to the government, that the co-conspirators assent to the same "common enterprise." (Opp'n at 10.) One is left to wonder what could possibly be "common" under those circumstances.

2

The government all but admits that it holds all of the informational cards, but promises to fill in the gaps in the Indictment with discovery and its trial evidence. But as Mr. Xu has outlined in his motions for *Brady* material and for a bill of particulars, the government has already made discovery review incredibly difficult in this case. Even setting the government-imposed hurdles to one side, the government's "indict first, fill in the gaps later" approach is antithetical to the purposes of an indictment. The government cannot argue that the *Indictment* is sufficiently clear because *post-indictment* discovery has filled in the gaps in the fifteen months since Mr. Xu was extradited and confined in prison. *See United States. v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("Further, courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based.") Further, deferring to the government's interpretation of the Indictment "would clearly infringe upon the grand jury's function." *United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012). The very point of an indictment, and the grand jury's role in issuing it, is to protect criminal defendants from the whims of the prosecution.  *See United States v. Williams*, 504 U.S. 36, 47 (1992) ("In fact the whole theory of its function is that it belongs to no branch of institutional government, serves as a kind of buffer or referee between the Government and the people.").

The government offers a case citation or two for each of its specific propositions of law, and each *may* be accurate on its own.[1] But taken together, the government has stripped all form and function out of the Indictment. Mr. Xu cannot be on notice of the charges against him if, as the government argues (a) the co-conspirators do not have to be known even to the grand jury that handed down the Indictment, (b) the co-conspirators do not have to be members of the

---

[1] Though, as explained below, the government's Response is filled with truncated and inaccurate recitations of many of the cases it cites.

conspiracy in the same place, at the same time, *or* for the same target as Mr. Xu, (c) the co-conspirators do not have to *know* or be acquainted with Mr. Xu, (d) the agreement between these unknown and potentially unconnected individuals may be "inferred," (e) the Indictment does not have to identify the objects to be stolen, and (f) the Indictment does not have to identify the victim to be robbed.

This no ordinary prosecution. The government extradited Mr. Xu from Belgium, pursuant to the U.S.-Belgium extradition treaty. Under the Rule of Specialty provisions in that treaty, the government may try Mr. Xu for only "the offense for which the extradition has been granted or a differently denominated offense based on the same facts on which extradition would be granted." U.S.-Belgium Extradition Treaty, Art. 15. The government is therefore obligated to give Mr. Xu enough information to invoke the Rule of Specialty in future proceedings.[2]

The government's Response otherwise says remarkably little. The Response repeatedly asserts *that* the Indictment is sufficient, but does little to substantiate that assertion. The government insists that the Indictment must only recite the statutory language, but Criminal Rule 7 requires, *inter alia*, a "definite written statement of the essential facts constituting the offense charged." Among the "essential facts" constituting a conspiracy to steal trade secrets are someone to conspire with and something to steal; the government refuses to identify either, promising to fill in its story later. Rather than give Mr. Xu adequate notice and the opportunity to avoid double jeopardy, the Indictment creates yawning gaps through which the government may conduct a trial by surprise. The Fifth and Sixth Amendments demand more.

---

[2] This is not idle speculation. ███████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████.

## ARGUMENT

**I.**    **Counts I and II must be dismissed as unconstitutionally vague.**

    **A.**    **An indictment is not clear simply because it recites the text of the criminal statute.**

An indictment must describe the alleged offense "with reasonable particularity of time, place, and circumstances, *United States v. Cruikshank*, 92 U.S. 542, 558 (1875). Criminal Rule 7 provides that the indictment must include, *inter alia*, a "definite written statement of the essential facts constituting the offense." In its Response, the government simply ignores these requirements, instead asserting that an indictment is sufficient as long as it recites the statutory language. (Opp'n at 1-4) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974) and *United States v. Anderson*, 605 F.3d 404, 412 (6th Cir. 2010).)  But neither *Hamling* nor *Anderson* stand for that proposition.

