# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:18-CR-0043 |
| | : | |
| v. | : | **Judge Timothy S. Black** |
| | : | |
| **YANJUN XU** | : | **UNITED STATES' MEMORANDUM** |
| **(a/k/a Xu Yanjun and Qu Hui)** | : | **IN RESPONSE TO DEFENDANT'S** |
| | : | **MOTION FOR A PRISON TRANSFER** |
| | : | |

Counsel for Defendant Yanjun Xu has filed a motion seeking a transfer to a different prison facility for his pretrial detention. In short, defense counsel seeks an order from this Court that commands, in the midst of the COVID-19 pandemic, the U.S. Marshal's Service ("USMS") and Bureau of Prisons ("BOP") to transfer a detainee ▮▮▮▮▮▮▮▮▮▮ to a different BOP facility that has no COVID-19 cases. The government opposes the motion, as such a transfer is directly contrary to efforts being made by the BOP to mitigate this health crisis and there is no basis for a court-ordered transfer to another facility.

**A. The Current Status** ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████
   ████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███

**B. Any Prison Transfer In A Pandemic Creates Undue Health Risks.**

Any transfer of a detainee creates risks. ████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Defense counsel focuses entirely on Defendant Xu's circumstances, as is their prerogative. But the motion for transfer completely ignores the potential risk that a transfer creates for the inmates and staff in the receiving facility. Given the difficulty in controlling the spread of such a virus within a facility, it is of paramount importance that non-infected facilities be able to stay that way. Accordingly, all of the BOP prison facilities have enforced strict rules to prevent the introduction of the virus into a facility, including screening procedures for staff members and prohibiting visits by family and attorneys. In short, BOP is trying to limit the

spread of the virus in institutions where inmates and/or staff have tested positive, and reduce the risk that the virus will be introduced into facilities with no reported cases of the virus.

The defense motion completely ignores the fact that transferring Defendant Xu into a new facility creates an unknown risk for the hundreds of individuals at that new facility. The motion also suggests a transfer to the FCI Lexington medical facility, which already houses individuals with underlying health conditions (aside from the virus concern). Again, this ignores the risk that such a transfer creates for those inmates and staff at the receiving facility.

Due to those risks under the present conditions, any movement of Defendant Xu would require a period of quarantine at a separate location before allowing him to be introduced to a new facility. Not only would this period of quarantine necessitate arrangements for such a separate accommodation, it also would create additional health risks in the form of possible exposure to the virus for the transporting staff and/or guards, and those caring for Defendant Xu in the quarantine location.

[redacted]

### C. A Transfer Does Not Change the Access to Counsel Issue.

The COVID-19 pandemic has led to limitations on visits between counsel and detainees nationwide. Phone calls with counsel are permitted, but in-person visits are currently prohibited. This restriction is not limited to FCI Milan or BOP facilities with positive cases. All BOP facilities are restricting in-person attorney visits to cope with the health and safety concerns. The same is true in local facilities as well, as Butler County Jail and Boone County Jail have also restricted in-person meetings between inmates and counsel.

The defense team's concerns about this restriction are understandable. The government acknowledges that this restriction may impact the trial calendar, depending on the trial preparation that the defense team is able to conduct. However, a transfer to another facility will not resolve the issue. As noted, all facilities are implementing such visit restrictions to protect the health of staff and detainees.

Defense counsel claims that "it is safe to assume that the lockdowns and restricted visitation protocols at other detention facilities may be lifted before it is safe to do so at FCI Milan." (PAGEID 939.) The government does not share that assumption. Indeed, the opposite may occur. The FCI Milan facility may be further along the trajectory of addressing and coping with an outbreak. But if Defendant Xu is transferred to a different "non-infected" facility, that facility may endure its own outbreak in a few months, and this cycle may be repeated.

The broader point is that there is much we simply do not know. For the time being, defense counsel (in this case and elsewhere) will need to adapt to the use of written correspondence, phone calls, or video conferencing as available to confer with clients. A blanket order of transfer will not provide Defendant Xu with immediate access to in-person attorney visits, nor will it guarantee such access in the near future.

