# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 1:18-CR-0043** |
| | : | |
| v. | : | **Judge Timothy S. Black** |
| | : | |
| **YANJUN XU** | : | **UNITED STATES' TRIAL BRIEF** |
| **(a/k/a Xu Yanjun and Qu Hui)** | : | |
| | : | |
| | : | |

During the course of investigation, the government obtained multiple phones and items from electronic accounts related to the defendant. This evidence included text messages, chats, emails, recordings, calendar notifications, and cloud account data (hereinafter "electronic data"). Most of these communications and data required translation from Chinese into English, which was processed in batches. From this substantial volume of evidence, the government intends to offer selected excerpts and translations into evidence during trial.

Accordingly, the government submits this trial brief in order to address several evidentiary matters that may arise during trial.

**A. The Use of Summaries under Rule 1006 of the Federal Rules of Evidence.**

In some instanced, the quantity of the electronic data is so voluminous such that the totality of the electronic evidence cannot be conveniently examined at trial. At other times, the data relating to a single event is pulled from several separate sources or conversations. To address these circumstances, the prosecution intends to use evidence under Rule 1006 (Summary Exhibits) of the Federal Rules of Evidence.

Under Rule 1006, the proponent may use a summary, chart, or calculation to prove the content of voluminous writings that cannot be conveniently examined in court. Rule 1006 of the

Federal Rules of Evidence states: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court." Fed. R. Evid. 1006.

In order to admit a Rule 1006 summary into evidence, there are several requirements. First, the documents or items must be so voluminous that they "cannot conveniently be examined in court" by the trier of fact. *United States v. Bray*, 139 F.3d at 1109–10. The documents must be sufficiently numerous as to make comprehension "difficult and ... inconvenient." *United States v. Seelig,* 622 F.2d 207, 214 (6th Cir.1980); *see Martin v. Funtime, Inc.,* 963 F.2d 110, 115 (6th Cir.1992). It is not necessary that the documents be so voluminous as to be "literally impossible to examine." *United States v. Scales,* 594 F.2d 558, 562 (6th Cir.1979). The phones and other electronic discovery data collected from Yanjun Xu consists of thousands of lines of text messages, hundreds of chats from an app called "WeChat," and cloud account backups of phones, emails, and calendar notifications. The quantity of these messages and information is so voluminous that it cannot conveniently be examined in court and therefore summaries and excerpts should be admitted.

Second, the proponent of the summary must also have made the documents "available for examination or copying, or both, by other parties at [a] reasonable time and place." Fed.R.Evid. 1006; *see Bray*, 139 F.3d at 1109–10; *Scales,* 594 F.2d at 562.  The purpose is to provide the opposing party an opportunity to address the authenticity or accuracy of a chart, summary, or calculation. The prosecution has already provided the defense with all discovery items containing the underlying messages and content that is included within the summaries therefore already

providing the defense with ample time to examine the messages. As part of the discovery, the prosecution provided the defense with a hard drive and other media so the defense would have the entirety of the Defendant's phones and iCloud accounts.

Third, the proponent of the summary must establish that the underlying documents are admissible in evidence." *Martin,* 963 F.2d at 116 (emphasis omitted) (quoting *United States v. Johnson,* 594 F.2d 1253, 1256 (9th Cir.1979)). Thus, if the underlying documents are hearsay and not admissible under any exception, a chart or other summary based on those documents is likewise inadmissible. But given Rule 1006's provision that the underlying documents need not themselves be in evidence, however, a summary admitted under Rule 1006 is itself the evidence that the trier of fact should consider. *Bray*, 139 F.3d at 1109–10. Nearly all communications directly involve Yanjun Xu. The defendant's own statements are admissible. As previously briefed, the other half of the conversation with the defendant are likewise admissible to provide context and meaning for the defendant's admissions. Therefore, these summaries should be considered admissible as evidence since they are not hearsay or fall into hearsay exceptions.

Fourth, the summary document "must be accurate and nonprejudicial." *Bray*, 139 F.3d at 1109–10*, citing Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.,* 803 F.2d 250, 257 (6th Cir.1986). The content contained in these summaries containing Yanjun Xu communications consist of select text messages, chats and emails from the discovery data to tell the story of the alleged crime(s) be prosecuted during trial. These messages are accurate and not prejudicial. Therefore, the summaries should be admitted.

Fifth and finally, a summary document must be "'properly introduced before it may be admitted into evidence.'" *Bray*, 139 F.3d at 1109–10; *Martin,* 963 F.2d at 115-16 (quoting *Scales,* 594 F.2d at 563). In order to lay a proper foundation for a summary, the proponent should present

the testimony of the witness who supervised its preparation. *See Scales,* 594 F.2d at 562-63; *United States v. Harris*, 881 F.3d 945, 951 (6th Cir. 2018) (admitting summary of bank and market records under Rule 1006). A witness is not required have personally created the underlying records or have personally prepared the summary exhibit. It is sufficient if the witness testifies that he or she supervised others who reviewed the raw data and prepared the summary, and that the witness then reviewed the summary. *Fahnbulleh*, *id*. The expertise involved in creating the chart does not make the witness an expert witness; the opinions in the chart are Rule 701, not expert, opinions. *See United States v. Georgiou*, 2015 WL 241438 (3d Cir. Jan. 20, 2015).

