```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
2                          WESTERN DIVISION
                             -  -  -
3    UNITED STATES OF AMERICA,      : CASE NO. 1:18-cr-0043
                                    :
4              Plaintiff,           :
           vs.                      : STATUS VIDEOCONFERENCE
5                                   :
     YANJUN XU, also known as XU    :
6    YANJUN, also known as QU HUI,  : 30th of September, 2021
     also known as ZHANG HUI,       : 12:00 P.M.
7                                   :
               Defendant.           :
8                            -  -  -
                     TRANSCRIPT OF PROCEEDINGS
9         BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
                             -  -  -
10
     APPEARANCES:
11   For the Plaintiff:
                         Timothy S. Mangan, Esq.
12                       Emily N. Glatfelter, Esq.
                         Assistant United States Attorneys
13                       221 East Fourth Street, Suite 400
                         Cincinnati, Ohio 45202
14
     For the Defendant:
15                       Ralph William Kohnen, Esq.
                         Jeanne Marie Cors, Esq.
16                       Taft Stettinius and Hollister
                         425 East Walnut Street, Suite 1800
17                       Cincinnati, Ohio 45202
                                 and
18                       Florian Miedel, Esq.
                         Miedel & Mysliwiec, LLP
19                       80 Broad Street, Suite 1900
                         New York, New York 10004
20
     Also present:       May Harding, Interpreter
21                       Yanjun Xu, Defendant

22   Law Clerk:          Cristina V. Frankian, Esq.

23   Courtroom Deputy:   Rebecca Santoro

24   Stenographer:       Lisa Conley Yungblut, RDR, RMR, CRR, CRC
                         United States District Court
25                       100 East Fifth Street
                         Cincinnati, Ohio 45202
```

**Proceedings recorded in stenotype.**
**Transcript produced with computer-aided transcription.**

1      (Proceedings held by videoconference at 12:00 p.m.)

2           THE COURT:  Good afternoon.  This is United States

3    District Court Judge Timothy Black on the record appearing

4    by videoconference as if in the open courtroom.  We're here

5    on the criminal docket in the case of *United States versus*

6    *Xu*, 1:18-cr-43.  We're here for a status conference

7    specifically relating to upcoming jury selection.

8           I'd like to begin by identifying the participants

9    in this conference.  Who appear as the attorneys for the

10   United States of America?

11          MR. MANGAN:  Good afternoon, Your Honor.  Tim

12   Mangan and Emily Glatfelter for the government.

13          THE COURT:  Good afternoon to the two of you.  I

14   can see you on the videoconference and I heard you, Mr.

15   Mangan.

16          Who appear as the attorneys for Mr. Xu?

17   Mr. Kohnen, are you threatening -- there you go.

18          MR. KOHNEN:  Sorry about that.  I'm here on behalf

19   of Mr. Xu, so is my colleague, Florian Miedel, who's also on

20   the screen.  Jeanne Cors is there with Mr. Xu.  And present

21   also is May Harding, our interpreter.

22          THE COURT:  Good afternoon to all of you.  And I

23   can see Mr. Miedel.  I see you, Mr. Kohnen.  I see Ms. Cors

24   in the presence of Mr. Xu.

25          And, Mr. Xu, good afternoon.  I'm Judge Black.  Can

```
1    you hear me?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Very well.  Good afternoon.

4              And we have an interpreter present.  Ma'am, if

5    you'd be willing to take an oath to accurately translate the

6    language.  Your right hand is up, mine is as well.

7              Do you solemnly swear or affirm that you will

8    accurately translate these proceedings under the penalties

9    of perjury?

10             THE INTERPRETER:  Yes, I will.

11             THE COURT:  Thank you.  You may lower your right

12   hand.  And on behalf of the Court and the community, thank

13   you for the work you are doing.

14             Also engaged in this conference is Cristina

15   Frankian, who's my career law clerk, she's a lawyer, works

16   for me; also Rebecca Santoro, who's the courtroom deputy and

17   my assistant.  The US Marshal, John, is linked to the

18   conference as well.  The court reporter is Lisa Conley

19   Yungblut, whom the Court is grateful for her presence and

20   continuing work.

21             Let me make a short statement and then we'll hear

22   from each side in turn.  We're scheduled to go to jury trial

23   beginning October 18th running potentially up until

24   December 1st with time off for Thanksgiving.  Due to the

25   length of the anticipated trial as well as the issues
```

1    presented in this case, which pose a particular risk of

2    bias, particularly under the current circumstances, the

3    Court anticipates having a difficult time finding jurors who

4    are ready, willing, and able to serve.  To ensure a larger

5    pool, the Court called 350 prospective jurors, and of those,

6    175 prospective jurors responded.

