# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:18-cr-00043 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| YANJUN XU, | : | DEFENDANT'S MOTION TO STRIKE UNDER RULE 704(b) |
| Defendant. | : | |

## I. Introduction

Federal Rule of Evidence 704(b) prohibits an expert witness from opining on the intent of the defendant, because doing so invades the province of the jury. In certain parts of his testimony, the government's expert witness on spycraft, James Olson did precisely that, testifying that Mr. Xu was a "case officer," that case officers steal secrets, and that actions taken by Mr. Xu demonstrated his intent to conduct espionage – which Mr. Olson defined as stealing secrets. In other words, Mr. Olson told the jury that Mr. Xu intended to steal trade secrets through espionage, the precise *mens rea* at issue in this case. Because such opinion evidence is prohibited by Rule 704(b), the Court should strike parts of Mr. Olson's testimony as set forth below.

## II. Legal Standard

For centuries, common law explicitly prohibited experts from opining about the "ultimate issues" at a trial. In drafting Rule 704, Congress abandoned that proscription more generally but kept it in place when it came to the defendant's intent. Fed. R. Evid. 704(b) states: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.

Those matters are for the trier of fact alone." As the Sixth Circuit has explained, "Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea." *United States v. Dunnican*, 961 F.3d 859, 876 (6th Cir. 2020) (citations and quotations omitted). While an expert can describe "in general terms the common practices of those who clearly do possess the requisite intent, leaving unstated the inference that the defendant, having been caught engaging in more or less the same practices, also possessed the requisite intent," Rule 704(b) prohibits the expert from referring specifically to the *defendant's* intent. *United States v. Harris*, 393 F. App'x 314, 319 (6th Cir. 2010) (emphasis added).

### III. Application

In this case, the jury must determine whether Mr. Xu possessed the requisite mental state to commit the crime – namely whether he and/or his alleged co-conspirators intended to steal trade secrets through espionage. Although James Olson was permitted to describe in general terms the practices of case officers, the recruiting cycle, and the specific routines and procedures of espionage, Rule 704(b) prohibited him from examining specific evidence in this case and rendering an opinion that those facts demonstrated Mr. Xu's intent to commit espionage. And yet, that is precisely what he did.

Mr. Olson set the parameters of his testimony at the outset when he opined that espionage, and specifically industrial espionage, is defined as "stealing secrets." *See* Tr. at 13[1] ("Industrial espionage is stealing another country's industrial secrets, its trade secrets,

---

[1] The transcript of James Olson's testimony is attached for the Court's convenience as Exhibit A.

proprietary information, its technology for the benefit of your own country."). Everything that followed in his testimony was designed to establish that the actions of Mr. Xu demonstrated an intent to commit espionage – and therefore, by definition, an intent to steal trade secrets. Mr. Olson's testimony repeatedly veered into Mr. Xu's (or his alleged co-conspirators') intent and thereby invaded the province of the jury that Rule 704(b) is designed to protect. The following constitute excerpts from Olson's testimony that were improper:

> Q. And what was your understanding from reading that sentence?
> A. My understanding was this is intelligence officer's pressing, who is pushing for additional cooperation, wants to see how the target will respond to that request.

[Tr. at 46]. Testifying that Mr. Xu was "pressing," "pushing, and "want[ing] to see" is simply stating Mr. Xu's intent, as proscribed by Rule 704(b).

> [Q.] Did you see any significance in the use of that phrase "foreign countries"?
> A. Yes. It meant that the objective was to obtain this technology from foreign countries.

[Tr. at 47]. Clearly, a person's "objective" is simply another way of stating the person's intent.

> Q. So from your perspective, what do these communications indicate to you?
> A. Indicates to me that the MSS is encouraged by what's going on. They want to pursue it. They want to see how far this person will go. They want to have a further meeting, a personal meeting.

[Tr. at 50]. Again, Mr. Olson improperly offered an opinion about the mental state of MSS – and by extension, Mr. Xu.

> And I see here a case officer, in my opinion, from China who is increasingly aggressive, pushing for the additional stuff, to bring the computer. I think

```
       that he's very encouraged by how this is going. He
       has a -- an agent, potential agent who he thinks is
       going to be very compliant. So this is a very nice
       step for him.
```

[Tr. at 56]. In this piece of testimony Mr. Olson improperly attributes intentionality to Mr. Xu's actions.

```
       Q. Based on what you reviewed, did you observe any
       aspects of tradecrafts specific to that meeting?
       A.  It was tradecraft across the board. The case
       officer was planning a meeting very, very carefully.
       He was quite interested in where the meetings were
       to take place -- a cafe in the hotel, whether or not
       the employees, associates, colleagues would be in a
       position to observe the fact that they were
       together. Yeah, it was very, very systematic, and
       they were preparing it as an operational meeting.
```

[Tr. at 62-63]. Here Mr. Olson opined about what Mr. Xu was "planning," and what he was "interested in," both indicative of *mens rea*.

```
       Q.  From your standpoint, in terms of an
       intelligence operation, why would someone want to
       wipe a phone afterwards?
       A.  You would want to wipe a phone because it has
       incriminating information on it. It's got
       communications, it's got data that you don't want the
       adversary to see. So whenever possible you would
       wipe your phone.
```

[Tr. at 66]. This excerpt is another example of Mr. Olson testifying about what Mr. Xu "want[ed]" to do – a manifestation of intent.

```
       Q.  So, Mr. Olson, have you looked at the
       information relating to this GE employee and these
       events?
       A.  Yes.
       Q.  Did you see aspects of espionage tradecraft in
       that cycle?
       A.  Yes, I did. In fact, the conversations and the
       actions of this individual are those of an
```

4

```
        intelligence officer conducting espionage. I had no
        question about that at all.
```

[Tr. at 70-71]. This opinion, with which Mr. Olson concluded his direct testimony, directly invaded the province of the jury. He told the jury that Mr. Xu was, in no uncertain terms, conducting espionage, which, according to his own definition, meant Mr. Xu was trying to steal secrets. By stating that Mr. Xu was conduction espionage, Mr. Olson was therefore also testifying that Mr. Xu's intent in conducting espionage was to steal secrets.

In all of these instances, the expert witness offered opinions about the purpose or design – namely the intent – of certain actions by Mr. Xu or his alleged co-conspirators. This was improper, and the testimony should therefore be struck from the record. *See e.g., United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010) (Determining that expert's opinions violated Rule 704(b) and stating: "[f]urthermore, Simpson's remarks with respect to the 'design' of the transactions also implicate the issue of intent. To say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome.") (citations and quotations omitted); *See also United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000) ("If believed, his testimony necessarily dictates the final conclusion that Dr. Wood possessed the requisite *mens rea* for involuntary manslaughter. A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*." This intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent.") (citations and quotations omitted).

### IV. Conclusion

Mr. Olson's testimony, if believed, "necessarily dictate[d] the final conclusion" that Mr. Xu conducted espionage, which meant that he possessed the intent to steal trade secrets. *United States v. Wood,* 207 F.3d at 1236. Because such testimony is inadmissible under Fed. R. Evid. 704(b), the above portions of Mr. Olson's testimony should be struck from the record and the jury should be instructed not to consider them.

Respectfully submitted,

*/s/ Ralph W. Kohnen*
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Robert K. McBride (admitted *pro hac vice*)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
kohnen@taftlaw.com
cors@taftlaw.com
rmcbride@taftlaw.com
COUNSEL FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.  Parties may access this filing through the Court's system.

*/s/ Ralph W. Kohnen*