```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION
                            -   -   -
 3   UNITED STATES OF AMERICA,    : CASE NO. 1:18-cr-0043
                                  : REDACTED
 4               Plaintiff,       :
            vs.                   : IN-PERSON TRIAL
 5                                : PROCEEDINGS
     YANJUN XU, also known as XU  :
 6   YANJUN, also known as QU HUI, :18th of OCTOBER, 2021
     also known as ZHANG HUI,     :9:12 A.M.
 7                                :
                 Defendant.       : DAY 1
 8
                            -   -   -
 9                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
10                          -   -   -

11   APPEARANCES:
     For the Plaintiff:
12                       Timothy S. Mangan, Esq.
                         Emily N. Glatfelter, Esq.
13                       Assistant United States Attorneys
                         221 East Fourth Street, Suite 400
14                       Cincinnati, Ohio 45202
                                   and
15                       Matthew John McKenzie, Esq.
                         United States Department of Justice
16                       National Security Division
                         950 Pennsylvania Avenue NW
17                       Washington, D.C. 20530
                                   and
18                       Jacqueline K. Prim
                         Special Assistant, Paralegal
19                       United States Department of Justice
                         National Security Division
20                       950 Pennsylvania Avenue NW
                         Washington, D.C. 20530
21
     For the Defendant:
22                       Ralph William Kohnen, Esq.
                         Jeanne Marie Cors, Esq.
23                       Sanna-Rae Taylor, Esq.
                         Courtney Lynch, Esq.
24                       Taft Stettinius and Hollister
                         425 East Walnut Street, Suite 1800
25                       Cincinnati, Ohio 45202
                                   and
```

```
  1                                 Robert K. McBride, Esq.
  2                                 Amanda Johnson, Esq.
                                    Taft Stettinius and Hollister
  3                                 50 East RiverCenter Boulevard
                                    Suite 850
  4                                 Covington, Kentucky 41011
                                                      and
  5                                 Florian Miedel, Esq.
                                    Miedel & Mysliwiec, LLP
  6                                 80 Broad Street, Suite 1900
                                    New York, New York 10004
  7
          Also present:            Mae Harmon, Interpreter
  8                                 Yanjun Xu, Defendant

  9       Law Clerk:               Cristina V. Frankian, Esq.

 10       Courtroom Deputy:        Rebecca Santoro

 11       Stenographer:            Julie Hohenstein, RPR, RMR, CRR
                                    United States District Court
 12                                 200 West Second Street
                                    Dayton, Ohio 45402
 13

 14          Proceedings reported by mechanical stenography,
          transcript produced by computer.
 15                                 *** *** *** ***

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

```
1      P-R-O-C-E-E-D-I-N-G-S                    9:12 A.M.

2

3           COURTROOM DEPUTY:  This United States District

4      Court for the Southern District of Ohio is now in session.

5      The Honorable Timothy S. Black, United States District

6      Judge, presiding.

7           THE COURT:  Please be seated.  Good morning.  We're

8      here in the open courtroom on the record day one of the

9      criminal docket in the Jury trial of the matter of United

10     States of America versus Yanjun Xu.

11          There's an interpreter present, and I wish to

12     administer the oath to correctly interpret.  If the

13     interpreter would stand and raise your right hand.

14          Do you solemnly swear or affirm that you will

15     accurately, correctly interpret these proceedings on behalf

16     of the Defendant for the duration of the trial?

17          THE INTERPRETER:  Yes, I do.

18          THE COURT:  Good morning, and thank you.  You may

19     be seated.

20          THE INTERPRETER:  Thank you, Your Honor.

21          THE COURT:  It's about 9:15.  Mr. Xu has joined us

22     in the company of the Marshal.  I'd like the attorneys to

23     enter their appearances for the record.  Who will appear as

24     the attorneys for the United States of America, and with

25     whom are you joined as your representative?
```

1           MR. MANGAN:  Your Honor, Tim Mangan on behalf of

2     the United States.

3           MS. GLATFELTER:  Emily Glatfelter.

4           MR. McKENZIE:  And Matthew McKenzie.

5           THE COURT:  Good morning to the three of you.

6           MR. MANGAN:  And then joining us at counsel table

7     is Special Agent Bradley Hull.

8           THE COURT:  Very well.  Good morning, sir.  The

9     four of you may be seated.  In the rush to get organized, I

10    have forgotten my mask.  Would you -- Ms. Frankian, will you

11    get my mask, please, from chambers?  I'm fully vaccinated,

12    but we're all going to wear masks.  Thank you.

13          Julie Hohenstein is our court reporter.  She'll be

14    with us this week is my understanding -- provided she

15    survives.  Thank you for being present, ma'am.

16          The Jurors, we randomized list of names with

17    numbers.  It's still being prepared.  We'll get it to you

18    and to me as soon as we can.

19          First thing I want to address, we are outside the

20    presence of the Jurors; present with the Defendant and all

21    attorneys.

22          MR. KOHNEN:  Your Honor --

23          THE COURT:  Yes.

24          MR. KOHNEN:  -- pardon me, but with the Court's

25    permission, we'd like to introduce ourselves for the record.

```
1                THE COURT:  Do you think that's important?

2                MR. KOHNEN:  It's probably important for the

3      record.  It's not personally important to me, Your Honor.

4                THE COURT:  Forgive me.  Would the Defense enter

5      their appearances, please?

6                MR. KOHNEN:  Thank you, Judge.  On behalf of our

7      client, Mr. Xu, Ralph Kohnen.

8                MR. MIEDEL:  Good morning, Your Honor, Florian

9      Miedel for Mr. Xu.

10               MS. CORS:  Good morning, Your Honor, Jeanne Cors

11     for Mr. Xu.

12               MS. TAYLOR:  Good morning, Your Honor, Sanna-Rae

13     Taylor.

14               MR. McBRIDE:  Good morning, Your Honor, Bob McBride

15     for Mr. Xu.

16               MS. JOHNSON:  Good morning, Your Honor, Amanda

17     Johnson.

18               MS. LYNCH:  Good morning, Your Honor, Courtney

19     Lynch.

20               THE COURT:  Good morning to all of you and forgive

21     me for overlooking that step.  Thank you, Mr. Kohnen.  As

22     the trial proceeds, do not be concerned about interrupting

23     me in general, so to speak -- maybe.

24               Mr. Xu, good morning.

25               DEFENDANT YANJUN XU:  Good morning.
```

1          THE COURT:  First thing I want to address is the

2     number of Prospective Jurors.  Over the weekend, we lost

3     another Juror, so I believe our final number is down to 40;

4     is that correct; Ms. Frankian?  Is that your sense?  We may

5     be generally there?

6          MS. FRANKIAN:  As of yesterday, we had 40.

7          THE COURT:  As of yesterday, we had 40.  The Court

8     had proposed selecting four Alternates, which would mean 16

9     Jurors and four additional Peremptory strikes, two per side.

10          I learned, however, that as an initial matter if we

11     are to socially distance Jurors 6 feet a part from one

12     another, we can only accommodate 15 Jurors.

13          That said, we could probably get one more person in

14     somewhere if need-be.

15          But I'd like to consider whether we should go ahead

16     with 15 instead, which would not only accomplish social

17     distance, but also lower the minimum number of Prospective

18     Jurors we need for Jury selection, which may or may not be

19     necessary.  We won't know until we've addressed Challenges

20     for Cause.

21          That also brings me to the next issue, which is the

22     possibility that we may end up short on Jurors.  If a

23     handful of people indicate that they have some hardship they

24     didn't disclose previously or some bias that cannot be

25     rehabilitated, if that happens, rather than delay empaneling

1    the Jury, we could cut back the number of Alternates to two

2    that would eliminate two Jurors on a Peremptory strike on

3    each side, so rather than 36 people minimum, we'd only need

4    32 minimum to complete Jury selection.

5         I want to hear from both sides.  Do you object to

6    cutting back to three Alternatives in order to promote

7    complete social distancing?  And only if it becomes

8    necessary to ensure that we empanel a Jury today, do you

9    object to cutting back to two Alternates.

10        Is the Government able to process that and respond?

11        MR. MANGAN:  We are, Your Honor.  We have no

12   objection to either of those suggestions.

13        THE COURT:  Very well.  And on behalf of Defendant?

14        MR. KOHNEN:  Your Honor, I'm going to need a moment

15   to consult with my client about that with the Court's

16   permission?

17        THE COURT:  Very well.  Yes.

18   (Mr. Kohnen confers with Defendant Yanjun Xu.)

19        MR. KOHNEN:  Sorry for the delay, Your Honor.  The

20   Court's proposal's acceptable to us.

21        THE COURT:  Thank you.  The next item I wish to

22   address on the record is plea negotiations.  I'm required to

23   do this as a matter of law.

24        The colloquy is attempted to memorialize

25   Defendant's acknowledgement of plea offers, if any, made and

1    rejected, and Defendant's knowing decision to proceed to

2    trial.

3         I'd like to ask the Government to State for the

4    record all former plea offers extended, and the current

5    offer, if any, on the table?

6         MR. MANGAN:  Your Honor, on July 23, 2021, the

7    Government extended a formal plea offer in writing to the

8    Defense.  The plea proposal is as follows:

9         We propose that Defendant plead to Counts 1 and 2

10   of the indictment, and then under a Rule (c)(1)(C)

11   Agreement, the parties would agree to a binding sentencing

12   range between 210 and 240 months.

13        That was the proposal that was sent from the

14   Government on July 23, 2021.

15        THE COURT:  And did you get a response?

16        MR. MANGAN:  We received no response, Your Honor,

17   since that time.

18        THE COURT:  Is that offer still on the table?

19        MR. MANGAN:  Yes, Your Honor.

20        THE COURT:  Very well.  Thank you.  For purposes of

21   the record, I would ask Defense counsel to confirm any

22   formal offers as stated by the Government; that the formal

23   offer was previously conveyed to Defendant; that Defendant

24   rejected or rejects the previously extended formal offer;

25   that the Defendant is aware that the offer is still on the

1    table; and that so far Defendant has expressed his intent to

2    reject the offer?  On behalf of the Defense?

3            MR. KOHNEN:  May I have just a moment, Your

4    Honor?

5            THE COURT:  Yes.

6    (Mr. Kohnen confers with Defendant Yanjun Xu.)

7            MR. KOHNEN:  Your Honor, we've discussed that offer

8    on several occasions with our client including 10 seconds

9    ago, and he rejects the offer.

10           THE COURT:  Very well.  I'm required to ask.  I

11   have to ask Mr. Xu directly.

12           Are you aware that that offer is on the table, and

13   do you reject it?  I'm required by law to ask.

14           DEFENDANT YANJUN XU:  Yes.

15           THE COURT:  Thank you.  Next issue I want to

16   address is restraints.  Because the Jurors will be socially

17   distanced, and, therefore, seated in the gallery during voir

18   dire and throughout trial, it's a greater likelihood that

19   leg shackles may be seen by the Jurors.

20           Therefore, the Court has elected to forego leg

21   shackles.  The interests of security do not outweigh the

22   increased chance of visibility.

23           Can the Defense confirm that they are, however,

24   willing and that Mr. Xu is without restraint, no leg

25   shackles included?

1          MR. KOHNEN:  Yes, Your Honor.  Thank you for that.

2          THE COURT:  Very well.  Mr. McBride's arguments

3     moved me.

4          MR. McBRIDE:  Thank you, Your Honor.

5          THE COURT:  To my knowledge, there are no motions

6     pending.  We've ruled by notation order and written order.

7     I expect written decisions in due course on the Motion in

8     Limine, Motion regarding Co-Conspirators, and Motion to

9     Dismiss; but they've been ruled on, for purposes of the

10    record, by notation order.

11         Does the Government acknowledge that?

12         MR. MANGAN:  We do, your Honor.  Thank you.

13         THE COURT:  And the Defense as well?

14         MR. KOHNEN:  Yes, Judge Black.

15         THE COURT:  Very well.  I want to address on the

16    record Defendant's request for redactions.  During the final

17    pretrial counsel, Defense requested redaction of the

18    classification on the Government's exhibit.

19         The Court advised parties by an E-Mail that same

20    day that the Court, quote, is not going to order the

21    redaction of designations on the Government's exhibits.

22         Although the Defense indicated that an instruction

23    to the Jurors might be more problematic than helpful.  If

24    the Defense would like to propose an instruction that might

25    be acceptable, the Court is willing to provide it to the

1    Jury upon my approval, end quote.

2        So for the record, we're memorializing the Court's

3    ruling on that request; and while we have not received any

4    indication that the Defense wants any sort of instruction,

5    the Court remains open to it.

6    ██████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ██████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ██████████████████████████████

14       Is there something we should address at this time

15   from the Government's perspective or is the issue not yet

16   ripe or has it been mooted?

17       MR. MANGAN:  I think, Your Honor, I think we can

18   wait on that issue.

19       THE COURT:  Wait?

20       MR. MANGAN:  Wait.

21       THE COURT:  Very good.

22   ████████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ████████████████████

25       THE COURT:  Well, I'd like to discuss it as soon as

1     we can.  We don't need to do it at this moment.

2                MR. MANGAN:  All right.

3                THE COURT:  Is the Defense comfortable with that

4     approach?

5     ████████████████████████████████████████████████

6     ██████████████████████████████████████████████████

7     █████████████████████████████████████████████

8     ██████████████████████████████████████████████

9     ██████████████████████████████████████████████

10                THE COURT:  Very well.  You comfortable proceeding

11    now with that issue in limbo?

12                MR. KOHNEN:  Again, yes.  Thank you, Judge.

13    █████████████████████████████████████████

14    ████████████████████████████████████████████████████

15    █████████████████████████████████████████████

16    ████████████████████████████████

17                I believe I've walked through the issues I wished

18    to address before we recess, get you the re-randomized list

19    with numbers and pause to get ready for voir dire.

20                Let the record reflect on the courtroom clock it is

21    9:29.  Is there anything the Government needs to bring to

22    the Court's attention before we recess for those purposes

23    and move closely toward commencing voir dire?

24                MR. MANGAN:  The only thing we have, Your Honor, is

25    I know the Court's waiting on whether or not the parties

1    have a written stipulation.

2           We discussed this during the final pretrial as to

3    some of the terms.  The Government presented a written

4    proposal of that stipulation Friday morning.  We have not

5    received a response from the Defense despite few requests.

6           THE COURT:  And in what regard was the stipulation?

7           MR. MANGAN:  This pertained to the authen --  part

8    of it pertained to the venue and jurisdiction, which was

9    discussed, as well as that certain documents were properly

10   authenticated under Rule 901 and 902, as well as the

11   authenticity and admissibility of a few other certain

12   exhibits, and then we also added a proposal related to the

13   stipulations --  excuse me -- the translations.

14          THE COURT:  And do you have another stipulation

15   about IP addresses?

16          MR. MANGAN:  That, Your Honor, we did provide.  It

17   wasn't in the proposed stipulation we sent on Friday.  We

18   did send the information regarding the IP addresses by

19   letter to the Defense yesterday along with the attachment

20   stating what the Government would agree to.

21          THE COURT:  Very well, and I now recall that we

22   asked you to review the Court's proposed summary of the

23   case.  The Defense responded with some proposed edits, and

24   we have heard nothing from you.  Where are we on that?

25          MR. MANGAN:  We have, we have no evidence, and we

1    have no objection to their proposed edits.

2            THE COURT:  You have no evidence --

3            MR. MANGAN:  No, I'm sorry.  We have no edits.  We

4    have no changes ourselves.  We saw the proposed changes from

5    the Defense.  We have no objection to their proposal.

6            THE COURT:  Very well.  So why didn't you tell me

7    that by E-Mail?

8            MR. MANGAN:  I apologize, Your Honor.  We should

9    have --

10           THE COURT:  When the Court sends the lawyers

11   E-Mails during the progress of trial with inquiries, I need

12   a response.  Thank you.

13           Where are we on the stipulations from the

14   Defendant's perspective?

15           MR. KOHNEN:  Judge, your second question, Mr.

16   Mangan was more prescient perhaps than you may know.  We

17   were about to -- literately about to push the button

18   agreeing to the stipulations when we got the letter from Mr.

19   Mangan some time around 2:30 in the afternoon yesterday.

20           Judge, we didn't have enough time, frankly, to see

21   whether that new and very important information --  I would

22   label it Brady material -- would impact our position on the

23   stipulations or not.

24           We worked on it probably for three or four hours

25   into last evening.  We do want to be heard on the subject

1    generally.  We're going to suggest after Jury selection and

2    opening statements, we perhaps could get a moment of the

3    Court's time.

4         However, a very long winded way of saying, that

5    last minute, a bit of very important information perhaps --

6    I can't say yet whether it has -- but perhaps has

7    re-oriented our position with respect to these stipulations.

8         May I just a moment, Your Honor?

9         THE COURT:  Yes.

10   (Mr. Kohnen confers with Mr. McBride.)

11        MR. KOHNEN:  Always wise to consult with my

12   colleague, Mr. McBride, Your Honor.  I think ultimately that

13   there's a good chance we're going to stipulate two things

14   that a record's custodian would otherwise have to come in

15   and say, but you'll understand that we have to make darn

16   sure of that at this point.

17        THE COURT:  I'll understand what?

18        MR. KOHNEN:  That we have to make darn sure of that

19   at this point.

20        THE COURT:  Indeed.  So soon?

21        MR. KOHNEN:  Yes, Your Honor, soon.

22        THE COURT:  Very well.  I'm smiling behind the

23   mask.  I asked if the Government had anything for me before

24   we recess?  Is there is anything further from the

25   Government?

1          MR. MANGAN:  No, Your Honor.

2          THE COURT:  Does the Defense have any items they

3     wish to address that we haven't addressed before we recess?

4          MR. KOHNEN:  No.  Thank you, Judge.

5          THE COURT:  Very well.  We're going to recess.  Is

6     30 minutes appropriate or more or less?

7          MR. FRANKIAN:  I think 20 to 30 minutes should be

8     fine.

9          THE COURT:  We're going to recess for 20 minutes

10    unless we whisper to you at that point we need ten more

11    minutes.  So we're in recess.

12         COURTROOM DEPUTY:  All rise.  This court is now in

13    recess.

14    (Court was in recess at 9:34 a.m. and resumed at 10:12 a.m.)

15         COURTROOM DEPUTY:  All rise.  Court is back in

16    session pursuant to the recess.

17         THE COURT:  Please be seated.  We're back in the

18    courtroom on the record.  Government lawyer and team is

19    here.  Defense lawyer and team and the Defendant and the

20    interpreter are here.

21         We are ready, I believe, to go get the 40

22    Prospective Jurors.  Is the Government ready or got anything

23    else before we proceed in that way?

24         MR. MANGAN:  We are ready, Your Honor.

25         THE COURT:  And the Defense?

1          MR. KOHNEN:  Indeed, Your Honor, we're ready.

2          THE COURT:  Very well.  Ms. Santoro, we call for

3     the Prospective Jurors.  We'll sit quietly here off the

4     record.

5     (Discussion held off the record.)

6          COURTROOM DEPUTY:  All rise for the Jury.

7     (Prospective Jurors entered the courtroom.)

8          THE COURT:  As the Jurors join us, you may be

9     seated.  As the Jurors join us, you may be seated.

10    Prospective Jurors that have joined us, you may all be

11    seated.

12          Good morning, ladies and gentlemen.  I am Judge

13    Timothy S. Black, one of the judges of this Federal Court.

14    We're here in the United States District Court for the

15    Southern District of Ohio.  We're on the record in session

16    on the criminal case of the United States of America versus

17    Yanjun Xu.

18          I want to welcome you all here today.  I'll be

19    responsible for presiding at this proceeding for which

20    you've been summonsed.

21          I want to thank you and welcome you.  I realize

22    that being here presents some degree of inconvenience for

23    all of you, but I assure you that your presence is of the

24    upmost importance to the proceedings that are to begin here

25    today.

1        I'd like to say that Jury service is a sacrifice

2    required by democracy, but I acknowledge in the first

3    instance that we have interrupted your lives, and we are

4    grateful for your presence.

5        I want to introduce you to some of the people in

6    the courtroom.  I'm going to start with the people who work

7    for me.

8        Rebecca Santoro is our courtroom deputy.  She

9    administers oaths to Prospective Jurors, to those selected

10   to serve on the Jury, and to witnesses.  She handles the

11   exhibits during trial.  She opens, recesses, and adjourns

12   court.  I couldn't do my job without her.

13       Julie Hohenstein is one of our court reporters.

14   She is and will continue to take down every word spoken

15   during the course of the proceedings by stenotype machine.

16       My law clerk -- my career law clerk is Cristina

17   Frankian.  She's an attorney.  She assists me with all legal

18   work, including research and court orders, and I absolutely

19   could not do my job without her.

20       In a few minutes I'll ask the other persons who are

21   present in the well of the courtroom to introduce

22   themselves; but I first want to explain why you're here, and

23   what we're doing at this point in time.

24       You're here today as Potential Jurors in the case

25   of the United States of America versus Yanjun Xu.  This is a

1    criminal case where the United States has alleged that the

2    Defendant, Yanjun Xu, committed four Federal offenses,

3    including, one, Conspiracy to Commit Economic Espionage;

4           Two, Conspiracy to Commit Trade Secret Theft;

5           Three, Attempted Economic Espionage; and

6           Four, Attempted Trade Secret Theft.

7           The Defendant, Mr. Xu, denies the charges.  He is

8    presumed innocent.

9           You must bear in mind that the Defendant is

10   presumed innocent unless and until the Government proves by

11   competent evidence beyond a reasonable doubt his guilt.

12          Proof beyond a reasonable doubt means proof which

13   is so convincing that you would not hesitate to rely and act

14   upon it in making the most important decisions in your own

15   lives.

16          Today we hope to be complete with Jury selection by

17   early afternoon.  Those of you selected as Jurors in this

18   case will be given some preliminary instructions and then

19   perhaps we will hear opening statements from the lawyers

20   today.

21          At some point before opening statements, we will

22   also break for lunch.  This is going to be a substantial

23   trial, and I know that with COVID, among other things, it's

24   a difficult time to be in a new environment; but I want

25   you all to know that the court, its judge, will do

1    everything possible to ensure that you are safe and

2    comfortable.

3            First of all, I'm pleased to tell you that every

4    Prospective Juror in this room is fully vaccinated and has

5    indicated that they're willing to wear a mask during the

6    Court proceedings.  Same goes for the lawyers and staff.  I

7    hope that gives you some level of comfort.

8            Additionally, although we couldn't accomplish it at

9    this very moment with 40 plus Prospective Jurors, those of

10   you that are selected will be seated in a socially distanced

11   manner.  We won't have 16 of you in the box, and we'll be

12   providing you lunch each day, so you won't have to go in and

13   out constantly.

14           But, like I said, this is going to be a long trial,

15   and that is in part why I asked everyone to fill out a

16   lengthy questionnaire.

17           As I indicated on the questionnaire and the

18   accompanying letter, this trial may go as long as

19   December 1, 2021.  I don't think it will, but we need to be

20   prepared for that.

21           If you're selected as a Juror, please note that

22   we're not going to be in trial on Thursday, November 11 in

23   observance of Veterans Day.  We're also going to be off for

24   Thanksgiving on Wednesday, Thursday, and Friday.  So the

25   week of Thanksgiving we're not in court on Wednesday,

1    November 24; Thursday, November 25; and Friday, November 26

2    to be certain that you have an opportunity to get a full

3    plate of turkey and a short break.

4         We may well also take a half day off on November 2

5    so we all have a chance to vote.  You can get that behind

6    you early, that's a credit to you.

7         Other than the days that I've just identified,

8    we'll likely be in court every day, Monday through Friday.

9    We generally start every day 9:30 a.m., and we'll try to end

10   around 4:30 p.m.

11        That means you'll need to be at the courthouse

12   every morning by 9:15 a.m. at the latest, so we can bring

13   you into the courtroom at 9:30 if we're able.

14        Each day, there will be an hour and a fifteen

15   minute break for lunch from about noon until 1:15.  We'll

16   also take two 15-minute breaks; one mid-morning break about

17   10:30 to 10:45, and one break in the afternoon about 2:45

18   until three.

19        So introduction to voir dire.  As I mentioned,

20   you're all here as Prospective Jurors in this case.  The

21   process of Jury selection is known as voir dire, and it's

22   the parties opportunity with the Court's assistance to

23   determine which 15 of you will be chosen to sit as Jurors in

24   this case.

25        The words voir dire literately mean to see and to

1    say, but they've come to mean to speak the truth.  That's

2    exactly what we must do here.

3            The process of voir dire requires the Court -- the

4    Judge -- and then the attorneys to ask questions of you in

5    order to determine whether you should participate as a Juror

6    in this case or whether it would be better to excuse you

7    from service in this particular case.  In response to the

8    questions posed by the Court and counsel, you must speak the

9    truth.

10           Those of you who are chosen as Jurors will have an

11   indispensable and unique function to perform.  You'll be

12   carrying out a mandate of the United States Constitution,

13   which states that any person accused of a crime is entitled

14   to a fair trial by an impartial Jury.  Thus, under the

15   Constitution, it will be up to you to decide the case.

16           Before I go further, I would like now to ask the

17   parties to stand and introduce themselves.  I'll start with

18   the Government.

19           On behalf of the Government, would you please

20   stand, introduce yourselves, and those present at counsel

21   table?

22           MR. MANGAN:  Good morning, everyone.  My name is

23   Tim Mangan.  I'm an Assistant U. S. Attorney here in

24   Cincinnati.

25           MS. GLATFELTER:  Good morning.  My name is Emily

1    Glatfelter.  I'm also an Assistant U.S. Attorney here in

2    Cincinnati.

3              MR. McKENZIE:  Good morning.  My name is Matthew

4    McKenzie.  I'm a trial attorney with the Department of

5    Justice.

6              MR. HULL:  Good morning.  My name is Bradley Hull.

7    I'm a Special Agent with the F.B.I.

8              THE COURT:  Thank you.  Would you please be seated.

9    Would Defense counsel please stand and introduce yourselves

10   and your client?

11             MR. KOHNEN:  Yes.  Thank you, Your Honor.  Ladies

12   and gentlemen, good morning.  My name is Ralph Kohnen.  I'm

13   an attorney here in Cincinnati, and I represent our client,

14   Mr. Xu.

15             You'll hear a number of different pronunciations,

16   but I've been struggling to say it right, and I just got the

17   nod from Mr. Xu.  Would you stand and introduce yourself?

18   Say good morning to the Jury.

19             DEFENDANT YANJUN XU:  Good morning.

20             THE COURT:  And with us is a translator, who's been

21   phenomenal.  Her name is Mae Harmon.

22             THE INTERPRETER:  Good morning.

23             MR. MIEDEL:  Good morning.  My name is Florian

24   Miedel.  I'm also an attorney for Mr. Xu.

25             MS. CORS:  Good morning, everyone.  My name is

1    Jeanne Cors, and I'm also representing Mr. Xu.

2              MS. TAYLOR:  Good morning, everyone.  My name is

3    Sanna-Rae Taylor, and I'm an attorney representing Mr. Xu.

4              MS. JOHNSON:  Good morning.  My name is Amanda

5    Johnson, and I am an attorney representing Mr. Xu.

6              MR. McBRIDE:  Good morning, ladies and gentlemen.

7    My name is Bob McBride.  I'm one of the attorneys

8    representing Mr. Xu.

9              MS. LYNCH:  Good morning.  My name is Courtney

10   Lynch, and I'm also an attorney representing Mr. Xu.

11             THE COURT:  Thank you.  Mr. Xu, did I pronounce

12   your name correctly?

13             DEFENDANT YANJUN XU:  Almost.

14             THE COURT:  Will you say it to me?  And forgive me

15   for my lack of pronunciation skills.  Just stand up and tell

16   me your name?

17             DEFENDANT YANJUN XU:  Xu.

18             THE COURT:  Xu?

19             DEFENDANT YANJUN XU:  Xu.

20             THE INTERPRETER:  Xu.

21             DEFENDANT YANJUN XU:  Xu.

22             THE COURT:  Xu?  He's the Defendant.  He's well

23   represented by counsel.  If I mispronounce his name, it's on

24   me and nobody else.  You may be seated.  Thank you.

25             At this time I'm going to ask Ms. Santoro to

1    administer the oath to the Prospective Jurors.  This oath is

2    simply to make certain that your answers to our questions

3    are complete and truthful.

4         To get your juices flowing, would you stand,

5    please, and raise your right hand for the oath?

6         COURTROOM DEPUTY:  You, and each of you, do

7    solemnly swear or affirm that the answers you give to the

8    questions in this proceeding shall be the truth, the whole

9    truth, and nothing but the truth.  Please respond by saying

10   I do.

11        ALL PROSPECTIVE JURORS:  I do.

12        THE COURT:  Thank you.  You may be seated.  Now,

13   that you've been sworn, we can actually formally begin the

14   process of selecting 15 Jurors.

15        The process is simple enough.  I'm going to ask you

16   some questions, and then the lawyers for each side get an

17   opportunity to ask questions; and our questions are designed

18   to make sure that you have no bias or prejudice for or

19   against either side.

20        Some of these questions may seem personal.  Please

21   do not be offended.  If a question seems personal or if

22   you're particularly sensitive about answering a specific

23   question, please know that the attorneys are not trying to

24   make you uncomfortable or to embarrass you, so you must not

25   hold it against them.

1        The attorneys are required to ask questions they

2   believe will ensure empaneling a full and impartial Jury in

3   this case.

4        If anybody asks you a question that you're not

5   comfortable answering in open court, you may approach the

6   bench and discuss your answers in private.

7        Also, always keep in mind that voir dire means to

8   speak the truth.  Even if the answer to your question means

9   you might have a bias, do not hesitate to answer that

10  question truthfully.

11       Your own desire to participate in this case cannot

12  outweigh the fact that the fairness and impartiality of each

13  Juror is crucial to a fair trial.

14       After the lawyers have had an opportunity to

15  question you, after I have, we'll take a break -- which we

16  call a recess -- while I'll confer with the lawyers and the

17  parties; and when we come back in session -- reconvene --

18  I'll announce the numbers of those of you who have been

19  selected.

20       If you're not chosen for the Jury, you must

21  understand that this is not a reflection on your character,

22  your integrity, or your fitness to serve.

23       Each side is afforded the opportunity to excuse

24  Jurors for any reason that is not unlawful or for no reason

25  at all.  So if you're excused, please do not feel slighted

1    or offended.

2            Once we have seated 15 Jurors, we'll have our Jury,

3    and those 15 will be sworn in to Jury duty.  We're now

4    prepared to begin.

5            Please listen carefully to the questions that I and

6    the attorneys are about to ask.  Questions will be addressed

7    to everyone -- both those in the Jury box and those in the

8    back in the gallery.

9            If your answer to any of the questions is yes,

10   please raise your hand, and I'll call on you.  When I call

11   on you, please stand so we can hear you, and first announce

12   the Juror Number you were given this morning.  We may then

13   ask you some follow-up questions.  I believe we have

14   microphones that we can use to assist you, if required.

15           Please do not forget to announce your Juror Number

16   when we call on you.  In our list all Jurors are organized

17   numerically, so it makes it very difficult to keep track of

18   your responses if you do not give us your Juror Number.  I

19   ask you to stand purely for the reason that I can probably

20   hear you better.

21           When speaking up, speak as loud as you can when

22   answering a question.  Particularly with masks on, it's very

23   hard to hear unless you really project your voice, and I

24   believe we have microphones that will help; but if at any

25   point you can't hear the questions being asked by me or the

1    attorneys, please raise your hand and let us know.

2            Is there anybody having trouble hearing me?

3    (No Prospective Juror raised their hand.)

4            THE COURT:  Very well.  All right.  As you know,

5    the Government is represented by Attorneys Emily Glatfelter,

6    Tim Mangan, and Matthew McKenzie.  Ms. Glatfelter and Mr.

7    Mangan work for the United States Attorney's Office.  Mr.

8    McKenzie is with the Department of Justice.

9            Also seated at counsel table and introduced to you

10   is the Government's representative in this case, F.B.I.

11   Special Agent Bradley Hull.

12           Are you, or any member of your immediate family,

13   personally acquainted with, related to by blood or marriage,

14   or connected in any way with either of the attorneys for the

15   Government or with Agent Hull?

16   (No Prospective Juror raised their hand.)

17           THE COURT:  No hands.  Does anyone personally know

18   the Government's attorneys or Agent Hull in any capacity?

19   (No Prospective Juror raised their hand.)

20           THE COURT:  No hands.  Does anyone here work for or

21   do you know someone who works for the United States

22   Attorney's Office?

23   (No Prospective Juror raised their hand.)

24           THE COURT:  No answers.  Yes.  Yes, sir?

25           PROSPECTIVE JUROR:  I'm Juror 21.

1          THE COURT:  Yes, sir.

2          PROSPECTIVE JUROR:  I work for the United States

3    Department of Agriculture, and I interact frequently with

4    the United States Assistant Attorney Bill King.

5          THE COURT:  And do you think you could be a fair

6    and impartial Juror when although on occasion you work with

7    them and specifically Mr. King?

8          PROSPECTIVE JUROR:  I do.

9          THE COURT:  Thank you, sir.  The Defendant, Yanjun

10   Xu, and his attorneys, Ralph Kohnen, Jeanne Cors, Bob

11   McBride, Sanna-Rae Taylor, all of whom are with the Taft Law

12   Firm, as well as Attorney Florian Miedel of Miedel Law Firm,

13   the interpreter is here next to the Defendant, Mae Harmon.

14          First, are you, or any member of your immediate

15   family, personally acquainted with, related to by blood or

16   marriage, or connected in any way with Yanjun Xu?

17   (No Prospective Juror raised their hand.)

18          THE COURT:  No hands.  Does anyone personally know

19   Yanjun Xu in any capacity, the Defendant?

20   (No Prospective Juror raised their hand.)

21          THE COURT:  No hands.  Are you, or is any member of

22   your immediate family, personally acquainted with, related

23   to by blood or marriage, connected in any way with any of

24   the Defense attorneys?

25   (No Prospective Juror raised their hand.)

1          THE COURT:  No hands.  Does anyone personally know

2     anyone who works at Taft, the law firm, in any capacity?

3     (Prospective Jurors raised their hand.)

4          THE COURT:  Yes, sir?

5          PROSPECTIVE JUROR:  Juror Number 14.

6          THE COURT:  Yes.

7          PROSPECTIVE JUROR:  I know several attorneys at

8     Taft Law, including Ron Christian and Marcia Andrew.

9          THE COURT:  And are these friends or professional

10     colleagues?

11          PROSPECTIVE JUROR:  One is a -- one represents the

12     foundation that I'm the president of, Ron Christian.

13          THE COURT:  And does your relationship with him

14     affect your ability to be a fair and impartial Juror?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  What is the foundation?

17          PROSPECTIVE JUROR:  It's the foundation for Atrium

18     Medical Center a hospital in Middletown, Ohio.

19          THE COURT:  Thank you for speaking up, sir.

20          PROSPECTIVE JUROR:  Thank you.

21          THE COURT:  Does anyone know Ms. Harmon, the

22     interpreter, in any capacity --  we got another hand in the

23     back.  I'm sorry, sir.

24          PROSPECTIVE JUROR:  Juror Number 39.  I know Gregg

25     Rogers, who is an attorney with Taft Law Firm.

1          THE COURT:  So do I.  Would that knowledge and

2     relationship affect your ability to be a fair and impartial

3     Juror?

4          PROSPECTIVE JUROR:  No, sir.

5          THE COURT:  Does he represent you or your company?

6          PROSPECTIVE JUROR:  No, sir.

7          THE COURT:  Is a friend?

8          PROSPECTIVE JUROR:  He's a member of my church.

9          THE COURT:  Very well.  Thank you for speaking up.

10    Does anyone know Ms. Harmon in any capacity?

11    (No Prospective Juror raised their hand.)

12          THE COURT:  No hands.  I'm going to read a list of

13    people who may be witnesses in this case.  There are a bunch

14    of names.  I'm going to ask you if they sound familiar or if

15    you think you know somebody by that name.

16          James Mulvenon?

17    (No Prospective Juror raised their hand.)

18          THE COURT:  No hands.  Stijn Berrevoets?

19    (No Prospective Juror raised their hand.)

20          THE COURT:  No hands.  Todd Vokas?

21    (No Prospective Juror raised their hand.)

22          THE COURT:  Agent Bradley Hull?

23    (No Prospective Juror raised their hand.)

24          THE COURT:  Jason Wang?

25    (No Prospective Juror raised their hand.)

