```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
 2                  WESTERN DIVISION
                     *   *   *
 3


 4   UNITED STATES OF AMERICA,     : Case No. 1:18-cr-0043
                                   :
 5          Plaintiff,             :
                                   :
 6          - v -                  : Jury Instructions
                                   :
 7   YANJUN XU, also known as XU   : Wednesday, November 3, 2021
     YANJUN, also known as QU HUI, : 9:30 a.m.
 8   also known as ZHANG HUI,      :
                                   : Cincinnati, Ohio
 9          Defendant.             :


10                        *   *   *


11          EXCERPT OF TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE TIMOTHY S. BLACK, DISTRICT JUDGE
12

     For the Plaintiff:        TIMOTHY S. MANGAN, ESQ.
13                             EMILY N. GLATFELTER, ESQ.
                               Assistant United States Attorneys
14                             221 East Fourth Street, Suite 400
                               Cincinnati, Ohio  45202
15                               and
                               MATTHEW J. McKENZIE, ESQ.
16                             United States Department of Justice
                               National Security Division
17                             950 Pennsylvania Avenue NW
                               Washington, D.C.  20530
18                               and
                               JACQUELINE K. PRIM
19                             Special Assistant, Paralegal
                               United States Department of Justice
20                             National Security Division
                               950 Pennsylvania Avenue NW
21                             Washington, D.C.  20530

22   For the Defendant:        RALPH W. KOHNEN, ESQ.
                               JEANNE MARIE CORS, ESQ.
23                             SANNA-RAE TAYLOR, ESQ.
                               Taft Stettinius & Hollister
24                             425 East Walnut Street, Suite 1800
                               Cincinnati, Ohio  45202
25                               and
```

```
 1                              ROBERT K. McBRIDE, ESQ.
                                AMANDA JOHNSON, ESQ.
 2                              Taft Stettinius & Hollister
                                50 East RiverCenter Boulevard
 3                              Suite 850
                                Covington, Kentucky  41011
 4                                 and
                                FLORIAN MIEDEL, ESQ.
 5                              Miedel & Mysliwiec, LLP
                                80 Broad Street, Suite 1900
 6                              New York, New York  10004

 7      Also Present:          Mae Harman, Interpreter
                                Robin Murphy, Interpreter
 8                              Yanjun Xu, Defendant

 9      Law Clerk:             Cristina V. Frankian, Esq.

10      Courtroom Deputy:      Rebecca R. Santoro

11      Court Reporter:        M. Sue Lopreato, RMR, CRR
                                Potter Stewart U.S. Courthouse
12                              Southern District of Ohio
                                100 East Fifth Street
13                              Cincinnati, Ohio  45202
                                513.564.7679
14
                                      -   -   -
15

16

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2          (In open court at 9:31 a.m.)

3                    *   *   *

4          THE COURT:  It's 9:26, 9:28, we're back in the

5     courtroom on the record in the criminal trial of the United

6     States versus Xu.  The jury is not yet present.

7          The government team appears present, the defense as well,

8     including the defendant and two interpreters.  We're on the

9     record outside the presence of the jury.

10         I want to enter an order relating to coconspirator

11    statements.  I conditionally admitted them.  Now that the

12    government has rested, the Court finds fully that the

13    coconspirator statements are admissible pursuant to

14    Rule 801(d)(2)(E).

15         That rule provides that the statements of a coconspirator

16    made during the course and in furtherance of a conspiracy are

17    not hearsay; however, a predicate for the admission of alleged

18    hearsay statements of a coconspirator is proof of the

19    existence of a conspiracy as determined by a trial court,

20    based upon a preponderance of the evidence, *United States v.*

21    *Barrett*, Sixth Circuit.

22         The district court may admit the challenge statements

23    subject to the condition that the government will later

24    demonstrate that the requirements of the rule have been met,

25    *United States v. Pressley*.  That's what I've done here.

1      The Court should rule on the admissibility of hearsay

2  evidence at the close of the government's case in chief.

3  That's what I'm doing here.

4      Here the Court finds that the government sufficiently met

5  its burden by a preponderance of the evidence, as supported by

6  corroborating evidence and testimony.  The defendant was a

7  member of that conspiracy and that the statements were made in

8  furtherance of the conspiracy.

9      Accordingly, the coconspirator statements are admissible

10  pursuant to Rule 801(d)(2)(E), and conspiracy should be

11  plural.

12      It is so ordered.

13      Last night, the Court's law clerk, by email, memorialized

14  my finding regarding the government's oral motion to limit

15  certain statements by the defense in closing.  I wish to

16  memorialize it as a Court order.

17      The Court has determined that it will not limit the

18  defense's closing arguments in advance; however, should

19  defense counsel make argument that could reasonably be

20  construed as implying that the jurors may consider either

21  ignorance of the law, i.e., that IP laws of other countries

22  are different, or entrapment, i.e., that the defendant was

23  tricked into violating the law, the Court will be responsive

24  to an objection from the government, and I will interrupt

25  closing to instruct the jury to disregard any such arguments.

1      It is so ordered.

2      The government has rested.  The exhibits have been

3   admitted into evidence as we went along.  Stipulations are no

4   longer relevant because we deal with them in the instructions

5   or in the course of the trial.

6      Is there anything further from the government?

7          MR. MANGAN:  No, Your Honor.

8          THE COURT:  Very well.  And as to the defense, I

9   would propose, when the jury comes in, to remind them that the

10  government has rested, and then ask where are we from the

11  defendant's perspective, unless defense wants me to address it

12  differently.

13     Is that amenable to the defense?

14         MR. KOHNEN:  Yes, it is.  Thank you, Judge.

15         THE COURT:  So you're going to rest in the presence

16  of the jury?

17         MR. KOHNEN:  That's ideal.  Thank you.  Yes, Judge.

18         THE COURT:  Very well.  At that point, I will advise

19  them that the evidence is closed, that we are proceeding to

20  jury instructions, which will be followed today by the

21  government's closing argument, the defendant's closing

22  argument, and the government's final rebuttal, if any, as

23  reserved.  I will then charge the jury, read the jury

24  instructions.

25     At the completion of reading the jury instructions, I

1   propose to release the alternates, and then take a 15-minute

2   break and come back for the government's closing argument that

3   I would like to complete in one fell swoop, and then

4   presumably break for lunch.

5       After lunch, we do the defendant's closing argument, the

6   government's rebuttal, if any, and then we would send the jury

7   to deliberate mid- -- early, midafternoon.

8       I would advise them that we will check with them as to

9   their preferences at the standard release time of 4:30.  I'm

10  likely to advise them to take as much time or days as they

11  need.

12      Does that proposed chronology provoke any comment or

13  questions, first from the government?

14          MR. MANGAN:  Your Honor, if I understood you right,

15  our understanding is that the alternates would stay through

16  closing arguments and only be released at the end, when they,

17  the jury of 12, goes to deliberate.

18          THE COURT:  I agree.  That was my mistake.  Thank you

19  for speaking up.

20          MR. MANGAN:  Otherwise, that's fine, Your Honor.

21      Do you wish the government to set a certain amount that

22  we wish to reserve for rebuttal?  We do want to do a rebuttal,

23  so I wanted to make that clear.

24          THE COURT:  Yes.  I think you should -- I'm not

25  limiting you on timeline, I just think you ought to indicate

1    that you reserve adequate time for rebuttal.  Is the

2    government comfortable with that?

3              MR. MANGAN:  Yes, Your Honor.  Thank you.

4              THE COURT:  Defense as well?

5              MR. KOHNEN:  Yes, Your Honor.  The schedule fits.

6    Thank you.

7              THE COURT:  And is the government moving to formally

8    admit evidence in the jury's presence, or do I just state that

9    the evidence is -- the exhibits have been admitted and will be

10   available to them and the evidence is closed?

11             MR. MANGAN:  I think the statement that you just said

12   would be fine, Your Honor.

13             THE COURT:  And which statement was that?

14             MR. MANGAN:  The statement that the evidence has been

15   admitted and will be available for the jury at the close.

16             THE COURT:  And is the government comfortable -- are

17   the defense comfortable with that?

18             MR. KOHNEN:  Yes, Your Honor.

19             THE COURT:  Well, I would propose to get the jury.

20   Is the government ready?

21             MR. MANGAN:  Yes, we are.

22             THE COURT:  And the defense?

23             MR. KOHNEN:  Yes, Judge.

24             THE COURT:  Very well.  Let's call for the jury.

25        (Jury in at 9:40 a.m.)