The *Hamling* Court opined that the statutory language was adequate *only if* the words of the statute "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Hamling*, 418 U.S. at 117. The Court observed that "[u]ndoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.* at 117-118 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). Contrary to the government's argument, the *Hamling* Court did *not* announce a blanket rule that an indictment need only recite the words of the statute. *Hamling* is instead entirely consistent with the Supreme Court's earlier pronouncement in *Russell* that "an indictment not framed to apprise the defendant with reasonable certainty, of the nature of the

accusation against him is defective, although it may follow the language of the statute." *Russell*, 369 U.S. at 765 (cleaned up).

On page 3 of its Response, the government erroneously describes *Anderson* as follows:

> In *Anderson*, the Sixth Circuit noted that the indictment clearly tracked the language of the statute, included the relevant time period, and therefore contained the elements of the offense. Because both of the *Hamling* requirements were satisfied, the Sixth Circuit held that the indictment stated an offense.

(Opp'n at 3.)

The government tells a little less than half of the *Anderson* story. In *Anderson*, the government charged the owner of a healthcare facility with Medicaid fraud. *Anderson*, 605 F.3d at 407. The Court found that reciting the language of the Medicaid fraud statute satisfied only the *first* functional purpose of the indictment (or the first *Hamling* requirement, in the government's Response): giving the defendant notice of the charges against him. But it did so only because— as *Hamling* commands—the Medicaid fraud statute fully and unambiguously sets forth all of the elements of the offense.[3] *Id.* at 411 ("Given these specific allegations, Anderson was fairly informed of the charge against which she had to defend.") But *Anderson* did not announce a blanket rule that any and all indictments that merely parrot the statute will adequately state the nature of the charges against the defendant.

Nor did *Anderson* announce a rule that reciting the statutory language will meet *both* *Hamling* requirements. Rather, the indictment in *Anderson* satisfied its second functional purpose—giving the defendant enough information to plead prior acquittal or conviction—only

---

[3] Anderson was charged with one count of Medicaid fraud in connection with her ownership of a single healthcare facility. Needless to say, that is a far cry from an international conspiracy involving co-conspirators "known or unknown to the grand jury" and the entire Chinese intelligence apparatus.

because it "also included the relevant time period and the specific event that triggered the charge against [the defendant]." *Id.* Notably, the government's recitation of *Anderson* omits the reference to the "specific event" that triggered the prosecution. (Opp'n at 3.)

Both *Hamling* and *Anderson* confirm what the Supreme Court had already commanded in *Cruikshank* and *Russell*: an indictment must go beyond threadbare recitations of statutory text— "it must descend to particulars. . . . [f]or this, facts are to be stated, not conclusions of law alone. . . . with reasonable particularity of time, place, and circumstances." *Cruikshank*, 92 U.S. at 558. And as explained below, the relevant "particulars" here are the identity of Mr. Xu's alleged co-conspirators, the targets and scope of the conspiracy, and the alleged trade secrets to be stolen.

### B. The Indictment does not provide Mr. Xu with adequate notice of the alleged co-conspirators.

As to the identity of the co-conspirators, the government's response begins with a straw man. The government asserts that the Indictment "does not need to identify the names of co-conspirators." (Opp'n at 4.) Mr. Xu acknowledged in his motion to dismiss that the Indictment can refer to un-*named* co-conspirators. (Motion to Dismiss ("MTD") at 7.) But it does not follow that the Indictment may refer to wholly *unidentified* co-conspirators—much less co-conspirators "unknown to the grand jury." Mr. Xu merely asked the government to identify the alleged co-conspirators with enough particularity to allow him to prepare a defense and plead prior acquittal or conviction to future prosecutions. (*Id.*) Moreover, the government must identify the co-conspirators with enough particularity for Mr. Xu and the Court to ensure that the government abides by the Rule of Specialty in the extradition treaty it used to bring Mr. Xu to the United States in the first place. Surely that level of particularity can be found somewhere between naming the co-conspirators (the government's strawman) and referring to "others known and unknown to the grand jury" (the Indictment).