4

Even if a transfer were ordered, there is no guarantee that the new designation would be closer or more convenient for counsel. There are security issues with respect to Defendant Xu that must be considered as well. Local facilities are not always equipped or willing to accept a detainee that requires such security protocols. Therefore, there is the possibility that an order to transfer would lead to Defendant Xu being housed even further from Cincinnati.

### D. The Statutory Authority to Determine Housing Decisions.

The defense argues that the Court has the authority to order a facility transfer for a pretrial detainee pursuant to the authority in Title 18, U.S. Code, Section 3142. Section 3142 sets forth the parameters for district courts to decide if a defendant is detained pending trial, or released pursuant to certain conditions. However, the statute says nothing about a Court's authority to designate the specific facility in which a person is detained.

Section 3142(i) only states that the detention commit the person to the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Section 3142(i) order of detention must direct that the person be afforded reasonable opportunity for private consultation with counsel; and direct that the defendant be delivered to court for court proceedings as required. 18 U.S.C.A. § 3142. But, the statute is silent as to the facility designation or location. *See*, *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1417 (S.D. Ill. 1994), *aff'd*, 52 F.3d 137 (7th Cir. 1995) (the statute does not require a pre-trial detainee to be housed within the trial district, or even within the trial state).

Title 18 and its accompanying regulations make clear that the responsibility for the safe-keeping of such pretrial detainees has been delegated by Congress to the Attorney General within the Executive Branch of the government. Section 3142(i) states that the court may commit the

5

defendant to the custody of the Attorney General. Likewise, 18 U.S.C. § 4086 provides that the Attorney General, "shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."

The Attorney General has delegated that responsibility to the United States Marshal Service which, in turn, has agreements with state and local facilities and contracts with private entities for the safekeeping, care, and subsistence of prisoners. 18 U.S.C. §§ 4002, 4013. The Attorney General has further delegated to the United States Marshal the authority for the "acquisition of adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities." 28 C.F.R. § 0.111(o). Under 28 C.F.R. § 0.111(k), the Director of the United States Marshal Service has broad authority for the "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence." *Id.*

28 C.F.R. "[§] 0.111(o) gives the Marshals Service absolute discretion with regard to the housing of prisoners." *Valdez v. U.S. Marshal Serv.*, No. 6:13-cv-2376, 2014 WL 4103204, at *4 & n.5 (W.D. La. Aug. 13, 2014) (determining that "[t]he USMS's decision with regard to [the] plaintiff's placement . . . is protected by the discretionary function exception since the determination of where to house a prisoner is discretionary," given that § 0.111(o) "clearly requires that the Director of the Marshals Service exercise his judgment when selecting which non-federal facilities will house federal prisoners").

Courts have recognized that these statutes and regulations provide the United States Marshal Service with broad authority to determine where to house its prisoners. *Saunders v.*

*United States,* 502 F.Supp.2d 493, 496 (E.D.Va. 2007) ("This open-ended authority recognizes the Marshals Service's need to 'weigh concerns of expense, administration, payment, access to the premises, and the veritable plethora of factors' " relative to placement)(quoting *Williams v. United States,* 50 F.3d 299, 310 (4th Cir.1995); *Falcon v. Bureau of Prisons,* 852 F. Supp. 1413, 1420 (S.D. Ill. 1994) (Attorney General has discretion to select "appropriate forum for the pretrial detention of a defendant awaiting trial."), *aff'd*. 52 F.3d 137 (7th Cir. 1995); *Lyons v. Clark,* 694 F. Supp. 184, 186–87 (E.D. Va. 1988) (rejecting complaint regarding a transfer, stating authority to determine place of detention lies within "broad discretion" of the Attorney General).

In *United States v. Stile*, No. 1:11-CR-00185-JAW, 2013 WL 12195872, at *1 (D. Me. Nov. 27, 2013), the district court rejected such a request for transfer, noting that the authority for housing decisions rests with the Attorney General and USMS. The court stated that the "law is clear that '[a] pre-trial detainee does not have the right to be housed at the facility of his choice, nor does he have the right to remain in the institution to which he was initially, or even at one time, assigned'." *Id*., *quoting Falcon*, 852 F. Supp. at 1420; *see also, Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (denying motion to transfer to a facility with an interpreter).