It is important to distinguish between exhibits under Rule 611(a) or Rule 1006. Rule 611(a) of the Federal Rules of Evidence states: "the court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Charts under Rule 611(a) are pedagogical or teaching aids which are not admitted into evidence. *See United States v. Milkiewicz*, 470 F.3d 390, 397 n.14 (1st Cir. 2006). In contrast, summaries under Rule 1006 for voluminous evidence are <u>admitted</u> into evidence.

The seminal case in the Sixth Circuit on this topic is *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998). In *Bray*, the court discussed the differences between document summaries received in evidence as substantive exhibits under Fed.R.Evid. 1006, and those not received in evidence but used as pedagogical devices under Fed.R.Evid. 611(a).

However, the *Bray* court also adopted a third, "hybrid" type of evidence under these rules that is not entirely in compliance with Rule 1006 but is more than mere pedagogical devices designed to simplify and clarify other evidence in the case. As stated in Bray, these "secondary-

4

evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence. In the unusual instance in which this third form of secondary evidence summary is admitted, the jury should be instructed that the summary is not independent evidence of its subject matter and is only as valid and reliable as the underlying evidence it summarizes." *Id*.

As a helpful example, in *United States v. Williams*, 952 F.2d 1504 (6th Cir. 1991), the district court did not abuse its discretion by admitting three charts containing compilations of information from telephone records, surveillances and tape recordings, which amounted to a chronology of significant events on particular days. *See also, United States v. Moon*, 513 F.3d 527 (6th Cir. 2008) (admission of summary chart of drugs purchased, amounts defendant claimed to have administered, and estimated profits upheld.) Likewise, the government will present Rule 1006 summaries that compile certain communications and data related to particular individuals, events, or time periods.

### B. The Admission of Recordings and Transcripts.

The government also intends to introduce three recordings of the Defendant Xu, all of which were spoken in Mandarin, along with English transcripts of these recordings. The three recordings are:

1. A recording of a phone call between Xu and Employee 1, recorded by the FBI.
2. A recording of a conversation between Xu and a tutor. This recording was contained on Xu's iCloud account, which backed up his phones.

3.  A recording of a presentation given by a U.S. engineer to Xu and several engineers in China in October 2017. The recording captures: (1) the presentation with the U.S. engineer; (2) Xu's conversations with the other Chinese individuals after the engineer left; and (3) several calls made by Xu after the meeting. Again, this recording was contained on Xu's iCloud account, which backed up his phones.

The admission at trial of a sound recording rests in the "sound discretion" of the trial court. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). "[A]s a prerequisite to admission, the tapes must be authentic, accurate and trustworthy . . . ." *Id*. (citations omitted). To authenticate audio recordings, the government must prove that, "as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. White*, 116 F.3d 903, 920-21); *see also* Fed. R. Evid. 901(a) ("The requirement of authentication ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). Moreover, the recording "must be audible and sufficiently comprehensible for the jury to consider the contents." *Robinson*, 707 F.2d at 876. (citations omitted).

As with recordings, the use of transcriptions of a recorded communication is also within the court's discretion. *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995) (citation omitted). The concern is that while the transcript is not "evidence," it will be treated as such where a recording is inaudible or incomprehensible. *Id*. at 762 (citation omitted). Where a party seeks to introduce a transcript at trial, it is preferred that the parties stipulate to its accuracy. *Id*. Where, however, the accuracy is questioned, the court should make a pretrial determination as to the use of the transcript. *Id*.

***Translated Transcripts***. When an audio recording involves conversations in a language that is foreign to the jury, transcripts are a "virtual necessity." *United States v. Mediola*, 707 F.3d 735, 742 (7th Cir. 2013) (quoting *United States v. Cruz-Rea*, 626 F.3d 929, 936 (7th Cir. 2010)). "It is simply common sense that an English-speaking jury cannot adequately identify voices in languages in which they are not familiar or even fluent." *Mendiola*, 707 F.3d at 742. Parties who object to the use of translated transcripts as exhibits have an obligation to point to specific inaccuracies—whether in the translation or transcription—or present alternative transcripts. *See United States v. Garcia*, 20 F.3d 670, 673 (6th Cir. 1994); *United States v. Liddel*, 64 F. App'x 958, 963 (6th Cir.2003) ("[T]here can be no abuse of discretion . . . when the Defendants involved did not point to any specific inaccuracies in the translation or offer any alternative translation.").

In cases involving translated transcripts, the Sixth Circuit requires measures to verify the reliability of the transcript. The proponent must present a witness qualified in the relevant foreign language who has listened to the recordings to verify the accuracy of the translated transcript. *Garcia*, 20 F.3d at 673; *see also Liddel*, 64 F. App'x. at 963. There is no requirement that the transcriber himself testify, another witness proficient in the language can testify to the accuracy of the transcripts. *United States v. Roberts*, 316 F. App'x 388, 392 (6th Cir. 2008) (citing *United States v. King*, 272 F.3d 366, 374 (6th Cir.2001)). Here the government has provided the original recordings and English transcripts to the defense for review. The parties have resolved any disputes related to the accuracy of the translations, or are waiting on final resolution of certain translations by the Court. Because the jury cannot listen to and comprehend the foreign language recordings, the government intends to submit these English transcripts of the recordings into evidence.