7            Let me pause and ask the interpreter whether you

8    are able to keep up with me and whether Mr. Xu can tell me

9    that he understands what I'm saying?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Very well.  And the interpreter, ma'am,

12   you're able to keep up with me; is that right?

13           THE INTERPRETER:  Yes.

14           THE COURT:  Thank you for your work.

15           All right.  So we called for 350 prospective

16   jurors.  We've gotten 175 that have responded.

17   Additionally, there are currently three jury trials,

18   including our own, scheduled to begin in Cincinnati on

19   October 18, 2021.  Therefore, those 175 jurors need to be

20   divided between the three trials.  Typically, the jury

21   coordinator would wait until the morning of voir dire, first

22   day of trial, and after every prospective juror arrives

23   would simply assign the jurors to a trial evenly.  For

24   instance, the first 50 would go to our trial, the next 50

25   would go to Judge Dlott's trial, the next 50 would go to

1    Judge McFarland's trial.

2         But, again, our trial has a higher likelihood of

3    needing to excuse jurors for hardships or cause, based

4    largely upon length and the subject matter.  Therefore, if

5    we do not work to identify viable jurors for our trial in

6    advance, we could ultimately be assigned 50 prospective

7    jurors most of whom will get excused due to hardships,

8    availability, bias, thereby, leaving us with too few jurors

9    to proceed.  We would then have to call a new pool and start

10   jury selection over; whereas, there may have been jurors

11   present that day who could have served on our jury if they

12   had only been in our group.

13        In an effort to pre-identify viable jurors, the

14   Court sent out a supplemental questionnaire which both sides

15   reviewed and approved.  Now the Court must create a

16   procedure that will hopefully alleviate the concerns I've

17   just raised.  Excuse me.  And our proposal is for the Court,

18   the judge, to review the questionnaires first and to, quote,

19   pre-exclude, end quote, the jurors who would have inevitably

20   been excused had they appeared in our courtroom for voir

21   dire the morning of trial.  Those jurors that we would

22   pre-excuse would then go to one of the other two trials,

23   thereby, leaving us with a pool of jurors who we know are

24   ready, willing, and able to serve the entirety of the trial

25   free of bias or prejudice.

1              But before we proceed in that way, I want to be

2    certain that both sides are comfortable with the proposal.

3    If both parties unanimously agree that the Court can

4    pre-exclude those individuals with hardships, then, we'll

5    proceed accordingly.

6              What I want to avoid is a situation where all agree

7    to this process and then down the road to have either

8    side -- excuse me -- argue that the Court pre-excluded a

9    prospective juror that they would have wanted had they only

10   known about him or her.  I don't think it's fair to allow

11   the parties to hand-pick their jury pool in advance, which

12   is why my proposal is to allow me to exercise my discretion

13   as reflected in law in a fair and neutral manner just as I

14   would have done if the jurors had appeared in person for

15   voir dire.

16             What we're trying to avoid is getting assigned 50

17   prospective jurors of -- a large number of which we already

18   know are unavailable or ought to be excused perhaps, for

19   example, in bias.  The individuals who would be unavailable

20   for our weeks-long trial could well be available for the

21   other two trials, and they should be diverted there before

22   the morning of voir dire.

23             The proposed categories of exclusion that I would

24   exercise with your consent is, No. 1, unavailability.  If

25   they have got a prescheduled vacation, a doctor's procedure,

1    whatever, if they are indicating they're not available for

2    the entirety of our trial, we have to excuse them now and

3    not have unavailable people in our pool.  Unavailability is

4    related to work and financial hardship.  It's related to

5    medical concerns.

6            And then the absolute proposed category of

7    exclusion would include non-mask-wearers who indicate

8    they're unwilling to wear a mask given the pandemic, which

9    would be in violation of the Court rules and would be a

10   basis to exclude them.