```
 1              THE COURT:  David Zheng?

 2   (No Prospective Juror raised their hand.)

 3              THE COURT:  Nick Kray?

 4   (No Prospective Juror raised their hand.)

 5              THE COURT:  Eric Ritter?

 6   (No Prospective Juror raised their hand.)

 7              THE COURT:  Rizwan Ramakdawala?

 8   (No Prospective Juror raised their hand.)

 9              THE COURT:  Arthur Gao?

10   (No Prospective Juror raised their hand.)

11              THE COURT:  Michael Reigle?

12   (No Prospective Juror raised their hand.)

13              THE COURT:  Sun Li?

14   (No Prospective Juror raised their hand.)

15              THE COURT:  Adam James?

16   (No Prospective Juror raised their hand.)

17              THE COURT:  Frederic Hascoet?

18   (No Prospective Juror raised their hand.)

19              THE COURT:  James Olson?

20   (No Prospective Juror raised their hand.)

21              THE COURT:  Lily Tang Williams?

22   (No Prospective Juror raised their hand.)

23              THE COURT:  Colonel James A. Schnell?

24   (No Prospective Juror raised their hand.)

25              THE COURT:  I saw no hands.  Is anyone related to
```

1    any of the individuals that I just named?

2    (No Prospective Juror raised their hand.)

3            THE COURT:  Is anyone personally acquainted with

4    any of those -- these persons or do you have any knowledge

5    of them directly or in-directly through your social,

6    business, or personal, or professional lives?

7    (No Prospective Juror raised their hand.)

8            THE COURT:  Does anyone know any of my staff in any

9    capacity:  Rebecca Santoro, Courtroom Deputy?

10   (No Prospective Juror raised their hand.)

11           THE COURT:  Julie Hohenstein, one of my court

12   reporters?

13   (No Prospective Juror raised their hand.)

14           THE COURT:  Cristina Frankian, my law clerk?

15   (No Prospective Juror raised their hand.)

16           THE COURT:  Do any of you know anyone who works in

17   the courthouse, this courthouse?

18   (Prospective Jurors raised their hand.)

19           THE COURT:  There's a hand up.

20           PROSPECTIVE JUROR:  Juror Number 21.  In my

21   professional capacity you're deciding a matter for the

22   United States Department of Agriculture versus a property

23   owner in Clermont County.

24           THE COURT:  Right.  Is that going to affect your

25   ability to be a fair and impartial Juror?

1          PROSPECTIVE JUROR:  No, sir.

2          THE COURT:  Very well.  Thank you.  Anyone else

3     know anyone in the courthouse?

4     (No Prospective Juror raised their hand.)

5          THE COURT:  Well, for Pete's sake.  Do any of you

6     know me?

7     (Laughter.)

8     (No Prospective Juror raised their hand.)

9          THE COURT:  Other than the gentleman who spoke who

10    doesn't know me per se, I don't believe, do you, sir?

11         PROSPECTIVE JUROR:  No, sir.

12         THE COURT:  Very well.  Do any of you know or

13    possibly recognize any of your fellow Jurors here today?

14    (No Prospective Juror raised their hand.)

15         THE COURT:  No response.  So one final time, do any

16    of you recognize any of the names that have been mentioned

17    here today?

18    (No Prospective Juror raised their hand.)

19         THE COURT:  Do you know anyone you've been

20    introduced to here today?

21    (No Prospective Juror raised their hand.)

22         THE COURT:  Do you know anyone you've seen in the

23    courthouse today?

24    (No Prospective Juror raised their hand.)

25         THE COURT:  Or do you know anyone that you see in

1     this courtroom currently that you haven't identified?

2     (No Prospective Juror raised their hand.)

3          THE COURT:  Very well.  Do any of you personally

4     know the Defendant, Yanjun Xu, in any capacity?

5     (No Prospective Juror raised their hand.)

6          THE COURT:  No response.  Ms. Frankian, can you

7     approach, please?

8     (The Court confers with Ms. Frankian.)

9          THE COURT:  The Defendant in this case, Yanjun Xu,

10    has been charged with four Federal offenses, I told you:

11    Conspiracy to Commit Economic Espionage, Conspiracy to

12    Commit Trade Secret Theft, Attempted Economic Espionage,

13    Attempted Trade Secret Theft.  The Defendant has pled not

14    guilty to the charges, and the Defendant is presumed

15    innocent.

16          Does anyone have any personal interest of any kind

17    in this case or in this Defendant or do you know anyone who

18    may have such a special interest?

19    (No Prospective Juror raised their hand.)

20          THE COURT:  Has anyone here served as a Juror in a

21    criminal or civil case or as a member of the Grand Jury in

22    either Federal or State court?

23    (No Prospective Juror in the Jury box raised their hand.)

24          THE COURT:  I see no hands in the box.

25    (Prospective Jurors raised their hand.)

1          THE COURT:  I see one in the gallery.  Sir?

2          PROSPECTIVE JUROR:  Juror 20.  I have served on a

3    Jury before in Hamilton County Courts.

4          THE COURT:  If you'll keep your voice up.  You

5    served as a Juror before.  Is that what you said, sir?

6          PROSPECTIVE JUROR:  Yes.  Yes.

7          THE COURT:  And without telling me the outcome,

8    don't tell me the outcome, can you please tell me what kind

9    of case it was?  Do you know if it was criminal or civil?

10          PROSPECTIVE JUROR:  It was criminal.

11          THE COURT:  Very well.  Were you the foreperson?

12          PROSPECTIVE JUROR:  I was not.

13          THE COURT:  Do you understand that in a case like

14    you served, a criminal case, and in this case, which is a

15    criminal case, that the burden of proof is that the

16    prosecutor must prove the Defendant's guilt beyond a

17    reasonable doubt?

18          PROSPECTIVE JUROR:  I certainly understand that.

19          THE COURT:  And is there anything about your prior

20    service in the other case that would affect your ability to

21    be a fair and impartial Juror in this case?

22          PROSPECTIVE JUROR:  I don't see how.

23          THE COURT:  You said, I don't see how; is that

24    right?

25          PROSPECTIVE JUROR:  No.  I said I don't see how.

1    The, the -- the more exact easy answer is no.

2         THE COURT:  All right.  And I'm not picking on you.

3    I'm an old man.  I can't hear you.

4         Would your service on the prior case affect your

5    ability to be a fair and impartial Juror in this case?

6         PROSPECTIVE JUROR:  No.

7         THE COURT:  And you're going to think I'm really

8    old, but what's your Juror Number?

9         PROSPECTIVE JUROR:  20.

10        THE COURT:  Thank you, sir.  Is there anyone else?

11   (No Prospective Juror raised their hand.)

12        THE COURT:  Very well.  Are any of you currently

13   employed or were you previously employed by any Federal,

14   State, or local law enforcement agency, i.e., e.g., the

15   F.B.I., military police, State Highway Patrol, county

16   sheriff, any previous -- any police department?

17        I'm asking about you.  Is there anyone who is in or

18   has that employment history?

19   (No Prospective Juror raised their hand.)

20        THE COURT:  I see no hands.  I know some of you

21   indicated on your questionnaires that you have a family

22   member or members who are currently or were previously

23   employed with a Federal, State, or local law enforcement

24   agency.

25        From those of you who have family members who are

1    or were members of law enforcement, do you believe that you

2    will be unable to serve as a fair and impartial Juror on

3    that basis?

4    (No Prospective Juror raised their hand.)

5              THE COURT:  I see no hands.  Would anyone here have

6    trouble returning a verdict of not guilty if the Government

7    fails to prove its case beyond a reasonable doubt?

8    (No Prospective Juror raised their hand.)

9              THE COURT:  Would anybody here have trouble

10   returning a verdict of guilty if the evidence proves guilt

11   beyond a reasonable doubt?

12   (No Prospective Juror raised their hand.)

13             THE COURT:  Okay.  Does anyone have any prior

14   knowledge or information about this particular case?  This

15   includes knowledge gained from personal contacts from the

16   media or from the Internet.

17   (No Prospective Juror raised their hand.)

18             THE COURT:  No hands.  Very well.  In the

19   questionnaire that we sent to each of you, there was a

20   question asking you about any opinions or beliefs you may

21   have regarding China, the Chinese culture, Chinese Communist

22   Party, or the Chinese Government, and many of you said that

23   you did have certain opinions or beliefs.

24             But most importantly, most, if not all, of you

25   answered the next question by saying that your opinions or

1    beliefs about China would not impact your ability to serve

2    as an impartial Juror.

3             The specific question specifically ask, quote, in

4    the event any party, attorney, or witness in this case is a

5    Chinese citizen, or if any of the evidence relates to China,

6    do you believe that your opinions or beliefs would impact

7    your ability to serve as an impartial Juror?

8             Most, if not all, of you said no.  I want to ask

9    everyone that question again, because it's incredibly

10   important.

11            Mr. Xu is a Chinese citizen, and in this case you

12   will hear about China and the Chinese Government, and you'll

13   likely hear testimony of witnesses from different countries

14   and of different ethnicities; but China and the Chinese

15   Government are not on trial here.

16            Mr. Xu is the Defendant charged in this case, and

17   he is presumed innocent.  I want to make sure that everyone

18   understands and acknowledges, accepts this critical point,

19   so I want to ask you again, is there anyone here who thinks

20   they cannot serve as a fair and impartial Juror or anyone

21   who thinks they cannot presume Mr. Xu's innocence due to

22   your opinions and beliefs about the China or Chinese

23   Government?

24   (No Prospective Juror raised their hand.)

25            THE COURT:  I see no hands.  Is there anyone here

1    who believes that their opinions about people of different

2    ethnicities and nationalities would interfere with their

3    ability to serve as a fair and impartial Juror?

4    (No Prospective Juror raised their hand.)

5         THE COURT:  Is there any reason in your mind why

6    you cannot hear and consider the evidence in this case and

7    render a fair and impartial verdict?

8    (No Prospective Juror raised their hand.)

9         THE COURT:  I see no hands.  Does anyone have

10   feelings, thoughts, inclinations, or beliefs which might

11   influence or interfere with your full and impartial

12   consideration in which might influence you either in favor

13   of or against the Defendant or the Government?

14   (No Prospective Juror raised their hand.)

15        THE COURT:  No hands.  As a Juror, you will be

16   required to take the law as the Court -- as this Judge

17   instructs you without any reservation and with disregard of

18   any other ideas, notions, or beliefs about the law that you

19   may have and apply the facts based on the evidence in this

20   case to the Judge's instructions on the law only.

21        Is there anyone here who believes -- does not

22   believe he or she can do this?  So if I tell you the law

23   says X, and you say, well, I didn't think that was right.  I

24   don't think it should be.  Will you follow my instruction of

25   the law and set aside any other thoughts?

1    (Prospective Jurors nod heads affirmatively.)

2         THE COURT:  Very well.  Is there anyone here who

3    cannot recognize and accept the proposition that only Jurors

4    can judge the facts?  The Jury is going to decide what the

5    facts are.  I'm not.  You are.

6         And then I will tell you the law, and you'll apply

7    the facts to the law recognizing that I'm the sole judge of

8    the law.

9         Is there anyone who cannot abide by that?

10   (No Prospective Juror raised their hand.)

11        THE COURT:  No hands.  If you are selected as a

12   Juror in this case, can you extend the presumption of

13   innocence to the Defendant?

14        That is, can you presume, as you must, that the

15   Defendant is innocent of the charge or a charge unless and

16   until guilt is established by proof that convinces you

17   beyond a reasonable doubt of the guilt?  If you cannot do

18   this, please hold up your hand.

19   (No Prospective Juror raised their hand.)

20        THE COURT:  Because the Defendant is presumed

21   innocent, he has no obligation to do or say anything to

22   prove his innocence; therefore, the Defendant has the right

23   to choose not to present evidence and/or not to testify.

24        And if he chooses to exercise the right not to

25   testify or not to present any evidence, no Juror can hold

1      that decision against him.

2              We asked a question about should a Defendant

3      testify.  You guys answered it.  I'm telling you, as a

4      matter of law, like anyone charged with a crime in this free

5      country, he's presumed innocent unless and until guilt is

6      established beyond a reasonable doubt; and he has no

7      obligation to present evidence or to testify or to tell his

8      side of the story, and you cannot hold that against him if

9      he exercises that right.

10             Is there anyone here who believes they cannot

11     accept or abide by the fact that the Defendant has no

12     obligation to prove his innocence, to present evidence, or

13     to testify?

14     (No Prospective Juror raised their hand.)

15             THE COURT:  Is there anyone here who understands

16     that the Defendant has the right to choose not to testify or

17     present evidence, but who would hold that decision against

18     the Defendant in any way?

19     (No Prospective Juror raised their hand.)

20             THE COURT:  No hands.  I really banged on this.

21     It's the essence of a criminal trial.  He's presumed

22     innocent.  Guilt has to be proved beyond a reasonable doubt.

23     He has no obligation to say or do anything, including

24     testify.

25             Is there anyone who can't abide by that?

1    (No Prospective Juror raised their hand.)

2         THE COURT:  Very well.  Does anyone here have any

3    bias or prejudice based solely on the fact that the

4    Defendant has been charged with these offenses against the

5    United States?

6    (No Prospective Juror raised their hand.)

7         THE COURT:  So there's nobody sitting here

8    thinking, well, he got charged; he must be guilty?  If

9    you're thinking that, put it out of your mind.

10        Does anyone have any bias or prejudice based solely

11   on the fact that the Defendant has been charged?

12   (No Prospective Juror raised their hand.)

13        THE COURT:  Is there anyone here who has already

14   formed or expressed any opinion as to the guilt or innocent

15   --  innocence of the Defendant?

16   (No Prospective Juror raised their hand.)

17        THE COURT:  I see no hands.  You've all got an open

18   mind.  You've heard my instructions.  Forgive me for asking,

19   does anyone have any disabilities, such as difficulty

20   sitting, hearing, or seeing or staying awake?

21   (Prospective Juror raised their hand.)

22        THE COURT:  I've got a hand up in the gallery.

23        PROSPECTIVE JUROR:  I'm Juror 38.

24        THE COURT:  38.  Let me get to my page.  Yes?

25        PROSPECTIVE JUROR:  I have narcolepsy.