```
 1              THE COURT:  You my all be seated.  Thank you.  The
 2    15 members of the jury have rejoined us in the courtroom after
 3    a break over the weekend until today.  Thank you for your
 4    patience and understanding.  Thank you for your continuing
 5    work.
 6         As you recall, when we were last here Friday, the
 7    government rested, having presented its case.
 8         How does the defense intend to proceed?
 9              MR. KOHNEN:  Your Honor, the defense rests.
10              THE COURT:  Very well.  The evidence is closed.  The
11    exhibits are in evidence and will be provided to you in hard
12    copy in your jury deliberation room.
13         I'm going to instruct you in the law at this time, and we
14    will take a break after that.
15         We've prepared written copies of what I'm going to read
16    to you for each of you, in the event that you find that
17    helpful.
18         Could we distribute the jury instructions to the jurors,
19    Ms. Santoro?
20              COURTROOM DEPUTY:  Yes.
21              THE COURT:  After the jury instructions have been
22    read to you, we'll take a break, and you'll come back, you'll
23    hear closing argument.  The government goes first, followed by
24    the defense.  The government gets the last word.  Closing
25    argument is not evidence.  It's designed to argue their
```

1    position upon the evidence.

2        Do they have the verdict forms as well, Ms. Santoro?

3            COURTROOM DEPUTY:  Yes, Judge.

4            THE COURT:  Very well.  Everybody has their own

5    packet.  Now look at me for a minute.  I told you this once

6    before about reading stuff aloud.  Last time it occurred for

7    me was when my mother was trying to get me to go to sleep.

8        I need you to bear with me, and listen and read carefully

9    the jury instructions.  You'll have a copy going back up with

10   you to the jury room.  But forgive me, I'm going to read it

11   all.  I'm going to start on page 1.

12       Members of the jury, now it is time for me to instruct

13   you about the law that you must follow in deciding this case.

14   I will start by explaining your duties and the general rules

15   that apply in every criminal case.

16       Then I will explain the elements, or parts of the crimes

17   that the defendant is accused of committing.  Then I will

18   explain some rules that you must use in evaluating particular

19   testimony and evidence.  Last, I will explain the rules that

20   you must follow during your deliberations in the jury room and

21   the possible verdicts that you may return.

22       Please listen carefully to everything I say.  As to

23   jurors duties, you have two main duties as jurors.  First, you

24   must decide what the facts are from the evidence, which you

25   saw and heard here in court.  Deciding what the facts are is

1    your job, not mine, and nothing that I have said or done

2    during this trial was meant to influence your decision about

3    the facts in any way.

4        Second, your duty is to take the law that I give you,

5    apply it to the facts, and decide if the government has proved

6    or not proved the defendant guilty beyond a reasonable doubt.

7        It's my job to instruct you about the law, and you're

8    bound by the oath that you took at the beginning of the trial

9    to follow the instructions that I give you, even if you

10   personally disagree with them.

11       This includes the instructions that I gave you before and

12   during the trial, and these instructions.  All the

13   instructions are important.  You should consider them together

14   as a whole.

15       The lawyers may talk to you about the law during their

16   closing arguments, but if what they say is different from what

17   I say, you must follow what I say.  What I say about the law

18   controls.

19       Perform these duties fairly.  Do not let any bias,

20   sympathy, or prejudice that you may feel toward one side or

21   the other influence your decision in any way.

22       As to the presumption of innocence, the burden of proof

23   and reasonable doubt.  As you know, the defendant has pleaded

24   not guilty to the crimes charged in the document called an

25   indictment.  The indictment is not evidence, any evidence at

1    all, of guilt.  It's just the formal way that the government

2    tells the defendant what crimes he is accused of committing,

3    but does not even raise any suspicion of guilt.

4        Instead, the defendant starts the trial with a clean

5    slate, with no evidence at all against him, and the law

6    presumes that he is innocent.  This presumption of innocence

7    stays with him unless the government presents evidence here in

8    court that overcomes the presumption and convinces you beyond

9    a reasonable doubt that he is guilty.

10       This means that the defendant has no obligation to

11   present any evidence at all, or to prove to you in any way

12   that he is innocent.  It is up to the government to prove that

13   he is guilty, and this burden stays on the government from

14   start to finish.  You must find the defendant not guilty

15   unless the government convinces you beyond a reasonable doubt

16   that he is guilty.

17       The government must prove every element of the crimes

18   charged beyond a reasonable doubt.  Proof beyond a reasonable

19   doubt does not mean proof beyond all possible doubt.  Possible

20   doubts or doubts based purely on speculation are not

21   reasonable doubts.  A reasonable doubt is a doubt based on

22   reason and common sense.  It may arise from the evidence, the

23   lack of evidence, or the nature of the evidence.

24       Proof beyond a reasonable doubt means proof which is so

25   convincing that you would not hesitate to rely and act on it

1    in making the most important decisions in your own lives.  If

2    you're convinced that the government has proved the defendant

3    guilty beyond a reasonable doubt, say so by returning a guilty

4    verdict.  If you're not convinced, say so by returning a not

5    guilty verdict.

6        As for improper considerations.  As I will explain more

7    fully in a moment, your verdict must be based solely upon the

8    evidence developed at trial or the lack of evidence.

9        In reaching your decision as to whether or not the

10   government met its burden of proof, it would be improper for

11   you to consider any personal feelings that you may have about

12   the race or national origin of the defendant.

13       It would be equally improper for you to allow any

14   personal feelings you might have about the nature of the

15   crimes charged to interfere with your decisionmaking process.

16       To repeat, your verdict must be based exclusively upon

17   the evidence or the lack of evidence in the case.  And you

18   must always remember that the defendant is presumed innocent,

19   and the government bears the burden of proving guilt beyond a

20   reasonable doubt.

21       As to evidence defined.  You must make your decision

22   based solely on the evidence that you saw and heard here in

23   court.  Do not let rumors, suspicions, or anything else that

24   you may have seen or heard outside of court influence your

25   decision in any way.

1          The evidence in this case includes only what the

2     witnesses said while they were testifying under oath, the

3     exhibits that I allowed into evidence, and the stipulations

4     the lawyers agreed to.

5          Nothing else is evidence.  The lawyers' statements and

6     arguments are not evidence.  The questions the lawyers asked

7     are not evidence.  The lawyers' objections are not evidence.

8     My legal rulings are not evidence.  And any comments I may

9     have made or questions I may have asked are not evidence.

10         During the trial, I did not let you hear the answers to

11    some of the questions that the lawyers asked.  You must

12    completely ignore those questions.  Do not even think about

13    them.  Do not speculate what a witness might have said.  These

14    things are not evidence.  You're bound by your oath not to let

15    them influence your decision in any way.  Make your decision

16    based solely on the evidence, as I have defined it here, and

17    nothing else.

18         As to consideration of the evidence.  Once again, you're

19    to consider all the evidence that you saw and heard in this

20    case.  You should use your common sense in weighing that

21    evidence.  Consider the evidence in light of your every day

22    experiences with people and events, and give the evidence

23    whatever weight you believe it deserves.  If your experience

24    tells you that certain evidence reasonably leads to a

25    conclusion, you're free to reach that conclusion.

1    As to direct and circumstantial evidence.  I'm going to

2    remind you of the difference between them.  Direct evidence is

3    simply evidence like the testimony of an eyewitness which, if

4    you believe it, directly proves a fact.

5    If a witness testified that he saw it raining outside,

6    and you believed him, that would be direct evidence that it

7    was raining.

8    Circumstantial evidence is simply a chain of

9    circumstances that indirectly proves a fact.  If someone

10   walked into the courtroom wearing a raincoat covered with

11   drops of water and carrying a wet umbrella, that would be

12   circumstantial evidence from which you could conclude that it

13   was raining.

14   It's your job to decide how much weight to give the

15   direct and circumstantial evidence.  The law makes no

16   distinction between the weight that you should give to either

17   one, nor does the law say that one is any better evidence than

18   the other.  You should consider all the evidence, both direct

19   and circumstantial, and give it whatever weight you believe it

20   deserves.

21   As to credibility of witnesses.  Another part of your job

22   as jurors is to decide how credible or believable each witness

23   was.  This is your job, not mine or anyone else's.  It's up to

24   you to decide if a witness's testimony was believable, and how

25   much weight you think it deserves.  You're free to believe

1    everything that a witness said, or only part of it, or none of

2    it at all.  But you should act reasonably and carefully in

3    making these decisions.

4        Let me suggest some ways for you to consider in

5    evaluating each witness's testimony.  Ask yourself if the

6    witness was able to clearly see or hear the events.  Sometimes

7    even an honest witness may not have been able to see or hear

8    what was happening and may make a mistake.

9        Ask yourself how good the witness's memory seemed to be.

10   Did the witness seem able to accurately remember what

11   happened.

12       Ask yourself if there was anything else that may have

13   interfered with the witness's ability to perceive or remember

14   the events.

15       Ask yourself how the witness acted while testifying.  Did

16   the witness appear honest, or did the witness appear to be

17   lying.

18       Ask yourself if the witness had any relationship to the

19   government or the defendant, or anything to gain or lose from

20   the case that might influence the witness's testimony.

21       Ask yourself if the witness had any bias or prejudice or

22   reason for testifying that might cause the witness to lie or

23   to slant the testimony in favor of one side or of the other.

24       Ask yourself if the witness testified inconsistently

25   while on the witness stand, or if the witness said or did

1     something, or failed to say or do something, at any other time

2     that is inconsistent with what the witness said while

3     testifying.

4          If you believe that the witness was inconsistent, ask

5     yourself if this makes the witness's testimony less

6     believable.  Sometimes it may; other times it may not.