7

Having refuted an argument Mr. Xu never made, the government next asserts that it *has* adequately identified Mr. Xu's alleged co-conspirators: "C.F. and others known and unknown to the grand jury." (Opp'n at 5.) But "others known and unknown to the grand jury" could include literally anyone on earth. The government cannot say with a straight face that the Indictment meaningfully identifies for Mr. Xu individuals that were never identified to the grand jury that handed down the Indictment. *See Russell*, 369 U.S. at 770 (explaining that a bill of particulars cannot save an invalid indictment "[f]or a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.")

The government purports to narrow the pool of co-conspirators to, *inter alia*, unidentified individuals affiliated with the entire Chinese intelligence apparatus, two trade associations, and a university approximately twice the size of Northern Kentucky University. (Opp'n at 5.) Which is to say, *at best* the government in the Indictment "identifies" potential co-conspirators that could number in the hundreds or thousands. As a practical matter, that provides no more clarity or notice to Mr. Xu than "others known and unknown to the grand jury" does. That is a particularly glaring shortcoming in light of the government's unsubstantiated assertion in its Response that all of the co-conspirators knew each other, communicated, and regularly worked together. (Section II, *infra*.)

**C.** **The Indictment does not allege a criminal agreement prior to March 2017.**

As Mr. Xu explained in his motion to dismiss, "[t]he only factual allegations included in the Indictment to support the existence of an agreement prior to March 2017 are two isolated 'communications' from December 2013 and April 2014 which, on their face, do not describe an agreement at all, much less one to engage in illegal conduct." (MTD at 8.) The motion to dismiss explains in detail why neither communication reveals an agreement to do anything—certainly not to steal trade secrets in violation of the EEA—and why neither communication relates in any

8

way to the core allegations of the Indictment regarding an alleged conspiracy during 2017 and

2018 to obtain technology from GE Aviation. (*Id.* at 8-9.)

The government does not respond to that argument at all. Indeed, the Response does not

even appear to acknowledge that Mr. Xu specifically challenged the pre-March 2017 allegations.

(Opp'n at 5-7.) The government's Response consists entirely of quoting from the Indictment, but

with no explanation of *why* the statements in the Indictment are sufficient to allege a

conspiratorial agreement based on two "communications." Repetition is no substitute for

argument.[4]

### D.     The Indictment does not meaningfully identify the scope of the alleged conspiracy.

Mr. Xu argued in the motion to dismiss that the government must identify the alleged

victims and geographic scope of the conspiracy with some meaningful particularity. (MTD at 10-

11.) In particular, Mr. Xu pointed out that the Indictment itself is inconsistent on the universe of

potential victim companies, and that the vagueness of the Indictment makes it impossible to

determine what charges he must prepare for, and likewise makes it impossible to plead prior

conviction or acquittal to future prosecution on the basis of this Indictment. But as if to validate

Mr. Xu's concerns about the government exploiting the vagueness of the Indictment, the

government's Response expands the pool of potential victims beyond "companies" to include

"companies and countries." (Opp'n at 6, 12.) That is precisely the kind of creeping accusations—

or rather, constructive amendment—that Mr. Xu feared from the government's initial broad and

---

[4] The Response begins on this point by asserting that there are two parallel conspiracies alleged
in the Indictment. (Opp'n at 5.) But that does nothing to explain how the 2013 and 2014
communications establish or even relate to either alleged conspiracy (though the government
apparently believes that the communications established *both* "distinct" conspiracies). *See*
Indictment, ¶¶ 13, 17.

non-specific allegations.[5] At minimum, the government's Response suggests that it believes the alleged conspiracy is broader than what is alleged in the Indictment, and intends to argue as much at trial. Mr. Xu surely cannot adequately prepare a defense to charges the government appears to be constructively amending in real time.

Rather than respond to that argument, the government again constructs a straw man, arguing that it does not have to "identif[y] by name" all intended victims. (Opp'n at 7.) Mr. Xu asked for no such thing; he merely asks the government to describe his alleged offense with reasonable particularity—which surely exists somewhere between naming every potential victim and undifferentiated "non-Chinese companies and countries."