Facility assignments necessarily implicate the "balancing of competing policy considerations, such as the inmate's personal safety and medical needs, the facility's available resources, the safety and medical needs of other prisoners, the security and medical staff, and the public." *Harper v. United States*, No. 5:08-CV-403-KKC, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) (concluding that "[s]uch considerations unquestionably fall within the discretionary function exception," noting that "numerous courts have properly held that such

7

decisions cannot be subjected to review in a tort action under the FTCA" (citations omitted) ); *see Valdez*, 2014 WL 4103204, at *4 n.5 (reasoning that C.F.R. § 0.111(o) does not limit or guide the selection of a facility in any way so long as the space is adequate, suitable, and meets minimum compliance criteria); *Cole v. United States*, No. 115CV01105JDBCGC, 2018 WL 3717192, at *13 (W.D. Tenn. Aug. 3, 2018).

The Supreme Court has implicitly acknowledged that this broad discretion extends to transferring federal prisoners to any facility within the federal system. *Lyons v. Clark*, 694 F. Supp. 184, 186–87 (E.D. Va. 1988), *aff'd,* 887 F.2d 1080 (4th Cir. 1989), *citing*, *Carlson v. Green,* 446 U.S. 14, 24–25 n. 11, 100 S.Ct. 1468, 1474–1475 n. 11, 64 L.Ed.2d 15 (1980) (*dictum* ). In the words of the Seventh Circuit, the Bureau of Prisons "has the discretion to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown–Bey v. United States,* 720 F.2d 467, 470 (7th Cir. 1983) (citations omitted); *see also Goodman v. Keohane,* 663 F.2d 1044, 1047 (11th Cir. 1981) (*per curiam*).

Thus, the discretion to determining the housing facility for a detainee is vested with the Attorney General and USMS by statute and regulation.

### E. Absent Constitutional Violations, Federal Courts Should Defer To The Housing Decisions of USMS and BOP.

The federal courts have consistently shown deference towards prison management determinations. As the Supreme Court admonished in *Procunier v. Martinez,* 416 U.S. 396, 405 (1974), "courts are ill equipped to deal with the increasingly urgent problems of prison administration" and that it would not be wise for a court to second-guess the expert administrators on matters on which they are better informed. *See Bell v. Wolfish*, 441 U.S. 520, 531, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979). Thus, federal courts "ought to afford

appropriate deference and flexibility to [jail] officials trying to manage a volatile environment." *Sandin v. Conner,* 515 U.S. 472, 482 (1995) (citing *Wolff v. McDonnell,* 418 U.S. 539, 561–563 (1974)); *see also*, *United States v. Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *1 (W.D. Mo. Dec. 30, 2015).

In *Bell*, the Supreme Court expressed deference towards prison measures and cautioned against relying on "a court's idea of how best to operate a detention facility." *Bell*, 441 U.S. at 539. The Court in *Bell* stated: "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell,* 441 U.S. at 540.

Therefore, the Supreme Court held that it only considers the constitutionality of conditions of pretrial detention under a due process analysis, with the inquiry dependent on whether conditions amount to "punishment" of the detainee. *Bell*, 441 U.S. at 535. There is no Fifth Amendment right to challenge the housing decision absent a determination that his detention rises to the level of punishment. *In re Gee,* 815 F.2d 41 (7th Cir.1987); *Garza v. Miller,* 688 F.2d 480 (7th Cir.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Falcon v. Knowles,* 807 F.Supp. 1531, 1533 (S.D. Fla. 1992) (rejecting Falcon's similar petition for emergency relief brought when Falcon was moved to FCI–Talladega, Alabama); *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994), *aff'd,* 52 F.3d 137 (7th Cir. 1995).

In addition, such constitutional challenges are typically brought in a separate action, after administrative remedies have been exhausted. An instructive case is *Falcon v. U.S. Bureau of Prisons,* 852 F. Supp. 1413, 1423 (S.D. Ill. 1994), *aff'd,* 52 F.3d 137 (7th Cir. 1995). In that

9

case, the defendant claimed that his detention at USP–Marion, required his counsel to travel from Miami, Florida in order to meet face-to-face, and unconstitutionally infringed upon his right to effective assistance of counsel. *Falcon*, 52 F.3d at 138. The court noted petitioner must rely upon a writ for change in the level of confinement, but anything else requires a civil rights action. *Falcon*, 52 F.3d at 139 (7th Cir. 1995). Even if it were construed as a *Bivens* cause of action, the person must exhaust any administrative remedies, if available. *Falcon*, 52 F.3d at 139.