*Voice Identification.* With respect to identifying a defendant as the speaker in a transcript, the availability of witnesses for cross-examination at trial who can identify the defendant as the speaker "negates any prejudice" to the defendant. *United States v. Ford*, 187 F. App'x. 496, 501 (6th Cir. 2006) (citing *United States v. Crane*, 632 F.2d 663, 664-665 (6th Cir. 1980)). The question then becomes what is required of a witness who will testify to the identity of a speaker on an audio recording.

Federal Rule of Evidence 901(b)(5) permits a witness to provide an opinion identifying a person's voice "--whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). The identifying witness may have heard the voice "firsthand or through mechanical or electronic transmission or recording." *Id.* The standard for admitting an opinion as to the identity of a speaker "is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. Pryor*, 842 F.3d 441, 451 (6th Cir. 2016) (quoting *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986)). There is no requirement that an exemplar be based on a face-to-face conversation. *Pryor*, 842 F.3d at 452 (citing *United States v. Mendiola*, 707 F.3d 735, 741 (7th Cir. 2013). "[T]he circumstances that might connect a voice to a given speaker can assume a virtually unlimited number of forms and there is no requirement that the circumstances employed in a given case take any specific form." 31 Fed. Prac. & Proc. Evid. § 7110 (1st ed.). The identifying witness does not need to be qualified as an expert. *Pryor*, 842 F.3d at 452 (citing *United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009)). Voice identification need only meet a "low bar of minimal familiarity." *United States v. Cruz-Rea*, 626 F.3d 929, 935 (7th Cir. 2010) (authenticating officer listened to a fifteen second exemplar).

In *United States v. Cooper*, 868 F.2d 1505 (6th Cir. 1989), an FBI Special Agent identified a defendant as the speaker on four wiretapped recordings admitted into evidence at trial. *Cooper*, 868 F.2d at 1519. The agent based this identification on listening to the wiretaps and comparing them with brief discussions he had with the defendant, which only lasted approximately thirty-seconds. *Id.* Despite the agent's use of a mere thirty-second exemplar, the Sixth Circuit found that the district court had not abused its discretion by admitting the identification testimony. *Id.*; *see also Cruz-Rea*, 626 F.3d at 935 (7th Cir. 2010) (low bar of "minimal familiarity" met by officer using a fifteen-second exemplar to identify defendant on twenty-four wiretapped conversations).

Here, an FBI linguist reviewed countless phone conversations Xu stored on his iCloud account. The linguist also heard defendant Xu speak on several jail recordings, on the phone, and during his transportation to the United States. From this familiarity, the linguist was able to identify Xu's voice on the recordings at issue.

As noted, the standard is merely that the person making the identification has heard the person's voice at any time. *Pryor*, 842 F.3d at 452; Fed. R. Evid. 901(b)(5). Moreover, questions regarding voice identification go to the weight of the evidence, not its admissibility. *United States v. Walker*, 320 F.2d 472, 475-76 (6th Cir. 1963). Therefore, because the witness can properly identify Xu's voice and will be available for cross-examination, the government may introduce the recordings as admissions and identify Xu's name as a speaker in the translated transcripts of his recorded conversations.

C. **The Admissibility of Business Records Under Rule 902(11).**

The records provided by internet service providers – namely Google, Apple, and Yahoo – will be introduced as business records, admissible under the business records exception to the

9

hearsay rule. Federal Rule of Evidence 803(6). The elements of Rule 803(6) can be shown through a certificate from the business custodian pursuant to Rule of Evidence 902(11). Rule 902(11) states: "The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). These certificates have been produced to the defense in the discovery. By this filing, the government gives notice that it intends to use such business record certificates to support the admissibility of the business records.

### D. Admissibility of Records Produced Under a Mutual Legal Assistance Treaty.

The government has also produced in discovery several productions of records that were procured pursuant to a Mutual Legal Assistance Treaty (MLAT) with a foreign government. Records produced pursuant to an MLAT are deemed to be admissible without further authentication. See e.g., *United States v. Odeh*, 815 F.3d 968, 981 (6th Cir. 2016). The process for admitting such foreign records is set forth in 18 U.S.C. Section 3505 and Rule 902(12). Pursuant to Section 3505, "a foreign record of regularly conducted activity, or a copy of such record" is admissible with a similar foreign certification that attests to the business records requirements. The government has produced these records in discovery and intends to offer the records into evidence pursuant to Section 3505 and Rule 903(12).

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Timothy S. Mangan*
EMILY GLATFELTER
TIMOTHY S. MANGAN (0069287)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: timothy.mangan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system upon defense counsel, this 1st day of October, 2021.

*s/Timothy S. Mangan*
TIMOTHY S. MANGAN (0069287)
Assistant United States Attorney