11           I'd like to talk subsequently about how we deal

12   with bias.  If we have an indication that a juror says they

13   can't trust anybody from -- who doesn't share their

14   Judeo-Christian values or who comes from China, I think we

15   ought to address that beforehand, but you may want to

16   address it during voir dire.  What we're trying to do is

17   build a pool that gets assigned to us which is people who

18   can serve unless excused by the parties pursuant to

19   preemptory challenges or for cause.

20           So having said all of that, I want to go around the

21   table and understand what your reaction is, if you have

22   questions or comments, and I'll do it one side at a time.

23   And my career law clerk, Ms. Frankian, may well be called

24   upon to respond to any of your comments along with me.

25           So with that, which of the attorneys for the United

1   States can be responsive to what the Court is presenting

2   now?

3          MR. MANGAN:  Your Honor, this is Tim Mangan.  I'll

4   speak on behalf of the government.

5          THE COURT:  Very well.

6          MR. MANGAN:  Your Honor, we certainly understand

7   the difficulty that we've got here based on all of the

8   factors that you've just laid out and the situation

9   upcoming.  With respect to what the Court has laid out, we

10  would be agreeable.  We have no problem with the

11  unavailability issue that the Court walked through, that the

12  Court would then look at the questionnaires, as I understand

13  it, and sort of in the normal course look at those who

14  simply cannot serve for that long a time for all of the

15  various reasons that you identified.  And we understand the

16  reason why you want to try to do that without us being the

17  parties preselecting the jury pool.

18          The second category that you mentioned were those

19  who would be refusing to wear masks in accordance with Judge

20  Marbley's order.  Given that what they're indicating would

21  violate the Southern District of Ohio order, we certainly

22  understand why and think the Court would have discretion to

23  handle those jurors separately.

24          Our proposal would be at that point to kind of see

25  where we are as far as the numbers, because when it gets to

1    sort of that next step of cause and talking about

2    individuals with bias, I know traditionally in normal

3    selection, that's one where at least the parties would be

4    able to see the questionnaires at that time and sometimes

5    ask questions.  I realize that some questions -- some

6    answers on the questionnaire may seem very, very clear, but

7    we've all seen with some jury selections where there's a

8    back-and-forth about certain individuals.

9         So I guess our proposal, Your Honor, in response to

10   what you laid out is we would be agreeable to the process

11   certainly as to those first two categories, the

12   unavailability and the refusal to follow the mask order for

13   the district.  We would suggest at that point seeing where

14   we are as far as numbers for the pool, and if there's still

15   a problem and you think we need to go to that next step, you

16   know, in terms of screening bias or -- can we wait and do

17   that during the normal voir dire?

18        Or is there a way to -- another option would be at

19   that point maybe the parties could see the questionnaires

20   that are at issue and we could at least discuss those

21   potential bias issues, you know, in an adversarial -- or,

22   you know, in the normal court hearing like this, but with us

23   having the benefit of at least knowing what we're talking

24   about from the questionnaire.  So that's our initial

25   feedback, Your Honor.

1          THE COURT:  And that's entirely responsive and

2     professional, and the Court expresses its appreciation for

3     that approach.

4          Ms. Glatfelter, has Mr. Mangan spoken

5     comprehensively or would you like to supplement?

6          MS. GLATFELTER:  No, I agree with everything said.

7     Thank you.

8          THE COURT:  Very well.  Who'll be heard on behalf

9     of the defendant?

10          MR. KOHNEN:  Your Honor, this is Ralph Kohnen.

11     I'll be happy to speak on behalf of Mr. Xu.  But I would

12     also ask the Court since my colleague, Jeanne Cors, is there

13     in the jail with him and the translator, that she be given

14     an opportunity, No. 1, to make sure that he understands

15     what's been said so far; and, secondly, that after I speak

16     what will of course be my opinion, he concurs and it then

17     becomes our opinion, with the Court's permission.

18          THE COURT:  That's absolutely appropriate and

19     granted.  Let me at this stage ask Ms. Cors and Mr. Xu and

20     the translator whether you've heard everything I said and

21     you've also heard everything the government has said?