```
 1              THE COURT:  You have what, sir?

 2              PROSPECTIVE JUROR:  Narcolepsy.

 3              THE COURT:  Okay.  You fall asleep on occasion?

 4              PROSPECTIVE JUROR:  I take medications that helps.

 5              THE COURT:  If you're going to be a Juror, you

 6    can't be falling asleep during the evidence, and you have a

 7    legitimate medical condition that you're taking medication

 8    for.

 9              Are you concerned that your narcolepsy will

10    interfere with your ability to stay awake and hear the

11    evidence when we're in session?

12              PROSPECTIVE JUROR:  No.

13              THE COURT:  Thank you.  Would you be offended if we

14    see you nodding to suggest good morning to you?

15              PROSPECTIVE JUROR:  No.  I would not be offended.

16              THE COURT:  Very well.  Thank you.  Somebody in the

17    Jury box.  I'm sorry, sir?

18              PROSPECTIVE JUROR:  Yes, sir, Juror Number 4.  I do

19    have a hearing loss, and I have hearing aids, and I'll be

20    fine.  It does not affect me.

21              THE COURT:  Do you think I should get hearing aids?

22              PROSPECTIVE JUROR:  It's your choice, sir.  It was

23    recommended by my wife.

24              THE COURT:  I have a wife as well.  You may be

25    seated.
```

1          PROSPECTIVE JUROR:  Get them.

2          THE COURT:  What number are you?  I didn't hear

3   you.

4   (Laughter.)

5          PROSPECTIVE JUROR:  Number 4, sir.

6          THE COURT:  I did hear you.  Anybody else have

7   difficulty staying awake?  Particularly if something gets

8   boring.

9   (No Prospective Juror raised their hand.)

10          THE COURT:  Very well.  Does anyone here have any

11   medical issues or health concerns that have not been

12   identified in the courtroom today that you believe could

13   interfere with your ability to serve as a Juror?  I need to

14   ask.

15   (No Prospective Juror raised their hand.)

16          THE COURT:  No responses.  The Court and the

17   attorneys estimate that this trial may take weeks, several

18   weeks, possibly until December 1.

19          Everyone who's present here today indicated on

20   their supplemental questionnaires or on follow-up that they

21   are, in fact, able to serve during this time; but I want to

22   ask everyone once, again, does anyone have any family, work,

23   or personal circumstances because of which you believe you

24   cannot serve as a Juror during the entire trial and give it

25   your undivided attention?

1    (Some Prospective Jurors raised their hands.)

2            THE COURT:  All right.  We're going to walk through

3    these.  The gentleman in the front row?

4            PROSPECTIVE JUROR:  Juror Number 7.

5            THE COURT:  Yes.

6            PROSPECTIVE JUROR:  I had re-constructive hand

7    surgery, and I'm -- I just started physical therapy last

8    week, and I don't know how, how the scheduling is going to

9    go for me to continue my physical therapy and to see my

10   surgeon.

11           THE COURT:  We're going to be in session Monday

12   through Friday, except the days I identified, from 9:30 to

13   4:30.

14           PROSPECTIVE JUROR:  Yeah.

15           THE COURT:  Is that going to interfere?  Can you

16   reschedule your physical therapy or do you want to do it

17   with me or --

18           PROSPECTIVE JUROR:  Trying to do that now so that I

19   could try to have the therapy sessions in the morning.

20           THE COURT:  Before 9:30?

21           PROSPECTIVE JUROR:  Before 9:30, yes, sir.

22           THE COURT:  Such that you would get here at 9:15?

23           PROSPECTIVE JUROR:  (Prospective Juror nods head

24   affirmatively.)

25           THE COURT:  Is that yes?

1          PROSPECTIVE JUROR:  That's yes.

2          THE COURT:  And what's the word?

3          PROSPECTIVE JUROR:  So far I've got tomorrow

4    scheduled.  It's 7:30 so I should be -- that should give me

5    enough time, but I've got to see how, how they can work the

6    scheduling out.

7          THE COURT:  Did you do physical therapy yet?  Have

8    you had a session yet?

9          PROSPECTIVE JUROR:  Yes.

10          THE COURT:  What do you do generally?

11          PROSPECTIVE JUROR:  Well, they have me doing all

12    different types of (Indicating) --

13          THE COURT:  All right.  I'll help you.

14          PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  All right.

16          PROSPECTIVE JUROR:  Yeah, picking up things, that

17    type of thing.

18          THE COURT:  All right.  Thank you, sir.

19          PROSPECTIVE JUROR:  Thank you.

20          THE COURT:  You may be seated.  There was someone

21    in the second row of the box?

22          PROSPECTIVE JUROR:  Juror 15.

23          THE COURT:  Give me a moment to get to your number.

24    Yes, sir?

25          PROSPECTIVE JUROR:  Unfortunately, about a month

1    ago my wife and I were in an accident where somebody rear

2    ended us, and my wife has two fractured vertebrae and a

3    pinched nerve, and she has a hard time functioning by

4    herself during the day.

5          We haven't got any -- anywhere with the doctors

6    yet, so I don't know how long that's going to last.

7          THE COURT:  Is that going to impact your ability to

8    be here as a Juror?

9          PROSPECTIVE JUROR:  If she would need me there for

10   something, yes.

11         THE COURT:  Well, tell me, tell me her condition

12   and whether you're going to be needed there?

13         PROSPECTIVE JUROR:  Well, she has a hard time

14   walking or even helping herself around the house, and the

15   other factor is we have a five-year old granddaughter that

16   we babysit every day until she gets on the bus to go to

17   school.  It would be very difficult for her to do that.

18         THE COURT:  So tell me why you didn't tell us that

19   in your questionnaire?

20         PROSPECTIVE JUROR:  Well, at the time that I did --

21   I filled out the questionnaire, it didn't seem like it was

22   going to be a problem; but as the month has progressed, she

23   has gotten continually worse.

24         THE COURT:  I'm sorry to hear that.  How are you

25   doing?

```
1            PROSPECTIVE JUROR:  Fine.  I mean, I had enough
2    problems already before the accident.  Nothing else happened
3    to me.
4            THE COURT:  Do you need the name of a good lawyer?
5            PROSPECTIVE JUROR:  We're talking to someone in
6    Lebanon.
7            THE COURT:  That was a joke.  Trying to keep --
8    (Laughter.)
9            PROSPECTIVE JUROR:  I know.
10           THE COURT:  I'm trying to keep it light.  Thank you
11   for speaking up.  I'm sorry.  15.  I'm not going to excuse
12   anybody until we get through everything.  Got another hand
13   in the box?
14           PROSPECTIVE JUROR:  Juror Number 9.
15           THE COURT:  Nine?
16           PROSPECTIVE JUROR:  Nine.
17           THE COURT:  All right.  Hang on.  I'm going to get
18   to the page, and you're going to speak up, please.
19           PROSPECTIVE JUROR:  So I had a filling fall out of
20   my tooth earlier this week.  It has, like, an exposed nerve.
21   Pretty uncomfortable, and I need to try to get an
22   appointment made.  If this is going to be lasting --
23           THE COURT:  Keep your voice up.
24           PROSPECTIVE JUROR:  If this is going to last until
25   December 1st, I was just wondering if I would be able to get
```

```
1   --

2           THE COURT:  I'm sorry.  You need to stop and keep

3   your voice up.

4           PROSPECTIVE JUROR:  So I have a filling --

5           THE COURT:  I know about the filling.

6           PROSPECTIVE JUROR:  I just didn't know where I lost

7   you.  I need to make an appointment, and my dentist is not

8   open on the weekends.

9           THE COURT:  Right.

10          PROSPECTIVE JUROR:  So that is a scheduling

11  conflict.

12          THE COURT:  Can you do it the week of Thanksgiving,

13  or you're not going to be able to make it to that?

14          PROSPECTIVE JUROR:  I have to check and see if they

15  are open the week of Thanksgiving as well.  Like I said,

16  this is very recently.  That's why I didn't have it on my

17  questionnaire.

18          THE COURT:  I understand.

19          PROSPECTIVE JUROR:  I'd like to work with you guys

20  too.  I just need to know if that's going to be a huge

21  inconvenience for the courts.

22          THE COURT:  There are a couple options.  The days

23  we are not in court, if you can get an appointment, that

24  wouldn't interfere.  We might take a break for you to have

25  your an appointment if we had to.  Would you mind if we all
```

1    came with you?

2    (Laughter.)

3              PROSPECTIVE JUROR:  Oh, sure.

4              THE COURT:  Very well.  Thank you, sir.  Now, I'm

5    out of the box and into the gallery.  Way back in the back

6    row.  Distinguished gentleman with the white hair and black

7    mask?

8              PROSPECTIVE JUROR:  Yes, sir.

9              THE COURT:  Juror Number?

10             PROSPECTIVE JUROR:  Number 40.

11             THE COURT:  Wait until I get to the page.  Yes,

12   sir?

13             PROSPECTIVE JUROR:  So I have Stage 4 Lung Cancer.

14   Just recently diagnosed.  I'm on drugs that are maintaining

15   my health right now.

16             I can't guarantee how I will feel, let's say, six

17   weeks from now.  It's an ongoing every day thing.  So I just

18   wanted to make the Court aware of that.

19             THE COURT:  I appreciate you speaking up, and in

20   the first instance, I regret the diagnosis of recent time.

21   I want you to stay positive and alive.

22             PROSPECTIVE JUROR:  Thank you.

23             THE COURT:  You're taking the medicine.  Has it

24   interfered with your abilities?

25             PROSPECTIVE JUROR:  As of now, no, but --

1    THE COURT:  You just don't know what's going to

2 happen in the future?

3    PROSPECTIVE JUROR:  I do not know what's going to

4 happen.  I'm 79 years old.  I can't predict exactly how this

5 is going to affect me, so I'm just making the Court aware.

6    THE COURT:  You're 79 years old?

7    PROSPECTIVE JUROR:  Yes.

8    THE COURT:  You're an inspiration.  I hope to make

9 it to 79, and I hope you make it for a long time thereafter.

10 Thank you for speaking up.

11    Are there any other hands in the gallery?

12 (No Prospective Juror raised their hand.)

13    THE COURT:  Juror Number 40?  Maybe it wasn't 40.

14 The cancer survivor.  Who is the cancer survivor?

15    PROSPECTIVE JUROR:  Me.

16    THE COURT:  All right.  I'm trying to ask you

17 another question.  Can you hear me?

18    PROSPECTIVE JUROR:  Yes.

19    THE COURT:  You know over 70 is the basis for an

20 automatic exclusion.  Do you wish to be exclude -- excused?

21    PROSPECTIVE JUROR:  On that basis, not necessarily,

22 no.  I know that is an exclusion in some, some states, some

23 courts.  It was never asked of me when I filled out the

24 questionnaire.  I didn't know it was going to be the

25 appropriate time to bring it up until now.

```
1           THE COURT:  Well, now I'm bringing it up.  Do you
2    want to be excused because you're over 70?
3           PROSPECTIVE JUROR:  Possibly under the
4    circumstances it would be the best thing.  I can't say it's
5    the age as much as the medicine that that could affect.
6           THE COURT:  Very well.  Thank you.  One last time,
7    do you want to be excused?
8           PROSPECTIVE JUROR:  No.
9           THE COURT:  Thank you, sir.  So we were talking
10   about --  and I have no other hands, I don't believe, and
11   here it is again, and I'm not fishing for excuses.
12           Does anybody have any family, work, or personal
13   circumstances because of which you believe you cannot serve
14   as a Juror during the entire trial and give it your
15   undivided attention?
16   (Prospective Juror raised their hand.)
17           THE COURT:  Yes, sir?
18           PROSPECTIVE JUROR:  Juror Number 16.
19           THE COURT:  Let me get to the paperwork, please.
20   Okay.
21           PROSPECTIVE JUROR:  Seeing as you're stressing it,
22   I do have a child with a health condition, congenital heart
23   disease, and I have an appointment, you know, to undergo
24   some routine check-ups; so if that were to, you know, go
25   south or there be some issue, then I would need to attend,
```

1      that would be of an issue.

2           THE COURT:  I'm going to ask you to speak up.  I

3      heard that you have a child --

4           PROSPECTIVE JUROR:  Sorry.

5           THE COURT:  -- with a health condition -- let me

6      tell what you I heard.

7           PROSPECTIVE JUROR:  Yeah.

8           THE COURT:  I think I heard you have a child with a

9      health condition.  Might be a heart condition?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  May require periodic medical

12     appointments for the child.  Is that what you're telling me?

13          PROSPECTIVE JUROR:  He has one appointment

14     scheduled within the next six weeks, so if something were to

15     arise at that appointment, that would, you know, I'd

16     probably like to be there; but I don't know the outcome of

17     that.

18          THE COURT:  Right.  And the appointment that you do

19     have, do you know when it is?

20          PROSPECTIVE JUROR:  I couldn't tell you off the top

21     of my head.  I'm kind of bad with dates.

22          THE COURT:  Welcome to the club.

23     (Laughter.)

24          THE COURT:  So you just can't promise us that

25     something might come up that required you?

1          PROSPECTIVE JUROR:  Correct, sir.

2          THE COURT:  Okay.  Anyone else need to discuss with

3     me responses to that question?

4     (No Prospective Juror raised their hand.)

5          THE COURT:  Very well.  Do any of you have

6     significant transportation issues that might interfere with

7     your ability to be present for court on time every day as

8     instructed?

9          Let me say that I understand that traffic is

10    difficult and unpredictable.  I'm sorry for that

11    inconvenience, but my question refers to significant

12    transportation issues.

13         For example, you do not have a car; you don't have

14    a license; if you live 75 or more miles one way from the

15    courthouse; does anyone have that type of significant

16    transportation issue that might interfere with your ability

17    to be here on time every day as instructed?

18    (No Prospective Juror raised their hand.)

19         THE COURT:  Nobody's going to tell me tomorrow that

20    they don't have a car.  They don't have a license.  They

21    live too far away; is that right?

22         Everyone's telling me that you can be here every

23    day by 9:15 with court ending at about 4:30; correct?

24    (No Prospective Juror raised their hand.)

25         THE COURT:  Very well.  Finally, can any of you

1    think of any matter that you should call to the Court's

2    attention that we have not already discussed which may have

3    some impact on your qualifications as a Juror or that even

4    to the slightest degree may prevent you from rendering a

5    fair and impartial verdict based solely upon the evidence

6    and my instructions as to the law?

7    (No Prospective Juror raised their hand.)

8         THE COURT:  I've been at this a long time.  I've

9    picked a lot of juries, and in almost every one, day two,

10   three or four of trial somebody comes up with, oops, forgot

11   about a pre-planned vacation.  I didn't tell you this.  I

12   didn't tell you that.

13        Every one in the room has indicated that you're

14   able to render a fair and impartial verdict based solely

15   upon the evidence and my instructions, you'll apply the

16   presumption of innocence, and you can get here every day on

17   time and participate through till the end of trial unless we

18   chatted already; is that right?

19   (Prospective Jurors nod heads affirmatively.)

20        THE COURT:  Anybody need to tell me anything now?

21   (Prospective Juror raised their hand.)

22        THE COURT:  Yes, sir?

23        PROSPECTIVE JUROR:  Juror Number 10, I recently got

24   a job offer as of last Friday, and I have to do drug testing

25   and --

1          THE COURT:  Stop.  I'm sorry.  You got a job offer

2     last Friday?

3          PROSPECTIVE JUROR:  Yes, and I have to do drug

4     testing and a physical, and they already have scheduled

5     those for me.

6          THE COURT:  And they also what?

7          PROSPECTIVE JUROR:  A drug test and a physical, and

8     they have those scheduled for me, but they haven't --

9     they're telling me later today, so I'm not sure if that

10    would be a conflict with this or not.

11         THE COURT:  What are they telling you?

12         PROSPECTIVE JUROR:  When those dates are that I

13    have to take those.

14         THE COURT:  And they haven't told you that yet?

15         PROSPECTIVE JUROR:  No, they're telling me today at

16    12.

17         THE COURT:  So they haven't told you yet?

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  They're going to tell you today when

20    the testing is?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Do you have any clue when it is?  I'll

23    drug test you.

24         PROSPECTIVE JUROR:  Sometime next week.  They

25    usually want me to get it by next Wednesday.

1              THE COURT:  Where are they located?

2              PROSPECTIVE JUROR:  They're in Cincinnati.  I'm not

3      sure of the exact location.

4              THE COURT:  They do the drug testing and physical,

5      do they do it or do they send you somewhere?

6              PROSPECTIVE JUROR:  They send me somewhere.

7              THE COURT:  So maybe we can schedule that?

8              PROSPECTIVE JUROR:  Uh-huh.

9              THE COURT:  You have to do it this week?

10             PROSPECTIVE JUROR:  They'd like me to.

11             THE COURT:  Well, thank you for speaking up.  You

12     were so good at speaking up.  I lost your Juror Number?

13             PROSPECTIVE JUROR:  Ten.

14             THE COURT:  Thank you.  Congratulations if those

15     are in order.  Anybody else?  Back to Number 10.  When's

16     this job going to start?

17             PROSPECTIVE JUROR:  It's supposed to start Monday.

18             THE COURT:  Well, then you can't be a Juror; is

19     that right?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Is this a really good job?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  I didn't hear you.  I was teasing but

24     go ahead and answer.  Do you want to take the job?

25             PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Thank you for speaking up.  Anybody

2     else?  Sir, I'm really pleased you're here and spoke up, but

3     it wasn't until the last question I figured out that he's

4     going to be working at a new job.  You need to tell me now

5     if you can't do this.  Is there --  I've asked you the

6     questions.

7          Is there anyone else who needs to speak with me

8     about ability to serve throughout the trial and every day?

9     (No Prospective Juror raised their hand.)

10          THE COURT:  Thank you.  Okay.  You survived my

11     questions.  The lawyers now have a chance to ask questions.

12     The lawyers answer to me.  You're in good shape.  Brace

13     yourself.

14          On behalf of the Government, you get to go first,

15     who will be inquiring?

16          MR. MANGAN:  Me, me, Your Honor.

17          THE COURT:  Very well.  Would you tell me your name

18     again?

19          MR. MANGAN:  Good morning, everyone.  My name is

20     Tim Mangan.  I'm with the U.S. Attorney's Office.  I want to

21     echo the Court's sentiments earlier about thanking you for

22     coming.

23          You know, having Jury trials with Juries from our

24     peers is such a bedrock principle for our justice system.

25     It just can't operate without you.  Especially in

1     challenging times, we really appreciate you coming in.

2          I'm going to ask some questions.  At times, some

3     questions for individuals.  We don't mean to pry.  We don't

4     want to get into personal lives.  It's just part of the

5     process for us to try to make sure we have a fair and

6     impartial Jury for both the Defense and the Government going

7     forward.

8          Everyone puts in a lot of time.  There's a lot

9     involved in these cases, and so it's important for us to get

10    through this process as efficiently as we can.  I'll try to

11    be brief as best I can.

12         First of all, this case is going to involve --

13    there may be an instance or two where the Government has

14    used someone as a cooperating witness.

15         If you've ever heard of that phrase before, where

16    they approach someone and then that person, an individual

17    cooperates with the investigation -- in this case

18    cooperating with the F.B.I.

19         Does anybody have any concerns or problems with law

20    enforcement using cooperating witnesses in their

21    investigations?

22    (No Prospective Juror raised their hand.)

23         MR. MANGAN:  And feel free to just raise your hand

24    if you do, and we can talk about it.

25         It's a technique that's used.  You've maybe seen

1    them on TV, but it's called using a cooperator or

2    cooperating witness.

3           Does anybody at all have a concern with that or a

4    problem with that kind of technique?

5    (No Prospective Juror raised their hand.)

6           MR. MANGAN:  All right.  Let me ask you as well, if

7    you hear testimony from a witness who's been convicted of a

8    crime, you may be instructed to examine their testimony with

9    greater caution.

10          Does anybody feel that they would have any

11   particular concerns about trying to evaluate the testimony

12   of a witness who may have been convicted of a crime?

13   (No Prospective Juror raised their hand.)

14          MR. MANGAN:  Feel free to raise your hand if you

15   have any -- anything?  No concerns?

16   (No Prospective Juror raised their hand.)

17          MR. MANGAN:  All right.  Thank you.  Let me

18   follow-up specifically, I know -- Number 21.  Just a

19   follow-up.  Thank you for indicating kind of where you work.

20   I understand you work with another government agency;

21   correct?

22          PROSPECTIVE JUROR:  I do.

23          MR. MANGAN:  All right.  And as part of that, you

24   have, it sounds like, one case with one of the attorneys at

25   the U.S. Attorney's Office?

1            PROSPECTIVE JUROR:  I do.

2            MR. MANGAN:  All right.  Is it simply one case

3     you're working on?

4            PROSPECTIVE JUROR:  Currently, yes.

5            MR. MANGAN:  Okay.

6            PROSPECTIVE JUROR:  With the possibility of others.

7            MR. MANGAN:  All right.  And is that a civil case?

8            PROSPECTIVE JUROR:  It is.

9            MR. MANGAN:  Okay.  And that's strictly in your

10    professional capacity?  You don't have any personal

11    relationship with the Assistant U.S. Attorney; correct?

12           PROSPECTIVE JUROR:  Correct.

13           MR. MANGAN:  And, and do you have any association

14    or relationship with any of the attorneys that work on the

15    criminal side of that office?

16           PROSPECTIVE JUROR:  I do not.

17           MR. MANGAN:  All right.  And in your work capacity,

18    have you had any interactions with the Federal prosecutors

19    locally?

20           PROSPECTIVE JUROR:  I'm sorry.  Are you asking

21    about the case that I brought up?

22           MR. MANGAN:  No.  You mentioned that was a civil

23    case.

24           PROSPECTIVE JUROR:  Oh, okay, yes.  I had no

25    interactions on the criminal side.

1          MR. MANGAN:  Okay.  And I realize you work for a

2    different department of the Government.  Given all that, you

3    still believe you could be a fair and impartial Juror?

4          PROSPECTIVE JUROR:  I do.

5          MR. MANGAN:  All right.  Thank you, sir.  I

6    appreciate it.  I want to ask now about -- in this case it's

7    going to touch on some issues relating to certain aviation

8    companies, but in particular GE Aviation.

9          So I want to start and kind of ask if anybody here

10   is a current employee of GE Aviation?

11   (Some Prospective Jurors raised their hands.)

12         MR. MANGAN:  So I see one in the box.  Sir, could

13   you stand up?  And tell us your Juror Number?

14         PROSPECTIVE JUROR:  Juror Number 9.

15         MR. MANGAN:  Number 9?

16         PROSPECTIVE JUROR:  (Prospective Juror nods head

17   affirmatively.)

18         MR. MANGAN:  And are you a current GE employee?

19         PROSPECTIVE JUROR:  Yes.

20         MR. MANGAN:  How long have you worked there?

21         PROSPECTIVE JUROR:  Since February of '19.

22         MR. MANGAN:  Okay.  And do you work for --  I know

23   GE has -- it's a large company with different divisions.  Do

24   you work in the aviation division?

25         PROSPECTIVE JUROR:  Yes.

1          MR. MANGAN:  All right.  And can you tell generally

2     sort of what field you work in?

3          PROSPECTIVE JUROR:  Electrical maintenance.

4          MR. MANGAN:  Electrical maintenance?

5          PROSPECTIVE JUROR:  Yes.

6          MR. MANGAN:  All right.  Are you involved at all in

7     the design or engineering of the jet engines?

8          PROSPECTIVE JUROR:  No.

9          MR. MANGAN:  Are you involved in the manufacturing

10    of the jet engines?

11         PROSPECTIVE JUROR:  No, not directly.

12         MR. MANGAN:  All right.  You say it was in

13    electrical maintenance?

14         PROSPECTIVE JUROR:  Yes.

15         MR. MANGAN:  Okay.  And does that relate to the

16    facilities?

17         PROSPECTIVE JUROR:  Partly.  I'm in a division that

18    works on the component testing, so sometimes engineers will

19    come to us, ask them to construct cables --

20         MR. MANGAN:  Okay.

21         PROSPECTIVE JUROR:  -- you know, cable ends and

22    then they take those pieces back and use them for testing.

23         MR. MANGAN:  Okay.  Earlier the judge asked about

24    any knowledge of this particular case.  Do you have any

25    knowledge of this case?

1          PROSPECTIVE JUROR:  No, nothing outside of the

2     questionnaire.

3          MR. MANGAN:  All right.  When they listed the

4     names of the witnesses, did you recognize any of those

5     witnesses?

6          PROSPECTIVE JUROR:  No.

7          MR. MANGAN:  Okay.  And you have not heard this

8     discussed with any of your co-workers at GE Aviation?

9          PROSPECTIVE JUROR:  No.

10         MR. MANGAN:  All right.  If there's a witness from

11    GE Aviation, would you give that witness's testimony any

12    more or less weight just because you're employed at the same

13    company?

14         PROSPECTIVE JUROR:  No.

15         MR. MANGAN:  All right.  Given all that, do you

16    still feel you could be a fair and impartial Juror?

17         PROSPECTIVE JUROR:  Yes.

18         MR. MANGAN:  All right.  Thank you.  I appreciate

19    it.  I believe there was another hand?

20    (Some Prospective Jurors raised their hands.)

21         MR. MANGAN:  Yes, sir.  Could you start with your

22    number, please?

23         PROSPECTIVE JUROR:  Juror 36.

24         MR. MANGAN:  Juror 36?

25         PROSPECTIVE JUROR:  Yes, sir.

1           MR. MANGAN:  All right.  Thank you.  One moment.

2           COURT REPORTER JULIE HOHENSTEIN:  Sir, could you

3       come to the microphone, please?

4           PROSPECTIVE JUROR:  Yes.

5           COURT REPORTER JULIE HOHENSTEIN:  Thank you.

6           PROSPECTIVE JUROR:  Is this good?

7           MR. MANGAN:  Yes.  Thank you.  And, sir, do you

8       work at GE Aviation?

9           PROSPECTIVE JUROR:  I do currently work at GE

10      Aviation.

11          MR. MANGAN:  Okay.  And how long have you worked

12      there?

13          PROSPECTIVE JUROR:  Since 2001.

14          MR. MANGAN:  All right.  And generally what area of

15      the business do you work in?

16          PROSPECTIVE JUROR:  Currently I work in our

17      Aviation Services Division.

18          MR. MANGAN:  All right.  What is that?

19          PROSPECTIVE JUROR:  We maintain and provide service

20      agreements for aircraft engines --

21          MR. MANGAN:  Okay.

22          PROSPECTIVE JUROR:  -- that we manufacture.

23          MR. MANGAN:  All right.  So this is servicing once

24      they've been sold?

25          PROSPECTIVE JUROR:  Indeed.

1          MR. MANGAN:  Okay.  Are you at all involved in the

2     design phase?

3          PROSPECTIVE JUROR:  Not my current capacity.  In

4     prior roles, before 2010, I was involved with our research

5     and development and test operations.

6          MR. MANGAN:  All right.  Let me ask you:  Did you

7     have any experience working at all with something called

8     composite fan blades?

9          PROSPECTIVE JUROR:  I have not worked directly with

10    our composite fan blades or any associated processes for

11    manufacturing/assembly of those.

12         MR. MANGAN:  Previously the Court asked if anybody

13    had any knowledge of this case.  Were you aware of this case

14    at all?

15         PROSPECTIVE JUROR:  I was not.

16         MR. MANGAN:  All right.  He listed a number of

17    witnesses that may be testifying in the case.  Did you

18    recognize any of those names from work?

19         PROSPECTIVE JUROR:  None of those names were

20    familiar, no.

21         MR. MANGAN:  Okay.  If there is a witness from GE

22    that would testify, would you be able to evaluate that

23    witness's credibility without giving them any more or less

24    weight just based on their employment?

25         PROSPECTIVE JUROR:  Not on the basis of just the

1    fact that they're employed with GE Aviation.

2              MR. MANGAN:  Okay.

3              PROSPECTIVE JUROR:  There's a possibly I could have

4    some prior relationship not knowing that witness, but not on

5    the basis of them being just an aviation -- GE Aviation

6    employee alone.

7              MR. MANGAN:  Okay.  Given that we are going to have

8    at least a couple GE Aviation employees testify, do you

9    believe you can be a fair and impartial Juror in this case?

10             PROSPECTIVE JUROR:  I do believe so.

11             MR. MANGAN:  Okay.  Thank you, sir.

12             THE COURT:  Sir, while you're there, given your

13   expertise, can you tell me if that microphone is working?

14             PROSPECTIVE JUROR:  From here it sounds like it is,

15   but I --

16             THE COURT:  Could you tap on it for me?

17             PROSPECTIVE JUROR:  (Witness complies.)

18             THE COURT:  Thank you, sir.  It's working.  Have a

19   seat.

20             MR. MANGAN:  Were there any other GE Aviation

21   employees?  Make sure I didn't miss any hands.

22   (Prospective Juror raised their hand.)

23             THE COURT:  Number, please?

24             PROSPECTIVE JUROR:  13.  Sorry.  I worked at

25   Evendale plant from '86 to '91.