7          Consider whether the inconsistency was about something

8     important or about some unimportant detail.  Ask yourself if

9     it seemed like an innocent mistake, or if it seemed

10    deliberate.

11         And ask yourself how believable the witness's testimony

12    was in light of all the other evidence.  Was the witness's

13    testimony supported or contradicted by evidence that you find

14    believable.

15         If you believe that a witness's testimony was

16    contradicted by other evidence, remember that people sometimes

17    forget things, and even two honest people who witness the same

18    event may not describe it in exactly the same way.

19         These are only some of the things that you may consider

20    in deciding how believable each witness was.  You may also

21    consider other things that you think shed some light on the

22    witness's believability.

23         Use your common sense and your everyday experience in

24    dealing with other people, and then decide what testimony you

25    believe and how much weight you think it deserves.

1       As to number of witnesses.  Sometimes jurors wonder if

2   the number of witnesses who testified makes any difference.

3   Do not make any decisions based on the number of witnesses who

4   testified.

5       What is important is how believable the witnesses were,

6   and how much weight you think their testimony deserves.

7   Concentrate on that, not the numbers, and keep in mind that

8   the defendant is not obligated to present any evidence at all.

9       The government have agreed or stipulated to certain

10  facts, therefore, when I instruct you that a fact has been

11  stipulated to or agreed upon, you must accept the fact as

12  proved.

13      As to the lawyers' objections.  The lawyers for both

14  sides objected to some of the things that were said or done

15  during the trial.  Do not hold that against either side.  The

16  lawyers have a duty to object whenever they think that

17  something's not permitted by the rules of evidence.  Those

18  rules are designed to make sure that both sides receive a fair

19  trial.

20      And do not interpret my rulings on their objections as

21  any indication of how I think the case should be decided.  My

22  rulings were based on the rules of evidence, not on how I feel

23  about the case.  Remember that your decision must be based

24  only on the evidence that you saw and heard here in court.

25      Defining the crimes.  I've now concluded the part of my

1    instructions in explaining your rules and the general rules

2    that apply in every criminal case.

3        In a moment, I will explain the elements of the crimes

4    that the defendant is accused of committing.  But before I do

5    that, I want to emphasize that the defendant is only on trial

6    for the particular crimes charged in the indictment.  Your job

7    is limited to deciding whether the government has proved the

8    crimes charged in the indictment.

9        Also, keep in mind that whether anyone else might have

10   also been involved or should be prosecuted for any of the

11   crimes is not a proper matter for you to consider.  The

12   possible involvement of others is no defense to a criminal

13   charge.  Your job is to decide if the government has proved

14   this defendant, Yanjun Xu, guilty or not.

15       Now as to separate considerations when multiple charges.

16   The defendant has been charged with more than one offense.

17   The number of charges is no evidence of guilt, and this should

18   not influence your decision in any way.  It's your duty to

19   separately consider the evidence that relates to each charge,

20   and to return a separate verdict for each one

21       For each charge, you must decide whether the government

22   has presented proof beyond a reasonable doubt that the

23   defendant is guilty of that particular charge.

24       Your decision on one charge, whether it's guilty or not

25   guilty, should not influence your decision on any of the other

1    charges.

2         All right.  Here's an overview.

3         Counts 1 and 2 of the indictment charge the defendant

4    with two distinct counts of conspiracy; specifically,

5    conspiracy to commit economic espionage, Count 1; and

6    conspiracy to commit trade secret theft, Count 2.

7         Counts 3 and 4 of the indictment charge the defendant

8    with two distinct counts of attempt; specifically, attempt to

9    commit economic espionage, Count 3; and attempt to commit

10   trade secret theft, Count 4.

11        The defendant is not charged with actually committing the

12   crimes of economic espionage and/or trade secret theft, but

13   it's also a crime to conspire or attempt to commit economic

14   espionage and trade secret theft.

15        However, before I instruct you on the elements of

16   conspiracy and attempt, you must understand the underlying

17   crimes of economic espionage and trade secret theft so that

18   you can go on to consider whether the government has proved

19   beyond a reasonable doubt that the defendant committed the

20   charged crimes of conspiracy or attempt.

21        So I'll start by explaining the crimes of economic

22   espionage and trade secret theft.  Again, these are not the

23   crimes that the defendant is charged with committing.  You

24   merely need to know what they are so that you can fully

25   deliberate as to the actual charged offenses, which I will

1    explain momentarily.

2        As to economic espionage and trade theft secret.  First,

3    economic espionage.  A person commits the crime of economic

4    espionage if he intending or knowing that the offense will

5    benefit any foreign government, foreign instrumentality or

6    foreign agent, knowingly does any of the following:  Steals,

7    or without authorization appropriates, takes, carries away, or

8    conceals, or by fraud, artifice, or deception obtains a trade

9    secret; or without authorization copies, duplicates, sketches,

10   draws, photographs, downloads, uploads, alters, destroys,

11   photocopies, replicates, transmits, delivers, sends, mails,

12   communicates, or conveys a trade secret; or receives, buys, or

13   possesses a trade secret, knowing the same to have been stolen

14   or appropriated, obtained, or converted without authorization.

15       As to trade secret theft.  A person commits the crime of

16   trade secret theft if he, with intent to convert a trade

17   secret, it is related to a product or service used or intended

18   for use in interstate or foreign commerce to the economic

19   benefit of anyone other than the owner thereof, and intending

20   or knowing that the offense will injure any owner of that

21   trade secret knowingly does any of the following:

22       A, steals, or without authorization appropriates, takes,

23   carries away, or conceals, or by fraud, artifice, or deception

24   obtains such information.

25       Or B, without authorization copies, duplicates, sketches,

1    draws, photographs, downloads, uploads, alters, destroys,

2    photocopies, replicates, transmits, delivers, sends, mails,

3    communicates, or conveys such information.

4        Or C, receives, buys, or possesses such information,

5    knowing the same to have been stolen or appropriated,

6    obtained, or converted without authorization.

7        Okay.  Charged offenses.  Now that I have explained the

8    crimes of economic espionage and trade secret theft, I can

9    tell you about the actual charges the defendant faces.

10       Again, the defendant is not charged with actually

11   committing the crimes of economic espionage and trade secret

12   theft, but it is also a crime to conspire or attempt to commit

13   economic espionage and/or trade secret theft.  That is what

14   the indictment charges the defendant with here, and that is

15   what the government must prove, crimes of conspiracy and

16   attempt.

17       Specifically, the indictment charges the defendant with

18   four counts:

19       One, conspiracy to commit economic espionage.

20       Two, conspiracy to commit trade secret theft.

21       Three, attempt to commit economic espionage.

22       And, four, attempt to commit trade secret theft.

23       I will now give you the elements of each of these four

24   charged counts.  You must consider each of the four charged

25   counts and determine whether or not the government has met its

1    burden to prove every element of that count beyond a

2    reasonable doubt.

3        First, I will give you a brief overview and some rules

4    regarding the crime of conspiracy, and I will read to you the

5    allegations and the elements for the two conspiracy counts,

6    Counts 1 and 2.  Then I'll give you further instructions that

7    are relevant to Counts 1 and 2.

8        After that, I'll give you a brief overview regarding the

9    crime of attempt, and I will read to you the allegations and

10   the elements of the two attempt counts, Counts 3 and 4.  I

11   will then give you further instructions that are relevant to

12   Counts 3 and 4.

13       Finally, I will provide you with some general

14   instructions and explain some relevant terms that are

15   applicable to all four counts.

16       I've chosen to state these at the end so as to avoid

17   repeating them for you over and over but, bear in mind, you'll

18   need to refer to these instructions as well as you deliberate.

19       If you decide that the government has met its burden to

20   prove each of the elements of a particular count beyond a

21   reasonable doubt, then you must render a verdict of guilty as

22   to that particular count.

23       If you decide that the government has not proved each of

24   the elements of a particular count beyond a reasonable doubt,

25   then you must render a verdict of not guilty as to that

1    particular count.

2        As to conspiracy generally.  Conspiracy is a kind of

3    criminal partnership.  It's a crime for two or more persons to

4    conspire or agree to commit a criminal act and to perform an

5    overt act to advance that conspiracy, even if they never

6    actually achieve their ultimate goal.

7        Now, some of the people who may have been involved in

8    these events are not on trial.  This does not matter.  There's

9    no requirement that all members of a conspiracy be charged and

10   prosecuted or tried together in one proceeding.

11       Also, there's no requirement that the names of the other

12   conspirators be known.  An indictment can charge a defendant

13   with a conspiracy involving people whose names are not known,

14   as long as the government can prove that the defendant

15   conspired with one or more of them.  Whether they are named or

16   not named does not matter.

17       The defendant is charged with two counts of conspiracy in

18   this case.  One conspiracy count is charged in Count 1, the

19   other is charged in Count 2.  The charges are distinct

20   offenses and you must consider each of them carefully.

21       As to Count 1, conspiracy to commit economic espionage.

22   Count 1 of the indictment charges the defendant, Yanjun Xu,

23   with conspiracy to commit economic espionage, in violation of

24   federal law.

25       As to the allegations relating to the object of the

1     conspiracy, the indictment alleges that from in or about 2013,

2     and continuing until at least April 1, 2018, in the Southern

3     District of Ohio and elsewhere, the defendant, Yanjun Xu, aka

4     Xu Yanjun, aka Qu Hui, aka Zhang Hui, and coconspirator Chen

5     Feng, along with others known and unknown, did knowingly

6     combine, conspire, confederate or agree to, (a), steal, or

7     without authorization appropriate, take, carry away, or

8     conceal, or by fraud, artifice, or deception, obtain a trade

9     secret; or without authorization copy, duplicate, download,

10     upload, photocopy, replicate, transmit, deliver, send, mail,