The government also asserts in its response that it does not have to define the geographic scope of a conspiracy. (Opp'n at 7). That single sentence is the whole of the government's argument, and it is incorrect.[6] An indictment must describe the alleged offense with "reasonable particularity of time, *place*, and circumstances." *Cruikshank*, 92 U.S. at 558 (emphasis added).

Mr. Xu only asks what the law requires: that the government describe the offense with enough particularity to allow Mr. Xu to prepare a defense and to ascertain in a future prosecution whether he may plead prior acquittal or conviction. The government has alleged that Mr. Xu conspired with the entire Chinese intelligence apparatus to steal information from aviation companies around the world. The government also believes that Mr. Xu targeted GE Aviation to steal information of some kind. That is, the Indictment alleges a global conspiracy, borne out of a

---

[5] No matter how broadly the government reads the Indictment, a conspiracy to steal trade secrets from "countries" is outside the factual basis for his extradition, and thus any amendment of the Indictment along those grounds—whether constructive or express—would violate the Rule of Specificity in the U.S.-Belgium Extradition Treaty.

[6] The government goes on to state that it has provided the defense with thousands of pages of discovery. But for the reasons stated in section I.F., *infra*, discovery cannot cure a defective indictment.

particular event. But suppose that later this year, the government discovers that members of MSS conspired to steal information from Lockheed-Martin between 2013 and 2018, and the government then seeks to charge Mr. Xu with conspiracy to steal trade secrets in connection with that conspiracy. Could Mr. Xu plead prior acquittal or conviction to those charges based on the Indictment here?

      **E.**    **The Indictment does not identify the trade secrets targeted by the alleged conspiracy.**

As explained in Mr. Xu's motion to dismiss, if the government charges a defendant with a theft offense, it must identify the stolen articles. *Cruikshank*, 92 U.S. at 558. Consistent with that rule, an indictment under the EEA must identify with specificity the trade secrets that the defendant allegedly set out to steal. *United States v. Case*, No. 3:06-cr-210, 2007 WL 1746399, at *3 (S.D. Miss June 15, 2007); 142 Cong. Rec. S12201, S12213 (daily ed. Oct. 2, 1996).

The government's Response begins with misdirection, asserting that it does not have to *prove* an actual theft of a trade secret or *prove* "the actual trade secrets that were targeted." (Opp'n at 8.) The government relies on and misstates the holdings of *United States v. Yang*, 281 F.3d 534 (6th Cir. 2002); *United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998)[7]; and *United States v. Liew* 2013 WL 2605126 (N.D. Call 2013). *Yang* and *Hsu* stand for the proposition that legal impossibility is not a defense to a conspiracy to steal trade secrets conviction. *Yang*, 281 F.3d at 541; *Hsu* 155 F.3d at 202-03.[8] That is, if a defendant believes that the information he set out to steal is a trade secret, then he may be convicted of conspiracy to steal trade secrets, even if the

---

[7] The government refers to *Hsu* as a Seventh Circuit case from 2002.

[8] *Liew* adopted the government's erroneous interpretation of *Yang* and *Hsu*. 2013 WL 2605126, at *5.

information to be stolen is *not* actually a trade secret. *Id.* But neither case absolves the
government of its obligation to identify what the defendant allegedly set out to steal.

The government then flatly misrepresents *United States v. Case*. The government states
that "[i]n *Case*, the defendant only challenged the substantive offense for the actual theft of a
specific trade secret. The conspiracy charge in *Case* was not challenged on the same basis."
(Opp'n at 8.) The district court in *Case* saw things differently:

> Defendants urge that the indictment is unconstitutionally vague.
> Specifically, they contend that Counts 2 and 3 [theft of trade
> secrets] are insufficient as neither count purports to meaningfully
> identify the trade secret which was allegedly stolen or copied. . . .
> Finally, they argue that because the objects of the conspiracy fail
> due to vagueness, the conspiracy count [conspiracy to steal trade
> secrets] must likewise fall.