The defense references only two cases for the proposition that a district court has authority to order a transfer to remove an inmate, citing *United States v. Williams*, No. 3:09-00090, 2009 WL 4824940, *2 (M.D. Tenn. Oct. 26, 2009) and *United States v. Wallen*, 177 F. Supp. 2d 455, 458–59 (D.Md. 2001). In *Williams*, the district court ordered a transfer due to the facility's failure to provide a constitutionally-minimal amount of food to detainees. In *Wallen*, the USMS conceded that it could not assure appropriate medical care at the current housing facility, so the Court ordered a transfer based on constitutional due process grounds. 177 F. Supp. 2d at 458. Although the procedure may not have been correct, both cases were premised upon conditions that resulted in constitutional violations.

Absent such constitutional violations, courts have denied requests for transfers and deferred to the discretion of the USMS and BOP. *See Moyers v. Shudan*, No. 3:07-cv-393, 2009 WL 1813969, at *2 (E.D. Tenn. June 24, 2009) (denying the plaintiff's motion to order the U.S. Marshals Service to house him in a different facility and noting that the "housing of federal prisoners pending court proceedings is within the discretion of the U.S. Marshals Service and this Court will not interfere with that discretion, absent extraordinary circumstances"); *see also United States v. Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D.

Mo. Dec. 30, 2015) (recognizing that the United States Marshal Service has "broad authority to determine where to house it prisoners").

Here, Defendant Xu has not presented a claim of a constitutional violation. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Given the deference required by the law, there is no basis for a court-ordered transfer to another facility.

### F. Within this Pandemic, the Court Should Exercise Even Greater Deference.

Within the context of this pandemic, the deference mandated by the U.S. Supreme Court should carry even greater weight. A single motion to transfer does not impact the conditions of one detainee. Rather, the prospect of transferring any single prisoner creates a cascade of health consequences and risks for the staff and receiving facility. Given the complexities of trying to manage multiple prison populations within a complex pandemic, the courts should defer to the judgments of BOP and USMS officials with respect to facility transfers.

Recently, a group of prisoners sued to be released or moved from a facility that was experiencing a COVID-19 outbreak. *Plata v. Newsom*, No. 01-CV-01351-JST, 2020 WL 1908776, at *10 (N.D. Cal. Apr. 17, 2020). The Court in *Plata* concluded that it lacked authority to require the state to release any inmates or transfer them to non-CDCR institutions. Because there was no constitutional violation, the Court found that it was likewise inappropriate to *sua sponte* request the convening of a three-judge court to determine whether a prisoner release or reduction order should be entered under 18 U.S.C. § 3626(a)(3)(D). *Plata v. Newsom*, No. 01-CV-01351-JST, 2020 WL 1908776, at *11 (N.D. Cal. Apr. 17, 2020).

The current public health situation is complex and involves many questions from a medical and public policy perspective that may take many months to resolve. An order to move one detainee may create consequences that extend far beyond a single case. In light of the

statutory authority that is delegated to the Attorney General and USMS, and the case law requiring deference in the absence of constitutional violations, the Court should deny the Defendant's motion for an order requiring a transfer.

### G. Conclusion.

For the reasons set forth above, the government requests that the Court deny Defendant Yanjun Xu's motion for a facility transfer.

                Respectfully submitted,

                DAVID M. DEVILLERS
                United States Attorney

                *s/Timothy S. Mangan*
                EMILY GLATFELTER
                TIMOTHY S. MANGAN (0069287)
                Assistant United States Attorneys
                221 East Fourth Street, Suite 400
                Cincinnati, Ohio 45202
                Office: (513) 684-3711
                Fax: (513) 684-6385
                E-mail: timothy.mangan@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system upon defense counsel, this 27th day of April, 2020.

                *s/Timothy S. Mangan*
                TIMOTHY S. MANGAN (0069287)
                Assistant United States Attorney