22          THE DEFENDANT:  Yes.

23          THE INTERPRETER:  Yes.

24          THE COURT:  That right, Ms. Cors?

25          MS. CORS:  Yes, Your Honor.

1          THE COURT:  Very well.  So, Mr. Kohnen, I would

2    propose that you give us the Defendant Xu's reaction at this

3    stage, and we'll confirm it with Ms. Cors and your client.

4          MR. KOHNEN:  Okay.  Thank you, Judge.  For

5    background, Ms. Frankian gave us a heads-up on this, as I'm

6    sure she did with other counsel, so we've had an opportunity

7    to discuss it among the attorneys.  And I think that the

8    Court's suggestion along with, I guess I'll call it, Mr.

9    Mangan's next step is a good one.  It's one that we came up

10   with as well.  You know, I think it's worth everybody

11   reminding themselves that this is a process that is pretty

12   much undertaken by the Courts before trials independent of

13   counsel's involvement, especially with things such as

14   unavailability and what I guess would be fairly unique

15   circumstances.

16          Because of that and for a lot of other reasons, we

17   have no problem with the Court making that -- let's call it

18   the first cut of Category 1, the unavailability,

19   non-mask-wearers, and would probably expand a little bit and

20   say that there are probably other more obvious reasons that

21   we absolutely trust the Court to excuse potential jurors

22   for.

23          Jeanne, you want to make sure Xu's okay with that

24   so far?

25          MS. CORS:  Yes.  I've spoken with Mr. Xu and he is

1    amenable to that as well.

2              THE COURT:  Is that right, Mr. Xu?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Thank you.

5              MR. KOHNEN:  Judge, we also, as I mentioned, like

6    the idea about how that the folks that could be revealed as

7    biased could at least be screened, I guess is a good way to

8    put it.  In addition to the questionnaires, I think we would

9    ask that the Court take it upon itself to share with us any

10   other information that might come in about these individual

11   prospective jurors.  Again, speaking from experience, that

12   they call the clerk's office sometimes, they get through to

13   chambers on occasion, any communication like that in

14   addition to the juror questionnaires would be appreciated.

15   I think the Court is envisioning, and I think I heard Mr.

16   Mangan say, that we would sort of reconstitute once that

17   second -- I'll call it the second cut is done and discuss

18   where we go from here.

19              For the record and also as a product of our

20   conversation among the attorneys, we, of course, recognize

21   that no matter how we do it, it's ultimately up to the man

22   in the black robe.  So we appreciate the accommodations

23   here.

24              THE COURT:  Thank you.  That's entirely responsive.

25   I think what I heard was that the parties are willing to

1    acquiesce to what the Court has the authority and discretion

2    to do, and that is to excuse people for unavailability and

3    for unwillingness to abide by a court order to wear a mask.

4    After we've done that, we would then regroup, find out where

5    we are in terms of numbers, and then collectively begin to

6    determine how to proceed to evaluate bias, either pre voir

7    dire or at voir dire.  Is that what you were saying,

8    Mr. Kohnen?

9            MR. KOHNEN:  Yes, Your Honor.

10           THE COURT:  And is that the government's

11   perspective, Mr. Mangan?

12           MR. MANGAN:  Yes, Your Honor.

13           THE COURT:  Ms. Cors, is there anything from your

14   end that we need to touch base with yet?  We're not done,

15   but I saw you standing.

16           MS. CORS:  No, Your Honor.  I'm just making sure we

17   mute and unmute so you can't hear the interpreter.

18           THE COURT:  After that experience, will you work

19   with Mr. Kohnen, please?  Very well.

20           Ms. Frankian, I'm on the record.  You have been

21   extraordinary in driving this attempt to be efficient,

22   totally transparent, fair and impartial.  Is there anything

23   that the government has said you want to respond to or

24   clarify?  Is there anything the defense has said that you

25   would like to inquire of, respond to, or clarify?

1           MS. FRANKIAN:  No, Judge.  So we would pre-excuse

2     the unavailable prospective jurors and those with financial

3     hardships, physical concerns, non-mask-wearers.  And then

4     should -- should I separate out those individuals who

5     have -- who the Court is inclined to excuse for bias so that

6     everyone can weigh in on those individuals separately or

7     should I just send everyone remaining?

8           THE COURT:  My understanding is you were going to

9     identify the potential biased prospective jurors, and we

10    would talk through those questionnaires and those alone with

11    the lawyers, and then we would confer as to whether there's

12    a consensus that allegedly biased Juror Nos. 7 and 12 should

13    be pre-excused.