```
 1              MR. MANGAN:  All right.  And is -- and I'm sorry.
 2    You're Juror Number 13?
 3              PROSPECTIVE JUROR:  13.
 4              MR. MANGAN:  And, sir, the last time you worked
 5    there was 1991?
 6              PROSPECTIVE JUROR:  Yes.
 7              MR. MANGAN:  Okay.  Have you worked there at all
 8    since?
 9              PROSPECTIVE JUROR:  No.
10              MR. MANGAN:  Okay.  Do you have any other
11    association at all with the company?
12              PROSPECTIVE JUROR:  No.
13              MR. MANGAN:  Were you aware of the case, what the
14    Court described?
15              PROSPECTIVE JUROR:  No.
16              MR. MANGAN:  Were you aware of any of the GE
17    witnesses that were on the list?
18              PROSPECTIVE JUROR:  No.
19    (Large static sound in courtroom.)
20              THE COURT:  What did you do?
21              MR. MANGAN:  I thought it was you.  I don't know.
22    Sir, given your past experience with GE Aviation, which was
23    30 years ago, I guess?
24              PROSPECTIVE JUROR:  Long time ago.
25              MR. MANGAN:  Okay.  Do you believe you can still be
```

1    a fair and impartial witness?

2              PROSPECTIVE JUROR:  Yes.

3              MR. MANGAN:  Or excuse me.  A fair and impartial

4    Juror in this case?

5              PROSPECTIVE JUROR:  Yes.

6              MR. MANGAN:  All right.  Thank you, sir.

7    (Prospective Juror raised their hand.)

8              MR. MANGAN:  Yes, sir?

9              PROSPECTIVE JUROR:  Juror Number 23.  I used to

10   work for GE.  I used to be a contractor for them.

11             MR. MANGAN:  Okay.  So Number 23; correct?

12             PROSPECTIVE JUROR:  Yes.

13             MR. MANGAN:  When you -- when you did work there,

14   were you an employee or a contractor?

15             PROSPECTIVE JUROR:  I was an intern for college,

16   and I was working for GE.  Then I was a contractor for SA

17   Research, which does contract work on a design phase for

18   them.

19             MR. MANGAN:  Okay.  What -- when was it that you

20   were an intern?

21             PROSPECTIVE JUROR:  I want to say maybe 2014 or

22   '13.

23             MR. MANGAN:  Okay.  And then what was the time

24   period when you worked for a contractor?

25             PROSPECTIVE JUROR:  I'd say 2018 maybe 2017 as

1    well.

2          MR. MANGAN:  And during the time you were working

3    with one of the GE contractors, were you ever on-site or did

4    you work full-time on-site?

5          PROSPECTIVE JUROR:  I worked at a GE facility.

6          MR. MANGAN:  All right.  Was it --

7          PROSPECTIVE JUROR:  On military contracts.

8          MR. MANGAN:  Okay.  Which facility?

9          PROSPECTIVE JUROR:  Building 200.

10         MR. MANGAN:  All right.  Is that in Evendale?

11         PROSPECTIVE JUROR:  Yes.

12         MR. MANGAN:  All right.  Do you no longer work for

13   that GE contractor?

14         PROSPECTIVE JUROR:  I do not.

15         MR. MANGAN:  All right.  And while you were working

16   for the contractor, you were -- you were their employee;

17   correct?

18         PROSPECTIVE JUROR:  Yes.

19         MR. MANGAN:  And they simply had a business

20   relationship with GE?

21         PROSPECTIVE JUROR:  Yes, correct.

22         MR. MANGAN:  All right.  Is there anything about

23   your work experience with the contractor or as an intern

24   that you believe would impact your ability to serve as a

25   Juror in this case?

1                PROSPECTIVE JUROR:  No.

2                MR. MANGAN:  All right.  Did you know any of the

3     witnesses that were read off earlier?

4                PROSPECTIVE JUROR:  I do not, no.

5                MR. MANGAN:  All right.  And did you know about

6     this case at all?

7                PROSPECTIVE JUROR:  No.

8                MR. MANGAN:  All right.  Based on -- based on all

9     that, would you, would you still be able to serve as a fair

10    and impartial Juror?

11               PROSPECTIVE JUROR:  Yes, sir.

12               MR. MANGAN:  And if there was an GE employee who

13    testified, would you give them any more or less weight as,

14    as a witness --

15               PROSPECTIVE JUROR:  No.

16               MR. MANGAN:  --  just because they work for GE?

17               PROSPECTIVE JUROR:  No.

18               MR. MANGAN:  Okay.  Thank you.  Appreciate it.  Is

19    there anyone else who has worked at GE or in a similar

20    fashion or, you know, been a contractor on-site?  Okay.

21    (Prospective Juror raised their hand.)

22               THE COURT:  You've got a hand in the box.

23               MR. MANGAN:  Oh, excuse me.  I'm sorry.

24               PROSPECTIVE JUROR:  I waffled there for a minute.

25    Juror Number 16.

```
 1              MR. MANGAN:  Yes, sir.

 2              PROSPECTIVE JUROR:  I just wanted to point out that

 3   I've worked on marketing campaigns for GE engines and

 4   aviation for their military contracts for Apache and Black

 5   Hawk helicopters.

 6              MR. MANGAN:  Can you -- what kind of campaign was

 7   that?

 8              PROSPECTIVE JUROR:  It was a T-901 marketing --

 9              THE COURT:  I need you to speak up.  Did you say

10   marketing campaign?

11              PROSPECTIVE JUROR:  Yes, the T-901.

12              MR. MANGAN:  Okay.  So do you work for a different

13   company --

14              PROSPECTIVE JUROR:  Yes.

15              MR. MANGAN:  -- that does marketing for GE?

16              PROSPECTIVE JUROR:  Yes.

17              MR. MANGAN:  I see.  And when did you work on that

18   marketing campaign?

19              PROSPECTIVE JUROR:  Within the last two years.

20              MR. MANGAN:  All right.  And are you an employee at

21   GE?

22              PROSPECTIVE JUROR:  No.

23              MR. MANGAN:  All right.  You work for an outside

24   firm that GE hired?

25              PROSPECTIVE JUROR:  Correct.
```

1           MR. MANGAN:  Okay.  Is that work ongoing?

2           PROSPECTIVE JUROR:  No.

3           MR. MANGAN:  So that part of the campaign is over?

4           PROSPECTIVE JUROR:  Yep.

5           MR. MANGAN:  Okay.  Is there any part of your work

6     now that touches on GE?

7           PROSPECTIVE JUROR:  No.

8           MR. MANGAN:  Did you recognize any of the witnesses

9     that we described earlier?

10          PROSPECTIVE JUROR:  No.

11          MR. MANGAN:  Do you -- did you have any prior

12    knowledge of this case before today?

13          PROSPECTIVE JUROR:  No.

14          MR. MANGAN:  All right.  Is there anything about

15    having worked on that campaign with GE Aviation that you

16    feel would impact your ability to be a fair and impartial

17    Juror?

18          PROSPECTIVE JUROR:  No.

19          MR. MANGAN:  If we had a GE Aviation witness, would

20    you be able to listen to their testimony without giving them

21    any more or less weight just because they worked for that

22    company?

23          PROSPECTIVE JUROR:  Yes.

24          MR. MANGAN:  All right.  You believe you would be

25    able --  I probably asked that.

1          PROSPECTIVE JUROR:  Yeah, I picked it up.  You --

2     yes.

3          MR. MANGAN:  All right.  You wouldn't give them any

4     more or less weight?

5          PROSPECTIVE JUROR:  No.

6          MR. MANGAN:  Okay.  Is there anything else about

7     the work that you perform that you think we should know?

8          PROSPECTIVE JUROR:  No, I've been to all the

9     facilities and toured them.

10          THE COURT:  I need you to speak up.

11          PROSPECTIVE JUROR:  I've been to the different

12     facilities and toured them.

13          MR. MANGAN:  Okay.

14          PROSPECTIVE JUROR:  And seen those programs.

15          MR. MANGAN:  All right.  But that work was -- has

16     been concluded?

17          PROSPECTIVE JUROR:  Yep.

18          MR. MANGAN:  Okay.  All right.  Thank you, sir.  I

19     know there's sometimes individuals who have relatives who

20     have worked at GE Aviation.

21          Are there any individuals here who have relatives

22     -- and let's keep it to, sort of the immediate family --

23     that work for GE Aviation?

24     (Some Prospective Jurors raised their hands.)

25          MR. MANGAN:  Yes, sir?  We'll start with you and

1    work our way --

2              PROSPECTIVE JUROR:  Juror Number 23.  My father

3    works for GE.

4              MR. MANGAN:  Okay.  Does he still work for GE?

5              PROSPECTIVE JUROR:  He does.

6              MR. MANGAN:  And does he work at GE Aviation?

7              PROSPECTIVE JUROR:  Yes, he does.

8              MR. MANGAN:  All right.  How long has he worked

9    there?

10             PROSPECTIVE JUROR:  I'd say six years.

11             MR. MANGAN:  All right.  He worked somewhere else

12   before then?

13             PROSPECTIVE JUROR:  Yes.

14             MR. MANGAN:  All right.  And generally what field

15   does he work in there?

16             PROSPECTIVE JUROR:  He's a machinist in the

17   aviation field.  He's a machinist.

18             MR. MANGAN:  A machinist.  Thank you.

19             PROSPECTIVE JUROR:  Yeah.

20             MR. MANGAN:  Is he at all involved in the actual

21   engine design?

22             PROSPECTIVE JUROR:  Not the design phase, no.

23             MR. MANGAN:  Okay.  And going back to the other

24   questions that I asked previously, does the fact that your

25   father works at GE Aviation, do you believe that would

1    impact your ability to be a fair and impartial Juror in this

2    case?

3              PROSPECTIVE JUROR:  No.

4              MR. MANGAN:  Okay.  All right.  Thank you, sir.

5              THE COURT:  I'm sorry.  What was your number?

6              PROSPECTIVE JUROR:  Juror Number 23.

7              THE COURT:  Thank you, sir.

8              MR. MANGAN:  I believe there was another hand.

9    (Prospective Juror raised their hand.)

10             MR. MANGAN:  Yes, sir?

11             PROSPECTIVE JUROR:  Juror 25.

12             MR. MANGAN:  Okay.

13             PROSPECTIVE JUROR:  Both my parents work at GE.  My

14   father worked in submarine logistics for them.  My mom

15   worked at GE Aviation in the design.

16             MR. MANGAN:  All right.  Do they -- do either of

17   them still work there?

18             PROSPECTIVE JUROR:  No.

19             MR. MANGAN:  All right.  When's the last time they

20   worked at GE Aviation?

21             PROSPECTIVE JUROR:  I believe my mom retired in

22   2015.  My dad was considerably earlier than that.

23             MR. MANGAN:  Okay.  I take it you did not work at

24   GE Aviation?

25             PROSPECTIVE JUROR:  No.

1      MR. MANGAN:  All right.  And you don't have any

2  inside knowledge about the company's workings or how they

3  design engines?

4      PROSPECTIVE JUROR:  I have little bits and pieces

5  but --

6      MR. MANGAN:  Okay.

7      PROSPECTIVE JUROR:  -- nothing major.

8      THE COURT:  I'm having trouble hearing.  You need

9  to come to the microphone, sir.

10      PROSPECTIVE JUROR:  I have --  no, I do not have

11  any information about how it works or anything.

12      MR. MANGAN:  Okay.  Did you recognize any of the

13  witnesses on the witness list?

14      PROSPECTIVE JUROR:  No.

15      MR. MANGAN:  And did you have any knowledge of this

16  case prior to coming here?

17      PROSPECTIVE JUROR:  No.

18      MR. MANGAN:  Okay.  If there's a GE employee

19  witness, would you give that witness any more or less

20  weight --

21      PROSPECTIVE JUROR:  I don't --  no.  Just as a

22  witness that would testify, I believe.

23      MR. MANGAN:  Okay.

24      PROSPECTIVE JUROR:  But being an employee of GE,

25  no.

1     COURT REPORTER JULIE HOHENSTEIN:  I'm sorry.  I

2  need you to speak up and repeat that.

3     THE COURT:  We're not hearing you.

4     PROSPECTIVE JUROR:  No.  I don't believe I'd give

5  them any more weight or less weight.

6     MR. MANGAN:  All right.  Thank you.  And do you

7  still believe you could serve as a fair and impartial Juror

8  on this case?

9     PROSPECTIVE JUROR:  Yes, I believe I can.

10     MR. MANGAN:  All right.  Thank you.

11  (Prospective Juror raised their hand.)

12     MR. MANGAN:  Yes, sir, would you come up to the

13  microphone?  And state your Juror Number?

14     PROSPECTIVE JUROR:  Number 27.

15     MR. MANGAN:  Go ahead, sir.

16     PROSPECTIVE JUROR:  My father worked at GE Aviation

17  for 35 years, but he retired, I think, nine years ago, eight

18  years ago.

19     MR. MANGAN:  Okay.  In what field did he work?

20     PROSPECTIVE JUROR:  Customer support.

21     MR. MANGAN:  Okay.  And is there anything about him

22  working at GE Aviation that you believe would impact your

23  ability to be a fair and impartial Juror?

24     PROSPECTIVE JUROR:  No, sir.

25     MR. MANGAN:  All right.  Did you recognize any of

1    the witness names?

2            PROSPECTIVE JUROR:  No, sir.

3            MR. MANGAN:  And did you know anything about this

4    case beforehand?

5            PROSPECTIVE JUROR:  No, I didn't.

6            MR. MANGAN:  All right.  Thank you.  I appreciate

7    it.  Anyone else?

8    (Prospective Juror raised their hand.)

9            MR. MANGAN:  Yes, sir?  Could you state your number

10   at the microphone?

11           PROSPECTIVE JUROR:  Yes, Juror 17, and, first of

12   all --

13           THE COURT:  I'm sorry, sir.  Can you step up to the

14   microphone and speak up?

15           PROSPECTIVE JUROR:  You're probably just asking for

16   current employees, but my father had work for GE Aviation

17   way back in the '70s.  He hasn't worked there since

18   mid-'70s.

19           MR. MANGAN:  Okay.  So your father last worked for

20   GE in the 70s's you said?

21           PROSPECTIVE JUROR:  Yes.

22           MR. MANGAN:  Is there anything about that that you

23   believe would have an impact on your ability to be a fair

24   and impartial Juror in this case?

25           PROSPECTIVE JUROR:  It would not.