11     communicate, or convey a trade secret; or, (c), receive, buy,

12     or possess a trade secret, knowing the same to have been

13     stolen or appropriated, obtained, or converted without

14     authorization, and did so intending and knowing that the

15     offense will benefit the Chinese government or any agent,

16     agency, ministry, bureau, or institution within its control,

17     namely Yanjun Xu, other MSS officers, NUAA, and the People's

18     Republic of China.

19        As to the elements, conspiracy to commit economic

20     espionage.  For you to find the defendant guilty of the

21     offense of conspiracy to commit economic espionage, you must

22     find that the government has proved each and every one of the

23     following elements beyond a reasonable doubt:

24        First, that from in or about 2013, and continuing at

25     least until April 1, 2018, two or more persons conspired, or

1    agreed, to commit the crime of economic espionage.  See

2    page 16 in the allegations above.

3         Second, that the defendant knowingly and voluntarily

4    joined the conspiracy.

5         And, third, that a member of the conspiracy performed at

6    least one overt act for the purpose of advancing or helping

7    the conspiracy.

8         If you're convinced that the government has proved all of

9    these elements beyond a reasonable doubt, say so by returning

10   a guilty verdict on Count 1.

11        If you have a reasonable doubt about any one of these

12   elements, then you must find the defendant not guilty of

13   Count 1.

14        As to Count 2, conspiracy to commit trade secret theft.

15   Count 2 charges the defendant, Yanjun Xu, with conspiracy to

16   commit trade secret theft, in violation of federal law.

17        As to the allegations relating to the object of the

18   conspiracy, the indictment states that from in or about 2013,

19   and continuing to at least April 1, 2018, in the Southern

20   District of Ohio and elsewhere, the defendant, Yanjun Xu, the

21   defendant, also known as Xu Yanjun, Qu Hui, Zhang Hui, and

22   coconspirator Chen Feng, along with others known and unknown,

23   did knowingly combine, conspire, confederate, or agree to,

24   (a), steal, or without authorization appropriate, take, carry

25   away, or conceal, or by fraud, artifice, or deception obtain a

1     trade secret; or (b), without authorization copy, duplicate,

2     download, upload, photocopy, replicate, transmit, deliver,

3     send, mail, communicate, or convey a trade secret; or (c),

4     receive, buy, or possess a trade secret, knowing the same to

5     have been stolen or appropriated, obtained, or converted

6     without authorization, and did so with intent to convert a

7     trade secret to the economic benefit of anyone other than the

8     owner of the trade secret, and intending and knowing that the

9     offense will injure any owner of that trade secret.

10         As to the elements.  For you to find the defendant guilty

11    of the offense of conspiracy to commit trade secret of theft,

12    you must find that the government has proved each and every

13    one of the following elements beyond a reasonable doubt.

14         First, that from in or about 2013, and continuing until

15    at least April 1, 2018, two or more persons conspired, or

16    agreed, to commit the offense of trade secret theft.  See

17    page 16 in the allegations above.

18         Second, that the defendant knowingly and voluntarily

19    joined the conspiracy.

20         And, third, that a member of the conspiracy performed at

21    least one overt act with a purpose of advancing or helping the

22    conspiracy.

23         If you are convinced that the government has proved all

24    of these elements beyond a reasonable doubt, say so by

25    returning a guilty verdict on Count 2.

1    If you have a reasonable doubt about any one of these

2    elements, then you must find the defendant not guilty of

3    Count 2.

4    Counts 1 and 2, general instructions and relative terms.

5    Now I will provide you with some instructions on the law and

6    explain some of the terms relevant to Counts 1 and 2.

7    One, proof regarding trade secrets.  For purposes of

8    Counts 1 and 2, it is not necessary for the government to

9    prove that any trade secrets were actually, one, stolen,

10   without authorization appropriated, taken, carried away, or

11   concealed, or obtained by fraud, artifice, or deception.

12   Two, copied, duplicated, or sketched, drawn, altered,

13   photocopied, replicated, transmitted, delivered, sent,

14   communicated, or conveyed without authorization.

15   Or three, received, bought, or possessed without

16   authorization.

17   This is because the crime of conspiracy is complete upon

18   two or more persons entering into an agreement to violate the

19   law, and any of the -- and any member of the conspiracy

20   performing an overt act to advance the conspiracy.

21   For purposes of Counts 1 and 2, the government must only

22   prove that the conspiracy intended to target information that

23   the conspirators believed to be trade secrets.  Whether or not

24   the targeted information actually was a trade secret is not

25   relevant.

1          Two, as to agreement, with regard to the first element, a

2     criminal agreement.  The government must prove that two or

3     more persons conspired or agreed to cooperate with each other

4     to commit the crime of economic espionage.

5          This does not require proof of any formal agreement,

6     written or spoken, nor does this require proof that everyone

7     involved agreed on all the details, but proof that people

8     simply met together from time to time and talked about common

9     interests or engaged in similar conduct is not enough to

10    establish a criminal agreement.

11         These are things that you may consider in deciding

12    whether the government has proved an agreement, but without

13    more, they're not enough.

14         What the government must prove is that there was a mutual

15    understanding, either spoken or unspoken, between two or more

16    people, to cooperate with each other to commit the crime of

17    economic espionage.  This is essential.

18         What the government must prove is that there was a mutual

19    understanding.  I believe I read that to you.

20         D, an agreement must be made -- can be proved indirectly,

21    by facts and circumstances which lead to a conclusion that an

22    agreement existed.  But it's up to the government to convince

23    you that such facts and circumstances existed in this

24    particular case.

25         As to three, the defendant's connection to the

1  conspiracy.  If you are convinced that there was a criminal

2  agreement, then you must decide whether the government has

3  proved that the defendant knowingly and voluntarily joined

4  that agreement.

5      To convict a defendant, the government must prove that

6  the defendant knew the conspiracy's main purpose, and that he

7  voluntarily joined it intending to help advance or achieve its

8  goals.

9      This does not require proof that a defendant knew

10 everything about the conspiracy, or everyone else involved, or

11 that he was a member of it from the very beginning.  Nor does

12 it require proof that a defendant played a major role in the

13 conspiracy, or that his connection to it was substantial.  A

14 slight role or connection may be enough.

15     But proof that a defendant simply knew about a

16 conspiracy, or was present at times, or associated with

17 members of the group, is not enough, even if he approved of

18 what was happening or did not object to it.

19     Similarly, just because a defendant may have done

20 something that happened to help a conspiracy does not

21 necessarily make him a conspirator.  These are things that you

22 may consider in deciding whether the government has proved

23 that a defendant joined a conspiracy, but without more, they

24 are not enough.

25     A defendant's knowledge can be proved indirectly by facts

1    and circumstances which lead to a conclusion that he knew the

2    conspiracy's main purpose, but it's up to the government to

3    convince you that such facts and circumstances existed in this

4    case.

5        As to overt acts.  The third element that the government

6    must prove is that a member of the conspiracy performed an

7    overt act for the purpose of advancing or helping the

8    conspiracy.

9        The government alleges a number of overt acts.  However,

10   the government does not have to prove that all these acts were

11   committed.  The government does not have to prove that any of

12   these acts were themselves illegal, but the government must

13   prove beyond a reasonable doubt that at least one of these

14   acts was committed by a member of the conspiracy, and that it

15   was committed for the purpose of advancing or helping the

16   conspiracy.  This is essential.

17       I will now provide you a list of the overt acts that the

18   government has alleged.  Bear in mind that these are merely

19   allegations for your consideration and relate to the third

20   elements of Counts 1 and 2.

21       In furtherance of the conspiracy and to achieve the

22   objects and purposes thereof, Defendant Xu and others

23   committed and caused to be committed the following overt acts,

24   among others, in the Southern District of Ohio and elsewhere:

25       A, on or about December 26, 2013, the defendant discussed

1    an upcoming expert exchange with an MSS colleague.  These are

2    allegations.  Within the messages, defendant stated that "the

3    customer doesn't know our identities.  I approached him with

4    the identity of Qu Hui, the deputy secretary-general of

5    Science and Technology Association."

6        The defendant's colleague acknowledged it and, quote, got

7    it.  I'll make sure everybody here knows you're from the

8    Nanjing Science and Technology Association, end quote.

9        B, on or about April 22, 2014, defendant sent a message

10   to an MSS colleague regarding another upcoming, quote,

11   exchange, unquote, with an expert.  The defendant reminded the

12   colleague of two things.  Quote, one, the expert does not know

13   my true identity.  I approached him with the same name under

14   Jiangsu Science and Technology Association; two, do not

15   mention about the materials, end quote.

16       C, beginning in at least by March 2017, unindicted

17   coconspirators Chen Feng began corresponding by email with

18   David Zheng, Z-h-e-n-g, employed by GE Aviation as an engineer

19   since 2012.

20       Unindicted coconspirator Chen Feng solicited Zheng to

21   come to NUAA in China for a, quote, exchange, end quote, based

22   on Zheng's engineering experience at GE Aviation.  NUAA,

23   through unindicted coconspirator Chen Feng, offered to pay for

24   Zheng's travel expenses.

25       D, on May 10, 2017, unindicted coconspirator Chen Feng

1    emailed Zheng that the, quote, Institute of Energy and Power,

2    end quote, had proposed that Zheng give a report on

3    GE Aviation's signature material design and manufacturing

4    technology.

5        Unindicted coconspirator Chen Feng wanted Zheng to focus

6    on highly technical topics, including the latest developments

7    in the application of GE Aviation's signature material used in

8    aero engines, as well as engine structure design analysis

9    technology and manufacturing technology development.

10       E, on May 15, 2017, in preparation for the trip to China

11   to present at NUAA, a message was sent to Zheng from one of

12   defendant's email accounts, but the email was signed using the

13   name of unindicted coconspirator, Chen Feng.

14       F, while Zheng was in China, unindicted coconspirator

15   Chen Feng introduced Zheng to the defendant.  During this