*United States v. Case*, No. 3:06-cr-210, 2007 WL 1746399, at *2 (S.D. Miss. June 15,
2007). *See also id.* at *5 ("The court next reaches defendants' argument that because the
substantive counts are subject to dismissal, the conspiracy count necessarily falls."). The court
found that the substantive theft counts had to be dismissed as unconstitutionally vague. The
government could not allege only that the defendants stole "trade secrets" or "a trade secret," nor
could it describe the allegedly stolen secrets "by category." *Id.* at *4. The court went on to say
that it agreed in part with "defendants' argument that because the substantive counts are subject
to dismissal, the conspiracy count necessarily falls." *Id.* at *5. The court permitted the conspiracy
count to go forward solely because the "overt act" section specifically identified the secrets to be
stolen: "an Eaton [the victim company] design drawing of a spline shaft and piston" and "Eaton
CADs." *Id.* at *6. The Indictment here is devoid of anything approaching that level of specificity.

### F.     Post-Indictment discovery cannot cure a deficient Indictment.

The government asserts that post-Indictment discovery has cured any vagueness in the Indictment by providing details about the co-conspirators and their interactions. (Opp'n at 5, 8.) As both a legal matter and a practical matter, the government is mistaken.

Courts evaluate an indictment based on what it contains, and not on the way the government later interprets it or on the evidence the government later produces. *See United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012); *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("Further, courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based."). And a post-indictment bill of particulars cannot save an impermissibly vague indictment. *Russell*, 369 U.S. at 770. As the Supreme Court explained in *Russell*, the Fifth Amendment requires a prosecutor to secure an indictment from a grand jury before hauling a defendant to court, so allowing the prosecutor to backfill a vague indictment—or forcing the court to do so—"would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Russell*, 369 U.S. at 770. It naturally follows that if the government cannot clarify an indictment with a bill of particulars (a formal document in which the government details its theory of the case), then it cannot coherently clarify an indictment via rolling a production of the discovery in tiers, several of which contain hundreds of pages of discovery (much of it in a foreign language) over fifteen months. And as the Court is already aware, the government objects to even providing a bill of particulars.

On the practical side, the numerous complex logistical challenges make discovery access and review unusually problematic in this case. The government has refused to translate documents outside those that it intends to use in its case in chief (already the subject of a pending motion). These issues are compounded by language barriers, the restrictions of a protective

13

order, the ongoing production of huge volumes of discovery, and Mr. Xu's detention in a facility

four hours away from his attorneys which severely limits his ability to communicate with

counsel or assist in the preparation of his defense. And the government has refused to

affirmatively search for and identify *Brady* and *Giglio* material.

To the extent that discovery is relevant to the indictment, it only confirms the core

deficiency in the indictment. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████[9]

## II.  <u>The Indictment must be dismissed as duplicitous.</u>

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count."

*United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (citation omitted). "The overall vice of

duplicity is that the jury cannot in a general verdict render its finding on each offense, making it

difficult to determine whether a conviction rests on only one of the offenses or on both,"

depriving the defendant of his right to a unanimous jury verdict. *Id.* A duplicitous indictment

also deprives the defendant of adequate notice of the charges against him, invites erroneous

evidentiary rulings (*i.e.* evidence relevant to only one charge may be admitted as to all charges in

---

[9] Discovery and the extradition papers in this case indicate that the government arrested Mr. Xu
in connection with an alleged conspiracy targeting GE Aviation. The Rule of Specialty would
likely limit the government to a prosecution based on GE-related facts. ████████████
████████████████████████████████████████████████
████████████████████████████████████

the indictment), prejudices the defendant at sentencing and on appeal, and potentially exposes

him to double jeopardy. *Id.* at 443-44.[10]

### A. The Indictment does not identify a single agreement forming a singular conspiracy to steal trade secrets.

Mr. Xu explained in his motion to dismiss that the government has failed to charge a

single conspiracy here—that is, the indictment does not allege a singular agreement to pursue a

common unlawful end. The government begins its response by arguing that it does not have to

prove an "agreement" at all; the agreement "can be inferred." (Opp'n at 9.) That is a curious

position for the government, given that it spent the preceding 8 pages of its Response arguing

that it does not need to provide any details about the alleged conspiracy because "the essence of

a conspiracy is an agreement." (Opp'n at 1.) In any event, the government truncates the holding

from *United States v. Segines*, 17 F.3d 847 (6th Cir. 1994), on which it relies.