14          Is that your understanding of the approach we are

15    developing, Mr. Mangan?

16          MR. MANGAN:  Yes, that would be fine with us, Your

17    Honor.

18          THE COURT:  And is that acceptable to the defense,

19    Mr. Kohnen?

20          MR. KOHNEN:  Yes, it is, Your Honor.  Of course, we

21    would be grateful to get the questionnaires of the venire

22    panel as soon as possible, but we're fine with the way it

23    was stated.

24          THE COURT:  Fair enough.

25          Is that responsive to your inquiry, Ms. Frankian,

1     or do you have additional follow-up?

2          MS. FRANKIAN:  I think that's responsive.

3          THE COURT:  Very well, I agree.  And all of the

4     lawyers, even the judge, appreciate the enormous work

5     Ms. Frankian does for the Court day after day after day.  So

6     that is the way in which we will proceed.

7          I need to ask directly on the record if the Court

8     proceeds in the way that we just amicably came to an agreed

9     approach, no complaint, no appeal of that portion of the

10    voir dire selection process; is that right from the

11    government's perspective, Mr. Mangan?

12         MR. MANGAN:  It is, Your Honor, yes.

13         THE COURT:  Is that right, Mr. Kohnen, from the

14    defendant's perspective?

15         You're muted.  You're muted.  Mr. Kohnen, you're

16    muted.

17         MR. KOHNEN:  Sorry, Judge.  My software does it

18    automatically.

19         I'll promise you that none of the lawyers who are

20    involved in this case before the trial court will appeal.

21         THE COURT:  On this issue.

22         MR. KOHNEN:  Of course, on this issue.  And I would

23    like Ms. Cors to make sure that our client understands that.

24         THE COURT:  Very well.  Ms. Cors, can you confer

25    with Mr. Xu -- you don't have to speak in my presence -- and

1 then advise me?

2    MS. CORS:  Yes, Your Honor.

3    THE COURT:  So have you asked Mr. Xu, if we proceed

4 in this way, he understands there's no complaining about it

5 or appealing about it later?

6    THE DEFENDANT:  Yes.

7    MS. CORS:  Yes, we have conferred with him, and he

8 is amenable to that.

9    THE COURT:  I also heard him say "yes."

10    So I think we have accomplished in large part what

11 we had intended today.  It's always nice to see you, Mr.

12 Miedel.

13    MR. MIEDEL:  Thank you.  You too.

14    THE COURT:  Very well.  Is there more we need to

15 discuss today from the government's perspective?  We'll be

16 chatting regularly going forward.

17    MR. MANGAN:  No, Your Honor.  Thank you very much.

18    THE COURT:  Anything further from the defendant's

19 perspective, Mr. Kohnen?

20    MR. KOHNEN:  No, Your Honor.  I hope you can hear

21 me.  Thank you to the Court and to Ms. Frankian.

22    THE COURT:  Thank you, Mr. Kohnen.  That's a credit

23 to you.

24    Anything further from your end, Ms. Cors, from Mr.

25 Xu's perspective today at this time?

1    MS. CORS:  No, Your Honor, other than to thank the

2    Court for organizing the conference here.  Chambers was very

3    helpful in facilitating the logistics.

4    THE COURT:  Very well.  Glad to hear that.  It

5    doesn't surprise me.

6    Ms. Frankian, is there more we should proceed today

7    or are we prepared to adjourn this?

8    MS. FRANKIAN:  Nothing further, Judge.

9    THE COURT:  Very well.  I want to thank you all for

10   participating timely.  I want you to know that I want you to

11   stay safe and do well.  Thank you for calling in timely.

12   I'm going to end the hearing now by saying goodbye and

13   leaving the meeting.  Thank you all.

14   (Proceedings concluded at 12:26 p.m.)

15                    **C E R T I F I C A T E**

16   I certify that the foregoing is a correct transcript of
     the record of proceedings in the above-entitled matter
17   prepared from my stenotype notes.

18   */s/ Lisa Conley Yungblut*                    *10/12/2021*
     LISA CONLEY YUNGBLUT, RDR, RMR, CRR, CRC       DATE

19

20

21

22

23

24

25