```
1              MR. MANGAN:  All right.  Thank you.  I appreciate
2         it.
3              THE COURT:  What was the number?
4              MR. MANGAN:  17.
5              PROSPECTIVE JUROR:  17, yes, Your Honor.
6              THE COURT:  Thank you.  Number 16?
7              PROSPECTIVE JUROR:  Yeah, Juror Number 16.  My
8         mother and father both worked at GE.  My father retired.
9         Been there his whole career as an accountant, and mother was
10        in administration.  That had to have been at least 30 years
11        ago.
12             THE COURT:  Are you messing with me?  Would you
13        please speak up, please?
14             PROSPECTIVE JUROR:  Sure.
15             THE COURT:  Thank you.
16             PROSPECTIVE JUROR:  What should I repeat?
17        Everything?
18             THE COURT:  Yeah.
19             PROSPECTIVE JUROR:  My mother and father both
20        worked at GE.  My father worked there for 35 years until his
21        retirement in accounting, and my mother was in
22        administration, but that had to have been 30 years ago.
23             THE COURT:  Thank you.
24             MR. MANGAN:  All right.  Thank you, sir.  And one
25        last question:  Do you believe that your parents having
```

1    worked there in the past would have any impact on your

2    ability to be a fair and impartial Juror?

3                 PROSPECTIVE JUROR:  No.

4                 MR. MANGAN:  Thank you.  Any other hands related to

5    GE?

6    (No Prospective Juror raised their hand.)

7                 MR. MANGAN:  Okay.  Thank you.  Now, I do want to

8    turn to, you know, the Court already touched on some of the

9    issues in terms of nationality and things of that nature.

10               Does everyone agree with the principle, you know,

11   that we should only --  if we instruct you to rely only on

12   the evidence in this case, that that's what you should rely

13   on and not on any personal feelings or opinions or biases

14   toward a particular race or nationality?  Can everyone agree

15   with that principle?  Is there anyone that disagrees with

16   that?

17   (No Prospective Juror raised their hand.)

18               MR. MANGAN:  Okay.  Let's talk more broadly about

19   China.  I know that was part of the questionnaire that

20   everyone filled out, and some folks had checked off

21   different issues that you may have concerns with regarding

22   what, what the country may do pertaining to various issues

23   or policies or form of government or whatever it may be.

24               So let me ask just a couple specific questions.

25   Are there any folks who have opinions -- positive or

1    negative -- about the country of China based on human rights

2    issues?  Feel free to raise your hand if you do.

3    (Prospective Jurors raised their hands.)

4            MR. MANGAN:  Okay.  Thank you.  For those who

5    rose -- or raised their hands, let me say, this case does

6    not pertain to human rights in China.

7            For those who put their hands up, can you set those

8    feelings aside and judge this case solely on the evidence

9    that is presented in the Court?

10   (Prospective Jurors nodded heads affirmatively.)

11           MR. MANGAN:  Is there anyone who cannot or has

12   concerns that their feelings on the human rights issues

13   would make it difficult for them to be an impartial Juror in

14   this case?

15   (No Prospective Juror raised their hand.)

16           MR. MANGAN:  If you have any of those feelings,

17   it's okay.  You know, we just kind of what to talk that

18   through now.  Anyone?

19   (No Prospective Juror raised their hand.)

20           MR. MANGAN:  I don't see any hands up.  Okay.  Same

21   thing, there was, there was a checkmark related to the COVID

22   virus, the Coronavirus that a few people checked.

23           So I want to ask about that a little bit.  Are

24   there any folks who have positive or negative opinions about

25   the country of China related to the Coronavirus?

1     (Prospective Jurors raised their hands.)

2          MR. MANGAN:  Feel free to raise your hand if that's

3     how -- if you have opinions on that -- positive or negative

4     feelings toward that country because of the virus?

5     (Some Prospective Jurors raised their hands.)

6          MR. MANGAN:  All right.  So I'm going to ask a

7     similar question.  For those that raised their hands related

8     to that issue, okay, for those who raised their hands

9     related to COVID, can you set those feelings aside and judge

10    this case solely on the evidence presented and the

11    Instructions of Law from the Court?

12    (Prospective Jurors nodded heads affirmatively.)

13         MR. MANGAN:  If there is anyone who cannot or who

14    has concerns about that, could you raise your hand now?

15    (No Prospective Juror raised their hand.)

16         MR. MANGAN:  It's okay.  We just -- like I said, if

17    you feel you can't set those feelings aside, we just want to

18    make sure that we talk about it before we get through this

19    selection process.

20         Is there anyone who feels they cannot set those

21    feelings aside and continue to be a fair and impartial

22    Juror?

23    (No Prospective Juror raised their hand.)

24         MR. MANGAN:  All right.  I don't see any hands.

25    All right.  Thank you.

1          As the Court mentioned, the case involves

2     discussions of attempted theft or a conspiracy to steal

3     trade secrets, and specifically we'll be talking about

4     aviation and plane technology as you may have started to

5     kind of put together.

6          So I want to ask in general about intellectual

7     property protection or trade secrets.  Does anybody work for

8     a company that makes them sign an agreement to protect the

9     company's confidential information?

10    (Prospective Jurors raised their hands.)

11         MR. MANGAN:  I see a few hands in the back.  All

12    right.  Does anyone have, have to sign agreements with their

13    company about trade secret protection?

14    (Prospective Juror raised their hand.)

15         MR. MANGAN:  Okay.  I see a few hands in the back

16    as well.  Some folks have opinions as to whether or not, you

17    know, intellectual property theft should or should not be a

18    crime.

19         Does anybody have any strong opinions that the

20    theft of trade secrets should not be a crime?  Perhaps that

21    it should just be handled civilly?

22    (No Prospective Juror raised their hand.)

23         MR. MANGAN:  I don't see any hands.  Okay.  If you

24    do, feel free to raise your hand.  Does anybody have any

25    thoughts that trade secret theft should not be a crime?

1    (No Prospective Juror raised their hand.)

2         MR. MANGAN:  Okay.  Does anyone have the opinion

3    that technology or intellectual property should be available

4    openly to everyone without any kind of limitations?

5    (No Prospective Juror raised their hand.)

6         MR. MANGAN:  And don't worry.  This doesn't involve

7    downloading music.

8    (Laughter.)

9         MR. MANGAN:  So we're not going to get into that.

10   That could be a hot-button issue for some people.  But

11   generally does anybody have that opinion?

12   (No Prospective Juror raised their hand.)

13        MR. MANGAN:  I don't see any hands there.  Okay.

14   Thank you.  Turning back to the, you know, the heart of this

15   as the Court mentioned.

16        As the Court mentioned, the Government of China is

17   not on trial here; but we will be talking about allegations

18   of crimes regarding, you know, trade secrets that we're,

19   we're alleging were taken for the benefit, for the benefit

20   of the Republic of China.

21        Is there anything about the nature of those charges

22   that would make it difficult for you to serve as a Juror on

23   this case?

24   (No Prospective Juror raised their hand.)

25        MR. MANGAN:  Is there anyone who has any concerns

1    about that?

2    (No Prospective Juror raised their hand.)

3          MR. MANGAN:  Would you be able to set aside your

4    feelings about other issues perhaps on China and just decide

5    this case for this individual based on the evidence

6    presented here?

7    (Prospective Jurors nod heads affirmatively.)

8          MR. MANGAN:  All right.  Now, there may be some who

9    have strong opinions about trade secret theft or trade

10   secret theft particularly related to China.

11         Does everyone understand that the crimes charged

12   here relate to a single individual, and you can only find

13   that individual guilty if the Government proves every

14   element of the crime beyond a reasonable doubt?

15         Does everybody understand that and agree with that?

16   (Prospective Jurors nod heads affirmatively.)

17         MR. MANGAN:  And so if we, the Government, do not

18   prove those crimes, every element beyond a reasonable doubt,

19   do you understand you would need to render a verdict of not

20   guilty regardless of how you may feel about generally trade

21   secret theft or the country of China?

22   (Prospective Jurors nod heads affirmatively.)

23         MR. MANGAN:  I see a lot of heads nodding.  Does

24   everybody understand that distinction?  Are there any

25   questions or anybody have any concerns about that?

1    (No Prospective Juror raised their hand.)

2         MR. MANGAN:  Does anyone want to speak to whether

3    or not they feel that would be difficult for them to be a

4    fair and impartial Juror in that kind of situation?

5    (No Prospective Juror raised their hand.)

6         MR. MANGAN:  All right.  One last thing I want to

7    touch upon is we mentioned the crimes involved.  The crime

8    of attempt.  So an allegation that someone has attempted a

9    crime, which obviously by the definition of the word

10   attempt, it may mean that they did not fulfill the crime.

11        Does anyone have any concerns that an attempt by

12   itself should not be a crime?

13   (No Prospective Juror raised their hand.)

14        MR. MANGAN:  All right.  And we're also going to

15   talk about conspiracy, and the Court will instruct you on

16   the law as to what a conspiracy is, but essentially we're

17   talking about an agreement to commit a crime.  An

18   agreement between people that may be informal.  It may be

19   unspoken.

20        Does anybody have any opinions that that kind of

21   agreement should not be a crime by itself?

22   (No Prospective Juror raised their hand.)

23        MR. MANGAN:  Does anybody have any feelings that

24   conspiracy strikes them the wrong way as far as a crime is

25   concerned?

```
 1    (No Prospective Juror raised their hand.)

 2            MR. MANGAN:  Go ahead and raise your hand if you

 3    have any concerns about that?

 4    (No Prospective Juror raised their hand.)

 5            MR. MANGAN:  Either attempt or conspiracy, raise

 6    your hand if you have any concerns about that being

 7    prosecuted as a crime?

 8    (No Prospective Juror raised their hand.)

 9            MR. MANGAN:  Okay.  If I can have one moment, Your

10    Honor?

11            THE COURT:  Yes.

12    (Mr. Mangan, confers with co-counsel.)

13            THE COURT:  Ms. Frankian, can you approach?

14            MR. MANGAN:  That's all we have, Your Honor.  Thank

15    you.

16            THE COURT:  Thank you.  If you'll give me just a

17    moment.

18    (The Court confers with Ms. Frankian.)

19            THE COURT:  Almost 10 to 12.  How long does the

20    Defense estimate that voir dire from the Defense will take,

21    which is the next step?

22            MR. KOHNEN:  Your Honor, I believe that I could

23    certainly get it done within an hour.  Perhaps within

24    45 minutes depending on the answers, and thank you for

25    calling on me, because I got to stand.  I was wondering if
```

1    maybe the Jurors might like to stand for a minute, and then

2    I could proceed.

3         THE COURT:  I'm trying to decide whether to take a

4    break so they can stand and move around or whether they want

5    to plow ahead.

6         Jurors, you've been at the courthouse for a while.

7    You've been in this courtroom sitting down.  We can go

8    through some stretching, maybe work in a little physical

9    therapy on our hands while we're in the break, or we can

10   take a 15-minute break and get you up and around, you can

11   move around.

12        How many people would like to take a 15-minute

13   break of the Jurors?  Hands way up.

14   (Prospective Jurors raised their hands.)

15        THE COURT:  How many would love to plow ahead

16   without a break?

17   (Prospective Juror raised their hand.)

18        THE COURT:  The breakers win the vote, and we are

19   going to take a break momentarily.  I need to talk to you

20   about breaks.

21        On the break, do not discuss what went on in the

22   courtroom with any fellow Juror or anyone else.  Do not do

23   any independent research.  I'll tell you that every time.

24   Don't discuss the case.

25        If anybody approaches you and tries to discuss it,

1    let me know.  No independent research about any of this.

2    Can't read or listen to or watch any news reports, if there

3    are any.

4          You can't check or use Google, Facebook, Twitter or

5    any of that stuff to find information about any aspect of

6    the case.

7          And, of course, you need to continue to keep an

8    open mind.  You can't form or express an opinion on the case

9    until it's finally submitted to you.

10         So it's really important.  Don't discuss it with

11   anyone.  Enjoy this 15-minute break.  Are we going to send

12   them to the ninth floor?

13         COURTROOM DEPUTY:  We can't send them to the ninth

14   floor or just in the hall.

15         THE COURT:  We can't send them to the ninth floor.

16   Do you have another suggestion?

17         COURTROOM DEPUTY:  We can keep them in the hall and

18   lined up to come back in when they're ready.

19         THE COURT:  Is the Government standing for a

20   reason?

21         MS. GLATFELTER:  We thought --

22         THE COURT:  That's my signal I need to check out

23   where you are.  Okay.  We're going to take a break.  You can

24   go anywhere you want in the courthouse.  You can probably

25   step outside, but I need you in the hall by this doorway at

1    12:10, and I have 11:50, so it's a 20-minute break.

2         Use the break to get the muscles going.  The blood

3    going.  Don't discuss it with anybody.  No independent

4    research.

5         Out of respect for you, we'll rise for you as you

6    leave through that door with the assistance of Ms. Santoro.

7    If you'd rise as they leave.  If somebody at the door would

8    lead them out.

9    (Prospective Jurors exited the courtroom.)

10        THE COURT:  Jurors have left the room.  Is there

11   anything that requires my attention before we recess until

12   12:10?  I see nothing.  Any lawyer not here at 12:10 will

13   get on the short list.  Enjoy your break.  We're in recess.

14        COURTROOM DEPUTY:  This court is in recess until

15   12:10.

16   (Court was in recess at 11:52 a.m. and resumed at 12:11

17   p.m.)

18        COURTROOM DEPUTY:  All rise.  This court is back in

19   session pursuant to the recess.

20        THE COURT:  You can be seated.  I was hoping to

21   catch a lawyer not here.  We're back on the record.  We're

22   going to check to be sure that the 40 Jurors are standing

23   outside the door and then bring them in and Mr. Kohnen will

24   proceed.

25        COURTROOM DEPUTY:  All rise for the Jury.

1    (Prospective Jurors entered the courtroom.)

2        THE COURT:  Jurors can be seated as you join us.

3    Jurors have returned.  You may all be seated.  Members of

4    the Jury, thank you for being back and back on time.

5    Somebody's counted?  We have all 40 -- or should I have them

6    count off?

7            COURTROOM DEPUTY:  We have all 40.

8        THE COURT:  Very well.  Are there any of the 40 who

9    are not here, would you speak up, please?

10   (Laughter.)

11   (No Prospective Juror responded.)

12       THE COURT:  No response.  Mr. Kohnen, if you wish

13   to proceed to inquire, you may do so at this time?

14       MR. KOHNEN:  Thank you, Your Honor.

15       THE COURT:  Yes.

16       MR. KOHNEN:  Ladies and gentlemen, thank you for

17   your service.  I want to echo what the Court said, what Mr.

18   Mangan said, the job you're going to do here if you're

19   selected and the help you've given us in selecting the ones

20   who are honored is an extremely important duty really as a

21   citizen.

22           On behalf of my client, Mr. Xu, and my colleagues,

23   again thank you.  Thank you also for filling out the Jury

24   questionnaires.  They were very informative and helpful to

25   us.

1    Can everybody hear me back in the back?  I want to

2  make sure.

3  (Prospective Jurors nod heads affirmatively.)

4    MR. KOHNEN:  I also want to apologize a little bit.

5  When you go last, most of your questions are asked.  When

6  you have to ask them again or get into a little more detail,

7  they seem redundant; and for that, I apologize, but I'm sure

8  you understand that it's very important that we find out as

9  much about you on these matters as we can; fair enough?

10  (Prospective Jurors nod heads affirmatively.)

11    MR. KOHNEN:  Thanks.  There were, as everybody's

12  mentioned, a lot of questions in your questionnaires about

13  China.  China, as you know, is a place that's an entirely

14  different culture.  That's literately halfway around the

15  world.

16    Since you completed those questionnaires, even up

17  to right now, is there anything you can think of, any

18  answers that you could think of that should be changed or

19  should be supplemented, aside from what's already been asked

20  and answered?

21  (Prospective Jurors shake heads negatively.)

22    MR. KOHNEN:  Is there anything else you would

23  change in the responses you gave to the Court and Mr. Mangan

24  in that short recess?

25  (No Prospective Juror raised their hand.)

1    MR. KOHNEN:  Bottom line, is there anything right

2    now having, you know, heard all those questions that you

3    want to let us know about, that you want to weigh in from

4    your perspective?

5    (No Prospective Juror raised their hand.)

6    MR. KOHNEN:  You were asked about whether you had

7    any knowledge of the case.  I think Judge Black asked about

8    media, about the Internet, et cetera.

9    I just want to make sure, aside from what you've

10   heard here in the courtroom this morning, does anyone on

11   this panel have any knowledge about this case?

12   (No Prospective Juror raised their hand.)

13   MR. KOHNEN:  I see no hands, Your Honor.  One of

14   the things we noticed from your questionnaires is that a

15   number of you have got friends or family who are from

16   China.

17   What, what do you think they would think?  What do

18   you think knowing them?  Do you think that Mr. Xu can get a

19   fair trial here?

20   (No Prospective Juror raised their hand.)

21   MR. KOHNEN:  Do you think prejudice might be a

22   problem?

23   (No Prospective Juror raised their hand.)

24   MR. KOHNEN:  Would it surprise any of you to know

25   that the first time Mr. Xu set foot in the United States was

1    when the F.B.I. brought him here in 2018?

2    (No Prospective Juror raised their hand.)

3         MR. KOHNEN:  Does that give anybody pause?

4    (No Prospective Juror raised their hand.)

5         MR. KOHNEN:  Is anybody wondering how that

6    happened?

7    (No Prospective Juror raised their hand.)

8         MR. KOHNEN:  Mr. Xu had never before set foot in

9    the United States of America.

10        Is anybody an aviation buff?

11   (No Prospective Juror raised their hand.)

12        MR. KOHNEN:  Anybody a pilot?

13   (Prospective Juror raised their hand.)

14        MR. KOHNEN:  Yes, sir.  Your number please and use

15   the microphone?

16        PROSPECTIVE JUROR:  Juror 19.  I'm a airplane pilot

17   for United Airlines.

18        MR. KOHNEN:  Okay.  What kind of jets do you fly?

19        PROSPECTIVE JUROR:  737.

20        MR. KOHNEN:  What kind of engine does the 737 have

21   on it?

22        PROSPECTIVE JUROR:  It's a CMF 731.

23        MR. KOHNEN:  Okay.  And that's a General Electric

24   engine.

25        PROSPECTIVE JUROR:  It's a collaboration CFM.

1          MR. KOHNEN:  Who, who -- is that a product of a

2    joint venture?

3          PROSPECTIVE JUROR:  Yes.

4          MR. KOHNEN:  And what's the company?

5          PROSPECTIVE JUROR:  Not my area of expertise.

6          MR. KOHNEN:  I'm fine as long as you know how it

7    flies and you can fly it, I'm good with that.

8          PROSPECTIVE JUROR:  That's true.

9          MR. KOHNEN:  Thanks.  Is there anybody else who's a

10   pilot or is an aircraft buff?

11   (No Prospective Juror raised their hand.)

12         MR. KOHNEN:  Okay.  Good.  You know, a lot -- Mr.

13   Mangan asked a lot of questions about GE Aviation and your

14   connections to GE Aviation.

15         I'll probably follow-up on some of that toward the

16   end of my presentation here this morning; but as I was

17   hearing the questions, it occurs to me that a lot of people

18   recognize GE as kind of a good cooperate citizen.

19         Is there anybody -- aside from any employment

20   affiliation or professional affiliation -- that has a

21   special fondness for GE that might color your judgment in

22   this case even in a small way?

23   (No Prospective Juror raised their hand.)

24         MR. KOHNEN:  I personally don't know much about GE

25   Aviation.  I've learned a lot, I promise you; but, you know,

1  big companies sponsor events.  They sponsor sports teams,

2  little league, what have you.

3           Does anybody have a connection with GE in any way

4  like that?

5  (No Prospective Juror raised their hand.)

6           MR. KOHNEN:  One of the questions that's almost

7  always asked by the time I get here is, we noticed that a

8  number of the panelist are lawyers.

9           If you're a lawyer licensed to practice law or

10  was -- studied law, would you raise your hand, please?

11  (Prospective Jurors raised their hands.)

12           MR. KOHNEN:  Okay.  And your number, sir?

13           PROSPECTIVE JUROR:  Number 4.

14           MR. KOHNEN:  Number 4, thank you.  And you, sir?

15           PROSPECTIVE JUROR:  24.

16           MR. KOHNEN:  44?

17           PROSPECTIVE JUROR:  24.

18           MR. KOHNEN:  Sorry.  There's only 40 Jurors.  24.

19  Thank you.  You guys have had legal training, and we need to

20  know, can you put that legal training and your experience

21  aside and do what the judge has already told you you're

22  going to have to do, and he will tell you again, only act as

23  fact finders in this case?  Can you both assure us that

24  you'll do that?

25           PROSPECTIVE JUROR:  Yes.

1          PROSPECTIVE JUROR:  Yes.

2          MR. KOHNEN:  Thank you, gentlemen.  A couple of

3     potential Jurors also indicated that they have a spouse or a

4     significant other who's an attorney.  First of all, you have

5     my condolences.

6          But among those, and I'm not asking anybody to

7     raise their hand unless they think that that's going to make

8     them a biased or unfair Juror or somebody who wants to get

9     involved in the law when they should not.

10          Is there anybody here like that?

11     (No Prospective Juror raised their hand.)

12          MR. KOHNEN:  We covered law enforcement and

13     connections to law enforcement, but I want to follow-up and

14     ask:  Has anybody had a job where they had to conduct some

15     investigations?

16          Maybe you worked in the HR department or maybe you

17     worked, like, the gentleman that works for the Government

18     agency and investigated certain things.

19          Has anybody done investigations as part of their

20     job?

21     (Prospective Juror raised their hand.)

22          MR. KOHNEN:  Yes, sir?

23          PROSPECTIVE JUROR:  Number 4.  As a division

24     manager or as an engineer, typically related to personnel

25     issues.

1    MR. KOHNEN:  Right.  And tell us a little bit more

2    about that?  I mean, did you have to investigate the

3    employee's conduct, first of all?

4    PROSPECTIVE JUROR:  Yes.  It's depending on the

5    circumstance.  Mostly auto accidents.  Going out, checking

6    with the individual, and the citizens that were involved,

7    and then determining the facts as best as I could come up

8    with them, and then issue a report.

9    MR. KOHNEN:  Okay.  And did you have ever -- ever

10   have to do, for example, a forensic review of a

11   company-owned computers or things of that nature or

12   supervise that?

13   PROSPECTIVE JUROR:  No.

14   MR. KOHNEN:  And what about -- this probably is a

15   no, but what about personal computers?

16   PROSPECTIVE JUROR:  No.

17   MR. KOHNEN:  Okay.  So, you know, with your

18   experience I'll say, there are occasions when people come on

19   to company property with their personal devices; right?  And

20   there's maybe some question as to whether or not their

21   employer has any authority to look at those or seize those,

22   would you agree?

23   PROSPECTIVE JUROR:  There may be question, yes.

24   MR. KOHNEN:  Yeah.  And by the way, did your job or

25   does anybody have a job that has ever required them to

1    contact law enforcement?

2    (Prospective Juror raised their hand.)

3          MR. KOHNEN:  Yes, sir.  Juror Number?

4          PROSPECTIVE JUROR:  21.

5          MR. KOHNEN:  Yes, sir.

6          PROSPECTIVE JUROR:  I run a, a beetle eradication

7    program.  We often need law enforcement support when

8    property owners don't cooperate with the, with the program

9    or our regulations.

10          MR. KOHNEN:  Okay.  Thank you.  Is there anybody

11    else?  Mr. Mangan mentioned it, so I'll asked.  I don't want

12    to go too far.  But is there --  he talked about cooperating

13    witnesses.

14          Is there anybody here who's had the unfortunate

15    experience of being a cooperating witness with law

16    enforcement?

17    (No Prospective Juror raised their hand.)

18          MR. KOHNEN:  I didn't think so, but I thought I'd

19    ask.  Has anybody ever worked for a company that analyzes or

20    conducts what's known as business intelligence?

21    (Prospective Juror raised their hand.)

22          MR. KOHNEN:  Yes, sir.

23          PROSPECTIVE JUROR:  Juror 28.  I work for a company

24    that does data analytics and data science.

25          MR. KOHNEN:  Okay.  Can you tell us a little bit

1   more about what -- how that company works and what you do

2   there, please?

3            PROSPECTIVE JUROR:  Yeah, we, we analyze purchase

4   behavior, and then we issue -- or we create sciences that

5   optimize pricing and coupons and marketing campaigns and

6   such.

7            MR. KOHNEN:  Let me guess, 84.51, formerly known as

8   Dunnhumby?

9            PROSPECTIVE JUROR:  That's right.

10           MR. KOHNEN:  Okay.  Thank you, sir.  That's very

11  helpful.  There's one other person?  Yes, sir.

12           PROSPECTIVE JUROR:  Juror 36.  I had raised my

13  hand.  Within the context of GE Aviation, understanding

14  competitors in the marketplace.

15           MR. KOHNEN:  Okay.  Do you do that work, sir?

16           PROSPECTIVE JUROR:  I do not do that work, no.

17           MR. KOHNEN:  But your company does?

18           PROSPECTIVE JUROR:  Yes.

19           MR. KOHNEN:  And do you work with the people who do

20  that analysis and that investigation?

21           PROSPECTIVE JUROR:  I do not.

22           MR. KOHNEN:  Okay.  Thank you very much.  You know,

23  the gentleman who works with 48.51 --  oh, I'm sorry.  Yes,

24  sir?

25           PROSPECTIVE JUROR:  Juror Number 38.

1          MR. KOHNEN:  Yes, sir.

2          PROSPECTIVE JUROR:  I work for a company that does

3     software development but sometimes involves customer, like,

4     that company's data to do sort of warehousing slash clean up

5     and supplies that for those companies.

6          MR. KOHNEN:  Okay.  What do you do as part of that

7     mission?

8          PROSPECTIVE JUROR:  I am a front-end developer so I

9     handle a lot of the work in field, and I also try to reduce

10    education and improve air handling.

11         MR. KOHNEN:  So just so you're clear, and I'm going

12    to ask you to get a little closer to the microphone.  Your

13    company, like, like 84.51, gathers data intelligence, and

14    uses it; is that right?

15         PROSPECTIVE JUROR:  In this case, some of our

16    clients will have their data, but they don't know how to use

17    it.  They're just supplying it to us, and then we are

18    analyzing their data and providing it back to them.

19         We're not, we're not independently pulling data

20    from outside sources.  It's these company's data provided --

21         MR. KOHNEN:  Very good.  So you are on the analysis

22    side; fair enough?

23         PROSPECTIVE JUROR:  Give or take, yeah.

24         MR. KOHNEN:  And you have others who gather it for

25    you; is that right?

1          PROSPECTIVE JUROR:  Yeah.

2          MR. KOHNEN:  And how does that work, do you know?

3          PROSPECTIVE JUROR:  Sort of.  A little bit.  I know

4     that sort --  certain clients might have an FTP server that

5     they will drop files onto, and they will have a process that

6     will pick up these files and normally put them in -- do some

7     validation or cleaning, and then we'll store it in certain

8     tables that will then be utilized for stat reports for these

9     clients.

10          MR. KOHNEN:  Okay.  Thank you.  Is there anybody

11     else who is involved with a company that does business

12     intelligence as we've just kind of heard it described?

13     (No Prospective Juror raised their hand.)

14          MR. KOHNEN:  You know, just to, just to be clear, I

15     mean, companies, they, they often check out their

16     competitors.  They see what they charge.  They see what

17     products they're selling.  They see how those products are

18     manufactured.  That's all the kind of business intelligence

19     I'm talking about.  Does everybody understand what I mean?

20     Is there anybody who doesn't?

21     (No Prospective Juror raised their hand.)

22          MR. KOHNEN:  I think that 84.51, which is a, kind

23     of hybrid, I suppose, of that, is a company that really does

24     the work for Kroger; is that right, sir?

25          PROSPECTIVE JUROR:  That's right.

1          MR. KOHNEN:  Okay.  And they, they gather

2     information that people don't even know it's being gathered

3     about them, do they?

4          PROSPECTIVE JUROR:  That's not exactly right.

5     There's all sorts of checks and balances in place to know

6     that as you're purchasing items, that that data's being

7     gathered.

8          MR. KOHNEN:  Right.  Okay.  Very good.  The -- I

9     just want to cover this very quickly.  Does anybody feel

10    that the Department of Justice lawyers, such as these three

11    (Indicating), never make a mistake?

12    (No Prospective Juror raised their hand.)

13         MR. KOHNEN:  Does anybody believe that they only

14    bring prosecutions of cases that they can prove guilt on?

15    (No Prospective Juror raised their hand.)

16         MR. KOHNEN:  I'm going to continue to note no

17    responses, Your Honor.

18          Is there anybody here who would automatically give

19    more weight to a witness because they came from the F.B.I.

20    or another law enforcement agency?

21    (No Prospective Juror raised their hand.)

22         MR. KOHNEN:  I take it by the fact that there are

23    no responses, that you all are willing to treat the

24    testimony of a law enforcement officer the same as any other

25    testimony; is that right?

1    (Prospective Jurors nod their heads affirmatively.)

2         MR. KOHNEN:  I've never once not had a hand raised

3    to that question, but I'm grateful that I don't see any.

4         Has anyone heard of the United States Department of

5    Justice and the F.B.I.'s China Initiative?

6    (No Prospective Juror raised their hand.)

7         MR. KOHNEN:  Have you read about it or heard about

8    it at all?

9    (No Prospective Juror raised their hand.)

10         MR. KOHNEN:  The China Initiative is a very

11    broad --

12         THE COURT:  Excuse me.  Excuse me.  Excuse me.

13    Questions for the witness.

14         MR. KOHNEN:  I want to make sure, Your Honor, if I

15    might?

16         THE COURT:  I don't want you testifying.

17         MR. KOHNEN:  Okay.  Just to make sure that you

18    don't know what I'm talking about when I mention The China

19    Initiative.  It's a very broad investigation of China and

20    Chinese National Guards --

21         THE COURT:  Excuse me.

22         MR. KOHNEN:  -- in the U.S. --

23         THE COURT:  Excuse me.  I told you I didn't want

24    you to do that.

25         MR. KOHNEN:  Okay.

1     THE COURT:  You asked them if they were aware of

2   it, and they said no.

3     MR. KOHNEN:  Does, does anybody have strong

4   opinions about foreign corporations doing business in the

5   United States?

6   (No Prospective Juror raised their hand.)

7     MR. KOHNEN:  Do you think it's good?  Do you think

8   it's bad?  Any, any opinions about that?

9   (No Prospective Juror raised their hand.)

10     MR. KOHNEN:  Does anybody have strong opinions

11  about American corporations doing business in China?

12  (No Prospective Juror raised their hand.)

13     MR. KOHNEN:  I see no hands.  Does everyone agree

14  that individuals and businesses who do business in foreign

15  countries must obey the laws and customs of those foreign

16  countries?  Does anybody have a problem with that?

17  (No Prospective Juror raised their hand.)

18     MR. KOHNEN:  So if a Chinese company comes to the

19  United States, they have to obey our laws?

20  (Prospective Jurors nod their heads affirmatively.)

21     MR. KOHNEN:  And if we or --  as a company or

22  employees go to China, we have to obey their laws?  Is

23  everyone clear on that?

24  (Prospective Jurors nod their heads affirmatively.)

25     MR. KOHNEN:  Now one thing about China is they have

1    laws, but they also have customs; and the distinction

2    between customs and laws, based on what I've learned, can

3    get a little blurred; okay?  Customs typically -- which go

4    back centuries -- trump laws in a sense.

5            So it's really important that people who go to

6    China understand and obey their customs as well.  Is

7    everybody on board with that?

8    (Prospective Jurors nod their heads affirmatively.)

9            MR. KOHNEN:  Let's talk for just a minute about

10   what I'm going to call optics.  You all have noticed that

11   there are a lot of attorneys here who are representing Mr.

12   Xu.

13           You noticed that there are three attorneys and an

14   agent here on behalf of the Government.  Bearing in mind

15   that lots of other attorneys and agents almost certainly

16   worked on this case, do you think that this is a fair fight,

17   will you agree?

18           It's not -- we're not out numbering them?  Not out

19   manning them.  Does that give anybody any cause for concern?

20   (No Prospective Juror raised their hand.)

21           MR. KOHNEN:  Everybody agrees that while at first

22   it might kind of look unfair, we've got a level playing

23   field here; correct?

24   (No Prospective Juror raised their hand.)

25           MR. KOHNEN:  All right.  Judge Black and Mr. Mangan

1     have addressed a very important issue, and I want to cover

2     it from a slightly different, a slightly different angle.

3     Has anybody here had what's called biased training?

4     (Prospective Jurors raised their hands.)

5              MR. KOHNEN:  Yes, sir.  Good.  Okay.  Anybody else?

6     (Prospective Jurors raised their hands.)

7              MR. KOHNEN:  Okay.  Okay.  I'm going to tell you

8     what bias training is just to make sure we're on the same

9     page here.

10             I'm going --

11             THE COURT:  I'm going to interrupt, and you'll

12     forgive me.  When the lawyers talk, it's not evidence.  You

13     haven't heard a word about evidence.

14             I interrupted him once because he was going to tell

15     you something you didn't know about.  If you're going to be

16     told stuff, you're going to be told stuff by the witness.

17     But you can go ahead, go ahead and do the best you can not

18     to --

19             MR. KOHNEN:  I will, Your Honor.  Ladies and

20     gentlemen, what I want to do is I want to ask you if you

21     understand that all of us have something that's known as

22     implicit bias?  Has anyone heard this before?

23     (Prospective Jurors raised their hands.)

24             MR. KOHNEN:  I thought so.  May I continue?

25             THE COURT:  Yes.

1           MR. KOHNEN:  Implicit bias is something that we all

2    have in us that is prejudice to someone because of their

3    gender or their race or their sexual orientation.  We can't

4    help it.  Lots of times we don't even recognize it.

5           I want to make sure that each and every one of you,

6    if selected to be a Juror, is going to make sure that

7    whatever bias exists is pushed away from your job as fact

8    finders in this case.

9           Can I have that assurance from each and every one

10   of you, please?  Raise your hands.

11   (Prospective Jurors raised their hands.)

12          MR. KOHNEN:  Thank you.  Everybody understands,

13   don't they, that countries have intelligence services;

14   right?

15          For example, the United States has the C.I.A., and

16   the N.S.A., and lots of other intelligence agencies; and

17   Great Britain, they have the MI6 and the MI5.  In Russia

18   they have the Federal Security Service and the Foreign

19   Intelligence Service, which by the way used to be the KGB,

20   and China has intelligence services too; right?  That makes

21   sense.  Does anybody disagree with that?

22   (No Prospective Juror raised their hand.)

23          MR. KOHNEN:  Okay.  Does anyone think it's wrong

24   for a country to have an intelligence service?

25   (No Prospective Juror raised their hand.)