16   meeting, the defendant introduced himself using his alias, Qu

17   Hui, and claimed to be from JAST in China.

18       Defendant gave a business card to Zheng that contained

19   his alias, Qu Hui, and contact information associated with

20   JAST, a cover affiliation for defendant.

21       G, on June 2, 2017, at the invitation and direction of

22   defendant and unindicted coconspirator Chen Feng, Zheng gave a

23   presentation at NUAA in China, which included details

24   regarding engines that were designed and produced by

25   GE Aviation.

1    H, defendant had meals with Zheng both before and after

2    the NUAA presentation.

3    I, defendant and others caused Zheng to be paid $3,500 in

4    U.S. currency for the presentation and as reimbursement for

5    expenses incurred during Zheng's visit to Nanjing; e.g. meals

6    and hotel expenses.

7    J, after the trip to China, defendant continued to

8    communicate with Zheng.  In fact, defendant invited Zheng to

9    return to NUAA the following year.

10    K, on November 21, 2017, unindicted coconspirator Chen

11    Feng expressed an interest in having Zheng travel to China to

12    exchange ideas and instruct them again at NUAA.

13    Unindicted coconspirator Chen Feng informed Zheng that he

14    had spoken with Qu Hui, defendant, from JAST, and that Qu Hui

15    would be able to help with travel expenses and handle the

16    details of the, quote, exchange, end quote.

17    L, on or about January 8, 2018, defendant wrote to Zheng,

18    quote, I will touch base with the scientific research

19    department here to see what technology is desired.  I will let

20    you know what to prepare.  For your end, please prepare the

21    plane ticket and date as soon as possible, end quote.

22    M, on or about January 23, 2018, defendant wrote to

23    Zheng, quote, okay.  Try your best to collect and we can talk

24    by then.  Domestically, there is more focused on the system

25    code, end quote.  Defendant later elaborated that the

1    information he wanted pertained to, quote, system

2    specification, design process, end quote, which is the

3    application of research data to engine production.

4    Defendant provided an email address for Zheng to use to

5    send the requested information.  When Zheng informed defendant

6    that the email may be blocked if Zheng used the company

7    computer, defendant responded, quote, it might be

8    inappropriate to send directly from the company, right? end

9    quote.

10    N, on or about February 3, 2018, defendant caused Zheng

11    to send an excerpt of presentation from GE Aviation pertaining

12    to, quote, containment analysis, end quote, for a fan blade

13    encasement.

14    The document contained a label warning that the

15    presentation contained proprietary information from

16    GE Aviation.

17    O, on February 4, 2018, defendant wrote to Zheng and

18    acknowledged receiving the document from GE Aviation

19    pertaining to the, quote, containment analysis, end quote.

20    Defendant stated that he wanted Zheng to spend time talking

21    with the experts in China for a, quote, more precise

22    connection, end quote, and proposed a meeting date.

23    P, in the same message, defendant sent Zheng a list of

24    technical topics pertaining to composite materials in the

25    manufacture of fan blades and fan blade encasements that the

1    defendant's organization was being interested in, after being

2    sent information that contained GE Aviation's proprietary

3    warning label.

4         Specifically, defendant wrote the, quote, attached file

5    is some domestic requirements that I know of.  Can you take a

6    look and let me know if you're familiar with these, end quote.

7         The attached list stated the following:  Regarding the

8    current development situation and future development situation

9    of foreign countries' structural materials for fan rotor

10   blades made from composite materials.  A question followed.

11        Regarding the design criteria for the foreign countries'

12   composite material rotor fan blade, stator fan blade, and fan

13   casing.  A list of questions followed.

14        Q, when Zheng directly advised defendant that some of the

15   posed questions involved GE Aviation's commercial secrets,

16   defendant replied they would discuss it when they met in

17   person.

18        R, in February 2018, Xu also began discussing with Zheng

19   the possibility of meeting in Europe during one of Zheng's

20   business trips.

21        S, on or about February 5, 2018, Xu asked Zheng to create

22   and sort a directory of the files on Zheng 's computer

23   relating to the files of GE Aviation.

24        Defendant asked Zheng to send a copy of the file

25   directory to Zheng's company-issued computer.  Defendant sent

1    specific directions for how Zheng should sort and save such a

2    directory.

3        T, on or about February 14, 2018, defendant caused Zheng

4    to send a computer file directly from Zheng's company-issued

5    computer to defendant.

6        U, on February 28, 2018, defendant requested to speak

7    with Zheng by telephone.  During the phone call, defendant

8    referred to the file directory that Zheng sent at defendant's

9    request.  Defendant told Zheng that, quote, they, end quote,

10   had looked at it and it is, quote, pretty good stuff, end

11   quote.

12       Defendant asked if Zheng would be able to bring it with

13   Zheng when Zheng traveled to Europe for their meeting.  Xu

14   further stated, quote, the computer you will bring along is

15   the company computer, right? end quote.

16       Defendant also asked if the material Zheng intended to

17   bring could be exported out of the computer.  When Zheng

18   informed defendant that it could be exported on to a portable

19   hard drive, defendant replied, quote, good, good, good, end

20   quote.

21       Defendant asked, quote, so, if possible, we will look

22   over the stuff.  Can we do that? end quote.  After Zheng

23   agreed to defendant's request, the defendant stated, quote, do

24   you understand?  Carry the stuff along, end quote.

25       V, later in the conversation, on February 28, 2018,

1    defendant told Zheng that what Zheng had sent so far was,

2    quote, good enough, end quote.

3        The defendant continued, quote, if we need something new

4    later, we can talk about that in person when we meet.  What do

5    you think?  All right.  We really don't need to rush to do

6    everything in one time because if we're going to do business

7    together, this won't be the last time, right? end quote.

8        W, on March 4, 2018, Zheng informed defendant that some

9    of the documents identified on the company directory were

10   generated from a specific software and, as a result, some

11   documents could only be viewed and backed up when connected to

12   GE Aviation's network.

13       In response, defendant asked, quote, does that mean I

14   will not be able to view these documents after I bring them

15   back? end quote.

16       Zheng replied that Zheng did not know because Zheng had

17   never tried to open the files while in China.

18       X, on March 5, 2018, defendant sent Zheng a message

19   asking, quote, regarding the document directory you sent last

20   time, is it possible to dump it to a portable hard drive or

21   USB drive from work computer in advance? end quote.

22       Y, on March 10, 2018, defendant sent Zheng a message

23   stating, quote, since there's still time, download more data

24   and bring them back.  Anything design related would work, end

25   quote.

1      On or about April 1, 2018, defendant traveled to the

2  Kingdom of Belgium to meet Zheng for the purpose of discussing

3  and receiving the sensitive information he had requested.

4      Those are the overt acts alleged by the government.  The

5  fact that I read them out loud doesn't change the fact that

6  they are allegations.

7      Now, as to attempt, generally.  Attempting to commit

8  either economic espionage or a trade secret theft is a crime

9  under the law.

10     The defendant is charged with two counts of attempt in

11  this case.  One attempt count is charged in Count 3, attempt

12  to commit economic espionage, and the other is charged in

13  Count 4, attempt to commit trade secret theft.

14     The charges are distinct offenses and you must consider

15  each of them carefully.

16     Count 3, attempt to commit economic espionage.  As to the

17  allegation, the indictment alleges that from in or about

18  May 2017, and continuing to at least April 1, 2018, in the

19  Southern District of Ohio and elsewhere, the defendant, Yanjun

20  Xu, a/k/a Xu Yanjun, a/k/a Qu Hui, a/k/a Zhang Hui,

21     A, did knowingly attempt to steal or without

22  authorization appropriate, take, carry away, or conceal, or by

23  fraud, artifice, or deception, obtain trade secret information

24  owned by GE Aviation; or

25     B, did so intending and knowing that the offense will

1   benefit the Chinese government and/or any agent, agency,

2   ministry, bureau, or institution within its control, namely

3   Yanjun Xu, other MSS officers, NUAA, and the People's Republic

4   of China.

5        As to the elements.  For you to find the defendant guilty

6   of the attempting to commit economic espionage, you must find

7   that the government has proved each and every one of the

8   following elements beyond a reasonable doubt.

9        First, that from in or about May 2017, and continuing to

10  at least April 1, 2018, the defendant, Yanjun Xu, intended to

11  commit the crime of economic espionage.  See page 16 and the

12  allegations above.

13       And, second, that the defendant performed some overt act

14  that was a substantial step towards committing the crime of

15  economic espionage.  See page 16 and the allegations above.

16       If you are convinced that the government has proved all

17  of these elements beyond a reasonable doubt, say so by

18  returning a guilty verdict on Count 3.

19       If you have a reasonable doubt about any one of these

20  elements, then you must find the defendant not guilty of

21  Count 3.

22       As to Count 4, attempt to commit trade secret theft.  As

23  to the allegations, the indictment says, alleges that from in

24  or about May 2017, and continuing to at least April 1, 2018,

25  in the Southern District of Ohio and elsewhere, the defendant

1    did knowingly attempt to steal, or without authorization

2    appropriate, take, carry away, or conceal, or by fraud,

3    artifice, or deception, obtain trade secret information owned

4    by GE Aviation, which was related to or included in a product

5    or service used in or intended for use in interstate and

6    foreign commerce; and

7        B, did so with the intent to convert a trade secret to

8    the economic benefit of someone other than GE Aviation, and

9    intending and knowing that the offense would injure

10   GE Aviation.

11       As to the elements of Count 4.  For you to find the

12   defendant guilty of the offense of attempting to commit trade

13   secret theft, you must find that the government has proved

14   each and every one of the following elements beyond a

15   reasonable doubt.

16       First, that from in or about May 2017, and continuing at

17   least until April 1, 2018, the defendant intended to commit

18   the crime of trade secret theft.  See page 16 and the

19   allegations above.

20       And, second, that the defendant performed some overt act

21   that was a substantial step toward committing the crime of

22   trade secret theft.  See page 16 and the allegations above.

23       If you're convinced that the government has proved all of

24   these elements beyond a reasonable doubt, say so by returning

25   a verdict of guilty on Count 4.  If you have a reasonable

1    doubt about any one of these elements, then you must find the