*Segines* was an appeal from a trial—already a distinct procedural posture from this

case—involving cocaine distribution. The Sixth Circuit had ordered a new trial based on

improper judicial behavior. The defendants argued that the case should be dismissed altogether

because they distributed drugs in different locations, and thus the government failed to show that

they were involved in the same conspiracy. The Sixth Circuit explained that "in a 'chain'

conspiracy, the agreement can be inferred from the interdependent nature of the criminal

enterprise. Conspiracies to distribute narcotics are often 'chain' conspiracies." *Segines*, 17 F.3d

at 856 (cleaned up). For that reason, the court said, "[t]he law of this circuit permits the

defendants to be retried on the conspiracy count as outlined in the original indictment. We

emphasize, however, that the trial judge may decide at his discretion whether or not to issue a

---

[10] The government makes no argument as to the prejudice caused by the duplicitous indictment
here.

multiple conspiracies instruction to the jury." *Id.* In sharp contrast, the government has not

charged Mr. Xu with a narcotics offense or anything else that might be plausibly described as a

"chain conspiracy." Even if it had, the government has not described the "interdependent nature

of the criminal enterprise" from which an agreement may be inferred; it instead relies in large

part on two "communications" which do not reflect an agreement at all.

The rest of the government's citations follow the same pattern. The government cites

*United States v. Ghazaleh*, 58 F.3d 240 (6th Cir. 1995); *United States v. Maliszewski*, 161 F.3d

992 (6th Cir. 1998); and *United States v. Hughes*, 895 F.3d 1135 (6th Cir. 1990) to support its

argument that the co-conspirators need not reach an agreement to commit a crime, so long as

they are all working towards the same purpose. But, like *Segines*, all three cases involve drug

distribution schemes and the "chain conspiracy" rule.

**B.** **At most, the allegations in the Indictment allege a rimless wheel conspiracy.**

After arguing that co-conspirators do not have to know each other in order to form a

single conspiracy, the government then asserts that the conspiracies alleged in the indictment are

not rimless wheel conspiracies *because* all of the co-conspirators (or at least the MSS co-

conspirators) "knew each other, communicated with each other, and worked with each other on a

regular basis towards the illegal conspiratorial objective." (Opp'n at 11.) There are three

problems with the government's position (setting aside its inconsistency with the immediately

preceding paragraphs).

First, Mr. Xu noted in his motion to dismiss that there are three distinct groups of alleged

co-conspirators: CF, Mr. Xu's colleagues in the 2013 communications, and Mr. Xu's colleagues

in the 2014 communications. Nothing in the indictment ties any of those groups together; the

indictment does not allege any relationship between CF and Mr. Xu until 2017, and it does not

allege any relationship between CF and the 2013 or 2014 colleagues (or between the 2013 and

26506272.1

2014 colleagues themselves) *at all*. The indictment is just what the *Swafford* court described as rimless wheel conspiracy: "one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *United States v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) (citation omitted).

Second, the *indictment* does not allege that the MSS co-conspirators all knew each other, communicated, or regularly worked together. Contrary to the government's insinuation, that is not merely Mr. Xu's litigation position. The government cannot point to any allegation anywhere in the indictment that shows that the three distinct groups of co-conspirators—CF, Mr. Xu's colleagues in the 2013 communications, and Mr. Xu's colleagues in the 2014 communications— knew each other, much less agreed to the same singular illegal enterprise. Instead, the government states that the relationships among the MSS co-conspirators "is shown in the discovery" and "will be presented at trial." (Opp'n at 11.) As explained above, post-indictment discovery is no substitute for a valid indictment. Nor, for that matter, is a Response to a motion to dismiss, or a subsequent trial-by-ambush.