```
1              MR. KOHNEN:  It's important to a country's defense,
2       isn't it?
3       (No Prospective Juror raised their hand.)
4              MR. KOHNEN:  Does anyone think that somebody who
5       works for an intelligence agency -- whether for our country
6       or for another country -- has to be a spy?
7       (No Prospective Juror raised their hand.)
8              MR. KOHNEN:  Again, I see no hands.  This is a
9       rhetorical question:  But what do you think the purpose of
10      an intelligence agency like the C.I.A. is?
11      (No Prospective Juror raised their hand.)
12             MR. KOHNEN:  It's to gather intelligence; right?
13      Would it surprise you to know -- and this is a question that
14      I want answered -- would it surprise you to know that the
15      vast majority of information that these intelligence
16      services gather is public information?
17      (No Prospective Juror raised their hand.)
18             MR. KOHNEN:  Nobody's surprised by that?
19      (No Prospective Juror raised their hand.)
20             MR. KOHNEN:  Sometimes you'll hear during the trial
21      the expression, open-source, and that's what I'm talking
22      about.  Stuff that is not --  doesn't qualify in this case,
23      for example, as trade secrets.
24             Does everybody agree that that should be fair game?
25      (No Prospective Juror raised their hand.)
```

1          MR. KOHNEN:  I'm assuming that I see no hands, that

2     everybody agrees?  And if I'm wrong about that, please raise

3     your hand?

4     (No Prospective Juror raised their hand.)

5          MR. KOHNEN:  So let's see.  Intelligence services

6     just don't --  they don't just deal in secret information.

7     There's lots of public information that could be useful to

8     them for whatever their purposes are.  We all agree on that?

9     (No Prospective Juror raised their hand.)

10          MR. KOHNEN:  And human beings also can be sources

11     of information for intelligence services as well, don't you

12     agree?

13     (No Prospective Juror raised their hand.)

14          MR. KOHNEN:  I'm not talking about cloak and dagger

15     meetings and drop locations and all this stuff you see in

16     the movies, but what I'm looking about is friending somebody

17     on Facebook, finding somebody on LinkedIn, communicating

18     with somebody on -- I forget -- Instagram, just asking a

19     person to make an introduction.

20          Those things all can lead to human interaction and

21     information being shared with people in an intelligence

22     service.  Does everybody agree with that?

23     (No Prospective Juror raised their hand.)

24          MR. KOHNEN:  Now, in this case you're going to hear

25     that a lot of information was gathered, and it's going to be

1    up to you to decide whether or not that was a trade secret.

2            I'll get to this in a minute, but Judge Black would

3    define what a trade secret is.  Does everybody understand

4    that?

5    (No Prospective Juror raised their hand.)

6            MR. KOHNEN:  Sometimes trade secret will be used as

7    a synonym with other words; and I want to be clear that the

8    trade secret per the law has a very distinct definition.  Is

9    everybody okay with that concept?

10   (Prospective Jurors nod their heads affirmatively.)

11           MR. KOHNEN:  I'll have more for you on that in a

12   minute.

13           One of the most important aspects of a trade secret

14   is that it can't be found through public means or acquired

15   otherwise; okay?

16           And Judge Black will define trade secrets.  I think

17   he will include that in his definition, but the important

18   thing I want to make sure that everybody agrees with is when

19   it comes to defining the trade secret and deciding whether

20   something was or was not a trade secret, that's a question

21   of fact, and that's for you to decide.  Is everybody clear

22   on that?

23   (No Prospective Juror raised their hand.)

24           MR. KOHNEN:  Another important question in this

25   case is going to be my client, Mr. Xu's intent, what he

1    intended or didn't intend to do.  That is up to you and only

2    you as well.  Is everybody comfortable with that?

3    (Prospective Jurors nod their heads affirmatively.)

4         MR. KOHNEN:  You've heard a lot already about the

5    presumption of innocence.  I'm not going to spend a lot of

6    time on that, but does everybody understand that that is a

7    pre-sumption?  It is presumed, and not an as-sumption, which

8    is assumed?  I think there's a difference.  Does everybody

9    agree?

10   (Prospective Jurors nod their heads affirmatively.)

11        MR. KOHNEN:  That's an important concept because,

12   again, with, you know, the possibility of bias and

13   circumstances, the trade wars in China, the responses to

14   your questionnaires about China, it would be pretty easy to

15   come in here and assume the worst about my client.

16        Can everybody put that out of your mind and decide

17   this case objectively based only on what you hear in this

18   courtroom?

19   (Prospective Jurors nod their heads affirmatively.)

20        MR. KOHNEN:  Mention was made, I believe, and it

21   certainly will be again, of a thing called an indictment,

22   okay?  For purposes --  going forward, an indictment is

23   simply a piece of paper that sets forth for Mr. Xu, for us,

24   his attorneys, and for the Court, the claims that the

25   Government has made against him.

1          There's nothing else about the indictment that you

2     may consider, and you may not -- I stress -- not consider it

3     as evidence --

4          THE COURT:  Mr. Kohnen, I'm going to interrupt.

5     I'd like you to ask questions of the Jurors.

6          MR. KOHNEN:  The judge touches on but didn't spend

7     a lot of time on reasonable doubt.  Is everybody comfortable

8     with that concept?

9     (Prospective Jurors nod their heads affirmatively.)

10         MR. KOHNEN:  Does everybody understand if you

11    probably think this man's guilty, that you must vote to

12    acquit?  Not convict?

13    (No Prospective Juror raised their hand.)

14         MR. KOHNEN:  Would anybody here have difficulty

15    following those principles?

16    (Prospective Jurors nod their heads affirmatively.)

17         MR. KOHNEN:  Likewise, for this concept of beyond a

18    reasonable doubt, the judge did a good job there.  I can add

19    more, but is anybody uncomfortable with that standard?

20    (No Prospective Juror raised their hand.)

21         MR. KOHNEN:  Now, the evidence in this case is

22    going to start when the prosecution presents its first

23    witness.  That witness will testify on what's known as

24    direct examination.  In other words, the witness will be

25    questioned by one of the Government's lawyers, and they'll

1    give answers.

2            And then the witness will be cross-examined by me

3    or one of my colleagues, and the witness will give answers

4    to those questions.

5            Does everybody agree that the answers to both sets

6    of questions get equal weight?

7    (Prospective Jurors nod their heads affirmatively.)

8            MR. KOHNEN:  Everybody agrees that the answers that

9    come out on cross-examination are potentially just as

10   important as the questions that came out on direct

11   examination?  Makes sense; right?

12   (Prospective Jurors nod their heads affirmatively.)

13           MR. KOHNEN:  This is going to be a long trial.

14   Judge Black has made that clear.  Hopefully it's not going

15   to be as long as we've provided for, but better that we do

16   that than make a promise we can't keep to you.

17           And you're going to hear a lot of evidence, but

18   does everybody realize that the amount of evidence is not a

19   substitute for the quality of the evidence?

20   (No Prospective Juror raised their hand.)

21           MR. KOHNEN:  Is there anybody that needs me to

22   explain that principle -- try to explain that principle

23   further?  Are you all there?

24   (No Prospective Juror raised their hand.)

25           MR. KOHNEN:  Good.  And another really important

1    principle is Mr. Xu's right not to testify, and his right

2    not to present any evidence at all.

3          Does anyone think that if he doesn't testify, he's

4    probably guilty?

5    (No Prospective Juror raised their hand.)

6          MR. KOHNEN:  Does anybody think that if he doesn't

7    testify, it's more likely that he's guilty?

8    (No Prospective Juror raised their hand.)

9          MR. KOHNEN:  I ask these questions because a number

10   of you indicated on your Jury questionnaires that you'd like

11   to hear the Defendant's side of the story.  You've indicated

12   in instances that you'd like to hear him testify.

13          Does everybody understand that whatever notion you

14   had --  and I'm not going to single anybody out --  but does

15   everybody understand that whatever notion you might have had

16   about that, you can't happen any longer?

17   (No Prospective Juror raised their hand.)

18          MR. KOHNEN:  Is there anyone that has a problem

19   with that?

20   (No Prospective Juror raised their hand.)

21          MR. KOHNEN:  Is there anybody here that would have

22   a problem voting not guilty if the Government got close to

23   proving the case by beyond a reasonable doubt but failed?

24   (No Prospective Juror raised their hand.)

25          MR. KOHNEN:  Is there anybody that would have a

1   problem voting not guilty if the Government covered most of

2   the elements of the offense?  That is, the things that they

3   must prove in order to convict.  Would you still want to

4   vote guilty?

5   (No Prospective Juror raised their hand.)

6       MR. KOHNEN:  I see no hands.  Thank you, folks.

7   May I have just a moment, Your Honor?

8       THE COURT:  Yes.

9   (Mr. Kohnen confers with co-counsel.)

10      MR. KOHNEN:  Sorry for the delay, ladies and

11  gentlemen.  A couple of personal questions -- not too

12  personal.  How do you think you might react as a Juror if

13  it's difficult to come to a unanimous verdict?  Are you

14  stubborn, inflexible, or strong-willed?  If you are, raise

15  your hand.  I probably won't follow-up.

16  (No Prospective Juror raised their hand.)

17      MR. KOHNEN:  Are you described maybe as a follower

18  or a pushover?  Likewise, I won't follow-up, but I would

19  like to see a hand?

20  (No Prospective Juror raised their hand.)

21      MR. KOHNEN:  Are you a person who finds it

22  difficult to hold on to your opinion, to stick to your

23  opinion if you're out numbered?

24  (No Prospective Juror raised their hand.)

25      MR. KOHNEN:  Can each of you resist the temptation

1    -- and it might be pretty severe -- resist the temptation to

2    decide for yourself what the law should be, to expand

3    perhaps the definition of trade secret that Judge Black

4    gives you?

5    (No Prospective Juror raised their hand.)

6            MR. KOHNEN:  Is everybody going to stay within the

7    four corners of that definition, and can you promise us

8    that?

9    (Prospective Jurors nod their heads affirmatively.)

10           MR. KOHNEN:  Again, I see no hands.  Thank you,

11   ladies and gentlemen.

12           We've been at this for quite, quite a while, and

13   I'm not going to belabor it much longer.  Sorry to do even

14   this, but is there anybody who sat through all of this now

15   and is thinking down in their heart of hearts, you know

16   what, this fellow, this fellow might be guilty?

17   (No Prospective Juror raised their hand.)

18           MR. KOHNEN:  If you were a Defendant, would you

19   want yourself as a Juror deciding your fate?

20   (No Prospective Juror raised their hand.)

21           MR. KOHNEN:  Is there anybody who has a religious

22   or philosophical or deeply personal reason why they just are

23   reluctant to judge people and their conduct?

24   (No Prospective Juror raised their hand.)

25           MR. KOHNEN:  Is there any reason any one of you

1    believes that you can't give Mr. Xu a fair trial?

2    (No Prospective Juror raised their hand.)

3         MR. KOHNEN:  Again, no hands.  Very well.  Ladies

4    and gentlemen, if you could promise to decide the facts

5    based only on the evidence presented in this courtroom and

6    apply the law as Judge Black instructs you, that's all we

7    can ask.  So, again, I want to thank you very much for your

8    service.

9         Your Honor, that concludes my questions and

10   remarks.

11        THE COURT:  Thank you, Mr. Kohnen.  Members of the

12   Jury, I think I indicated to you when we started that once

13   we reached this stage, I was going to have to excuse all of

14   you, talk to the lawyers, and select a Jury.  It's going to

15   take some time.

16        I'm going to ask that you be back up in the ninth

17   floor Jury Room -- you know what I'm talking about?

18   (Prospective Jurors nod their heads affirmatively.)

19        THE COURT:  -- by 2 o'clock.  That's an hour.  And

20   I hope we're ready to get you then.  I'll work hard at it,

21   but it's going to take that significant period of time.  You

22   might as well know it now rather than sit up there and keep

23   waiting.

24        So during the break, do not discuss these

25   proceedings in any way with anyone, including your fellow

1    Jurors.

2              If anyone approaches you, tries to discuss it, let

3    me know.  Must not conduct any independent search about the

4    trial or read, listen to, or watch any news reports, if any,

5    of the trial.

6              You may not chat or use Google, Facebook, Twitter,

7    et cetera, to find information about any aspect of the case.

8              Finally, remember that it's especially important

9    that you keep an open mind.  Don't form or express an

10   opinion until it's been finally submitted to you.

11             So take your break.  Welcome to go outside the

12   courtroom.  I'm going to need you in the ninth floor room by

13   2 o'clock in the hopes that we can get you at that time.

14             Out of respect for you, we'll rise as you leave for

15   an hour.

16             COURTROOM DEPUTY:  All rise for the Jury.

17   (Prospective Jurors exited the Courtroom.)

18             THE COURT:  Jury's left the room.  The door is

19   closing.  Anything that requires the Court's attention

20   before we recess for an hour from the Government --  oh,

21   we're not recessing yet, are we?  We're going to do Cause,

22   so you may be seated.

23             Ms. Frankian, if you could have Mr. Hall assist you

24   and bring a chair up next to me and join me?  Thank you.

25             All right.  We will address Challenges for Cause.

1    I propose to go to the Government and ask you for your

2    Challenges for Cause, and then go to the Defense and ask you

3    for your Challenges for Cause.

4              MR. MANGAN:  Can we just have one moment, Your

5    Honor?

6              THE COURT:  Yes.

7    (Counsel for both sides confer with co-counsel.)

8              MR. MANGAN:  We're ready when you are, Your Honor.

9    We're ready when you are, Your Honor.

10             THE COURT:  Very well.  Give me just a moment.  I'm

11   ready.  Thank you.  What I would propose is that we run

12   through the Government's objections for Cause, and then run

13   through the Defendant's objections for Cause.

14             Is there any objection to that from the Government?

15             MR. MANGAN:  No, Your Honor.

16             THE COURT:  From the Defense?

17             MR. KOHNEN:  No, thank you, Judge.

18             THE COURT:  Very well.  Mr. Mangan, you can

19   proceed.

20             MR. MANGAN:  Your Honor, we have four that we would

21   suggest for Cause.

22             THE COURT:  All right.

23             MR. MANGAN:  Starting with Number 7.  He's the

24   individual who indicated the hand surgery and the issue with

25   the physical therapy.

1          THE COURT:  Okay.  Let me pause there.  Does the

2     Government want to be heard on that Cause?

3          MR. MANGAN:  Do you mean the Defense?

4          THE COURT:  Yes.  Sorry.  Challenging for Cause

5     because of his hand surgery, need for physical therapy; is

6     that right, Mr. Mangan?

7          MR. MANGAN:  Correct.

8          MR. KOHNEN:  Judge, I believe that that Prospective

9     Juror said that he was going to try to work his schedule of

10    his physical therapy so he could attend the trial.  He

11    seemed pretty earnest about that.  Otherwise, we don't see

12    any other reason to excuse this Potential Juror.

13         THE COURT:  The Court declines to excuse for

14    Cause.

15         MR. MANGAN:  The next one, Your Honor, is Number

16    10.  That was the individual who indicated he has a new job

17    starting on Monday as well as an obligation to do some drug

18    testing in between.

19         THE COURT:  Defense wish to be heard?

20         MR. KOHNEN:  We concur.

21         THE COURT:  Ten is excused for Cause.

22         MR. MANGAN:  The next one we would suggest, Your

23    Honor, is Number 15.  This is the Juror who indicated that

24    he and his wife were in a car accident, and that his wife is

25    injured, and they have obligations regarding babysitting for

1    a grandchild.

2         THE COURT:  Defense wish to be heard?

3         MR. KOHNEN:  May I just a moment, Your Honor?

4         THE COURT:  Yes.

5    (Mr. Kohnen confers with co-counsel.)

6         MR. KOHNEN:  Your Honor, I don't think that that's

7    an appropriate reason to strike this Juror for Cause.

8         THE COURT:  Let me get focused again.  Who are we

9    chatting about, Juror Number?

10        MR. KOHNEN:  Juror Number 15.

11        THE COURT:  All right.  Yeah, I've got it.  Go

12   ahead.  And speak up, please.

13        MR. KOHNEN:  I think that he's in exactly the same

14   spot as the last Juror, not exactly but pretty close.  He's

15   got some conflicts that are potential conflicts.  He's got

16   some problems that may come down the road.

17        He's the one whose wife -- he and his wife were in

18   an automobile accident, but I don't think that he rises to

19   the level of an excuse for Cause.

20        You know, it's not lost on me, Your Honor, that

21   we've got a pretty small panel to begin with, but that

22   figures into my thinking somewhat.

23        THE COURT:  I'm going to exclude that person for

24   Cause.  They testified that -- as to his wife's condition

25   and their concern.  I grant him -- excuse him for Cause.  I

1    may revisit the other gentleman.

2         MR. MANGAN:  The last one we would present, Your

3    Honor, would be Juror Number 40.  This is the individual who

4    is 79 and indicated he had just been diagnosed with Stage 4

5    Lung Cancer.

6         THE COURT:  And why should he be excused?

7         MR. MANGAN:  Simply because, I believe, he

8    indicated that he's starting the treatments and is not clear

9    as to how that might impact him.

10        THE COURT:  I'm not trying to be difficult.  It's

11   possible we might all die.  He's got Stage 4 Cancer.  That's

12   horrible.  He's 79.  He didn't want to be excused for age.

13        MR. MANGAN:  I understand that.

14        THE COURT:  And there's no indication that he, you

15   or I are going to die, and we can't predict that.  So help

16   me understand that?

17        MR. MANGAN:  I think it was just -- my concern,

18   Your Honor, was -- from what I recall he mentioned was the

19   recency of the diagnosis and his uncertainty as to what the

20   treatments would be and how it would impact him, so I just

21   didn't --  we were concerned about something happening

22   during the trial to where he would suddenly reconsider

23   whether or not he could serve.

24        THE COURT:  Fair enough.  Defense wish to be heard

25   on 40?

1    MR. KOHNEN:  Again, not, not an appropriate reason,

2    we think, Your Honor.  If they want to excuse him, they can

3    use a Peremptory.  He indicated an interest in serving, and

4    I don't see anything on the horizon that he mentioned that

5    is going to prevent that.

6        THE COURT:  We're going to revisit him.  Has the

7    Government run through its Challenges for Cause?

8        MR. MANGAN:  Yes, Your Honor.

9        THE COURT:  Very well.  Defense prepared to

10   proceed?  All right.  While you're thinking, let me

11   interrupt.  I'm revisiting Juror Number 7, the one with the

12   reconstructive hand surgery.  Told us he was going to try

13   and do his PT at 7 or 7:30 a.m., but he had no indication

14   that he was scheduled.

15       I can't run the risk that he comes in tomorrow and

16   tells me he was unable to schedule it and cannot serve.  I

17   excuse him for hardship and cause.

18       I'm ready if you are, but if you need more time,

19   I'm cool too?

20       MR. KOHNEN:  Oh, no, we're ready to get started,

21   Judge.  Let's start with Number 36.

22       THE COURT:  How many do you have?

23       MR. KOHNEN:  Four or five.

24       THE COURT:  Okay.  36?

25       MR. KOHNEN:  36 is somebody who's still working

1    at GE and has been there for 20 years.  That in and of

2    itself we believe is enough that he should be excused for

3    Cause.

4            THE COURT:  Government wish to be heard?

5            MR. MANGAN:  Yes, Your Honor.  I believe he

6    indicated that he works in the business where they service

7    planes that have already -- or engines that have already

8    been sold.  He did not have any connection to the design

9    process.  Did not know the witnesses.  Did not know about

10   the case, so we don't believe it's appropriate for a Cause

11   strike.

12           MR. KOHNEN:  Your Honor, if I might.  He said that

13   before he worked where he works now, he worked in research

14   and development.  That's precisely the area we're talking

15   about.

16           THE COURT:  Fair enough.  I don't think his

17   association with GE per se is bias, and he's not excused for

18   Cause.  There are other options.

19           MR. KOHNEN:  Next is Number 16.  Number 16 on his

20   Juror questionnaire indicated that when it comes to China,

21   he cannot be impartial.

22           THE COURT:  Talking about Number 16?

23           MR. KOHNEN:  That's right.

24           THE COURT:  Government wish to be heard?

25           MR. MANGAN:  Your Honor, all I would indicate is

1    that, you know, everyone checked different boxes related to

2    the questionnaire.  If they had a specific concern about

3    that, they could have questioned him on it.

4          He was questioned on quite a number of other issues

5    related to, you know, his connection to GE, issues relating

6    to availability.

7          If they had concerns about his ability to be fair

8    and impartial, they could have questioned him directly, and

9    they chose not to.

10          THE COURT:  Defense want the last word?

11          MR. KOHNEN:  Yeah, Judge, with all due respect, the

12    gentleman checked the box.  As soon as we saw that, we

13    assumed he's off for Cause.  This is a person who on the

14    Jury questionnaire who checked the box that when it comes to

15    a Chinese person, he cannot be impartial.

16          THE COURT:  Can we have a dialogue?

17          MR. KOHNEN:  Sure.

18          THE COURT:  On the questionnaire he was asked, did

19    he have any opinions or beliefs about China?  And he said --

20    he didn't fill that out.  He said -- didn't check it.  He

21    said no.

22          Then on the next question:  Is it going to affect

23    you --  how you rule on the testimony?  He said, yes.

24    Didn't make any sense.  We had him in here.  We talked to

25    him numerous times, and I had no indication that he was

1      going be biased.

2            What's your, what's your response to that?  And I

3      just want to have a dialogue with you.  I'm not trying to

4      steam roll anything --

5            MR. KOHNEN:  Judge --

6            THE COURT:  -- but I don't want you going hanging

7      your hat on that one check on the questionnaire.

8            MR. KOHNEN:  You know, Judge, I -- that's the only

9      place I believe we need to hang our hat.

10           THE COURT:  Well, keep your voice up for me,

11     please.

12           MR. KOHNEN:  Judge, what, we were not -- once we

13     saw that, we were not interested in trying to rehabilitate

14     this person.  Where they checked the box matters not.  Where

15     they put those words in our view matters not.

16           THE COURT:  Can I tell you something?  That that

17     response was really helpful to me, and it's because we had a

18     dialogue without being rat-a-tat-tatting back and forth.

19     He's also got a child with heart disease.

20           MR. KOHNEN:  Yes.

21           THE COURT:  I excuse him for Cause.

22           MR. KOHNEN:  Thank you, Judge.  Note to self.  I

23     understand.

24           THE COURT:  What did you say?

25           MR. KOHNEN:  I said, note to self.  I understand

1   what you're saying, and I appreciate it.

2           THE COURT:  Note to self, Judge, thank God we have

3   great lawyers on both sides.  Decent human beings as well.

4   Well dressed on occasion.

5   (Mr. Kohnen confers with co-counsel.)

6           MR. KOHNEN:  Judge, I think we have one more.  Just

7   a second.

8           THE COURT:  I'm doing fine.  Trying not to snap.

9   (Mr. Kohnen confers with co-counsel.)

10          MR. KOHNEN:  Your Honor, our last request for a

11  Challenge for Cause would be Juror Number 9.  You might

12  recall, he's the Prospective Juror who needs some dental

13  work done.

14          He also was an employee of GE Aviation.  He was the

15  one, who in our view, hesitated pretty profoundly when asked

16  questions about GE, and would he be biased; and for that

17  reason -- those reasons, excuse me, and also some of his

18  answers on the Jury questionnaire particularly where he

19  believes a Juror should testify, he said that he strongly

20  believes -- or that Defendant, pardon me, said that he

21  strongly believes that, that and his military experience,

22  lead us to request that he be excused for Cause.

23  (Mr. Kohnen confers with co-counsel.)

24          MR. KOHNEN:  Your Honor, in spirit of all

25  disclosure, if I said strongly that word may have been

1    inappropriate --

2            THE COURT:  If you'd speak up?

3            MR. KOHNEN:  I didn't mean to use the word

4    strongly.

5            THE COURT:  In regard to what?  Your love of me?  I

6    don't know what you're saying.

7            MR. KOHNEN:  In regard to his thoughts that a

8    Defendant should testify.

9            THE COURT:  Okay.  I just didn't understand.  Mr.

10   Mangan?

11           MR. MANGAN:  Your Honor, with respect to the issue

12   of the Defendant testifying, I believe the Court asked the

13   entire panel a series of questions covering that, and

14   everyone indicated that they could follow the Court's

15   instructions.

16           Secondly, I would indicate that a person's military

17   service is no ground at all for striking them from Jury

18   service.  Certainly not for Cause.

19           And then with respect to his GE employment, I

20   believe he works as, it was -- had to do with electrical

21   maintenance was what he indicated, and that that was the

22   field that he worked in.  Was not related to design.  Did

23   not know any of the witnesses.  Did not know anything about

24   the case.

25           And then with respect to the filling falling out,

1   he indicated he would need to schedule an appointment.  He

2   didn't know when that would be, but he, you know, seemed --

3   there seemed to be some flexibility there as to when that

4   might be able to be accommodated and perhaps that could even

5   work with flexibility with the trial schedule.

6          So putting all those together, Your Honor, we don't

7   see any ground for striking him for Cause.

8          THE COURT:  I think there's too much that's

9   problematic about him.  I'll start at the top.  At the very

10  end of your examination of him as to whether he would be

11  able to not favor or disfavor a GE witness, I personally

12  thought I saw significant hesitation, and you have spoken to

13  him.

14         GE Aviation employment per se is not a basis, but

15  that caused me significant pause; and although I banged on

16  all of the Jurors about, you don't have to testify, his was

17  the most hostile expression and that in the questionnaire,

18  and I strike him for Cause.

19         Are we through with Challenges for Cause?

20         MR. KOHNEN:  We are from the Defense, Your Honor.

21  Thank you.

22         THE COURT:  From the Government?

23         MR. MANGAN:  Yes, Your Honor.  Thank you.

24         THE COURT:  All right.  I'm inclined to recess.  I

25  told them we were was going to try to get them at two.