2    defendant not guilty of Count 4.

3        Now as to Counts 3 and 4, general instructions and

4    relevant terms.  Let me explain some of the terms and provide

5    you with some instructions relevant to Counts 3 and 4.

6        Proof regarding trade secrets.  For purposes of Counts 3

7    and 4, it's not necessary for the government to prove that any

8    trade secrets were actually stolen, without authorization

9    appropriated, taken, carried away, or concealed, or obtained

10   by fraud, or artifice, or deception.

11       Two, copied, duplicated, sketched, drawn, altered,

12   photocopied, replicated, transmitted, delivered, sent,

13   communicated, or conveyed without authorization, or three,

14   received, bought, or possessed without authorization.

15       This is because the crime of attempt is complete upon the

16   defendant intending to violate the law and performing an overt

17   act that qualifies as a substantial step toward committing the

18   crime.

19       B, for purposes of Counts 3 and 4, the government must

20   only prove that the defendant intended to target information

21   that the defendant believed to be trade secrets.  Whether or

22   not the targeted information was actually a trade secret is

23   not relevant.

24       Two, as to substantial step.  The second element requires

25   the government to prove that the defendant performed an overt

1    act that was a substantial step toward committing the crime.

2        B, merely preparing to commit a crime is not a

3    substantial step.  The defendant's conduct must go beyond mere

4    preparation, and must strongly confirm that he intended to

5    commit economic espionage for Count 3, or trade secret theft

6    for Count 4.

7        But the government does not have to prove that the

8    defendant did everything except the last act necessary to

9    complete the crime.  A substantial step beyond mere

10    preparation is enough.

11        As to overt acts.  The government alleges a number of

12    overt acts.  The government does not have to prove that all

13    these acts were committed, and the government does not have to

14    prove that any of the acts were themselves illegal.

15        But the government must prove beyond a reasonable doubt

16    that the defendant committed at least one of these acts, and

17    that it was a substantial step toward committing the crime.

18    This is essential.

19        In determining whether the defendant performed an overt

20    act for purposes of Counts 3 and 4, please see the list which

21    I read and is provided on pages 25 to 29 of these

22    instructions, but exclude the acts listed under (c) and (d) of

23    the list.

24        I decline to read you aloud pages 25 to 29 again.

25        As to all counts.  General instructions and relevant

1    terms.  Trade secret.  The term trade secret means all forms

2    and types of financial, business, scientific, technical,

3    economic, or engineering information, including patterns,

4    plans, compilations, program devices, formulas, designs,

5    prototypes, methods, techniques, processes, procedures,

6    programs, or codes, whether tangible or intangible, and

7    whether or how stored, compiled, or memorialized physically,

8    electronically, graphically, photographically, or in writing

9    if,

10        A, the owner thereof has taken reasonable means to keep

11   such information secret; and,

12        B, the information derives independent economic value,

13   actual or potential, from not being generally known to, and

14   not being readily ascertainable through proper means by

15   another person who can obtain economic value from the

16   disclosure or use of the information.

17        As to general instructions.  One, the dates of the

18   alleged offenses.  The indictments charge that Counts 1 and 2

19   happened, quote, in or about 2013, and continuing to at least

20   April 1, 2018, end quote.

21        And Counts 3 and 4 happened, quote, in or about May 2017,

22   and continuing to at least April 1, 2018, end quote.

23        The government does not have to prove that the crime

24   happened on those exact dates.  But as to each count, the

25   government must prove that the crime happened reasonably close

1    to the dates alleged.

2        Two, inferring required mental state.  Intent.  I want to

3    explain something about proving a defendant's state of mind.

4        Ordinarily, there is no way that a defendant's state of

5    mind can be proved directly because no one can read another

6    person's mind and tell what that person is thinking.

7        But a defendant's state of mind can be proved indirectly

8    from the surrounding circumstances.  This includes things like

9    what the defendant said or did not say, what the defendant did

10   or did not do, how the defendant acted or did not act, and any

11   other facts or circumstances in evidence that show what is in

12   the defendant's mind.

13       You may also consider the natural and probable results of

14   any acts that the defendant knowingly did or did not do, and

15   whether it's reasonable to conclude that the defendant

16   intended those results.

17       This, of course, is all for you to decide.

18       As to venue.  There's one final element that the

19   government has to prove; that is, the government must also

20   prove, as to each individual count, that all or part of each

21   alleged offense occurred within the Southern District of Ohio.

22   This is referred to as venue.

23       As to venue, the government and the defense agree and

24   stipulate that the proper venue for all charges is here in the

25   Southern District of Ohio.

1        This concludes the part of my instructions in explaining

2    the elements of the offense.

3        Next I'll explain some rules you must use in considering

4    some of the testimony and evidence.

5        Defendant's right not to testify.  Defendant has an

6    absolute right not to testify.  The fact that the defendant

7    did not testify cannot be considered by you in any way.  Do

8    not even discuss it in your deliberations.

9        Remember that it's up to the government to prove the

10   defendant guilty beyond a reasonable doubt.  It's not up to

11   the defendant to prove he's innocent.

12       As to law enforcement witnesses, the testimony of which

13   you heard.  The fact that a witness may be employed as a

14   state, federal, or foreign law enforcement official does not

15   mean that his testimony is necessarily deserving of more or

16   less consideration, or greater or lesser weight than that of

17   an ordinary witness.

18       At the same time, it's quite legitimate for defense

19   counsel to try and attack the credibility of a law enforcement

20   witness on the grounds that his testimony may be colored by a

21   personal or professional interest in the outcome of the case.

22       It's your decision, after reviewing all the evidence,

23   whether to accept the testimony of the law enforcement witness

24   and to give to that testimony whatever weight, if any, you

25   find it deserves.

1    Now, as to opinion testimony.  You heard the testimony of

2  James Mulvenon, Nick Kray, Rizwan Ramakwadala, and James

3  Olson, who testified as opinion witnesses.

4    You do not have to accept these witnesses' opinion.  In

5  deciding how much weight to give their testimony, you should

6  consider the witness's qualifications and how he reached his

7  conclusions.

8    Also consider the other factors discussed in these

9  instructions for weighing the credibility of witnesses.

10    Remember that you alone decide how much of a witness's

11  testimony to believe or not to believe, and how much weight it

12  deserves.

13    Additionally, you are not to consider any opinion

14  testimony regarding the defendant's state of mind or his

15  intent.  Therefore, as it relates to the testimony of James

16  Olson, to the extent that Mr. Olson specifically testified

17  that the defendant intended to steal trade secrets, you must

18  disregard those limited portions of his testimony.

19    This is because it is up to you and you alone to

20  determine whether the defendant intended to steal trade

21  secrets.  See pages 39 and 40, General Instruction Number 2.

22    Witness testifying both to fact and opinions.  You've

23  heard the testimony of various law enforcement witnesses, who

24  testified to both facts and opinions.  Each of these types of

25  testimony should be given the proper weight.

1          As to the testimony on facts, consider the factors

2     discussed earlier in these instructions for weighing the

3     credibility of witnesses.  See pages 8 and 9.

4          As to the testimony on opinions, you do not have to

5     accept the witnesses' opinions.

6          In deciding how much weight to give a witness's opinion,

7     you should consider the witness's qualifications and how he

8     reached his conclusions, along with the other factors

9     described and discussed in these instructions for weighing the

10    credibility of witnesses.

11         Remember that you alone decide how much of a witness's

12    testimony to believe and how much weight it deserves.

13         As to the testimony of cooperating witnesses.  You've

14    heard the testimony of Arthur Gao.  You also heard that he had

15    been convicted of an offense relating to the events that he

16    testified about, and you heard that he had not yet been

17    sentenced.

18         Mr. Gao's conviction was in another court, before a

19    different judge, involving different charges and different

20    prosecutors.

21         There was no evidence that Mr. Gao was promised any

22    benefit in exchange for his testimony.  But during his

23    testimony, it was implied that he may have received some

24    degree of leniency in his sentence, in exchange for his

25    agreement to testify in this case.

1          Additionally, you heard the testimony of David Zheng.

2     You also heard that the government promised him he will not be

3     prosecuted in exchange for his cooperation in this case.

4          It is permissible for the government to make such

5     promises in exchange for a witness's cooperation.  But you

6     should consider testimony of such cooperating witnesses with

7     more caution than the testimony of other witnesses.

8          Consider whether their testimony may have been influenced

9     by the government's promise not to prosecute the witness, or

10     the witness's own belief that he may have received some

11     benefit in exchange for his cooperation.

12          Do not convict the defendant based on the unsupported

13     testimony of such a witness, standing alone, unless you

14     believe his testimony beyond a reasonable doubt.

15          As to redaction.  The Court's rules require that certain

16     information be redacted, covered up, from certain documents.

17     You should not draw any inferences from the fact that an

18     exhibit contains redactions.

19          As to foreign language evidence.  During the course of

20     the trial, you heard the testimony of a witness who required

21     the use of a French interpreter.

22          Also during the course of the trial, the Court admitted

23     into evidence various exhibits that were originally in Chinese

24     Mandarin.  For your benefit, those exhibits were translated

25     into English, and you were presented with both the Chinese

1    original and the English translations.

2       The parties have agreed that the English language

3    translations are accurate.  You must therefore accept the

4    English translation of the evidence as accurate and must rely

5    solely on the English language translations when considering

6    the evidence.

7       As to secondary evidence summaries admitted into

8    evidence.  During the trial you've seen summary evidence in

9    the form of a chart or similar material.  This summary was