Third, the indictment *does* allege that Mr. Xu conspired with individuals "unknown to the grand jury." The government can hardly state now with absolute certainty that these unknown individuals knew, communicated with, or regularly worked with Mr. Xu. Nor can the government explain how the grand jury concluded that individuals unknown to the grand jury "agreed to participate in what [they] believed to be a collective venture toward a common goal." (Opp'n at 11.) Instead, it appears that the government has reserved for itself the right to construct its case on the fly. Rather than prepare an indictment, the government has proposed an MLB

17

trade: "temporary" incarceration of Mr. Xu for conspiring with individuals to be named later, to steal objects to be named later.

The government waves off the cases cited in Mr. Xu's motion to dismiss as "inapposite" without explaining why. (Opp'n at 12.) The government simply reasserts its position from two paragraphs before, but with a bit less precision: "[t]he co-conspirators knew each other, communicated with each other, and worked towards the common goal of illegally stealing aviation trade secrets." (*Id.*) But repetition is not an argument. Moreover, just two paragraphs before, the government acknowledged that this supposed relationship between unnamed, unknown co-conspirators would be revealed in discovery and at trial—not in the indictment (again, it is telling that the government could not even point to the paragraph in the indictment that establishes these relationships). If the indictment does not allege a rimless wheel conspiracy, the government is obligated to point out where the indictment—not discovery, and certainly not the trial evidence—encloses the spokes. *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 732 (6th Cir. 2019) ("There is no 'rim' conspiracy without alleged *agreement* among the parties at the rim.").

The government does of course reference two communications in the indictment from 2013 and 2014. Mr. Xu argued at length in the motion to dismiss that neither communication reflects an agreement to do anything, much less anything criminal. But the government asserts that those isolated communications establish two "parallel but distinct" conspiracies. (Indictment at ¶¶ 13, 17.) One is left to wonder how the government can argue that one conversation could establish two distinct conspiracies in those paragraphs, while also arguing that the entire Chinese intelligence apparatus "knew each other, communicated with each other, and worked towards" *one* common goal for *one* conspiracy.

18

**C.      Mr. Xu is entitled to choose the remedy for a duplicitous Indictment.**

The government is correct to say that there are several potential remedies for a duplicitous indictment. (Opp'n at 12.) But if a defendant challenges a duplicitous indictment before trial, *Kakos* puts the *choice* of remedies in the hands of that defendant: "*[a] defendant moving pursuant to Rule 12 can request that a duplicitous indictment be dismissed, he can attempt* to force the government to elect the charge within the count upon which it will rely, *or he can ask* the court to particularize the distinct offenses contained within a count." *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) (internal citations omitted). The court steps in to choose the remedy only if the defendant waits until trial to raise the issue, because "a defendant's objections to the indictment made after trial has begun are properly addressed not to the indictment itself but to the harm stemming from the duplicitous indictment." *Id.*

## CONCLUSION

The government filed a vague and duplicitous indictment, then purported to fill in the gaps with voluminous, rolling discovery, all while keeping the defendant "temporarily" detained for fifteen months (and counting), hours away from his attorneys. The Fifth and Sixth Amendments demand more. As such, Mr. Xu respectfully requests that the Indictment be dismissed as to Counts I and II.

26506272.1

Respectfully submitted,


/s/ Robert K. McBride
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Robert K. McBride *(pro hac vice)*
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
kohnen@taftlaw.com
cors@taftlaw.com
rmcbride@taftlaw.com


Florian Miedel *(pro hac vice)*
Miedel & Mysliwiec LLP
80 Broad Street, Suite 1900
New York, NY 10004
Telephone: (212) 616-3042
Fax: (800) 507-8507
fm@fmamlaw.com

COUNSEL FOR DEFENDANT

26506272.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Robert K. McBride*

26506272.1