```
1    It's, like, 1:25.  It's sort of within the 20 to 30 minute

2    suggestion.

3             Are you ready to come back -- I'll check if you're

4    not -- but do you think you'll be ready to come back at two

5    to do -- at 2 o'clock --  well, at 10 minutes of two -- in

6    half an hour -- in five minutes of two to do Peremptories?

7    The Government?

8             MR. MANGAN:  That would be fine, Your Honor, if --

9    can you kind of maybe walk through what you want the

10   schedule to be after that?

11            THE COURT:  In regard to what?

12            MR. MANGAN:  Just in terms of whenever we finish,

13   would we go right into openings?

14            THE COURT:  No.

15            MR. KOHNEN:  Okay.

16            THE COURT:  The Defense has something they want to

17   bring to my attention after we pick the Jury; is that right,

18   Mr. Kohnen?

19            MR. KOHNEN:  That's correct, Judge.

20            THE COURT:  And that's going to take a little time,

21   so we're going to break.  We're not going straight to

22   closing.

23            MR. MANGAN:  Okay.

24            THE COURT:  We'll see if we get to closing.

25   Defense okay with the estimated time I come back to see if
```

1    you're ready?

2         MR. KOHNEN:  You want us back here at two or five

3    minutes to two?

4         THE COURT:  Five minutes to two?

5         MR. KOHNEN:  Okay.  Yes, Judge, we'll get it done.

6         THE COURT:  Thanks.  You don't have to leave, but

7    you may.  We're in recess.

8         COURTROOM DEPUTY:  All rise.  This court is now in

9    recess.

10   (Court was in recess at 1:23 p.m. and resumed at 2:07 p.m.)

11        COURTROOM DEPUTY:  All rise.  This court is in

12   session pursuant to the recess.

13        THE COURT:  You may be seated.  Thank you.

14   Government team is here in full.  Defense team is here in

15   full.  The Defendant is here with the interpreter.  No

16   Jurors in the room.

17        We are prepared to proceed to Peremptory

18   Challenges.  Is the Government ready to proceed?

19        MR. MANGAN:  We are, Your Honor.

20        THE COURT:  Is the Defense?

21        MR. KOHNEN:  Yes, Your Honor.

22        THE COURT:  Very well.  Does the Government wish to

23   exercise its first Peremptory Challenge?

24        MR. MANGAN:  Yes, Your Honor.  We strike Number 24.

25        THE COURT:  24 is stricken by the Government.  Does

1    the Defendant wish to exercise its first and second

2    Peremptory strike?

3              MR. MIEDEL:  Yes, Your Honor.  We ask to strike

4    Number 21 and Number 36.

5              THE COURT:  Both are stricken, 21 and 36.  Is the

6    Government ready to exercise its second Peremptory?

7              MR. MANGAN:  Yes, Your Honor.  We strike Number 14.

8              THE COURT:  14 is stricken.  Tell me to slow down

9    if I need to.  Is the Defendant ready to exercise its third

10   and fourth Challenges?

11             MR. MIEDEL:  Yes, Your Honor.  We ask to strike

12   Number 18 and Number 28.

13             THE COURT:  18 and 28 are stricken.  Is the

14   Government ready to exercise its third Peremptory strike?

15             MR. MANGAN:  Yes, Your Honor.  We strike Number 22.

16             THE COURT:  22.  Very well.  22 is stricken.  Is

17   the Defense ready to exercise its fifth and sixth Peremptory

18   Challenges?

19             MR. MIEDEL:  Yes, Your Honor.  We ask to strike

20   Number 26 and Number 5.

21             THE COURT:  26 and 25 are stricken.

22             MR. MIEDEL:  I'm sorry.  Number 26 and Number 5.

23             THE COURT:  Yes, and I meant to say that.  26 and 5

24   are stricken.

25             MR. MIEDEL:  Thank you.

```
 1              THE COURT:  Is the Government ready on its fourth?
 2              MR. MANGAN:  Your Honor, we strike Number 32.
 3              THE COURT:  32.  32 is stricken.  Is the Defense
 4    ready on seven and eight?
 5              MR. MIEDEL:  Yes, Number 13 and Number 1.
 6              THE COURT:  13 and -- nope.  13 and 1 are
 7    stricken.  Government ready to exercise its fifth
 8    Challenge?
 9              MR. MANGAN:  Just one moment, Your Honor.
10              THE COURT:  Yes.
11              MR. MANGAN:  Your Honor, we'd strike Number 33.
12              THE COURT:  33 is stricken.  Defense ready for its
13    ninth Peremptory Challenge?
14              MR. MIEDEL:  Yes, Number 25.
15              THE COURT:  Number 25 is stricken.  Is the
16    Government ready to issue its sixth and final Peremptory
17    Challenge as to Jurors?
18              MR. MANGAN:  One quick moment, Your Honor.
19              THE COURT:  Yes.  Yes.
20    (Mr. Mangan confers with co-counsel.)
21              MR. MANGAN:  Your Honor, we'd strike Number 30.
22              THE COURT:  Number 30 is stricken by the
23    Government.  And we come to Defense for his tenth final
24    Peremptory Challenge as to Jurors?
25              MR. MIEDEL:  Your Honor, the last Challenge is
```

```
1    Number 17.
2            THE COURT:  17.  17 is stricken.  Give me just a
3    moment.  I'd like to identify those 12 that I think have
4    been identified as Jurors, and then we'll proceed to
5    Alternates if there's confirmation.
6            I see our Jurors as including Numbers 2, 3, 4, 6,
7    8, 11, 12, 19, 20, 23, 27, 29.
8            Is the Government able to confirm its
9    understanding?
10           MR. MANGAN:  That's our understanding, yes.
11           THE COURT:  And the Defense?
12           MR. MIEDEL:  One moment, Your Honor?
13           THE COURT:  Yes.
14   (Mr. Miedel confers with co-counsel.
15           MR. MIEDEL:  Your Honor, you skipped over seven, is
16   that because you've decided to strike him for Cause?
17           THE COURT:  Yeah, we did that before the break.
18   That's the guy with the --
19           MR. MIEDEL:  Right.  I thought maybe, I thought --
20   I thought I heard you say you were reserving on that.
21   Perhaps I misunderstood.
22           THE COURT:  Seven has been excused.
23           MR. MIEDEL:  Okay.
24           THE COURT:  It was before the break.
25           MR. MIEDEL:  In that case we are -- we agree that
```