10   admitted into evidence, in addition to the testimony it

11   summarizes, because it may assist you in understanding the

12   evidence that has been presented.

13      But the summary itself is not evidence of the material it

14   summarizes, and it's only as valid and reliable as the

15   underlying testimony it summarizes.

16      There was a demonstrative chart.  During the trial the

17   government presented a demonstrative chart, which is offered

18   to assist in the presentation and understanding of a witness's

19   testimony.  This material itself is not itself evidence and

20   must not be considered as proof of any facts.

21      And now as to deliberation and verdict.  I've concluded

22   the part of my instructions explaining the rules for

23   considering some of the testimony and evidence.  Let me finish

24   up by explaining some things about your deliberations in the

25   jury room and your possible verdicts.

1       The first thing that you should do in the jury room is

2   choose someone to be your foreperson.

3       A foreperson's opinions and vote are not given greater

4   weight than any other juror.  All jurors' votes are equal.

5       The foreperson will simply help to guide your

6   discussions, make sure everyone gets to participate fully, and

7   will speak for you here in the courtroom.

8       Once you start deliberating, do not talk to anyone; not

9   my staff, not me, not anyone, except for each other, about the

10  case.

11      If you have a question or message, you must write it down

12  on a piece of paper.  The foreperson should sign it, and then

13  alert Ms. Santoro, who will come and retrieve the written

14  question from you all and will deliver it straight to me.

15      Ms. Santoro will show you how to call her from the jury

16  room.

17      Any questions or messages you have normally should be

18  sent to me through your foreperson.

19      Once I receive your written question or message, I will

20  respond as soon as I can.  I likely will have to talk to the

21  lawyers about what you have asked, so it might take me some

22  time to get back to you.

23      In the meantime, please continue your deliberations while

24  you wait to hear back from me; if you're able to do so, do so.

25      One more thing about messages.  Do not ever write down or

1    tell anyone, including me, how you stand on your votes.

2        For example, do not write down or tell anyone that you're

3    split six-six, eight-four, four-eight, or whatever your vote

4    happens to be.  That should stay secret until you are fully

5    finished.

6        Experiments, research, investigation outside

7    communications.  No.  No.  No.  Remember that you must make

8    your decision based solely on the evidence that you saw and

9    heard here in court.

10        During your deliberations, you must not communicate with

11    or provide information to anyone by any means about this case.

12        You may not use any electronic device or media, such as a

13    telephone, cell phone, smartphone, iPhone, iPad, computer,

14    laptop, the internet, any internet service, any email service,

15    any texts or instant messaging service, any app, any internet

16    chat room, blog, or website.

17        All of this includes, but is not limited to, Google,

18    Twitter, Snapchat, Instagram, Facebook, or YouTube, to

19    communicate to anyone any information about this case, or to

20    conduct any research about this case until after I accept your

21    verdict.

22        In other words, you can't talk to anyone on the phone,

23    correspond with anyone, or electronically communicate with

24    anybody about this case, and you may not do any form of

25    outside research.

1    You can only discuss the case in the jury room with your

2    fellow jurors during deliberations, pursuant to my

3    instructions.

4    I expect you will inform me immediately if you become

5    aware of another juror's violation of these instructions.

6    The reason you are not permitted to conduct outside

7    research and to communicate with anyone other than each other

8    about the case is because it's important that you decide this

9    case based solely on the evidence presented in this courtroom.

10    Information available in reference materials, the news,

11    on the internet, or through social media might be wrong,

12    incomplete, inaccurate, or misleading.

13    You're only permitted to discuss the case with your

14    fellow jurors during deliberations, as they have seen and

15    heard the same evidence as you have.

16    In our judicial system, it is important that you are not

17    influenced by anything or anyone outside this courtroom.

18    Otherwise, your decision may be based on information known

19    only by you and not your fellow jurors or the parties in the

20    case.

21    This would unfairly and adversely impact the judicial

22    process.

23    A juror who violates these rules jeopardizes the fairness

24    of these proceedings and a mistrial could result, which would

25    require the entire trial process to start over.

1        Unanimous verdict.  Your verdicts as to the defendant,

2    whether guilty or not guilty, must be unanimous on each of the

3    four counts.

4        To find the defendant guilty, every one of you must agree

5    that the government has overcome the presumption of innocence

6    with evidence that proves the defendant's guilt beyond a

7    reasonable doubt.

8        To find a defendant not guilty, every one of you must

9    agree that the government has failed to convince you beyond a

10   reasonable doubt.

11       Either way, guilty or not guilty, as to each of the four

12   counts, your verdict must be unanimous as to each count.

13       As to the duty to deliberate.  Now that all the evidence

14   is in and after closing arguments, you will be sent to the

15   jury room and begin to be free to talk about the case.

16       In fact, it's your duty to talk with each other about the

17   evidence, and to make every reasonable effort you can to reach

18   a unanimous agreement.  Talk with each other.  Listen

19   carefully and respectfully to each other's views.  Keep an

20   open mind as you listen to what your fellow jurors have to

21   say.  Try your best to work out any of your differences.  Do

22   not hesitate to change your mind if you're convinced the other

23   jurors are right and that your original position is wrong.

24       But do not ever change your mind just because other

25   jurors see things differently or just to get the case over

1   with.

2      In the end, your vote must be exactly that, your own

3   vote.  It's important for you to reach a unanimous agreement

4   but only if you all can do so honestly and in good conscience.

5      No one will be allowed to hear your discussions in the

6   jury room, and no record will be made of what you say.  So you

7   should all feel free to speak your minds.

8      Listen carefully to what the other jurors have to say,

9   and then decide for yourself if the government has proved the

10   defendant guilty beyond a reasonable doubt or not.

11      As to punishment.  If you decide that the government has

12   proved the defendant guilty, then it will be my job to

13   determine what the appropriate punishment should be.  Deciding

14   what the punishment should be is my job, not yours.  It would

15   violate your oaths as jurors to even consider a possible

16   punishment in deciding your verdict.

17      Your job is to look at the evidence and decide if the

18   government has proven or not proven the defendant guilty

19   beyond a reasonable doubt.

20      I've prepared verdict forms that you should use to record

21   your verdicts.  There's one verdict form for each charge.

22      You have separately a copy of the verdict forms.

23   Straightforward verdict form.  Count 1, guilty or not guilty.

24   Everybody signs it.

25      Count 2, guilty or not guilty.  Everybody signs it, and

1    it's dated.

2         Count 3, guilty or not guilty.  Everybody signs it, and

3    it's dated.

4         As to Count 4, same thing, guilty or not guilty, date it,

5    everybody signs it.

6         I want you all to leave the verdict forms in your chairs

7    when you leave.  I'm not going to send a bunch of verdict

8    forms upstairs.  We'll bring you one.  It will be delivered to

9    the custody of the foreperson, and you all will work it

10   through in that regard.

11        You can take the jury instruction package of 56 pages

12   with you.

13        Remember that the defendant is only on trial for the

14   particular crimes charged in the indictment.  Your job is

15   limited to deciding whether the government has proved or not

16   proved the crimes charged.

17        Now as to juror notes.  Remember if you elected to take

18   notes during the trial, your notes should be used only as

19   memory aids.  You shouldn't give your notes greater weight

20   than your independent recollection of the evidence.

21        You should rely upon your own independent recollection of

22   the evidence or lack of evidence, and you should not be unduly

23   influenced by the notes of other jurors.

24        Notes are not entitled to any more weight than the memory

25   or impression of each juror.

1          Whether you took notes or not, each of you must form and

2     express your own opinion as to the facts of the case.

3          Let me finish up by repeating something I said to you

4     earlier and I've said all along.  Nothing that I have said or

5     done during this trial was meant to influence your decision in

6     any way.  You decide for yourselves if the government has

7     proved or not proved the defendant guilty beyond a reasonable

8     doubt as to each of the four counts.

9          That concludes my jury instructions.

10         Now I'm going to change my mind and ask that you leave

11    your jury instruction packet and the verdict forms in your

12    chairs when you leave.  We'll get them brought up to you in

13    due course.

14         Now you've been instructed in the law, and you sat

15    through my reading of the 56 pages, and you stayed awake and

16    paid careful attention.

17         You're going to get a break now for 15 minutes to sort of

18    clear your heads, and then we will come back with closing

19    arguments, unless we decide after 15 minutes to send you to

20    lunch.

21         So you've earned a break by listening to me drone on, but

22    it was important.  You're going to have a written copy of it

23    all, and you've been paying attention during trial.  Take a

24    break now for 15 minutes.

25         No discussion of the case among yourselves.  You're

1   almost there.  No discussion with anyone.  No independent

2   research.  Continue to keep an open mind.

3         You need to hear closing argument.

4         Out of respect for you, we'll rise as you leave for

5   15 minutes.

6         (Jury out at 11:09 a.m.)

7         THE COURT:  The jury has left the room.  The door is

8   closing.  We're going to recess for 15 minutes.  Lunch has not

9   been ordered until 12:45.

10        During the recess, if anyone wants to talk to my law

11  clerk about timing, feel free.  I'll see you again in

12  15 minutes.

13        Court's in recess, unless there's anything further from

14  the government?

15        MR. MANGAN:  Your Honor, there was one item, and I

16  regret we didn't mention it earlier.  I know the defense

17  rested.  We thought it might be advisable to have the

18  defendant on the record acknowledging that he waived his right

19  to testify.

20        THE COURT:  Mr. Kohnen, can you facilitate that,

21  please?

22        MR. KOHNEN:  I'm sorry, Your Honor?

23        THE COURT:  Can you facilitate that, please?

24        MR. KOHNEN:  Yes, Your Honor.  In fact, we've already

25  spoken to Mr. Xu about that, and he's indicated to us that he