```
1    that is the correct list.
2              THE COURT:  That these are the 12?  Thank you.
3    We've been planning on three Alternate strikes --  three
4    Alternates who -- who is the Government's first Alternate
5    strike?
6              MR. MANGAN:  35, Your Honor.
7              THE COURT:  35.  Who is the Defense's first
8    Alternate strike?
9              MR. KOHNEN:  27, Your Honor.
10             THE COURT:  27 is stricken.
11             MS. GLATFELTER:  Your Honor, I thought 27 was on
12   the panel?
13   (the Court confers with Ms. Frankian.)
14             THE COURT:  27 is on the Jury.  So you can't strike
15   that.  29 forward.
16             MR. MIEDEL:  We need just one minute.
17             THE COURT:  You're doing fine.
18   (Mr. Miedel confers with co-counsel.)
19             MR. MIEDEL:  Your Honor, Number 37.
20             THE COURT:  Number 37 is stricken.  The Government
21   have its final strike as to Alternates?
22             MR. MANGAN:  Your Honor, 39.
23             THE COURT:  39.  39 is stricken.  And does the
24   Defense have its last Alternate strike?
25   (Mr. Miedel confers with co-counsel.)
```

1          MR. MIEDEL:  Your Honor, we'll strike Number 40.

2          THE COURT:  Number 40.  I believe that the three

3    Alternates are 34, 38, and 41, and ask when you're ready to

4    confirm if that's your understanding?

5          MR. MANGAN:  That's our understanding, Your Honor.

6          THE COURT:  From the Government.

7          MR. FLORIAN:  Yes, that is our understanding.

8          THE COURT:  From the Defense as well.  We have 12

9    Jurors and three Alternates, and we have completed the task

10   to date.  Are we ready to bring down the Jurors, the

11   Alternates, and the balance of the panel from the

12   Government's perspective?

13         MR. MANGAN:  We're prepared, yes.

14         THE COURT:  Defense?

15         MR. KOHNEN:  Yes, Your Honor.

16         THE COURT:  Very well.  Ms. Santoro, would you call

17   for those --  for all Jurors, please?

18         COURTROOM DEPUTY:  Yes, Judge.

19   (Discussion held off the record.)

20         THE COURT:  While we're in recess, we'll go back on

21   the record before the Jurors come through the door.  We're

22   going to bring them down, all of them, put them in the back.

23   We're going to call up the 15, put them in the box --

24         MR. KOHNEN:  They're at the door.  Well, they're

25   filling in.

1          THE COURT:  The Marshal's guarding the door.  I

2     don't want them in here, so will you guard the door, please?

3     Thank you.

4          All right.  Outside the presence of the Jurors.

5     We're going to bring everybody back.  We're going to put

6     them in the gallery.  We're going to call forward the 15,

7     put them in the box.  We're going to excuse all of the

8     others and thank them.

9          We're then going to instruct the Jury

10     preliminarily, and then we would pause, break, and the next

11     thing would be opening statements.

12          I don't --  if we're doing opening statements, I

13     want both of them on the same day.  Do you want to break

14     after we pick the Juries and do opening statements in the

15     morning or would you like to plunge ahead or would you leave

16     that to my --  does the Government have a position?

17          MS. GLATFELTER:  Your Honor, as much as we'd like

18     to move ahead, I think it will be late by the time we get

19     started; and I think, you know, Mr. Kohnen could get

20     started, go until past 5 o'clock probably, which is also

21     probably not the situation we want to have for the Jurors,

22     so I would propose tomorrow morning to do both of them.

23          THE COURT:  And what's the Defense's sense?

24          MR. KOHNEN:  Judge, I agree with Ms. Glatfelter.

25     We promised them that we'd finish at 4:30, and I don't want

1    to get off on the wrong foot.

2         THE COURT:  I agree.  We'll push closing -- opening

3    statements till tomorrow.  We've all been through a ringer.

4    There's nothing wrong with taking a break and coming back

5    fresh in the morning to go with opening statements.  I think

6    it's also of an assistance to the Jury.

7         Did you acknowledge Mr. Kohnen that Ms. Glatfelter

8    was looking out for you in suggesting that if you went

9    second this afternoon, you'd be rushed?

10        MR. KOHNEN:  I will be eternally grateful until

11   tomorrow morning.

12        THE COURT:  The record shall reflect that.  Thank

13   you, Mr. Kohnen.  All right.  We can have the Jurors come

14   in.  Thank you, Madam Marshal.

15        COURTROOM DEPUTY:  All rise for the Jury.

16   (Prospective Jurors entered the Courtroom.)

17        MR. MANGAN:  Did you want --

18        THE COURT:  Oh, I'm sorry.  Excuse me.  We're

19   putting them all in the gallery; right?  All of them in the

20   gallery.  Festival seating in the gallery as distanced as

21   you can be.

22        You don't have to sit in your Juror number.  You

23   have to sit in the gallery.  Try and social distance as best

24   you can.  This will just take a moment.  Thank you, Mr.

25   Mangan.  Did you hear me?

1          MR. MANGAN:  Yes.

2          THE COURT:  Everybody in the gallery, we don't have

3    to sit in your assigned seat.  Try and social distance as

4    best you can.  This will just be for a moment.

5          Sit anywhere you wish.  Not in your number

6    necessarily.  All in the gallery.  Try and social distance

7    as best you can.

8          All are seated in the gallery.  You don't have to

9    be in your correct number.  Social distance as best that

10   you're able.

11         If you've arrived, you may all be seated.  Do we

12   know that all persons, Jurors, are here?  Somebody's

13   counted?

14         COURTROOM DEPUTY:  Yes, they have.

15         THE COURT:  Very well.  Welcome back and thank you

16   for your patience to the Prospective Jurors now all seated

17   in the gallery.

18         We've reached our decision, and I'm now going to

19   call forward the 15 of you who have been selected as Jurors

20   in this case.

21         As I call your name --  number, please step forward

22   and walk up here to Ms. Santoro, who will direct you to a

23   seat of the Jury box.  We're putting all 15 in the Jury box

24   briefly.

25         Once you're seated, I'm going to make a brief

1    statement, and then I'm going to go ahead and excuse

2    everyone else in the gallery.

3           After everyone else has left, the 15 in the box

4    will be sworn in as Jurors, and then we'll move you -- most

5    of you back into the gallery to an assigned seat so that

6    everyone is socially distanced.

7           When I spoke with you earlier this morning, I urged

8    you not to be offended if you'd been selected for the Jury.

9    If you have been selected for the Jury, I urge you not to be

10   disappointed nor ecstatic, and here we are.

11          Juror Number 2, if you would approach Ms. Santoro.

12   Juror Number 3, Juror Number 4, Juror Number 6, Juror Number

13   8, Juror Number 11, Juror Number 12, Juror Number 19,

14   Juror 20, Juror 23, Juror 27, Juror Number 29, Juror

15   Number 34, Juror Number 38, Juror Number 41.

16          Ms. Santoro, we have 15 in the Jury box; is that

17   right?

18          COURTROOM DEPUTY:  That's correct, Judge.

19          THE COURT:  Thank you.  As to the 15, if you sit --

20   sitting in the box, you've all been asked questions in

21   order to determine your ability to make decisions in this

22   case, free from any bias or sympathy for or against either

23   side.

24          I must now ask some final possibly repetitive

25   questions to ensure your qualifications as Jurors.  Please

1    bear with me as I ask those questions now.

2            Is there anyone in the Juror box that cannot

3    promise to decide this case strictly on the facts as

4    developed from the witness stand, and the exhibits admitted

5    into evidence, and the law as I give it to you?

6    (No Prospective Juror raised their hand.)

7            THE COURT:  I see no hands.

8            Is there anyone here who cannot promise to keep an

9    open mind, not discuss the case with anyone, including your

10   fellow Jurors, throughout the entire trial until you're

11   ordered to retire to the Jury Room to deliberate?

12   (No Prospective Juror raised their hand.)

13           THE COURT:  I see no hands.

14           Can any of you think of any reason why you could

15   not be fair and impartial in carrying out your duties in

16   this trial?

17   (No Prospective Juror raised their hand.)

18           THE COURT:  I see no hands.  Finally, is there any

19   reason at all why any of you feel that you could not or

20   should not serve on this Jury?

21   (No Prospective Juror raised their hand.)

22           THE COURT:  I see no hands.  This is my last

23   chance.  I've determined you 15 are our Jury.  I can't find

24   out tomorrow that you have a dentist appointment or

25   something that's going to interfere with your being here.

1    I've still got people I could plug in.

2         Does anyone have any conflict with attending the

3    trial on every day as currently calendered beginning at

4    9:30, in the courthouse at 9:15?  We'll try and get you out

5    at 4:30.

6         Anything that's going to interfere with that?  Is

7    there anyone in the box among the 15 who have anything they

8    need to tell me?

9    (No Prospective Juror raised their hand.)

10        THE COURT:  Thank you.  You are our Jury.  I'll be

11   back to you.

12        To those of you seated in the gallery and not

13   selected, I want to thank you for coming.  It's impossible

14   to determine at the outset how many Prospective Jurors need

15   to be summonsed in order for us to seat a Jury.

16        Even though you were not selected to serve on this

17   Jury, please know that your presence and participation in

18   the Jury selection process is a important contribution to

19   the workings of this court.

20        Jury service is one of the most important

21   activities of being a United States citizen.  I believe it's

22   a sacrifice required by democracy.  We very much appreciate

23   your willingness to serve.

24        Those of you not selected still in the gallery are

25   excused with our gratitude.  I hope a piece of this was of

1    interest, and you are free to leave the courthouse.  We will

2    rise out of respect for you as you leave for the day.

3         COURTROOM DEPUTY:  All rise.

4    (Prospective Jurors not selected exited the Courtroom.)

5         THE COURT:  The balance of the Jury venire have

6    been excused.  You may all be seated.  15 Jurors remain

7    present in the Jury box.  The others are gone.  I did not

8    hear any high fiving, and I want to thank the 15 of you for

9    the commitment you've taken on.

10        Ms. Santoro, I would ask that you please swear in

11   the Jury to service.  If you would stand and raise your

12   hand, and you're going to be sworn to decide this case

13   fairly.

14        COURTROOM DEPUTY:  Do you, and each of you, do

15   solemnly swear or affirm that you will well and truly try,

16   and true deliverance make, in the case now in trial and

17   render a true verdict according to the law and the evidence.

18   Respond by saying I do.

19        ALL JURORS:  I do.

20        THE COURT:  Thank you, all.  We're now going to

21   seat them social distanced in the box and in the gallery.

22   Ms. Santoro's going to assist with this, and this should be

23   something to behold.

24   (Laughter.)

25        COURTROOM DEPUTY:  So all but three will come back.

1    So are we starting with the back?

2         MS. FRANKIAN:  Yes, the back row one and the far

3    right, one in the middle, and one on the far left, and then

4    in the gallery it's the second and the fourth row, and I

5    think there's a sticker -- a red sticker --

6         COURTROOM DEPUTY:  Okay.

7         MS. FRANKIAN:  -- where they should sit.

8         COURTROOM DEPUTY:  So if you want to follow me down

9    this front row.

10        THE COURT:  Is there anyone in here who has trouble

11   with vision, such that you need to be in the box with a

12   screen very close to you or on the edges where the big

13   screens are?  Although we'll have a big screen in the

14   middle.  Two small screens in the middle.

15        Anybody who needs to have the screen right up close

16   to them?

17   (No Prospective Juror raised their hand.)

18        THE COURT:  Very well.  Now that I've assisted --

19        COURTROOM DEPUTY:  Thank you, Judge.

20        THE COURT:  -- would you continue the exercise?

21        COURTROOM DEPUTY:  So we're only going to have

22   three in the box?  So you three (Indicating) stay here.  The

23   rest of you come with me.  Two in the back.  One in the

24   front.

25   (Jurors were seated socially distanced.)

1          THE COURT:  You may all be seated.  In the second

2    row to my left, why are those two --  they're in separate

3    rows, okay.  It looks like people are socially distanced.

4    To those three in the box, you're not special.  It just

5    worked out that way.

6    (Laughter.)

7          THE COURT:  Thank you for your understanding.  So

8    the seat you're in now is your seat for the duration of

9    trial.  Make sure you remember where it is.

10         I prefer you didn't carve your initials in it, but

11   I want you to be able to get to your own seat without a lot

12   of direction; understood?

13   (Jurors nod their heads affirmatively.)

14         THE COURT:  Very well.  Members of the Jury, I'm

15   going to give you some preliminary instructions to guide you

16   in your participation in the trial now that you've been

17   sworn.

18         Please pay special attention and listen carefully.

19   I know that you will.  I'm going to have to read some stuff

20   to you.

21         The last time somebody read to me out loud, it was

22   my mother trying to get me to go to sleep.  I urge you not

23   to go to sleep.

24         If it's any help, once I get through these

25   instructions, I'm going to let you go for the day.  You've

1    been here for a long time.  It's quarter of three.  We'll

2    get these instructions under our belt.  I'll remind you

3    about what not to do when you're outside the presence of the

4    courtroom, and we'll send you home.

5         When you come back tomorrow, you need to be in the

6    ninth floor Jury Room by 9:15, and we will endeavor to get

7    you down here at 9:30.

8         We'll start with opening statements.  That is not

9    evidence, and then we'll begin to hear evidence.  So here

10   are the preliminary instructions.

11        Duty of the Jury.  It will be your duty to find

12   from the evidence what the facts are.  You, and you alone,

13   will be the judges of the facts.

14        When the time comes, I will instruct you on the

15   relevant law.  You'll then apply those facts to the law that

16   I will give you, and you must follow that law whether you

17   agree with it or not.

18        Nothing the Court --  I, this Judge --  may say or

19   do during the course of trial is intended to indicate in any

20   way or should be taken by you as indicating what your

21   verdict should be.

22        As to evidence, the evidence from which you will

23   find the facts will consist of the testimony of witnesses,

24   documents, and other items received into the record as

25   exhibits, and any facts that the lawyers agree to or

1    stipulate to that I will tell you about or anything the

2    Court instructs you to find.

3         Certain things are not evidence and must not be

4    considered by you.  I'll list them for you now:  Statements,

5    arguments, and questions by lawyers are not evidence.

6    Objections to questions are not evidence.

7         Lawyers have an obligation to their clients to make

8    objections when they believe evidence is being offered

9    improperly under the Rules of Evidence.  Should not be

10   influenced by the objection or by my ruling on it.

11        If the objection is sustained, in other words

12   upheld, then ignore the question.  If the objection is

13   overruled, then treat the answer like any other; and if

14   you are instructed that some item of evidence is received

15   for a limited purpose only, you must follow that

16   instruction.

17        Testimony that the Court has excluded or told you

18   to disregard is not evidence and must not be considered.

19   Anything you may have seen or heard outside the courtroom

20   is not evidence and must be disregarded.  You are to decide

21   the case solely on the evidence presented here in the

22   courtroom.

23        There are two kinds of evidence, direct and

24   circumstantial.  Direct evidence is direct proof of a fact,

25   such as testimony of an eyewitness.  For example, if a

1    witness testified that he saw it raining outside, you

2    believed him, that would be direct evidence that it was

3    raining.

4            Circumstantial evidence is proof of facts from

5    which you may infer or conclude that other facts exist.  For

6    example, if someone walked into the courtroom wearing a

7    raincoat covered with drops of water and carrying a wet

8    umbrella, that would be circumstantial evidence from which

9    you could conclude that it was raining.

10           Direct and circumstantial evidence are afforded the

11   same weight.  I will give you further instructions on these

12   as well as other matters at the end of the case and perhaps

13   in the middle-ish, but keep in mind you may consider both

14   direct and circumstantial evidence.

15           It will be up to you to decide which witnesses to

16   believe, which witnesses not to believe, or how much of any

17   witness's testimony to accept or reject.

18           I'll give you some guidelines for determining the

19   credibility of the witnesses at the end of the case.

20           As to rules for criminal cases.  As you know, this

21   is a criminal case.  There are three basic rules about a

22   criminal case that you must keep in mind.

23           First, the Defendant is presumed guilty until

24   proven --  is presumed innocent until proven guilty.  That's

25   the basic one.  Perhaps I ought to state it accurately.  The

1    Defendant is presumed innocent until proven guilty.

2         The charges brought by the Government against the

3    Defendant are only accusations.  Nothing more.  It's not

4    proof of guilt or anything else.  The Defendant, therefore,

5    starts out with a clean slate.

6         Second, the burden of proof is on the Government

7    until the very end of the case.  The Defendant has no burden

8    to prove his innocence or to present any evidence or to

9    testify.

10        Since the Defendant has the right to remain silent,

11   the law prohibits you from arriving at your verdict by

12   considering that the Defendant may have not testified or may

13   not have called witnesses or presented evidence.

14        Third, the Government must prove the Defendant's

15   guilt beyond a reasonable doubt.  Proof beyond a reasonable

16   doubt means proof which is so convincing that you would not

17   hesitate to rely and act upon it in making the most

18   important decisions in your own lives.

19        I will give you further instructions on this point

20   later, but bear in mind that in this respect a criminal case

21   is different from a civil case.

22        Summary of the case.  I'm now going to give you a

23   brief overview of the Government's allegations in this case.

24   This is just a short summary.  You remember that these are

25   the Government's allegations.  The Defendant is presumed

1    innocent.

2         The Defendant, Yanjun Xu, is a citizen and resident

3    of the People's Republic of China.  The Government alleges

4    that Defendant is also a Deputy Division Director with the

5    Regional Sector of the Ministry State Security, MSS, for the

6    People's Republic of China.  MSS is China's Intelligence and

7    Security Agency.

8         The Government alleges that part of Defendant's

9    alleged duties on behalf of MSS, Defendant worked with other

10   MSS officers as well as other institutions operated by the

11   Chinese Government to unlawfully obtain trade secrets from

12   aviation and aerospace companies in the United States and

13   Europe all for the benefit of People's Republic of China and

14   its various agencies and instructions.

15        In this case the Defendant is charged in a document

16   called an indictment with four counts.

17        Count 1 charges Conspiracy to Commit Economic

18   Espionage.  The Government alleges that from 2013 to April 1

19   of 2018, Defendant engaged in a conspiracy to, without

20   authorization, obtain, steal, receive, buy, or possess trade

21   secrets belonging to various aviation and aerospace

22   companies in the United States and Europe all for the

23   benefit of the Chinese Government.

24        Count 2 charges Conspiracy to Commit Trade Secret

25   Theft.  The Government alleges that from 2013 to April 1,

1    2018, Defendant engaged in a conspiracy to, without

2    authorization, obtain, steal, receive, buy, or possess trade

3    secrets belonging to various aviation and aerospace

4    companies in the United States and Europe for the economic

5    benefit of everyone other than the owner of the trade secret

6    and with the intention and knowledge that the offense will

7    injure the owner of that trade secret.

8         Count 3 charges Attempted Economic Espionage.  The

9    Government alleges that from May 2017 to April 1, 2018,

10   Defendant attempted to, without authorization, obtain,

11   steal, receive, buy, or possess trade secrets belonging to

12   GE Aviation all for the benefit of the Chinese Government.

13        Count 4 charges Attempted Trade Secret Theft.  The

14   Government alleges that from May 2017 to April 1, 2018, the

15   Defendant attempted to, without authorization, obtain,

16   steal, receive, buy, or possess trade secrets belonging to

17   GE Aviation and did so for the benefit of someone other than

18   GE Aviation and with the intention and knowledge that the

19   offense will injure GE Aviation.

20        The Defendant denies these charges and is presumed

21   innocent.

22        As to the charges, I'll give you detailed

23   instructions on the law at the end of the case, and those

24   instructions will control your deliberations and decision.

25        Now, conduct of the Jury.  A few words about your

1    conduct as Jurors.  Just to be clear, these rules apply

2    going forward regardless of whether you are in the courtroom

3    or not.

4          So even when you're out during your lunch break or

5    when you go home in the evening or over the weekend, you're

6    still bound by the rules I'm about to discuss with you.

7          First, you as Jurors must decide this case based

8    solely on the evidence presented here within the four walls

9    of this courtroom.

10         This means that during the trial, you must not

11   conduct any independent research about this case, about any

12   of the matters in the case, and/or about any of the

13   individuals involved in the case.

14         In other words, you cannot, shall not search the

15   Internet, websites, or blogs, or use any other electronic

16   tools to obtain information about this case or to help you

17   decide this case.

18         You should not consult dictionaries, if you're

19   familiar with what they are, or reference materials nor do

20   any independent research.  You may not try to find out

21   information from any source outside the confines of this

22   courtroom.

23         Second rule is that until the trial is completely

24   over, you may not discuss this case with anyone; and when I

25   say anyone, I mean, anyone:  Not your family.  Not your

1    spouse.  Not your significant other.  Not your children.

2    Not your friends.  Not your co-workers.  Not your Twitter

3    followers.  No one.  In fact, until you retire for

4    deliberations, you may not even discuss the case with your

5    fellow Jurors.

6          Only after you retire and begin your deliberations,

7    will you be allowed to begin to discuss the case and discuss

8    it fully among yourselves.

9          But even then you still cannot discuss the case

10   with anyone else until you've returned a verdict in this

11   courtroom to me, and the case is at an absolute end.

12         Also I'm sure that many, if not all, of you

13   communicate with others using some form of technology or

14   some electronic device, smartphones, iPhones, iPads,

15   computers, other forms of technology.  Keep in mind that

16   when I tell you not to communicate with others about this

17   case, that also means that you cannot use any of your

18   electronic devices to communicate with anybody about the

19   case.

20         In fact, cell phones must be turned off at all

21   times when you're in the courtroom, and they will not be

22   permitted in the Jury Room during deliberations.

23         So, again, you may not communicate with anybody

24   about the case, whether it's in-person, on your cell phone,

25   smartphone, iPhone, iPad, tablet, or computer, whether it's

1    through E-Mail, text message, blog, website, Twitter,

2    Snapchat, Instagram, Facebook, LinkedIn, or YouTube.

3          I know -- or my people do -- that there are many

4    other modes of communication and social media platforms that

5    I didn't mention, but whether or not I specifically

6    mentioned them doesn't matter.  You can't use any of it to

7    talk about the case or independently research the case.

8          Also if you become aware that another Juror has

9    violated any of these instructions, you must inform either

10    Ms. Santoro, Ms. Frankian, or me right away.

11          A Juror who violates any of these rules,

12    jeopardizes the fairness of these proceedings and a mistrial

13    could result, which would require the entire progress to

14    start over.

15          Finally, do not form any opinion until all the

16    evidence is in.  Keep an open mind until you start your

17    deliberations at the end of the case.

18          As to note-taking.  If you want to take notes

19    during the course of the trial, we'll provide you with a pen

20    and a notebook to do so.

21          However, it's very difficult to take detailed notes

22    and pay attention to what the witnesses are saying at the

23    same time.

24          If you do take notes, be sure that your note-taking

25    does not interfere with your listening to and considering

1     all of the evidence.

2          Also if you do take notes, do not discuss them with

3     anyone until you begin your deliberations.  Do not take your

4     notes with you at the end of the day.  Be sure to leave them

5     in the Jury Room.

6          If you choose not to take notes, remember that it

7     is your own individual responsibility to listen carefully to

8     the evidence.  You cannot give this responsibility away and

9     rely on someone who's taking notes.

10         We rely on the judgment of all members of the Jury.

11    You must all remember the evidence in this case.  We're not

12    going to be able to give you transcripts.

13         During the course of the trial.  Tomorrow morning

14    when you come back, the attorneys will make opening

15    statements.  The Government will go first, and then the

16    Defense.  An opening statement is merely an outline to help

17    you understand the evidence as they expect it to come in

18    during the case.

19         Opening statements are neither evidence nor

20    arguments.  They're supposed to be a road map of what the

21    evidence the lawyers expect to be.

22         After all of the evidence is in, after all

23    witnesses have testified, I will instruct you in the law,

24    and you'll hear closing arguments from both sides.

25         Closing arguments are not evidence.  You will then

1    be excused and taken to the Jury Room to begin

2    deliberations.  That concludes Jury selection and your

3    preliminary instructions.

4          Momentarily, I'm going to release you for the day.

5    I'm going to get my eyes out of the paperwork and talk to

6    you about not discussing this case.

7          Every day when I go home my wife asks me, what

8    happened in court today?  I would presume that in your lives

9    when you go home to your family and friends, people will ask

10   you, what's going on?  What kind of case is it?  What did

11   you hear?  Who said what?

12         You cannot answer any of that.  You need to tell

13   them that the Federal Judge has instructed you not to

14   discuss the case with anyone, including your loved ones.

15         So I'm going to release the Jury momentarily.  Is

16   there anything the lawyers need from me in the presence of

17   the Jury before I get ready to excuse them, Mr. Mangan?

18         MR. MANGAN:  No, Your Honor.  Thank you.

19         THE COURT:  Defense?

20         MR. KOHNEN:  No.  Thank you, Judge Black.

21         THE COURT:  Very well.  All right.  Until the case

22   is completed, you must not discuss this case with anyone.

23   This includes members of your family and people involved in

24   the trial, and your fellow Jurors or anyone else.

25         Further this applies to all forms of

1    communications, including phone, E-Mail, text, Facebook,

2    Twitter, et cetera.

3         I think there's going to be an inherit pressure to

4    tell your loved ones something.  Yeah, it's an espionage

5    case.  You may not do that.  The minute you answer one

6    question, there's going to be a follow-up question.

7         Tell them the judge has ordered you on threat of

8    Contempt not to discuss the case with anyone.

9         Someone approaches you and tries to discuss the

10   trial with you, let me know about it immediately.  You may

11   not conduct any independent research about the trial, read,

12   listen to, or watch any news reports of the trial.

13        You may not check or use Google, Facebook, Twitter,

14   et cetera, to find information about any aspect of the case.

15        Finally, remember that it's especially important

16   that you keep an open mind.  Do not form or express an

17   opinion on the case until it's finally submitted to you

18   after all of the evidence and all the witnesses have

19   testified.

20        I'll make an effort to remind you of these rules

21   each time we break, but even if I forget to remind you, the

22   rules remain in effect throughout the entire trial.

23        I don't think I can fully express or that you can

24   fully infer or read from me how grateful I am on behalf of

25   the court and the community, and how grateful the lawyers

1    and the parties and the Defendant are for you taking on

2    this work.  It's an extraordinary credit to you, and I thank

3    you.

4            I'm going release you momentarily.  You're welcome

5    leave and go back to your home and to your loved ones.  Get

6    a good dinner.  Sleep well.  Come back to the courthouse by

7    9:15 to the floor -- the room on the ninth floor, and we'll

8    try and get you at 9:30 and bring you into the courtroom.

9            Are there any pressing questions from the Jurors

10   before I wave good-bye for the day?

11           A JUROR:  I have one question.  So which Jurors

12   are going to be deliberating and which ones are the

13   Alternates?

14           THE COURT:  And I'm sorry to tell you that's my

15   secret.

16           A JUROR:  Oh.

17           THE COURT:  We need you here, and if I tell you

18   you're an Alternate, maybe you might not be interested.  So

19   we never tell the Alternates who they are, and then at the

20   end of the case, I have the unfortunate experience of

21   saying, thank you for sitting here.  I'm going to release

22   you before deliberations.

23           I will sit with you personally and hear what you

24   think or have thought after the case is over.

25           Are there any compelling questions from the Jurors

1    before I release you from the day?

2         Out of respect for you, we'll rise as you leave.

3    See you at 9:30.  Here at the courthouse at 9:15.  If

4    somebody in the gallery would lead the group out?  Anybody,

5    start walking out.

6    (Jury exited the Courtroom.)

7         THE COURT:  Jurors have left the room, and the door

8    is closing.  I think we're ready to break, but --  no, we're

9    not.  We need to address something.  Should we do that now?

10        If you may, we'll all be seated, please.  Ms.

11   Frankian, if you will join me, please?  Who wishes to bring

12   something to the Court's attention from the Defendant's

13   perspective?

14        MR. McBRIDE:  I will, Your Honor, if I may.

15        THE COURT:  Very well.

16        MR. McBRIDE:  Judge, I want to follow-up --

17        THE COURT:  Very well.  Are you comfortable coming

18   to the podium --

19        MR. McBRIDE:  Yes, sir.

20        THE COURT:  -- or prefer to be there?  I want to be

21   able to grab you.

22        MR. McBRIDE:  Whatever's easiest, Judge.

23   Whatever's easiest.  I want to follow-up on perhaps

24   something Mr. Mangan and Mr. Kohnen were talking about this

25   morning.

1      The stipulations.  We received important

2  information from the Government yesterday, which we

3  appreciated; and we are going to be able to enter into

4  stipulations, but I just want to make sure that we're clear

5  on the record on what those are.

6      Those stipulations that the Government has asked

7  for go to the authenticity of the subscriber information for

8  basically E-Mail accounts.

9      We are not agreeing to the authentication of the

10  content of those E-Mail accounts, and the Government bears

11  the burden of -- or the burden of production to get those

12  in.  I want to make that clear for the Court.

13      Secondly, the -- there are three E-Mails that the

14  Government has shared with us yesterday that they have --

15  that there are more than one people who are using these

16  accounts or have access to these accounts, and I'd just like

17  to bring them to the attention of the Court.

18      It's jast -- J-A-S-T -- xyj@gmail.com.  Waiting for

19  Ms. Frankian, Your Honor.  JAST -- I only spell this because

20  it's a name -- QH --  I'm sorry  -- Q-U-H-U-I@gmail.com; and

21  the third one is jastburton -- B-U-R-T-O-N -- @gmail.com.

22      Our position is going to be, Your Honor, that those

23  can't be -- the content of those cannot be authenticated.  I

24  just want to bring those to the Court's attention so we can

25  -- so we're all on the same sheet of paper when we address

1    it, Your Honor.

2         THE COURT:  I really appreciate the heads-up

3    approach.

4         MR. McBRIDE:  Thank you, Your Honor.

5         THE COURT:  Is there more that you wanted to bring

6    to the Court's attention?

7         MR. McBRIDE:  No, Your Honor.

8         THE COURT:  Very well.  You may step down.

9         MR. McBRIDE:  Thank you.

10         THE COURT:  Does the Defense wish to be heard in

11    any regard -- in that regard --  or the Government?  Sorry.

12         MR. MANGAN:  That's all right.  Just briefly, Your

13    Honor.  It sounds like some of this may be hashed out as we

14    go along.  I would want to point out, first of all, the

15    information.  We did provide that information yesterday, and

16    what we agreed to -- get to is that the issue with the IP

17    addresses indicated that there may be multiple people using

18    the account.  That didn't mean that that was the only

19    explanation for what was going on with the IP addresses.

20         We also would like to say that, you know, there's

21    two things involved.  One is, you know, the authentication

22    of the evidence; but then, secondly, you know, are there any

23    issues with respect to hearsay, so forth like that.

24         With respect to authentication, that is a fairly

25    low bar.  To the extent we have sought these records from

1      Google or from Apple, and they provide the certification

2      that says, for this account address, these are the records

3      that we have as a subscriber, and these are the records that

4      we have related to the account, we believe that the

5      certification will be sufficient.

6            We also intend to present evidence tying the

7      accounts together and tying the accounts to the Defendant,

8      both through external sources as well as the content of the

9      accounts themselves.

10            THE COURT:  Very well.

11            MR. MANGAN:  And if -- unless we're going on to

12     other issues, there was one other item --

13            THE COURT:  I was going to give Mr. McBride --

14            MR. MANGAN:  Okay.

15            THE COURT:  -- an opportunity to respond to that

16     from where you are, sir --

17            MR. McBRIDE:  Yes, sir.

18            THE COURT:  -- if you need to.

19            MR. McBRIDE:  Your Honor, I think we have a

20     disagreement about the law, but I don't believe this is the

21     time or place to make that argument.

22            THE COURT:  I'm going to get that printed up.  Put

23     it on a wall.  Thank you.  I just wanted to give you that

24     chance.

25            MR. McBRIDE:  Thank you, sir.

1          THE COURT:  All right.  Now, did the Government --

2     has the Defense brought everything to the Court's attention

3     that you wish to?

4          MR. McBRIDE:  Yes, Your Honor.  Thank you.

5          THE COURT:  Does the Government have additional

6     items?

7          MR. MANGAN:  Just one item, Your Honor.  With

8     respect to the opening statements, I know the Court has

9     indicated your ruling with respect to the Defendant's

10    Rule 404(b) Motion.

11         The way we responded to those, we presented

12    alternative ways that that would be admissible.  So when we

13    present those, especially in opening, we want to just

14    clarify --  are there any limitation from the Court's

15    perspective as to whether or not those are perceived as

16    direct evidence versus other acts evidence or something like

17    that that we should be aware of?

18         THE COURT:  So-called other acts, the Court has

19    determined are intrinsic to the offense, and they also speak

20    to the motivation, intent, modus operandi and the like.  Did

21    I respond to your inquiry?

22         MR. MANGAN:  Yes, Your Honor, you did.

23         THE COURT:  Okay.  Is there more you want to run by

24    me today --

25         MR. MANGAN:  No, Your Honor.  Thank you.

1          THE COURT:  -- from the Government?  Okay.  Is

2     there anything else today from the Government --  Defense?

3          MR. McBRIDE:  No, Your Honor.

4          THE COURT:  Very well.  We're going to recess.  I'd

5     like you here by, whatever we said, 9:15 at the latest, so

6     we can start at 9:30.

7          I want you to rest well tonight -- although I know

8     you won't -- and I want to tell you that I'm enormously

9     impressed by the excellence of all of the attorneys.  We're

10    in recess.

11         COURTROOM DEPUTY:  All rise.  Court's now in

12    recess.

13    (Court recessed at 3:16 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER


        I, Julie Hohenstein, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.



s/Julie Hohenstein
                                    November 2, 2021
_____
**JULIE HOHENSTEIN, RPR, CRR, RMR**
FEDERAL OFFICIAL COURT REPORTER




        I certify that the foregoing is a true and correct copy of the transcript originally filed with the clerk of court on November 2, 2021, and incorporating redactions requested by Judge Timothy S. Black, in accordance with Judicial Conference policy.  Redacted characters appear as a black box in the transcript.


s/Julie Hohenstein
                                    November 5, 2021
_____
**Julie Hohenstein, RPR, CRR, RMR**