```
 1    is not interested in testifying on his own behalf.  I'm sure

 2    that Mr. Xu would confirm that for the Court here if that's

 3    your wish.

 4              THE COURT:  Is that right, Mr. Xu, you do not wish to

 5    testify?

 6              THE DEFENDANT:  No.

 7              THE COURT:  Thank you.  We're in recess for

 8    15 minutes.

 9         (Brief recess.)

10              THE COURT:  We're back in the courtroom.  Are we

11    ready to proceed to closing and getting the jury from the

12    government's perspective?

13              MR. MANGAN:  Yes, we are, Your Honor.

14              THE COURT:  And the defense?

15              MR. KOHNEN:  Yes.  Thank you, Judge.

16              THE COURT:  Very well.  Let's call for the jury.

17         (Jury in at 11:27 a.m.)

18              THE COURT:  Thank you.  You may all be seated.  The

19    15 members of the jury have rejoined us after a break.

20         We're now going to proceed to closing argument.

21         The government goes first, followed by the defense.  The

22    government gets the last word.

23         I think we'll break for lunch after the government's

24    closing argument.

25         Is the government prepared to proceed?
```

1          MR. MANGAN:  We are, Your Honor.

2          THE COURT:  Very well.

3          MR. MANGAN:  Before I begin, Your Honor, we would

4    like to reserve some time for rebuttal.

5          THE COURT:  Very well.

6          MR. MANGAN:  May I proceed?

7          THE COURT:  Yes, please.

8      (Excerpt of Proceedings Concluded at 11:30 a.m.)

9                        *   *   *

10               C E R T I F I C A T E

11                      -   -   -

12      I, M. SUE LOPREATO, RMR, CRR, certify that the foregoing
     is a correct transcript from the record of proceedings in the
13   above-entitled matter.

14

15   /s/ M. Sue Lopreato_____              February 13, 2022_____
     M. SUE LOPREATO, RMR, CRR
16   Official Court Reporter

17

18

19

20

21

22

23

24

25